FILED
14 JUL -5 PM 2:43
MULTNOMAH COUNTY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH     **14CV06380**

| | |
|---|---|
| JESSICA GESSELE, ASHLEY ORTIZ, NICOLE GESSELE, TRICIA TETRAULT, CHRISTINA MAULDIN and JASON DIAZ, both on behalf of themselves individually and, in addition, on behalf of the other similarly situated employees, | Case No. |
| | COMPLAINT |
| | Oregon and Federal Wage and Hour, Fiduciary Breach and Equitable/Quasi-Contractual Claims |
| Plaintiffs, | |
| vs. | Damages estimated at approximately $45,000,000.00 |
| JACK IN THE BOX INC., a Delaware corporation doing business in Oregon as "Jack In The Box Inc. A Corporation Of Delaware," | Jury Trial Requested |
| | NOT SUBJECT TO MANDATORY ARBITRATION |
| Defendant. | |
| | Filing fee of $1,056 per ORS 21.160(1)(e) |

## INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT

1.

Jessica Gessele, Ashley Ortiz (who was named Ashley Gessele when she worked for Jack in the Box), Nicole Gessele, Tricia Tetrault (who was named Tricia Cortes-Cruz when she began working for Jack in the Box), Christina Mauldin (who was named Christina Luchau during some of the time she worked for Jack in the Box) and Jason Diaz (hereinafter collectively "Plaintiffs") complain as follows against Jack in the Box Inc., doing business in Oregon as "Jack In The Box Inc. A Corporation Of Delaware" (hereinafter "JACK IN THE BOX"), both on behalf of themselves

Page 1 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1 individually and, in addition, on behalf of the other similarly situated employees.

2                                                2.

3     This action is a continuation under ORS 12.220·of a previous lawsuit between the

4 same parties. On August 13, 2010 (within the time allowed by statute), Plaintiffs filed

5 an action against JACK IN THE BOX in the United States District Court for the

6 District of Oregon, Case No. 3:10-cv-960-BR. JACK IN THE BOX had actual notice of

7 the filing of that action on or before August 18, 2010 (*i.e.*, not later than 60 days after

8 it was filed). On May 15, 2014, that action was involuntarily dismissed without

9 prejudice for lack of original federal jurisdiction (*i.e.*, not on any ground adjudicating

10 the merits of the action). Plaintiffs are commencing this action based upon the same

11 claim or claims within 180 days of entry of that judgment. This action is therefore not

12 subject to dismissal by reason of not having been commenced within the time allowed

13 by statute.

14                                               3.

15     This is an action under state and federal wage and hour, common-law breach of

16 fiduciary duty and equitable/quasi-contractual claims for certain present and former

17 employees of JACK IN THE BOX to recover unpaid wages, actual damages, statutory

18 damages, penalty wages, and attorney fees, costs and disbursements (and pre- and

19 post-judgment interest thereon), as well as liquidated damages and equitable relief

20 (including an accounting and declaratory and injunctive relief). In addition, Plaintiffs

21 hereby give notice of their intent to seek to amend this Complaint to include a claim

22 for punitive damages. All allegations herein are made to the best of Plaintiffs' and

23 their counsel's good-faith knowledge, information and belief, based upon the

Page 2 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  evidence adduced to date, and Plaintiffs reserve the right to amend their Complaint

2  upon the discovery of additional facts.

3  **PARTIES**

4  4.

5  At all material times, Plaintiffs Jessica Gessele, Ashley Ortiz, Nicole Gessele,

6  Tricia Tetrault, Christina Mauldin and Jason Diaz were residents and citizens of the

7  State of Oregon. At all material times, Plaintiffs and the Class and Collective

8  members were employees of JACK IN THE BOX. Plaintiffs Christina Mauldin, Jason

9  Diaz and other Collective and Class members were employed by JACK IN THE BOX

10  when it transferred the ownership of their stores to franchisees. Plaintiff Jessica

11  Gessele has been employed by both JACK IN THE BOX and the subsequent

12  franchisee owner of her store. Plaintiffs Jessica Gessele, Ashley Ortiz, Nicole Gessele,

13  Tricia Tetrault and Jason Diaz were at all times hourly employees. Plaintiff Christina

14  Mauldin was at times an admittedly nonexempt hourly employee, and at times a

15  salaried Assistant Manager alleged by JACK IN THE BOX to be exempt from

16  overtime.

17  5.

18  Defendant JACK IN THE BOX is a Delaware corporation doing business in

19  Multnomah County, Oregon and elsewhere, with its corporate headquarters at 9330

20  Balboa Ave., San Diego, CA 92123. JACK IN THE BOX operates a fast-food business

21  in which it and its franchisees constitute a single integrated economic unit, over

22  which JACK IN THE BOX has common, overall control. JACK IN THE BOX is

23  dependent on its franchise and corporate-owned stores preparing and selling food

Page 3 – COMPLAINT

ATTACHMENT B
Page 3 of 34

1    under a prescribed model, and its profits and financial well-being depend in part on

2    the success of the franchisee stores. JACK IN THE BOX specifies how many people

3    may share ownership in a franchise, the ownership percentage that each store

4    owner/operator must have in any corporate franchisee entity, what other

5    business(es) they are allowed to directly or indirectly operate, and how far they are

6    allowed to live from each restaurant, and it prohibits the sale, transfer or assignment

7    of any franchisee's ownership to any other person without prior approval and

8    payment of a fee.

9                                          6.

10        JACK IN THE BOX maintains the right to control any litigation in which a

11    franchisee becomes involved, and to either maintain such action in the franchisee's

12    name or substitute itself as the named defendant in its sole discretion. Any

13    innovations or improvements in products, equipment, uniforms, building design,

14    facility improvements, service format or advertising originated by a franchisee are

15    deemed "works made for hire" and remain JACK IN THE BOX's sole property

16    without compensation to the franchisee. JACK IN THE BOX maintains mandatory

17    standards and specifications that the franchisees must follow, which include the vast

18    majority of goods, services, supplies, uniforms, fixtures, equipment (including

19    computer and other technology equipment), software, real estate, building design

20    and inventory items, as well as their sources of supply. JACK IN THE BOX limits the

21    franchisees to specified suppliers of those items, and it specifically requires them to

22    purchase or lease computer software, peripheral equipment and technologic services

23    directly from JACK IN THE BOX.

Page 4 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

7.

JACK IN THE BOX has the right to control, and does control, the manner in which its franchisees' employees' work is performed, and it specifically promulgates and implements employment policies including compensation, hiring, training, staffing levels, employee conduct, safety, timekeeping, discipline, performance evaluation, labor scheduling, labor management, management number and structure, restaurant and menu hours, workers' compensation and employer liability insurance, federal labor law compliance, personnel and payroll records, and general management policies for all of its stores, including the franchisees' stores. JACK IN THE BOX exercises its authority to control, directly or indirectly, the franchisees' timekeeping and payroll practices by requiring the use of a proprietary, licensed computerized record-keeping system (called "Kronos," and later "Jack's Timekeeping") that, among other things, tracks and computes employees' hours worked and retains payroll records, all of which are regularly retrieved and monitored by JACK IN THE BOX. To the extent that any franchisees violate their employees' rights by conforming to JACK IN THE BOX's timekeeping policies, JACK IN THE BOX knows or should know of the alleged unlawful practices at the franchisees' stores.

8.

JACK IN THE BOX further maintains control over many other aspects of the franchisees' stores that directly relate to employees and their terms and conditions of employment, including specifying the uniforms, equipment and supplies used by them; detailing the methods and procedures for performing their work; and both

Page 5 – COMPLAINT

1    requiring and providing extensive training on the required policies and procedures

2    for the performance of their everyday job duties. Employees who are trained at any

3    location need little or no additional training to work at any other location, regardless

4    of whether either or both locations are corporate or franchised, and multiple stores

5    from time to time share the services of the same employee. Employees and managers

6    cannot be hired by franchisees, and they are required to be fired, if they do not

7    conform to these JACK IN THE BOX policies. JACK IN THE BOX maintains specific

8    requirements as to the personnel, payroll and employee training records that must be

9    maintained by each franchisee as to that franchisee's employees, and how long those

10    records are required to be kept, and JACK IN THE BOX has the right to inspect and

11    audit those records at any time, with or without prior notification.

12                                          9.

13        JACK IN THE BOX requires each franchisee to staff its restaurants at the level

14    required to maximize sales (JACK IN THE BOX's royalty and marketing fees being a

15    percentage of gross sales)—the franchisees are not allowed to staff at levels designed

16    to maximize their own profits. Each franchisee is required to authorize JACK IN THE

17    BOX to access and take money from the franchisee's bank accounts at any time.

18                                         10.

19        JACK IN THE BOX requires each franchisee to undergo 10 weeks of extensive

20    mandatory training in its policies and procedures, which takes place at the JACK IN

21    THE BOX corporate headquarters and local corporate-owned restaurants in San

22    Diego. JACK IN THE BOX further requires at least one manager for each of

23    franchisee's franchised stores to undergo extensive mandatory training in San Diego

Page 6 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1     regarding its policies and procedures. JACK IN THE BOX further requires every

2     other franchisee manager and non-manager employee to undergo substantial

3     training by JACK IN THE BOX, and franchisees are also required to provide

4     mandatory on-site training to their own employees by JACK IN THE BOX, in several

5     additional areas specified by JACK IN THE BOX, using equipment and curriculum

6     specified by JACK IN THE BOX.

7                               11.

8         JACK IN THE BOX maintains the ability to enforce its policies by means of

9     computer tracking; by its frequently exercised right to enter, inspect and audit the

10    franchisees' stores (with or without notice) and to interview and provide on-the-job

11    training for their employees; by actually exercising total control over aspects of the

12    employees' compensation and day-to-day employment conditions; and by requiring

13    the franchisees to: purchase/lease/rent JACK IN THE BOX's proprietary point-of-

14    sale ("POS"), time clock, timekeeping and monitoring equipment, purchase/lease/

15    rent JACK IN THE BOX'S proprietary POS, time clock, timekeeping and monitoring

16    software, pay JACK IN THE BOX a mandatory fee for managing and maintaining the

17    timekeeping and monitoring software, use (and pay for) JACK IN THE BOX'S

18    mandatory proprietary Restaurant Technology Support call center for problems, and

19    purchase company-specified back-office and POS hardware and software; and by

20    JACK IN THE BOX regularly retrieving the employees' in and out punch information

21    from the franchisees' equipment via satellite (which satellite service must also be

22    purchased by the franchisee from a specified vendor), performing calculations on

23    those punches at JACK IN THE BOX's San Diego corporate headquarters according

Page 7 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1    to its own proprietary hours-worked formulas (which the franchisees are not allowed

2    to change even if they wanted to), and communicating only the end result of those

3    calculations (*i.e.*, each employee's total hours worked) back to the franchisees or their

4    payroll providers for preparation of the actual payroll checks. Franchisees are

5    specifically prohibited from transmitting, altering, adding or deleting any of this data.

6                                           12.

7         Franchisees are required to strictly adhere to all of these standards, specifications

8    and procedures, which adherence is necessary and essential to the image and success

9    of each Jack In The Box restaurant and the Jack In The Box system as a whole. In

10   view of the interconnection of computer systems and the necessity that such systems

11   be compatible with each other, the franchisees are required to strictly comply with

12   JACK IN THE BOX's standards and specifications for all item(s) associated with

13   franchisee's computer system, and to otherwise operate the computer system in

14   accordance with JACK IN THE BOX's standards and specifications.

15                                          13.

16        JACK IN THE BOX tells the franchisees that they are required to follow all

17   applicable federal, state and local laws, including labor laws, and to notify JACK IN

18   THE BOX in the event the franchisee receives notice of violation of any such law.

19   Franchisees violating federal labor laws are deemed to be in default of their franchise

20   agreements. JACK IN THE BOX maintains the contractual right to access any and all

21   information contained in the franchisees' personal computer systems, POS systems

22   and satellite communications systems, and it has the power to stop these

23   employment violations by conforming its own proprietary procedures to the

Page 8 – COMPLAINT

1  applicable law, and/or by terminating, or threatening to terminate, the franchise

2  agreements of those who refuse to bring their policies into compliance with

3  applicable law. JACK IN THE BOX is therefore an employer, joint employer and/or

4  co-employer of the franchisee employees, as well as the sole employer of its own

5  employees.

6  **COMMON FACTS**

7  14.

8    At all relevant times, Plaintiffs and the other hourly employees were employed at

9  or very near the Oregon minimum wage. For each Plaintiff, nonpayments and

10  deductions from pay as enumerated herein reduced their pay for a given workweek

11  below the level of the applicable minimum wage for that workweek.

12  15.

13    Though each Plaintiff's schedule varied from week to week, each Plaintiff

14  sometimes worked over 40 hours in a given workweek, and sometimes less. For some

15  weeks in which they worked over 40 hours, nonpayments and deductions from pay as

16  enumerated herein reduced their pay, resulting in nonpayment of time-and-a-half for

17  overtime for that workweek.

18  16.

19    Plaintiffs base this class and collective action on four categories of violations by

20  JACK IN THE BOX: Oregon Workers' Benefit Fund assessment overdeductions, shoe

21  deductions, unpaid breaks, and the transfer of Oregon stores to franchisees. Each of

22  these categories is discussed below.

23  ///

Page 9 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

## Wrongful Deductions for Oregon Workers' Benefit Fund

17.

The Oregon Workers' Benefit Fund is a program that provides various benefits to workers injured on the job in Oregon. The program is funded by an assessment that every employer and employee pays to the State of Oregon, based on the number of hours worked by that employee. Each Fall, the State of Oregon publishes the new Workers' Benefit Fund assessment rate both in print and on the web, and it also mails out a written notice of the new rate to all employers registered with the Oregon Secretary of State. JACK IN THE BOX has been continuously registered with the Oregon Secretary of State, with the same mailing address, for over 25 years.

18.

The Workers' Benefit Fund assessment is supposed to be divided evenly between the employer and employee. So, for example, in 2003, the Workers' Benefit Fund assessment rate was 3.6 cents per hour. The employer was required to withhold 1.8 cents from each of its employees' paychecks for every hour that they worked during that pay period. And at the end of the quarter, the employer was supposed to pay the State of Oregon 3.6 cents for every hour worked by its employees (the 1.8 cents withheld from the employee, plus another 1.8 cents from its own pocket for the employer portion).

19.

Every year since 2003, the Workers' Benefit Fund assessment rate has been lower than 3.6 cents per hour. Every year since 2003, the State of Oregon sent written notice of the new assessment rate to JACK IN THE BOX's corporate headquarters at

Page 10 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

the address registered with the Oregon Secretary of State, 9330 Balboa Ave., San Diego, CA, 92123. JACK IN THE BOX also has contracts with several vendors who update JACK IN THE BOX whenever any of the tax rates changes in any of the states in which it does business. Yet every year since 2003, JACK IN THE BOX has continued to withhold 1.8 cents per hour from its employees' wages (the higher 2003 rate, not the current year's lower rate). Meanwhile, every year since 2003, JACK IN THE BOX has only been paying the actual then-current Workers' Benefit Fund assessment rate to the State of Oregon (which were all lower than the 2003 rate). The following chart shows the Workers' Benefit Fund assessment rate for each year since 2003, the portions due from the employer and employee, the portion actually paid by JACK IN THE BOX, and the portion actually paid by the employees:

| Year | WBF Rate | Employer Portion | Employee Portion | Jack Paid | Employees Paid |
|------|----------|------------------|------------------|-----------|----------------|
| 2003 | 3.6 ¢ | 1.8 ¢ | 1.8 ¢ | 1.8 ¢ | 1.8 ¢ |
| 2004 | 3.4 ¢ | 1.7 ¢ | 1.7 ¢ | 1.6 ¢ | 1.8 ¢ |
| 2005 | 3.4 ¢ | 1.7 ¢ | 1.7 ¢ | 1.6 ¢ | 1.8 ¢ |
| 2006 | 3.0 ¢ | 1.5 ¢ | 1.5 ¢ | 1.2 ¢ | 1.8 ¢ |
| 2007 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |
| 2008 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |
| 2009 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |
| 2010 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |
| 2011 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |
| 2012 | 2.8 ¢ | 1.4 ¢ | 1.4 ¢ | 1.0 ¢ | 1.8 ¢ |

In other words, every year since 2003, the employees have been paying more than half of JACK IN THE BOX's Workers' Benefit Fund assessment. The employees did not owe the State of Oregon as much as JACK IN THE BOX was withholding from their wages. JACK IN THE BOX's overwithholding from its employees was therefore an unlawful deduction from their wages.

Page 11 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

20.

For Plaintiffs and the other employees, that deduction reduced their pay below the minimum wage and resulted in their not receiving time-and-a-half for their overtime hours. We know that JACK IN THE BOX knew the current rate during every one of those years, since it paid the State of Oregon at the correct rate. JACK IN THE BOX's overwithholding from its employees therefore had to be willful.

**Shoe Deductions**

21.

An employer cannot make its employees pay for the employer's expenses. If an expense benefits the employer, the employer can't require employees to pay for it. One kind of expense that benefits an employer is a uniform—having all of the employees look alike provides an atmosphere conducive to the employer's business. If an employer wants its employees to wear a uniform, therefore, the employer has to buy those uniforms. That is true under both state and federal law—an employer can't make the employees buy a uniform to wear for their work. Generic elements such as "white shirt" or "dark pants" are not considered to be a uniform, since they are common and worn on the street. JACK IN THE BOX required each of its restaurant employees to wear a uniform shirt, apron and hat, so it provided each of its restaurant employees with three uniform shirts, an apron and a hat.

22.

JACK IN THE BOX also required its restaurant employees to wear a specific kind of nonslip shoes, with a specific minimum coefficient of friction level of 0.5, made by a specific company-approved manufacturer. JACK IN THE BOX started the

Page 12 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  mandatory nonslip shoe program in the early 2000's to reduce its workers'

2  compensation costs. JACK IN THE BOX commissioned a study by a testing

3  laboratory to see which shoes met the minimum level of slip resistance. But JACK IN

4  THE BOX did not allow its employees to wear just any of the shoes that passed that

5  test. JACK IN THE BOX only allowed its employees to wear shoes from an approved

6  list of manufacturers, who gave certain benefits to JACK IN THE BOX: the

7  manufacturers had to offer JACK IN THE BOX a guarantee, and they had to pay

8  JACK IN THE BOX a kickback/commercial bribe. The guarantee was that the shoe

9  maker would pay the first $5,000 of any medical expense claim resulting from a slip

10  and fall while an employee was wearing that manufacturer's brand of shoes that the

11  employee paid for through payroll deduction. The kickback/commercial bribe was

12  that the shoe manufacturer would pay $2 to JACK IN THE BOX for every pair of

13  shoes that an employee paid for through payroll deduction. Those extra perks paid to

14  JACK IN THE BOX made the shoes more expensive, but JACK IN THE BOX didn't

15  allow its employees to wear the less expensive shoes made by manufacturers that

16  didn't offer those perks to JACK IN THE BOX (even if those less expensive shoes met

17  the coefficient of friction requirements).

18                                    23.

19      When an employee was told by their manager that they had to order the shoes, the

20  employee picked out a pair from the designated catalog of the approved

21  manufacturer. The manager would then phone in the employee's order. The

22  manufacturer would ship the shoes directly to the employee's manager and invoice

23  JACK IN THE BOX for the full catalog price of the shoes. JACK IN THE BOX would

Page 13 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  pay the manufacturer the full catalog price of the shoes and then deduct that full

2  catalog price from the employee's wages over four paychecks. The President of Jack

3  in the Box personally approved this deduction arrangement.

4                                    24.

5      Each quarter, JACK IN THE BOX gets a kickback/commercial bribe (they call it a

6  "rebate") check from the shoe manufacturer for $2 per pair of shoes ordered by the

7  employees through payroll deduction. Under federal law (sometimes called the

8  *Pittsburgh Milk* doctrine), when a middleman receives a trade discount from a

9  vendor, that trade discount is supposed to be combined with the original price, and

10  the resulting net price is the one used for accounting. In other words, the middleman

11  doesn't have the full purchase price as an expense and the trade discount as separate

12  income—the two numbers are supposed to combine to lower the initial purchase

13  price. In this way, a kickback is treated exactly the same way for accounting purposes

14  as if there had simply been a reduction in the middleman's original price. According

15  to the law, then, JACK IN THE BOX isn't paying the full catalog price and then later

16  receiving separate income of $2 per pair of shoes; the $2 kickback/commercial bribe

17  has to be combined with the catalog price. The net price JACK IN THE BOX pays for

18  each pair of shoes is therefore $2 less than the price listed in the catalog. But the

19  lower net price from the $2 kickback/commercial bribe was not passed on to the

20  employees—they had to pay the full catalog price. Indeed, the employees were never

21  even told about the $2 kickback/commercial bribe/"rebate." The employees therefore

22  paid $2 more per pair of shoes than JACK IN THE BOX did. Since Plaintiffs started

23  working there, JACK IN THE BOX has received well over $1,000,000.00 in kick-

Page 14 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  backs/bribes from Shoes for Crews alone (one of the approved shoe manufacturers).

2  25.

3  Because JACK IN THE BOX got a $2 secret kickback/commercial bribe per pair of

4  approved shoes, plus a medical expense guarantee for injured workers wearing

5  approved shoes, plus an annual $3 Million savings in workers' compensation

6  expenses, the approved shoes benefitted JACK IN THE BOX. The shoes are part of a

7  uniform, for the company's benefit, and on top of that, the company charged more for

8  them than it paid for them. The company's requiring employees to purchase those

9  shoes (and the deduction of the price from their wages) was therefore a violation of

10  wage and hour law.

11  26.

12  Furthermore, the shoe deductions resulted in Plaintiffs and the other employees

13  receiving less than the minimum wage, and less than time-and-a-half for their

14  overtime. We know that JACK IN THE BOX knew its policies might be illegal,

15  because JACK IN THE BOX has been sued before for these wrongful shoe

16  deductions. But they still didn't change their policy. That, and the fact that the

17  company President personally approved the deduction arrangement, plus the fact

18  that there was never any written contract or other agreement putting the secret $2

19  kickbacks in writing, show that the violation was willful. Finally, Jack in the Box

20  claims that its employees authorized these shoe deductions in writing, but it has

21  willfully destroyed all of those supposed authorizations. That ongoing destruction

22  continued after Jack in the Box was sued in another state for the same violations, it

23  continued after Plaintiffs sent a demand for their documents, and it continued for

Page 15 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1    years after this lawsuit was filed. As a result, there is no longer any written record

2    that any Plaintiff or employee authorized any given shoe deduction (if indeed there

3    ever was).

4                                       27.

5         JACK IN THE BOX also acted as the employees' purchasing agent with respect to

6    the shoes. That means that JACK IN THE BOX bought the shoes at the employees'

7    request and on their behalf (not for itself). Purchasing agents have a duty of loyalty

8    under common law. That means that JACK IN THE BOX was required to act in its

9    employees' best interest. Purchasing agents are not supposed to accept

10   kickbacks/commercial bribes from the people they buy their goods from. It creates a

11   conflict of interest—the employees' best interest may be to buy a cheaper shoe, but

12   the purchasing agent's best interest may be to go with a more expensive shoe as long

13   as it gets a kickback/commercial bribe from the vendor. That is exactly what

14   happened here. JACK IN THE BOX accepted kickbacks/commercial bribes from shoe

15   vendors in order to give them access to its captive pool of employees who were

16   required to purchase those shoes. By accepting those kickbacks/commercial bribes,

17   JACK IN THE BOX breached its fiduciary duty to its employees. JACK IN THE BOX

18   now has to give back those kickbacks/commercial bribes to its employees.

19                                       28.

20        Under equitable principles, the Plaintiffs and class members have a greater right

21   to that money than JACK IN THE BOX does. JACK IN THE BOX should therefore

22   provide an accounting of all of the money it has taken, and return that money to the

23   employees it was taken from. Because the Plaintiffs and class members' purchases of

Page 16 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  the shoes from JACK IN THE BOX were not voluntary, they are entitled to rescind

2  their purchases and get their money back. JACK IN THE BOX should also be

3  prohibited from operating similar kickback/commercial bribery schemes in the

4  future.

5                                    29.

6      The first time anyone disclosed that JACK IN THE BOX was collecting these

7  kickbacks/commercial bribes from the shoe manufacturers was during the February

8  6, 2012 deposition of Gene James, its Director of Asset Protection, when he revealed

9  that information unprompted by Plaintiffs' counsel. Neither Plaintiffs nor their

10 counsel knew or had any reason to know of the kickbacks/commercial bribes prior to

11 that date.

12                       **Failure to Pay for Rest Periods**

13                                    30.

14     Oregon and federal law require employers to pay for breaks of fewer than 30

15 minutes. Breaks of fewer than 30 minutes are considered "rest periods," which are for

16 the employer's benefit in that they increase employees' productivity during the time

17 that they are working. That is why rest periods are counted as part of hours worked. A

18 bona fide "meal period" is an uninterrupted period of 30 minutes or more, where an

19 employee does no work and has time to eat a full meal. Bona fide meal periods are

20 not counted as part of hours worked.

21                                    31.

22     JACK IN THE BOX's standard meal periods are supposed to be at least 30

23 minutes long. But they specifically train their managers that the needs of the

Page 17 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1   restaurant come first, and if the managers need employees to come back early from

2   breaks to help out during a rush period, they should do so. Indeed, Plaintiffs and the

3   other employees were required to sign On-Duty Meal Policy agreements when their

4   employment began. In each of those agreements, JACK IN THE BOX promised the

5   employee that if their work prevented them from receiving a full meal period, they

6   would be paid for all of that time. But JACK IN THE BOX didn't honor those

7   agreements, or the law. JACK IN THE BOX decided that the line between paid and

8   unpaid breaks should be at 20 minutes (not 30 minutes as required by Oregon and

9   federal law and the agreements that every employee signed). JACK IN THE BOX

10  therefore programmed its computers not to pay employees for any break longer than

11  20 minutes.

12                                         32.

13      Jack in the Box has used two timekeeping systems since Plaintiffs started working

14  there. The first was the Kronos system, which tracked only the time of each

15  employee's punch (it did not track whether the punch was a punch in, a punch out, or

16  whether it was for a rest or meal period). Under the Kronos system, JACK IN THE

17  BOX programmed its computers to compensate employees only for breaks of 20 or

18  fewer minutes. If the time between a punch out and a punch in was 21 minutes or

19  longer, none of the break was paid.

20                                         33.

21      The newer system is referred to as Jack's Timekeeping. Under the new Jack's

22  Timekeeping system, JACK IN THE BOX reprogrammed its computers to require

23  employees clocking out to designate why they are clocking out (whether it be for an

Page 18 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  intended rest period, an intended meal period, or for the end of their shift). When an

2  employee clocks back in from a rest period, the Jack's Timekeeping system has been

3  programmed to compensate the employee for only the first 20 minutes, regardless of

4  the actual length of the rest period. The Jack's Timekeeping system prohibits

5  employees from clocking in from a meal period prior to 30 minutes without a

6  manager's override. This change was specifically made because JACK IN THE BOX

7  knew that employees were not being allowed to take their full meal periods. Under

8  Jack's Timekeeping, none of the time in a so-called "meal period" is paid, regardless

9  of its length. Therefore, if an employee clocked out for a so-called "meal period" but

10  was required by their manager to return to work after 5 minutes, they were not paid

11  for that 5-minute break (as required by Oregon and federal law and the agreements

12  that each employee signed).

13                                                34.

14        JACK IN THE BOX spent over seven years developing and testing the new Jack's

15  Timekeeping system before it was implemented. That means that for the entire time

16  since Plaintiffs started working there, JACK IN THE BOX specifically and provably

17  knew that its employees were not being allowed to take their full 30-minute meal

18  periods, and those employees were still not paid for that time. That shows that the

19  violation was willful.

20                                                35.

21        Under the Kronos system, JACK IN THE BOX programmed its computers not to

22  count as hours worked rest or meal periods of longer than 20 but less than 30

23  minutes. Under the Jack's Timekeeping system, JACK IN THE BOX programmed its

Page 19 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1    computers not to count as hours worked any rest period exceeding 20 minutes, nor

2    *any* break begun as a "meal period" regardless of its length. Plaintiffs and the other

3    employees are entitled to be paid for that time. Furthermore, the nonpayment for

4    those hours worked resulted in Plaintiffs and the other hourly employees receiving

5    less than the minimum wage, and less than time-and-a-half for their overtime.

6                                36.

7       Incredibly, JACK IN THE BOX not only cuts off its own employees' paid breaks at

8    20 instead of 30 minutes, it also *requires its franchisees to follow that same rule.*

9    JACK IN THE BOX requires its franchisees to use both its timekeeping hardware and

10    its timekeeping software system. JACK IN THE BOX then retrieves the employees' in

11    and out punches from the franchisees' computers by satellite, performs all of the

12    calculations on those in and out punches at its corporate headquarters in San Diego,

13    and then posts each employee's total hours on a web portal for the franchisees and

14    their payroll companies to download when it comes time to cut the paychecks. This

15    arrangement is mandatory, and franchisees are not allowed to use a 30-minute

16    dividing line even if they want to. Therefore, even though the franchisees are the ones

17    that cut the checks, JACK IN THE BOX retains control of the employees' clock-in and

18    clock-out procedures, the storage of those records, the retrieval of records, the

19    calculation of employees' total hours worked, and the communication of those total

20    hours worked to the franchisees' payroll processing companies. JACK IN THE BOX is

21    therefore an employer, joint employer and/or co-employer of the franchisee

22    employees for purposes of these meal period violations.

23    *///*

Page 20 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

**Franchise Transfer Paychecks**

37.

Plaintiffs Christina Mauldin, Jason Diaz and the other employees of company-owned stores in Oregon that were transferred to the ownership of a franchisee did not receive their earned and unpaid wages within the period required by law following that transfer of ownership. In addition, as a result of the nonpayments and deductions indicated herein, the final paychecks that Plaintiffs did receive did not contain all wages due and owing to them. JACK IN THE BOX is therefore liable for damages to each employee who was employed at the time their store was transferred who was not paid the business day after their last day as a corporate employee. For example, both Christina Mauldin and Jason Diaz were employed by the corporation on Sunday, March 28, 2010, but employed by a franchisee at the same store on Monday, March 29, 2010. Their final paychecks from JACK IN THE BOX were therefore due on March 29, 2010. But they were not paid until March 30, 2010. The store transfers at issue include (per Jack in the Box's own in-house counsel) 6 stores transferred on May 1, 2006, 21 stores transferred on March 29, 2010, 13 stores transferred on March 7, 2011, and 3 stores transferred on September 30, 2011.

**FACTS SPECIFIC TO ONE OR MORE NAMED PLAINTIFFS**

38.

To avoid overtime, to reduce a manager's reported labor costs, and for other reasons, the managers would from time to time alter an employee's hours, or transfer an employee's reported hours from one store to another or from one workweek or pay

Page 21 – COMPLAINT

1    period to another. This resulted in nonpayment of wages and/or overtime.

2                                      39.

3        On several occasions, one or more Plaintiffs were required to work off the clock

4    while transferring inventory from store to store, going to the bank, or performing

5    various other tasks for their employer.

6

7                    **COLLECTIVE ACTION ALLEGATIONS**

8                                      40.

9        Plaintiffs and the other Collective members are similarly situated in all relevant

10   respects. This action is brought on behalf of the following Collectives:

11       1.  **FLSA WBF Collective**, consisting of all current and former

12           employees of JACK IN THE BOX who had an Oregon Workers'

13           Benefit Fund ("WBF") assessment deducted from a paycheck

14           that covered a week in which the employee worked more than

15           40 hours, on or after January 1, 2004.

16       2.  **FLSA Shoe Collective**, consisting of all current and former

17           employees of JACK IN THE BOX who had a deduction to pay

18           for shoes taken from a paycheck that covered work performed

19           in Oregon and included a week in which the employee worked

20           more than 40 hours.

21       3.  **FLSA Unpaid Break Collective**, consisting of all current and

22           former employees of JACK IN THE BOX or its franchisees who,

23           in a workweek in which they worked more than 40 hours, (a)

Page 22 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

took a break of at least 20 minutes but less than 30 minutes in either timekeeping system, and/or (b) clocked out for a "meal period" of less than 30 minutes in the Jack's Timekeeping system.

## CLASS ACTION ALLEGATIONS

41.

JACK IN THE BOX engaged in acts and practices that violated the Class members' rights under Oregon statutory and common law. This action is brought on behalf of the following Classes:

1. **Oregon WBF Class**, consisting of all current and former employees of JACK IN THE BOX who had an Oregon Workers' Benefit Fund ("WBF") assessment deducted from a paycheck on or after January 1, 2004.

2. **Oregon Shoe Class**, consisting of all current and former employees of JACK IN THE BOX who had a deduction to pay for shoes taken from a paycheck that covered work performed in Oregon.

3. **Oregon Unpaid Break Class**, consisting of all current and former employees of JACK IN THE BOX or its franchisees who, in a workweek in which they performed work in Oregon, (a) took a break of at least 20 minutes but less than 30 minutes in either timekeeping system, and/or (b) clocked out for a

Page 23 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1    "meal period" of less than 30 minutes in the Jack's

2    Timekeeping system.

3        4. **Oregon Store Transfer Class**, consisting of all current and

4        former employees of JACK IN THE BOX who were employed at

5        the time the Oregon store they worked at was transferred to

6        franchise ownership.

7                          **Numerosity**

8                              42.

9    Each of the above Classes is so numerous that joinder of all members is

10   impractical, consisting of thousands of persons each (there are over 50 Jack in the

11   Box locations in Oregon, with many employees per store and a high turnover rate).

12                         **Commonality**

13                             43.

14   There are questions of law and fact common to each class, which predominate

15   over any issues involving only individual class members. The principal questions are:

16       a.  For the Oregon WBF Class, what rate JACK IN THE BOX withheld from its

17           employees' paychecks, what rate it was supposed to withhold, whether it

18           had notice of the proper rate, and what damages result.

19       b.  For the Oregon Shoe Class, whether the deduction for the shoes was legal

20           under Oregon law, whether the deductions and/or shoes were for the

21           employees' benefit, whether JACK IN THE BOX's destruction of any

22           alleged authorizations that may or may not have existed can be remedied

23           via spoliation sanctions, whether JACK IN THE BOX was the employees'

Page 24 – COMPLAINT

1   purchasing agent, whether it owed them a fiduciary duty of loyalty,

2   whether JACK IN THE BOX's receipt of kickbacks/commercial bribes from

3   shoe manufacturers that were not passed on to the plan participants

4   constituted a breach of fiduciary duty, what damages were suffered as a

5   result, whether JACK IN THE BOX should be held liable for punitive

6   damages, and what the best course of injunctive and other relief is to

7   remedy the violations.

8   c.   For the Oregon Unpaid Break Class, whether and to what extent unpaid

9   breaks between 20 and 30 minutes (or "meal periods" of less than 30

10   minutes) violate Oregon wage-and-hour law, whether there is a private

11   right of action for breaks between 20 and 30 minutes (or "meal periods" of

12   less than 30 minutes) that were taken but not paid, and what damages are

13   available to the affected employees.

14   d.   For the Oregon Store Transfer Class, whether the transfer of a store from

15   corporate to franchisee ownership results in the termination of all of its

16   employees for purposes of ORS 652.140, and what damages are available to

17   the employees.

18   e.   For all Classes, whether the violations were willful and what remedies are

19   available for the violations.

20   **Typicality**

21   44.

22   Plaintiffs' claims are typical of those of the other Class members because:

23   a.   One or more Plaintiffs are members of each plaintiff Class.

Page 25 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

b.  Plaintiffs' claims stem from the same practice or course of conduct that forms the basis for the Class claims.

c.  All of the Class members' claims are based on the same facts and legal theories.

d.  There is no antagonism between the interests of Plaintiffs and the Class members, because their claims are for damages provided to each Class member separately by statute or the common law.

### Adequacy Of Representation By Plaintiffs

45.

Plaintiffs will fairly and adequately protect the interests of the Classes because:

a.  There is no conflict between Plaintiffs' claims and those of the other Class members.

b.  Plaintiffs have retained counsel experienced in handling collective and class actions involving wage and hour law, who will vigorously prosecute this litigation. Plaintiffs' counsel has already committed substantial time and resources towards this case and remains willing and able to devote whatever additional future time and resources are necessary to pursue this litigation to completion.

c.  Plaintiffs' claims are typical of the claims of the Class members in that their claims stem from the same practice and course of conduct that forms the basis of the Class claims.

///

///

Page 26 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

**Compliance With ORCP 32 H**

46.

Plaintiffs have complied with the requirements of ORCP 32 H by mailing a prelitigation notice and demand to Defendants at least 30 days before the commencement of this action.

**Superiority Of Class Action**

47.

Class resolution of this case is superior to other available methods for its fair and efficient adjudication, for at least the following reasons:

a. The prosecution of separate actions by the Class members could both result in inconsistent adjudications establishing incompatible pay practices and, as a practical matter, dispose of the legal claims of Class members who are not parties to such separate adjudications or impede their ability to protect their interests.

b. Plaintiffs are seeking declaratory and injunctive relief in addition to damages.

c. The common questions of law and fact described in paragraph 43 predominate over questions affecting only individual members, and the questions affecting individuals primarily involve only calculations of individual damages.

d. Individual class members would have little interest in controlling the litigation due to the relatively small size of most claims, the relatively unsettled nature of this area of the law, the complexity of the numerical

Page 27 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1   and legal claims, the expense of the litigation, and because the named

2   Plaintiffs and their lawyer have already invested significant resources in

3   the case and will continue to vigorously pursue the claims on behalf of the

4   class members.

5   e.  Plaintiffs have already prosecuted this case for almost four years in federal

6   court. To their knowledge, no other similar litigation has been commenced,

7   but if commenced, it could be coordinated under ORCP 32 K.

8   f.  This is a desirable forum because Defendant does business in this county

9   and many (likely most) of the class members reside here.

10

11                          **FIRST CLAIM FOR RELIEF**

12                          Oregon Minimum Wage Claim

13                                       48.

14   All previous paragraphs are incorporated by reference herein.

15                                       49.

16   Pursuant to ORS 653.025, JACK IN THE BOX was required to pay Plaintiffs and

17   the Class members at least the amount of the applicable Oregon minimum wage,

18   when those wages were due, but willfully failed to do so.

19                                       50.

20   Plaintiffs and the Class members are entitled to collect the difference between

21   their wages received when due and the Oregon minimum wages due in an amount to

22   be proven at trial, together with attorney fees, costs and disbursements, as well as

23   pre- and post-judgment interest and the 30 days of statutory penalty wages provided

Page 28 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1   by ORS 653.055 and 652.150.

2

3                              **SECOND CLAIM FOR RELIEF**

4                                    Oregon Overtime Claim

5                                      51.

6     All previous paragraphs are incorporated by reference herein.

7                                      52.

8     Pursuant to ORS 653.261, JACK IN THE BOX was required to pay Plaintiffs and

9   the Class members one and one half times their regular rate of pay for all hours

10   worked in excess of 40 in a given workweek, when those wages were due, but willfully

11   failed to do so.

12                                     53.

13     Plaintiffs and the Class members are entitled to collect the difference between the

14   wages received when due and the overtime wages due in an amount to be proven at

15   trial, together with attorney fees, costs and disbursements, as well as pre- and post-

16   judgment interest and the 30 days of statutory penalty wages provided by ORS

17   653.055 and 652.150.

18

19                                **THIRD CLAIM FOR RELIEF**

20                  Oregon Unpaid Wages Upon Termination Claim

21                                    54.

22     All previous paragraphs are incorporated by reference herein.

23   *///*

Page 29 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

55.

1    Pursuant to ORS 652.140, JACK IN THE BOX was required to pay Plaintiffs and
2
3    the Class members all wages due by the statutory deadline upon termination of their
4    employment but willfully failed to do so.

56.

6    Plaintiffs and the Class members are entitled to collect all wages remaining due,
7    in an amount to be proven at trial together with attorney fees, costs and
8    disbursements, as well as pre- and post-judgment interest, and the 30 days of
9    statutory penalty wages provided by ORS 652.150.

**FOURTH CLAIM FOR RELIEF**

Oregon Wrongful Deductions Claim

57.

All previous paragraphs are incorporated by reference herein.

58.

Pursuant to ORS 652.610, JACK IN THE BOX was prohibited from deducting
certain amounts from the paychecks of Plaintiffs and the Class members but willfully
did so.

59.

Plaintiffs and the Class members are entitled to (for each violation) the greater of
$200 or actual damages in an amount to be proven at trial, pursuant to ORS 652.615,
together with attorney fees, costs and disbursements, as well as pre- and post-
judgment interest.

Page 30 – COMPLAINT

1

**FIFTH CLAIM FOR RELIEF**

2

Oregon Unpaid Wages Claim

3

60.

4

All previous paragraphs are incorporated by reference herein.

5

61.

6

Pursuant to ORS 652.120, JACK IN THE BOX was required to pay Plaintiffs and

7

the Class members all wages due, when those wages were due, but willfully failed to

8

do so.

9

62.

10

Plaintiffs and the Class members are entitled to collect the wages due in an

11

amount to be proven at trial, together with attorney fees, costs and disbursements, as

12

well as pre- and post-judgment interest.

13

14

**SIXTH CLAIM FOR RELIEF**

15

FLSA Overtime Claim

16

63.

17

All previous paragraphs are incorporated by reference herein.

18

64.

19

Pursuant to 29 U.S.C. § 207, JACK IN THE BOX was required to pay Plaintiffs

20

and the Collective members at least one and one half times their regular rate of pay

21

for all hours worked in excess of 40 in a given workweek, when those wages were due,

22

but willfully failed to do so.

23

///

Page 31 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

65.

Plaintiffs and the Collective members are entitled to collect the difference between their wages received when due and the overtime wages due in an amount to be proven at trial, in addition to liquidated damages in the same amount, together with attorney fees, costs and nontaxable expenses, pursuant to 29 U.S.C. § 216(b).

**SEVENTH CLAIM FOR RELIEF**

Oregon Common Law Breach of Fiduciary Duty Claim

66.

All previous paragraphs are incorporated by reference herein.

67.

JACK IN THE BOX required Plaintiffs and the Class members to purchase a specific quality of slip-resistant shoes from its list of approved manufacturers. Plaintiffs and the Class members ordered those shoes through their managers, and JACK IN THE BOX paid the vendor for the shoes. JACK IN THE BOX then deducted what it said was its cost for those shoes from Plaintiffs' and the Class members' paychecks. Throughout this process, JACK IN THE BOX was acting as Plaintiffs' and the Class members' purchasing agent. As their purchasing agent, JACK IN THE BOX owed them a fiduciary duty of loyalty.

68.

JACK IN THE BOX breached its fiduciary duty of loyalty to Plaintiffs and the Class members by securing a kickback, bribe or commission from the vendor. This self-dealing and conflict of interest directly damaged Plaintiffs and the Class

Page 32 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

1  members.

2                                      69.

3      Plaintiffs and the Class members are entitled to an accounting, restitution, and to

4  collect their damages in an amount to be proven at trial, together with pre- and post-

5  judgment interest, as well as declaratory and injunctive relief. Plaintiffs and the Class

6  members hereby give notice of their intent to amend their Complaint to seek punitive

7  damages.

8

9                        **EIGHTH CLAIM FOR RELIEF**

10     Equitable and Quasi-Contractual Claims for Return of Money: Rescission,
       Restitution, Unjust Enrichment and Money Had and Received

11                                     70.

12     All previous paragraphs are incorporated by reference herein.

13                                     71.

14     JACK IN THE BOX unlawfully took possession of money belonging to Plaintiffs

15  and the Class members. Plaintiffs and the Class members received nothing in return

16  for the kickback/commercial bribe portion of the money, and overvalued shoes in

17  return for the remainder, both of which were obtained only under duress of losing

18  their jobs.

19                                     72.

20     JACK IN THE BOX has failed to refund the money and has been unjustly

21  enriched thereby, and equity and good conscience demand that the Plaintiffs' and the

22  Class members' money be returned.

23     ///

Page 33 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM

73·

Plaintiffs and the Class members are entitled to an accounting and to recover in restitution the money unlawfully taken from them, in an amount to be proven at trial, in addition to pre- and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court certify the Rule 32 classes and FLSA collectives as indicated herein; award them and the other Class and Collective members such actual, statutory, penalty, liquidated and other damages as they may be individually entitled to, as set forth by category above and in amounts to be proven at trial; award the attorney fees, costs and expenses of suit of Plaintiffs and the other Class and Collective members; order Defendant to pay pre-judgment and post-judgment interest on all amounts due to Plaintiffs and the other Class members as a result of their state-law claims; order an accounting; declare Defendant's violations as enumerated herein and enjoin Defendant from committing similar violations in future; and order such further or alternative legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED this 5th day of June, 2014                    JON M. EGAN, P.C.


Jon M. Egan, OSB #002467
Attorney for Plaintiffs

Page 34 – COMPLAINT

JON M. EGAN, PC
240 SIXTH STREET
LAKE OSWEGO, OR 97034-2931
TELEPHONE: (503) 697-3427 • FAX: (866) 311-5629
INFO@EGANLEGALTEAM.COM