IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY                    3:14-CV-1092-BR
ORTIZ, NICOLE GESSELE, TRICIA
TETRAULT, CHRISTINA MAULDIN,               OPINION AND ORDER
and JASON DIAZ on behalf of
themselves and all others
similarly situated,

          Plaintiffs,

v.

JACK IN THE BOX, INC., a
Corporation of Delaware,

          Defendant.


JON M. EGAN
240 Sixth Street
Lake Oswego, OR 97034-2931
(503) 697-3427

          Attorney for Plaintiffs

DOUGLAS S. PARKER
JENNIFER NETH WARBERG
DON STAIT
Littler Mendelson, P.C.
121 S.W. Morrison Street
Suite 900
Portland, OR 97204
(503) 221-0309

          Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Jack in the Box's Motion (#27) for Partial Summary Judgment; Plaintiffs' Motion (#32) for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling for FLSA Collective Members; and Plaintiff's Motion (#33) for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment;[1] **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling; and **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses.


<u>BACKGROUND</u>

Plaintiffs were employed by Defendant Jack in the Box, Inc., in its Oregon restaurants at various times. Plaintiffs received their final paychecks from Defendant on the following dates:

                Tricia Tetrault:    July 11, 2008
                Ashley Ortiz:       December 26, 2008

---

[1] The Court previously denied (#62) as premature and with leave to renew portions of Defendant's Motion (#27) for Partial Summary Judgment.

                  Nicole Gessele:      March 20, 2009
                  Jessica Gessele:     November 23, 2009
                  Christina Mauldin:   March 30, 2010
                  Jason Diaz:          March 30, 2010

On March 29, 2010, Jack in the Box "franchised" several corporate-owned Jack in the Box restaurants (including the restaurant at which Mauldin and Diaz were employed) to franchisee Northwest Group, Inc. (NWG).

On August 13, 2010, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault, on behalf of all those similarly situated, filed a putative class-action Complaint (*Gessele I*)[2] in this Court against Jack in the Box for violation of the minimum-wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and various Oregon wage-and-hour laws. *Gessele I* was assigned to Magistrate Judge Janice M. Stewart.

On January 4, 2011, Jason Diaz filed a Complaint in this Court against Jack in the Box and three of its franchisees: NWG; PSNW Enterprises, LLC; and VR, Inc. (*Diaz I*) in which he alleged claims for violation of the minimum-wage and overtime provisions of the FLSA and Oregon wage-and-hour statutes, unpaid wages on termination in violation of Oregon statutes, wrongful deductions in violation of Oregon Revised Statute § 652.610, wrongful method of payment in violation of Oregon Revised Statute § 652.110, and

---

[2] In *Gessele I* Ashley Ortiz proceeded as Ashley Gessele and Christina Mauldin proceeded as Christina Luchau.

use of an unregistered business name in violation of Oregon Revised Statute § 648.007.  *Diaz I* was assigned to Senior District Judge Robert E. Jones.

On May 5, 2011, Judge Jones issued an Opinion and Order in *Diaz I* in which he granted the franchise defendants' motion to compel arbitration of Diaz's claims on the ground that Diaz's claims against those defendants were encompassed by an arbitration agreement that Diaz entered into on March 29, 2010, when his employment transferred to franchisee NWG.

On May 16, 2011, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault filed a First Amended Complaint in *Gessele I* in which they added Christina Mauldin as a named Plaintiff.

On May 30, 2011, Diaz filed an Amended Complaint in *Diaz I* in which he alleged claims only against Jack in the Box for violation of the minimum-wage and overtime provisions of the FLSA and Oregon wage-and-hour statutes, unpaid wages on termination in violation of Oregon statutes, wrongful deductions in violation of Oregon Revised Statute § 652.610, and wrongful method of payment in violation of Oregon Revised Statute § 652.110.

On July 6, 2011, Diaz filed in *Diaz I* an unopposed Motion to Dismiss his claims without prejudice.  On July 8, 2011, Judge Jones entered an Order granting the Motion to Dismiss and a Judgment dismissing *Diaz I* without prejudice.

On March 20, 2012, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin filed a Second Amended Complaint in *Gessele I* in which they alleged Defendant (1) failed to pay minimum wages in violation of the FLSA, (2) failed to pay overtime wages in violation of the FLSA, (3) failed to pay minimum wages in violation of Oregon Revised Statute § 653.025, (4) failed to pay overtime wages in violation of Oregon Revised Statute § 653.261, (5) failed to pay all wages due after termination of Plaintiffs' employment in violation of Oregon Revised Statute § 652.140, (6) deducted unauthorized amounts from Plaintiffs' paychecks in violation of Oregon Revised Statute § 652.610, and (7) failed to pay all wages when due as required by Oregon Revised Statute § 652.120.

On December 13, 2012, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin filed a Motion for Leave to File Third Amended Complaint in *Gessele I*.  On January 7, 2013, Magistrate Judge Stewart denied the Motion on the grounds of undue delay and prejudice.

On June 26, 2013, *Gessele I* was reassigned to this Court.

On November 5, 2013, Jason Diaz filed a Consent to Join Law Suit in *Gessele I*.  Diaz, however, did not become a named Plaintiff in *Gessele I*.

On March 19, 2014, the Court issued an Opinion and Order in *Gessele I* in which it granted Defendant's Motion for Summary

Judgment on the ground that Jessica Gessele, Ashley Ortiz, Nicole
Gessele, Tricia Tetrault, and Christina Mauldin were required to
file written consents with the Court to commence their FLSA
collective action, but they failed to file those written consent
forms timely.[3]  The Court, therefore, concluded it never acquired
jurisdiction over the FLSA claims of Jessica Gessele, Ashley
Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin,
and, as a result, the Court could not exercise supplemental
jurisdiction over their state-law claims.  The Court also
concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia
Tetrault, and Christina Mauldin did not file written consents
within the applicable limitations period; neither equitable
tolling nor equitable estoppel applied; and, therefore, their
FLSA claims were barred by the applicable statute of limitations.
The Court dismissed the FLSA claims of Jessica Gessele, Ashley
Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin
with prejudice and dismissed their state-law claims without
prejudice.

On April 16, 2014, Jessica Gessele, Ashley Ortiz, Nicole
Gessele, Tricia Tetrault, and Christina Mauldin filed in *Gessele
I* an unopposed Motion to Amend/Correct in which they moved the
Court to amend its March 19, 2014, Opinion and Order to dismiss

---

[3] Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia
Tetrault, and Christina Mauldin did not file purported FLSA
consent forms until September 27, 2013.

their FLSA claims without prejudice on the ground that the Court lacked jurisdiction over those claims.

On May 15, 2014, the Court granted the Motion to Amend/Correct in *Gessele I* and issued an Amended Opinion and Order in which it granted Defendant's Motion for Summary Judgment on the ground that Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin failed to timely file written consent forms as required by the FLSA. The Court, therefore, never acquired jurisdiction over Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin's FLSA claims, and, as a result, the Court could not exercise supplemental jurisdiction over their state-law claims. Accordingly, on May 15, 2014, the Court entered a Judgment dismissing the entire matter without prejudice.

On June 10, 2014, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, Christina Mauldin, and Jason Diaz filed a putative class action against Jack in the Box in Multnomah County Circuit Court (*Gessele II*) in which they alleged claims for violation of Oregon's wage-and-hour laws, violation of the FLSA, breach of fiduciary duty, and equitable and quasi-contractual claims for return of money.

On July 9, 2014, Defendant removed *Gessele II* to this Court on the grounds of federal-question jurisdiction based on Plaintiffs' FLSA claims and/or jurisdiction under the Class

Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).

On August 8, 2014, Plaintiffs filed a Motion to Remand Case to State Court on the grounds that (1) issue preclusion/ collateral estoppel barred litigation of *Gessele II* in this Court; (2) if issue preclusion did not bar litigation, the "law of the case" barred litigation in this Court; and (3) judicial estoppel barred litigation of *Gessele II* in this Court even if neither issue preclusion nor law of the case barred litigation.

On October 17, 2014, the Court entered an Opinion and Order in *Gessele II* in which it granted in part and denied in part Plaintiffs' Motion to Remand.  The Court concluded (1) although issue preclusion barred relitigation of the Court's jurisdiction to hear the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin, it did not bar litigation of Diaz's FLSA claims against Defendant brought for the first time in *Gessele II*; (2) relitigation of this Court's jurisdiction was not barred by the law of the case; (3) because Diaz was never a named Plaintiff in *Gessele I*, the Court's decision regarding its jurisdiction over that matter did not apply to Diaz, and, therefore, judicial estoppel did not apply nor require remand of Diaz's FLSA claims; (4) judicial estoppel did apply to and estop Defendant from relitigating the issue of this Court's lack of jurisdiction over the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and

Christina Mauldin; and (5) Defendant did not waive its right to remove *Gessele II* by pursuing dismissal in *Gessele I* on jurisdictional grounds.

On October 29, 2014, Defendant moved for a stay of *Gessele II* pending the outcome of an appeal of the Court's October 17, 2014, Opinion and Order, which Defendant intended to file in the Ninth Circuit.

On November 6, 2014, the Court granted Defendant's Motion for Stay.

On June 11, 2015, the Ninth Circuit issued a Mandate in which it reversed in part and remanded the matter to this Court for further proceedings. Specifically, the Ninth Circuit held (1) Defendant is precluded from relitigating "the jurisdictional issues" in *Gessele I* by the doctrine of issue preclusion; (2) because *Gessele I* did not address the timeliness of the new FLSA claims asserted in *Gessele II* nor jurisdiction under CAFA, Defendant "is not precluded from invoking federal jurisdiction" in *Gessele II*; (3) Defendant's position in *Gessele I* that the Court lacked jurisdiction over the FLSA claims asserted in that matter "is not inconsistent with [Defendant's] . . . [assertion in *Gessele II* that] there is no time bar to the newly asserted FLSA claims, or that the district court has CAFA jurisdiction over the state-law claims"; and (4) Defendant did not waive its right to remove *Gessele II* "through its filings in the state

court or its prior conduct in this litigation."

As noted, on August 31, 2015, Defendant filed in *Gessele II* a Motion for Partial Summary Judgment; Plaintiffs filed a Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling for FLSA Collective Members; and Plaintiffs filed a Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses.  The Court took the Motions under advisement on October 5, 2015.

On December 22, 2015, the Court issued an Order in which it denied as premature (1) those portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) relating to whether the California putative class members are subject to binding settlements entered into in two California state cases; (2) those portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) relating to Defendant's status as a joint employer; and (3) Plaintiffs' Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses as to Defendant's Ninth Affirmative Defense.  The Court granted the parties leave to renew those Motions after limited discovery and after the Court issued its Opinion and Order on the remaining portions of the

10 - OPINION AND ORDER

pending Motions.

On February 16, 2016, the Court heard oral argument on those portions of the pending Motions for Partial Summary Judgment that were deferred in the Court's December 22, 2016, Order and took those portions of the Motions under advisement.

## DEFENDANT'S MOTION (#27) FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' MOTION (#32) FOR PARTIAL SUMMARY JUDGMENT

In Defendant's Motion for Partial Summary Judgment and Plaintiff's Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling for FLSA Collective Members, the parties move for summary judgment on the issues of (1) whether the savings provision of Oregon Revised Statute § 12.220 permits Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin to litigate Defendant's statute-of-limitations defense as to their FLSA claims based on their pre-March 29, 2010, employment and (2) whether the limitations period should be tolled for absent putative FLSA collective-action members.

**I.    Litigation of Defendant's statute-of-limitations defense as to the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin based on their pre-March 29, 2010, employment.**

Plaintiffs allege in their Sixth Claim that Defendant was required to pay "Plaintiffs and the Collective members at least one and one half times their regular rate of pay for all hours

11 - OPINION AND ORDER

worked in excess of 40 in a given workweek, when those wages were

due, but willfully failed to do so" in violation of § 207 of the

FLSA.

Defendant asserts in its Tenth Affirmative Defense that

"[t]he named Plaintiffs' FLSA claims are barred by the applicable

statutes of limitations as they failed to timely file consent

forms required by 29 U.S.C. § 216(b)."  Answer at ¶ 85.

Defendant asserts in its Eleventh Affirmative Defense that

> [t]he claims brought by the named Plaintiffs as
> well as by certain putative collective action
> members are barred in whole or in part by
> applicable statutes of limitations as they were
> not saved on a class wide basis by operation of
> ORS 12.200, they were not previously asserted in
> any prior action, and/or they were abandoned by
> Plaintiffs in an earlier action.

Answer at ¶ 86.

Defendant asserts in its Motion for Partial Summary Judgment

that the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole

Gessele, Tricia Tetrault, and Christina Mauldin based on their

pre-March 29, 2010, employment are time-barred and must be

dismissed.  Specifically, Defendant contends the Court's ruling

in *Gessele I* that those Plaintiffs failed to file consents within

the three-year FLSA limitations period bars them from asserting

their Sixth Claim, and Oregon Revised Statute § 12.220 does not

"save" the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole

Gessele, Tricia Tetrault, and Christina Mauldin based on their

pre-March 29, 2010, employment.

In their Response to Defendant's Motion for Partial Summary Judgment Plaintiffs concede although they "are precluded from claiming that their [pre-March 29, 2010, FLSA claims] yield federal question jurisdiction, they are not, however, precluded from opposing [Defendant's] statute-of-limitations defense on the merits."  In their Motion for Partial Summary Judgment Plaintiffs seek summary judgment on Defendant's Tenth and Eleventh Affirmative Defenses related to the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin.

> **A.  Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin did not commence their pre-March 29, 2010, claims for violation of the FLSA within the applicable limitations period.**

The parties and the Court are thoroughly familiar with the facts surrounding the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin as well as their procedural posture.  In addition, in its March 14, 2014, Opinion and Order in *Gessele I* the Court set out a complete analysis of the FLSA statute of limitations relating to the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin.  Although the Court's March 14, 2014, Opinion and Order in *Gessele I* was superseded by the Court's May 15, 2014, Amended Opinion and Order, the parties do not present any new evidence or law that suggests the Court should

13 - OPINION AND ORDER

reach a different conclusion now that the limitations issue is
before the Court.  The Court, therefore, summarizes its
conclusion regarding the untimeliness of the pre-March 29, 2010,
FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele,
Tricia Tetrault, and Christina Mauldin explained more fully in
its March 14, 2014, Opinion and Order.

        As noted, in its Tenth Affirmative Defense Defendant
asserts Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia
Tetrault, and Christina Mauldin failed to file written consents
as required under § 216(b) within three years[4] of Plaintiffs'
terminations, and, therefore, their claims are barred by the
limitations period set out in § 255(a).  Section 255(a) provides
in pertinent part that an action under § 216(b) of the FLSA
"shall be forever barred unless commenced within two years after
the cause of action accrued, except that a cause of action
arising out of a willful violation may be commenced within three
years after the cause of action accrued."  In addition, § 256 of
the FLSA provides:

                In determining when an action is commenced for the
                purposes of section 255 of this title, an action
                . . . shall be considered to be commenced on the
                date when the complaint is filed; *except that in*
                *the case of a collective or class action* . . . it
                shall be considered to be commenced in the case of

_____

[4] Plaintiffs allege Defendant willfully violated the FLSA.
Defendant, therefore, analyzes Plaintiffs' claims for purposes of
this Motion under the three-year limitations period for willful
violations of the FLSA.

14 – OPINION AND ORDER

any individual claimant --

> (a) on the date when the complaint is filed,
> if he is specifically named as a party
> plaintiff in the complaint *and* his written
> consent to become a party plaintiff is filed
> on such date in the court in which the action
> is brought; or

> (b) if such written consent was not so filed
> or if his name did not so appear--on the
> subsequent date on which such written consent
> is filed in the court in which the action was
> commenced.

Emphasis added.

The Court has already concluded in *Gessele I* and *Gessele II* that the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin accrued no later than the dates on which Plaintiffs received their final paychecks, which are as follows:

Tricia Tetrault:      July 11, 2008
Ashley Ortiz:         December 26, 2008
Nicole Gessele:       March 20, 2009
Jessica Gessele:      November 23, 2009
Christina Mauldin:    March 30, 2010

The record in *Gessele I* and *Gessele II* also reflects these Plaintiffs did not file any document with this Court purporting to be a consent until September 27, 2013. Accordingly, the Court previously concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin failed to file their consents within three years of the date that their pre-March 29, 2010, FLSA claims accrued, and, therefore, they did not commence *Gessele I* within the FLSA statute of limitations.

15 - OPINION AND ORDER

Although the Court's conclusion as to timeliness in *Gessele I* and *Gessele II* applied only to the Court's analysis of jurisdiction, there is not any basis for the Court to reach a different conclusion when analyzing these same facts in the context of the FLSA statute of limitations found in § 255.  The Court, therefore, concludes the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin were not commenced within the FLSA limitations period, and, therefore, those claims are barred as untimely unless saved in some manner.

**B.    The Parties' Arguments.**

**1.    Plaintiffs' Argument.**

As noted, Plaintiffs assert the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin are saved from being barred as untimely by Oregon Revised Statute § 12.220. Although Plaintiffs concede they filed *Gessele II* on June 5, 2014, which is more than three years after Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin received their final paychecks from Defendant, Plaintiffs point out in their Motion for Partial Summary Judgment that *Gessele I* was filed on August 13, 2010, which was less than three years after Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin received their final paychecks

from Defendant.  According to Plaintiffs, even though the Court
dismissed *Gessele I* for lack of jurisdiction on the ground that
Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault,
and Christina Mauldin failed to file consents within the three-
year FLSA limitation period, "*Gessele II* is considered commenced
on *Gessele I*'s filing date" due to Oregon Revised Statute
§ 12.220, which provides in pertinent part:

> (1) . . . if an action is *filed with a court
> within the time allowed by statute*, and the action
> is involuntarily dismissed without prejudice on
> any ground not adjudicating the merits of the
> action . . . and the statute of limitations for
> the action expired, the plaintiff may commence a
> new action based on the same claim or claims
> against a defendant in the original action. . . .
>
> * * *
>
> (2) If, pursuant to subsection (1) of this
> section, a new action is commenced in the manner
> provided by ORS 12.020 not later than 180 days
> after the judgment dismissing the original action
> is entered . . . the new action is not subject to
> dismissal by reason of not having been commenced
> within the time allowed by statute.

Emphasis added.  Thus, because (1) *Gessele I* was "filed" in 2010
but not "commenced" within the meaning of the FLSA until over
three years later when consents were filed as to the FLSA claims
of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia
Tetrault, and Christina Mauldin; (2) *Gessele I* was dismissed
without prejudice for lack of jurisdiction; and (3) *Gessele II*
was filed within 180 days of the dismissal of *Gessele I*,
Plaintiffs contend the pre-March 29, 2010, FLSA claims of Jessica

17 - OPINION AND ORDER

Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and
Christina Mauldin are "not subject to dismissal by reason of not
having been commenced within the time allowed by statute."

Plaintiffs rely on *Winkels v. George A. Hormel &
Co.,* 874 F.2d 567 (8th Cir. 1989), to support their argument.  In
*Winkels* the plaintiff brought an action in state court alleging
the defendant employer breached its contractual obligation to
reinstate the plaintiff in violation of § 301 of the LMRA and
that the defendant union violated the duty of fair
representation.  The defendants removed the matter to federal
court and filed a motion for summary judgment in which they
asserted the plaintiff's action was time-barred because he did
not commence his action by filing it within six months of the
date on which his action accrued.  At issue on appeal was whether
the Minnesota Rules of Civil Procedure governing when an action
commences or Federal Rule of Civil Procedure 3 applied to the
plaintiff's § 301 claim.  The court concluded the commencement of
a civil action first brought in state court is governed by state
law even if the cause of action arises from federal law.  At
issue here, however, is not whether *Gessele II* was timely
commenced in state court, but whether the savings provision of
§ 12.220 acts to revive the pre-March 29, 2010, FLSA claims of
Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault,
and Christina Mauldin that this Court has already determined were

not commenced within the limitations period.  Thus, *Winkels* does not support Plaintiffs' position here.

### 2.  Defendant's Argument.

Defendant asserts § 12.220 does not "save" the otherwise untimely pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin because a state savings statute such as § 12.220 cannot alter the limitations period set by a federal statute.

Defendant cites *Beck v. Caterpillar, Inc.*, 50 F.3d 405 (7th Cir. 1995), in which the court examined a related question in the context of a claim for breach of a collective bargaining agreement (CBA) and for breach of fiduciary duty.  In *Beck* the plaintiff brought an action against his former employer for breach of the CBA and against his union for breach of the duty of fair representation pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  The plaintiff stipulated to dismissal of his action without prejudice.  A year later (more than four years after his separation from employment) the plaintiff refiled his complaint in federal court.  The defendants moved to dismiss the complaint on the ground that it was barred by the applicable six-month statute of limitations. The district court granted the defendants' motion, and the plaintiff appealed.  On appeal the plaintiff conceded there was a

19 - OPINION AND ORDER

federal statute of limitations that governed actions under § 301,
but he asserted "Congress 'left a gap' in § 160(b) when it failed
to address the effect, if any, a voluntary dismissal would have
on the limitations period.  [The defendant] asks us to fill that
gap by borrowing the tolling provisions of the Illinois Savings
Statute."  *Id*. at 406.  The Seventh Circuit declined the
defendant's request noting:

> [F]ederal courts have expressed a general
> willingness to borrow states' tolling and savings
> provisions in the past, but only when the federal
> cause of action asserted is governed by a state
> statute of limitations, *i.e.*, in civil rights
> actions brought under 42 U.S.C. §§ 1981-1988.
> When the timeliness of a federal cause of action
> is measured by a state statute of limitations, it
> only makes sense to apply the state's tolling and
> savings provisions, for they are interrelated.
> The same cannot be said when the federal claim in
> question is governed by a federal statute of
> limitations, as it is in the present case.
>
> Where, as here, the plaintiff voluntarily
> dismisses a lawsuit which was brought in federal
> court, asserts a purely federal claim, and is
> subject to a federal statute of limitations, state
> savings statutes do not apply.

*Id*. at 407 (citations omitted).  The *Beck* court relied on a
number of decisions from other circuits in which courts concluded
state savings statutes are inapplicable to federal claims that
have their own limitations period and that are brought in federal
court.  Plaintiffs emphasize, however, that they filed *Gessele II*
(including their FSLA claims) in state court.  *Beck*, therefore,
does not provide specific guidance on the issue before the Court.

C.   **Analysis**

Although neither the Court nor the parties found any Ninth Circuit case directly on point, in *Crain v. Gaston County Board of Education*, No. 3:15-CV-00188-GCM, 2015 WL 6449413, at *4 (W.D. N.C. Oct. 23, 2015), the court, relying on *Beck*, concluded a state savings statute does not affect the statute of limitations for a federal claim that has its own limitations period even when the action was originally filed in state court:

> The Fourth Circuit has also suggested . . . a state savings statute does not affect the statute of limitations for a federal claim filed in federal court.   In *Birch v. Peters*, the plaintiff argued that her voluntarily dismissed Title VII claim was timely filed because of the same North Carolina procedural rule [the plaintiff] relies on in this case.   25 F. App'x at 123.   The Fourth Circuit disagreed, explaining that because the plaintiff "voluntarily dismisse[d] a lawsuit that was brought in federal court, asserted a purely federal claim, and was subject to a federal statute of limitations, state savings statutes do not apply."   *Id*. (citing *Beck v. Caterpillar Inc*., 50 F.3d 405, 407 (7th Cir. 1995); *Brown*, 926 F.2d at 961); *accord Stokes v. Pullen*, 122 F.3d 1062 (4th Cir. 1997)(table).   Although Plaintiff argues that his case is distinguishable because it was *originally filed in state court*, the Court disagrees.   Because the ADA's statute of limitations is a matter of federal law, the North Carolina procedural rule is not applicable to [the plaintiff's] claims.

2015 WL 6449413, at *4 (emphasis added).   The Court notes *Crain* is not binding on this Court, but its reasoning is helpful.

In addition, *Prazak v. Local 1 Intern. Union of Bricklayers & Allied Crafts*, 233 F.3d 1149 (9th Cir. 2000),

provides significant guidance.  In *Prazak* the plaintiff filed an
action in Alaska state court alleging the union and various
employers committed "hiring hall and collective bargaining
violations."  *Id*. at 1150.  The state trial court dismissed the
plaintiff's action in 1994 for failure to prosecute.  The Alaska
Supreme Court, however, reversed the dismissal in 1995.  On
December 1, 1995, the state trial court ordered the parties to
proceed with the case.  Two years later the state trial court
notified the parties that it was moving the case to the inactive
calendar with an intent to dismiss.  The plaintiff moved to
continue the case, but the state trial court dismissed the matter
without prejudice on July 11, 1997.  On May 22, 1998, the
plaintiff refiled his complaint in Alaska state court pursuant to
AS 09.10.240, which permits a party to refile a case within one
year after the dismissal of the predecessor action.  After the
plaintiff refiled his complaint, the defendants removed the case
to federal court on the ground of federal-question jurisdiction
pursuant to § 301 of the LMRA.  The defendant then moved for
summary judgment on the ground that the plaintiff's complaint was
barred by the sixth-month limitation period applicable to § 301
of the LMRA.  The district court granted summary judgment for the
defendants on all claims except for the plaintiff's state-law
defamation claim.  On appeal the Ninth Circuit noted the case
"involves an issue of first impression in this circuit - whether

state procedural rules apply to federal question cases that are filed in state court even though there is a six-month federal statute of limitations." *Id.* at 1151.  The Ninth Circuit concluded when "the federal statute of limitations *is initially complied with*, *then* state procedural rules apply until the case is removed to federal court." *Id.* (emphasis added).  In other words, a state savings statute such as § 12.220 does not apply when a subsequent action is filed in state court if the plaintiff did not initially comply with the federal statute of limitations for the federal claim in the preceding action.

This Court notes the *Prazak* court stated the general rule that when the federal statute of limitations "is initially complied with, then" state procedural rules apply until the case is removed to federal court.  Because this Court has already concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin did not timely commence their FLSA claim within the limitations period set out in § 255 of the FLSA when they filed their consents more than three years after their final paychecks, the Court also concludes under *Prazak* and *Crain* that § 12.220 does not apply in state court to save the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin.

Plaintiffs, nevertheless, point out that the ultimate outcome in *Prazak* supports their assertion that § 12.220 saves

the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin. Unlike in this case, however, there was not any dispute in *Prazak* that the plaintiff had complied with the statute of limitations applicable to § 301 actions, and, therefore, the Ninth Circuit concluded Alaska's savings clause applied and the matter should not have been dismissed.  Again, this Court has already concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin failed to comply initially with the FLSA limitations period, and, therefore, the outcome of *Prazak* is distinguishable.

In any event, under the unique procedural posture of this case the Court concludes even if § 12.220 governs, it does not save the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin.  As noted, § 12.220(1) states in relevant part that "if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice . . . , the plaintiff may commence a new action based on the same claim or claims."  The provision of § 12.220(2) that "the new action is not subject to dismissal by reason of not having been commenced within the time allowed by statute" has as its predicate requirement that the first action was filed within the time required by the federal statute.  As already made clear,

24 – OPINION AND ORDER

this Court has concluded the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin were not commenced within the time allowed by the FLSA at the time the Court dismissed *Gessele I* nor when Plaintiffs filed *Gesselle II*.  Thus, pursuant to the express language of § 12.220, those claims were not saved by § 12.220 when *Gessele II* was filed in state court.  In summary, even if § 12.220 could govern federal claims filed in state court, here it merely permits *Gessele II* to go forward on (1) the state-law claims over which the Court did not acquire supplemental jurisdiction in *Gessele I* and (2) any new FLSA claims timely commenced in *Gessele II* because § 12.220 does not permit resurrection of the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin.

Accordingly, the Court grants Defendant's Motion for Partial Summary Judgment and denies Plaintiffs' Motion for Partial Summary Judgment as to the pre-March 29, 2010, FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin on the ground that those claims are time- barred.  Those claims, therefore, are dismissed as time-barred.

## II.  Jason Diaz's Claims.

Although Jason Diaz was not a named Plaintiff in *Gessele I*,

he is a named Plaintiff in *Gessele II*.  Defendant moves for

summary judgment on Diaz's claims on the ground that the document

Diaz filed as his purported consent does not constitute

sufficient consent under the FLSA.  Defendant also asserts Diaz's

claims are subject to mandatory arbitration because he entered

into an arbitration agreement while he was employed by Defendant.

At oral argument, however, the parties agreed the issue as to

whether Diaz's claims are subject to mandatory arbitration

requires more extensive briefing by both parties.  Defendant,

therefore, withdrew this portion of its Motion for Partial

Summary Judgment.  The Court, in any event, declines to decide

the issue of the sufficiency of Diaz's consent at this time

because Diaz's claims may be subject to mandatory arbitration.

Accordingly, the Court denies without prejudice Defendant's

Motion for Partial Summary Judgment as to Diaz's claims with

leave to renew at a later time.

### III. Equitable Tolling

Plaintiffs assert in their Motion for Partial Summary

Judgment that the Court should toll the FLSA statute of

limitations period for absent collective class members as of

December 14, 2011.[5]  In this regard, the record reflects on

_____

[5] Plaintiffs make clear in their Reply that they do not
contend the Court should toll the FLSA limitations period for the
named Plaintiffs or toll the limitations period for absent Rule
23 class members.

26 - OPINION AND ORDER

December 14, 2011, Magistrate Judge Stewart entered an Order in
*Gessele I* in which she tolled the limitations period for absent
putative FLSA collective class members.  Although the Order does
not indicate the duration of the tolling period, at a hearing on
December 14, 2011, the Magistrate Judge stated she was tolling
the limitations period for absent FLSA collective class members
only "until class certification" because opt-in notices would be
issued to the putative collective class members if the class was
certified, and they would then be advised of the action.  *Gessele
I*, Hearing Tr. at 54-56 (#148).

On January 28, 2013, Magistrate Judge Stewart issued
Findings and Recommendation in *Gessele I* in which she granted in
part and denied in part Plaintiffs' Motion to Certify Oregon Rule
23(b)(3) Classes and Alternative Motions to Either Certify Hybrid
FLSA Classes or Certify FLSA 216(b) Collectives.  The Magistrate
Judge recommended in pertinent part that Plaintiffs' proposed
FLSA Workers Benefit Fund and Shoe Collectives and Subcollectives
should be conditionally certified under § 216(b).  Judge Ancer
Haggerty adopted the Findings and Recommendation on April 1,
2013.  Thus, pursuant to the December 14, 2011, ruling of the
Magistrate Judge as announced at the hearing, the limitations
period for the absent FLSA collective class members ceased to be
tolled at the earliest on January 28, 2013, when the Magistrate
Judge ruled on collective class certification or at the latest on

27 - OPINION AND ORDER

April 1, 2013, when Judge Haggerty adopted the Findings and Recommendation.

The FLSA putative collective-action members, however, were never notified of *Gessele I,* and opt-in notices were never issued to those putative collective-action members because on May 7, 2013, Defendant filed its Motion for Leave to Amend Answer to add the statute of limitations defense in *Gessele I*.  That Motion ultimately led this Court to conclude that it lacked federal-question jurisdiction over the FLSA claims and supplemental jurisdiction over the state-law claims, which, in turn, nullified all orders and rulings issued in the matter including the tolling Order issued by Magistrate Judge Stewart on December 14, 2011. Nevertheless, the Court notes it was reasonable for Plaintiffs in *Gessele I* not to notify putative FLSA collective-action members about that matter between December 14, 2011, and, at the latest April 1, 2013, because of the procedural posture of *Gessele I* during that time.

The question before this Court on Plaintiffs' Motion for Partial Summary Judgment, therefore, is whether the FLSA putative collective-action members' claims in *Gessele II* should be equitably tolled in any event, and, if so, the amount of time their claims should be tolled.  In *Kwai Fun Wong v. Beebe* the Ninth Circuit explained:

> [L]ong-settled equitable-tolling principles
> instruct that generally, a litigant seeking

equitable tolling bears the burden of establishing
two elements:  (1) that he has been pursuing his
rights diligently, and (2) that some extraordinary
circumstances stood in his way.  As to the first
element, the standard for reasonable diligence
does not require an overzealous or extreme pursuit
of any and every avenue of relief.  It requires
the effort that a reasonable person might be
expected to deliver under his or her particular
circumstances.  Central to the analysis is whether
the plaintiff was without any fault in pursuing
his claim.

With regard to the second showing, "a garden
variety claim of excusable neglect, such as a
simple miscalculation that leads a lawyer to miss
a filing deadline, does not warrant equitable
tolling." *Holland,* 130 S. Ct. at 2564 (internal
quotation marks and citations omitted).  Instead,
a litigant must show that extraordinary
circumstances were the cause of his untimeliness
and . . . made it impossible to file the document
on time.  Accordingly, equitable tolling is
typically granted when litigants are unable to
file timely documents as a result of external
circumstances beyond their direct control.

732 F.3d 1030, 1052 (9th Cir. 2013)(quotations and citations

omitted).  The Supreme Court has held equitable tolling is

"extended . . . only sparingly" when "the claimant has actively

pursued his judicial remedies by filing a defective pleading or

where he has been induced or tricked by his adversary's

misconduct into allowing the filing deadline to pass."[6]  *Irwin v.*

*Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)(citation

---

[6] In its May 15, 2014, Opinion and Order in *Gessele I* the
Court rejected Plaintiffs' assertion that they had been tricked
or induced into sleeping on their rights by defense counsel with
respect to filing FLSA consents.  The Court declines to repeat
its analysis, which is incorporated herein.

29 – OPINION AND ORDER

omitted). *See also Smith v. Bimbo Bakeries USA, Inc.*, No. CV 12-1689-CAS (JWX), 2013 WL 4479294, at *5 n.3 (C.D. Cal. Aug. 19, 2013)("Equitable tolling is extended sparingly and only [when] claimants exercise diligence in preserving their legal rights.") (quotation omitted).

To support their request for equitable tolling Plaintiffs rely on the Ninth Circuit's analysis in *Partlow v. Jewish Orphans' Home of Southern California*, 645 F.2d 757 (9th Cir. 1981), *overruled on other grounds by Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989). In *Partlow* the plaintiffs brought an action alleging their employer had violated the FLSA and sought to "maintain the lawsuit as a class action under" the FLSA. *Partlow*, 645 F.2d at 758. Shortly after filing the complaint, counsel for the named plaintiffs, acting without leave of court, sent letters to current and former employees of the defendant soliciting the individuals' consents to become parties to the action. Named plaintiffs' counsel then filed with the court "consents" from sixty-nine individuals who wished to join the action. The district court found counsel's communication with the individuals was "clearly contrary to law" and held, among other things, that "the consents were improperly filed and ineffective" and the "statute of limitations for filing suit under the FLSA would be tolled for a period of forty-five days to allow those employees whose consents were ineffective to file a

proper consent with the court." *Id*.  On appeal the Ninth Circuit held the FLSA limitations period could be tolled to give the sixty-nine affected individuals time to provide proper consent. In reaching that conclusion the Ninth Circuit reiterated in FLSA collective actions, unlike Rule 23 class actions, "a member of the class who is not individually named in the complaint is not a party to the lawsuit unless he affirmatively 'opts in' by filing a written consent with the court." *Id*.  Thus, "[u]nlike a class member in a Rule 23 action, the FLSA class member who is not notified and does not consent is not bound by an adverse judgment and is not barred from filing an individual claim." *Id*. at 759. In *Partlow*, however, the putative FLSA collective-action members received notice (albeit improper) and opted in (although ineffectively).  According to the Ninth Circuit, therefore,

> the potential plaintiffs in this case who opted in after the improper notice have a very substantial interest that is threatened [*sic*] the right to bring a lawsuit to recover alleged underpayment of wages an interest that they have indicated by written consent that they wish to protect.  Were it not for the solution proposed by the district court, these sixty-nine individuals would be barred by the FLSA statute of limitations from instituting a collective action to which they filed timely consents that, through no fault of their own, were subsequently found invalid.

*Id*.  The court noted "[t]he FLSA is silent on the question whether the statute of limitations may be suspended for any cause."  *Id.* at 760.  The court, however, concluded equitable tolling was warranted because it was not the fault of the

31 - OPINION AND ORDER

putative plaintiffs that their notice and consents were
ineffective.  In addition, the defendant

> was notified of the claims of the consenting
> employees within the statutory period by the
> filing of the improper consents.  To require [the
> defendant] to defend these claims thus will not
> result in a substantial hardship.  We find that
> the FLSA does not bar the district court-imposed
> suspension of the statute of limitations and that
> such tolling is supported by substantial policy
> reasons.

*Id.* at 761.

The posture of *Gessele II*, however, differs from that in
*Partlow*:  Here the putative plaintiffs never received notice of
*Gessele I* or *Gessele II*, and they have not consented to either
action.  Thus, unlike in *Partlow*, the putative FLSA collective-
action members are "not bound by an adverse judgment and [are]
not barred from filing an individual claim."

In *Koval v. Pacific Bell Telephone Co.*, No. C 12-1627 CW,
2012 WL 3283428 (N. D. Cal. Aug. 10, 2012), the district court
analyzed the plaintiff's request for equitable tolling of the
FLSA limitations period for putative collective-action members
(who had not yet been noticed or submitted consent) to include
the time the court stayed the action pending the outcome of
another matter.  The court granted the plaintiff's request and
noted:

> Because the Court chooses to use its discretion to
> stay the federal case at [the defendant's]
> request, it also equitably tolls the statute of
> limitations for the putative collective-action

32 - OPINION AND ORDER

members from the date of the filing of the instant
federal action through the date on which the stay
is lifted.

*Id.*, at *8.  The court noted:

The Ninth Circuit recognizes that "equitable
tolling concerns itself with the equities of
dismissal for untimely filing caused by factors
independent of the plaintiff." *Huynh v. Chase
Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir.
2006).  Thus, a court considers "whether it would
be unfair or unjust to allow the statute of
limitations to act as a bar to [a plaintiff's]
claim." *Id.*  "Equitable tolling applies when the
plaintiff is prevented from asserting a claim by
wrongful conduct on the part of the defendant, or
when extraordinary circumstances beyond the
plaintiff's control made it impossible to file a
claim on time." *Stoll v. Runyon*, 165 F.3d 1238,
1242 (9th Cir. 1999).  In *Partlow*, the Ninth
Circuit allowed equitable tolling where the
plaintiffs were without fault and there were
"substantial policy reasons" for doing so.  645
F.2d at 760-61.

* * *

"Courts have equitably tolled the statute of
limitations in a FLSA action when doing so is in
the interest of justice." *Castle v. Wells Fargo
Fin., Inc*., 2007 U.S. Dist. LEXIS 31206, at *4,
2007 WL 703609 (N.D. Cal. 2007)(citing *Partlow*,
645 F.2d at 760-61). . . .  In *Castle*, for
example, another judge of this court prospectively
tolled the putative class members for the duration
of a stay while the California Supreme Court
considered *Gentry v. Superior Court*, Case No.
06-4347, Docket No. 163.  In so holding, the court
rejected the defendant's argument that the court
cannot toll the FLSA statute of limitations for
prospective plaintiffs, noting that the Ninth
Circuit has never applied such a rule in a FLSA
case. *Id.* at 2 n.1.

*Id.*, at *7.

Even if the tolling Order in *Gessele I* had not been

nullified by the Court's conclusion that it lacked jurisdiction, the Court notes the tolling Order, nevertheless, expired by its own terms at the latest on April 1, 2013, when Judge Haggerty adopted Magistrate Judge Stewart's Findings and Recommendation as to class and FLSA collective-action certification.  As noted, however, Plaintiffs in *Gessele I* did not seek an extension of the tolling Order nor did they seek leave to notify putative FLSA collective-action members regarding the existence of *Gessele I* at any time between April 1, 2013, and March 20, 2014, when the Court entered its initial Judgment in *Gessele I*.

Although the Court recognizes the procedural posture of *Gessele I* was unusual, complex, and fluid, it does not appear to the Court that Plaintiffs would have had any difficulty in seeking an extension of the tolling Order or seeking clarification of the status of the stay after April 1, 2013.  The Court, therefore, declines to stay this matter as to the FLSA putative collective-action members back to December 14, 2011.

**PLAINTIFFS' MOTION (#33) FOR PARTIAL SUMMARY JUDGMENT ON JACK IN THE BOX'S 8th (PRIVATE RIGHT OF ACTION), 9th (DUE PROCESS) AND 12th (PREEMPTION) AFFIRMATIVE DEFENSES**

In their second Motion for Partial Summary Judgment Plaintiffs move for summary judgment on Defendant's Eighth, Ninth, and Twelfth Affirmative Defenses of private right of action, due process, and preemption respectively.  The Court

34 - OPINION AND ORDER

issued an Order on December 22, 2015, in which it denied as premature Plaintiffs' Motion as to Defendant's Ninth Affirmative Defense related to due process.

## I.    Private Right of Action - Defendant's Eighth Affirmative Defense.

In their Complaint Plaintiffs assert claims for "[f]ailure to pay for rest periods."  Specifically, Plaintiffs allege in pertinent part:

> Oregon and federal law require employers to pay for breaks of fewer than 30 minutes.  Breaks of fewer than 30 minutes are considered "rest periods" . . . [and] are counted as part of hours worked.  A bona fide "meal period" is an uninterrupted period of 30 minutes or more. . . . Bona fide meal periods are not counted as part of hours worked.
>
> JACK IN THE BOX's standard meal periods are supposed to be at least 30 minutes long.  But they specifically train their managers that . . . if the managers need employees to come back early from breaks to help out during a rush period, they should do so.  Indeed, Plaintiffs and the other employees were required to sign On-Duty Meal Policy agreements when their employment began.  In each of those agreements, JACK IN THE BOX promised the employee that if their work prevented them from receiving a full meal period, they would be paid for all of that time.  But JACK IN THE BOX didn't honor those agreements, or the law.  JACK IN THE BOX decided that the line between paid and unpaid breaks should be at 20 minutes (not 30 minutes as required by Oregon and federal law and the agreements that every employee signed).  JACK IN THE BOX therefore programmed its computers not to pay employees for any break longer than 20 minutes.

Compl. at ¶¶ 30-31.

Defendant asserts in its Eighth Affirmative Defense that

35 - OPINION AND ORDER

"[t]here is no private cause of action for Plaintiffs' meal
period claims brought under Oregon state law."  Specifically,
Defendant asserts Plaintiffs do not have any "Pre-July 2010 legal
right to payment for meal breaks shorter than 30 minutes absent
an independent right to compensation."  Defendant relies on *Gafur
v. Legacy Good Samaritan Hospital*, 213 Or. App. 343 (2007), *aff'd
in part, rev'd in part* 344 Or. 525 (2008), and *Rogers v. RGIS,
LLP*, 232 Or. App. 433, 434 (2009), to support its position.

    Magistrate Judge Stewart addressed the same issue and the
parties' same arguments in *Gessele I,* and, as noted, her Findings
and Recommendation (#158) was adopted by Judge Haggerty (#173).
Although the Findings and Recommendation and the Order adopting
it were ultimately nullified by the Court's decision that it
lacked jurisdiction, the analysis of Judges Stewart and Haggerty
on this issue was thorough and well-supported.  Moreover, there
was not anything in this Court's jurisdictional analysis or
conclusion nor in any Ninth Circuit decision in the time between
the Findings and Recommendation, adopting Order, and this Court's
review that affects that analysis.  The Court, moreover, finds
persuasive and adopts in their entirety the following summary of
the analyses of Judges Stewart and Haggerty:

    Judge Haggerty explained in his Order in *Gessele I:*

        To keep track of its employees' work and break
        time, defendant used two timekeeping methods
        during plaintiffs' employment:  (1) Kronos; and
        (2) Jack's Timekeeping.  Kronos only allows the

36 – OPINION AND ORDER

employee to punch in or punch out.  If the time
between punches was twenty minutes or less, the
period was deemed a "rest break" and was paid.  If
the break time between punches was over twenty
minutes, then that time period was considered an
unpaid meal break.  Under the Jack's Timekeeping
method, the employee must designate the purpose of
his or her punch, *e.g.* to begin a shift, start a
break, end a break, start a meal, end a meal, etc.
If the employee punches "Start Break," the first
twenty minutes of the break are paid, but any
additional time is unpaid.  If the employee
punches "Start Meal," the entire time between that
punch and the "End Meal" punch would be unpaid.
Unlike Kronos, the Jack's Timekeeping system also
prevents early clock-ins from a break or meal by
requiring a manager to authorize the early punch.

The parties agree that any break under twenty
minutes was properly paid, and any break over
thirty minutes was not required to be paid.
[Thus, the] break periods at issue in this case
concern breaks lasting longer than twenty minutes
but less than thirty minutes.  Plaintiffs allege
that defendant trains its managers to bring
employees back from their breaks when the
restaurant is busy.  Plaintiffs contend that these
"interrupted breaks" should be paid in accordance
with [Oregon law].

*Gessele I*, Order (#173) at 5-6.

Magistrate Judge Stewart noted in *Gessele I*:

Oregon employees have always had a private right
of action to recover for time worked for which
they were not paid.  O.R.S. § 653.055.  The
legislature explicitly authorized BOLI to regulate
meal and rest breaks, ORS 653.261, and pursuant to
this authority, OAR 839-020-0050, mandates meal
and rest breaks.  *See Gafur v. Legacy Good
Samaritan Hosp. & Med. Ctr.*, 213 Or. App. 343,
346-47, 161 P.3d 319, 320-21 (2007), *aff'd in
part, rev'd in part*, 344 Or. 525, 185 P.3d 446
(2008).  OAR 839-020-0050 has gone through several
revisions since it was first enacted.  Jack in the
Box argues that not until the current version of
the regulation was enacted on July 1, 2010, after

37 - OPINION AND ORDER

> the *Gafur* decisions, did employees obtain a
> private right of action for meal and rest break
> violations.   The parties dispute whether the *Gafur*
> holdings bar plaintiffs' meal break claims.

Findings and Recommendation (#158) at 65.

Here the parties again dispute whether the decision in
*Garfur* bars Plaintiffs' claims for less than 30-minute meal
breaks.   The plaintiffs in *Gafur* were hospital employees who were
not provided meal and rest breaks during work periods.   The
plaintiffs brought a putative class action in Oregon state court
asserting claims for violation of Oregon Revised Statute
§ 653.261 and Oregon Administrative Rule 839-020-0050 related to,
among other things, the defendants' failure to pay employees for
meal and rest breaks.   The trial court dismissed the plaintiffs'
claims regarding meal and rest breaks on the ground that the
statutes on which the plaintiffs based their claims did not
confer a private right of action.   213 Or. App. at 348.   The
Oregon Court of Appeals affirmed in part and reversed in part and
concluded the plaintiffs did not have a private right of action
for unpaid meal breaks, but they did have a private right of
action for unpaid rest breaks.   *Id*.   The court concluded "OAR-
839-020-0050(1)(a) requires meal breaks but not *paid* meal
breaks." *Id*. (emphasis in original).   The defendant sought
review of the Oregon Court of Appeals conclusion regarding unpaid
rest breaks.   *Gafur*, 344 Or. at 528 n.3.   The Oregon Supreme
Court ultimately concluded

38 - OPINION AND ORDER

> OAR 839-020-0050(1)(b) requires employers to
> provide minimum rest breaks but violation of that
> requirement does not give rise to a wage claim
> under O.R.S. § 653.055 for additional wages based
> on missed rest breaks. Accordingly, plaintiffs'
> allegations that defendants failed to provide them
> with rest breaks and failed to pay them 'for those
> breaks not provided' would not, if true, establish
> that plaintiffs were paid "less than the wages to
> which [they were] entitled under . . . ORS
> 653.261."

*Id.* at 538.

In 2009 the Oregon Court of Appeals concluded the *Gafur* decisions established only "that there is no private right of action by an employee for either *unprovided* rest breaks or *unprovided* meal breaks." *Rogers*, 232 Or. App. at 434 (emphasis added). The court, however, explicitly noted *Gafur* did not establish there was "no private right of action by an employee for *provided* but *unpaid* rest breaks or *unpaid* meal breaks." *Id.* (quotation and citation omitted)(emphasis in original). *See also Wren v. RGIS Inventory Specialists*, No. Civ. 06-5778-JCS, 2009 WL 2612307, at *17 n.11 (N.D. Cal. Aug. 24, 2009)("The Court agrees that under Oregon wage and hour statutes, there is no private right of action for missed meal breaks.").

As in *Gessele I,* Plaintiffs' break claims in *Gessele II* are based on Defendant's alleged failure to pay for breaks that were not *bona fide* meal breaks (because they were less than 30 minutes) rather than Defendant's failure to provide breaks at all. In *Gafur* the Oregon Court of Appeals noted the plaintiffs

39 - OPINION AND ORDER

asserted on appeal that their meal-break claims "were based on
the allegation that they were not paid for meal breaks during
which they worked."  That allegation, however, was taken from an
amended complaint that was not properly filed with the trial
court, and, therefore, it was not before the court.  The Court of
Appeals noted it was bound by the allegations in the original
complaint "that defendants did not provide them meal breaks and
did not pay them for the time that they would have spent on those
breaks."  *Gafur*, 213 Or. App. at 347-48.  Based on *Gafur* and
cases following *Gafur,* Magistrate Judge Stewart concluded in
*Gessele I* that *Gafur* does not extend to cases when, as here,
plaintiffs seek to bring claims for unpaid meal breaks.  Findings
and Recommendation (#158) at 66-67.  *See also Rother v. Lupenko*,
No. Civ. 08-161-MO, 2011 WL 1311773, at *2 (D. Or. Apr. 1, 2011)
("The defense misreads plaintiffs' claim.  The plaintiffs did not
claim they should have been given meal breaks; they claim that
the time periods labeled 'meal breaks,' which do not need to be
compensated, were actually 'rest periods,' which do need to be
compensated.  This issue is not addressed in the authority cited
by the defense.  The plaintiffs' claim is that they were not paid
for all the hours they worked because rest periods were
improperly categorized as meal breaks.  Therefore, I decline to
overturn the jury's verdict as to meal breaks."), *aff'd in part,*

*rev'd in part* 515 F. App'x 672 (9th Cir. 2013).[7]  Judge Stewart concluded even though Oregon Administrative Rule 839-020-0050 was not amended to provide explicitly a private right of action for unpaid meal breaks until July 1, 2010, it did not bar plaintiffs' unpaid break claims in *Gessele I*.  As noted, Judge Haggerty adopted Magistrate Judge Stewart's Findings and Recommendation in full, including her conclusion that Plaintiffs had a pre-July 2010 private right of action for their break claims.  Because, as noted, the Court finds the reasoning of Magistrate Judge Stewart and Judge Haggerty is well-supported, the Court adopts their reasoning and concludes there is a private cause of action under Oregon state law for Plaintiff's meal-break claims as pleaded.

On the other hand, Magistrate Judge Stewart and Judge Haggerty concluded in *Gessele I* that Plaintiffs did not establish they had a contractual right to be paid for breaks of less than 30 minutes.  Although it appears Plaintiffs continue to assert that they have a contractual right to be paid for breaks of less than 30 minutes, their claim continues to suffer from the same problems identified by Magistrate Judge Stewart in *Gessele I*:

> Plaintiffs contend that regardless of whether a
> statutory private right of action existed prior to

─────────────

[7] The Ninth Circuit specifically affirmed the trial court's "refusal to grant summary judgment to Defendants on Plaintiffs' unpaid breaks claims.  For the same reasons, the district court did not err in denying Defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) & (b) on these claims." *Rother,* 515 F. App'x at 675.

July 1, 2010, they assert a contractual right to be paid for any break fewer than 30 minutes.  In support, plaintiffs point to the On Duty Meal Policy signed by Luchau[8] on February 20, 2006, which reads as follows:

> I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time.

Egan Decl., Ex. 30.

Oregon requires that employees who have worked at least six hours are entitled to "a meal period of not less than 30 continuous minutes during which the employee is relieved of all duties."  OAR 839-020-0050(2)(a).  Thus, plaintiffs contend that 30 minutes is the "required meal period" referenced in the On Duty Meal Policy which Jack in the Box contractually agreed to pay its Oregon employees. Based on this policy, plaintiffs argue that they have a breach of contract claim, rendering a private right of action under the regulation irrelevant.

However, plaintiffs overlook the fact that they have not pled a breach of contract claim.  In addition, the On Duty Meal Policy appears in a single employee's employment file.  Plaintiffs have provided no evidence as to whether this policy rises to the level of a company-wide contractual obligation. *Wren v. RGIS Inventory Specialists*, No. Civ. 06-5778-JCS, 2009 WL 2612307, at *18 (N.D. Cal. Aug. 24, 2009) (discussing whether, under Oregon law, a policy included in an employee handbook can give rise to a contractual obligation to provide meal breaks in accordance with the company's written policy). Consequently, based on the current record, plaintiffs may not recover damages related to meal breaks based on a breach of contract theory.

---

[8] As noted, in *Gessele I* Christina Maudlin proceeded as Christina Luchau.

42 - OPINION AND ORDER

Findings and Recommendation (#158) at 64-65.

In his Order adopting the Findings and Recommendation Judge Haggerty noted Plaintiffs produced with their Objections to the Findings and Recommendation nine "On Duty Meal Policy agreements" covering all named Plaintiffs, but Judge Haggerty concluded the additional evidence did not alter the fact that Plaintiffs failed to plead a breach-of-contract claim.  Judge Haggerty noted Plaintiffs' only reference to the On Duty Meal Policy in their Second Amended Complaint was contained in the statement of common facts in which they alleged Defendant "promised the employee that if their work prevented them from receiving a full meal period, they would be paid for all of that time.  But JACK IN THE BOX didn't honor those agreements, or the law."  Plaintiffs' seven claims for relief, however, did not include any contractual theory of recovery under the FLSA or Oregon law.  Order (#173) at 9.

Plaintiffs' Complaint in *Gessele II* suffers the same problem.  As noted, Plaintiffs plead in their statement of common facts section that

> Plaintiffs and the other employees were required to sign On-Duty Meal Policy agreements when their employment began.  In each of those agreements, JACK IN THE BOX promised the employee that if their work prevented them from receiving a full meal period, they would be paid for all of that time.  But JACK IN THE BOX didn't honor those agreements.

Compl. at ¶ 31.  Plaintiffs' claims for relief, however, do not

43 - OPINION AND ORDER

include any contractual theory of recovery.

In summary, the Court concludes on this record that Plaintiffs have not established any contractual right to compensation for meal breaks under 30 minutes. Nevertheless, as noted, Plaintiffs have established they had a pre-July 2010 private right of action for their break claims under Oregon statutes and administrative rules.

Accordingly, the Court grants Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Eighth Affirmative Defense and dismisses that Defense.

## II. Preemption of Plaintiffs' Common-Law Claims Seven and Eight - Defendant's Twelfth Affirmative Defense.

In its Twelfth Affirmative Defense Defendant asserts Plaintiffs' Seventh and Eighth common-law claims are "duplicative of the . . . deduction claims they made under Oregon's statutory scheme of employment laws, and are thus preempted." At oral argument, however, Defendant advised the Court that it intended to assert Plaintiffs' Seventh and Eighth common-law claims are also duplicative of their FLSA claims, and, therefore, the FLSA also preempts Plaintiffs' Seventh and Eighth common-law claims. Plaintiffs move for summary judgment on Defendant's Twelfth Affirmative Defense and seek a ruling that their Seventh and Eighth claims are not preempted.

In their Seventh Claim Plaintiffs allege Defendant breached its fiduciary duty of loyalty to Plaintiffs and the class members

44 - OPINION AND ORDER

when they "secur[ed] a kickback, bribe or commission from the
vendor" on the slip-resistant shoes that Defendant required
Plaintiffs and class members to purchase.  Compl. at ¶ 68.
Specifically, Plaintiffs allege

> [Defendant] required Plaintiffs and the Class
> members to purchase a specific quality of slip-
> resistant shoes from its list of approved
> manufacturers.  Plaintiffs and the Class members
> ordered those shoes through their managers, and
> [Defendant] paid the vendor for the shoes.
> [Defendant] then deducted what it said was its
> cost for those shoes from Plaintiffs' and the
> Class members' paychecks.  Throughout this
> process, [Defendant] was acting as Plaintiffs' and
> the Class members' purchasing agent.  As their
> purchasing agent, [Defendant] owed them a
> fiduciary duty of loyalty.

Compl. at ¶ 67.

In their Eighth Claim Plaintiffs allege "equitable and
quasi-contractrual claims for return of money:  rescission,
restitution, unjust enrichment and money had and received."
Specifically, Plaintiffs allege

> [Defendant] unlawfully took possession of money
> belonging to Plaintiffs and the Class members.
> Plaintiffs and the Class members received nothing
> in return for the kickback/commercial bribe
> portion of the money, and overvalued shoes in
> return for the remainder, both of which were
> obtained only under duress of losing their jobs.
>
> [Defendant] has failed to refund the money and has
> been unjustly enriched thereby, and equity and
> good conscience demand that the Plaintiffs' and
> the Class members' money be returned.

Compl. at ¶¶ 71-72.

Plaintiffs state in their Motion for Partial Summary

45 - OPINION AND ORDER

Judgment that they are not seeking duplicate damages with these claims.

> If a shoe deduction dropped an employee below the minimum wage, or resulted in unpaid overtime, then the statutory damages would control.  The common law claims are pled for those employees and deductions that do not fall under one or the other of the alleged statutory violations. . . .  In the event that it is successful in evading statutory liability, [Defendant] will face common-law liability.

Pls.' Mot. (#33) at 14.  Plaintiffs also assert their common-law claims "address different legal injuries than the statutory claims, and they have different elements and, in most instances, different damages."

## A.  FLSA Preemption

As noted, Plaintiffs assert the FLSA does not preempt Plaintiffs' claims for rescission, restitution, unjust enrichment, and money had and received because those claims seek relief for violations that are not enumerated in the FLSA. Plaintiffs rely on the FLSA savings clause and the Ninth Circuit's decision in *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1150 (9th Cir. 2000), to support their assertion.

In *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057 (N.D. Cal. 2009), the District Court for the Northern District of California did a thorough analysis of FLSA preemption, the FLSA savings clause, and *Williamson*.  In *Helm* the plaintiffs brought a putative class action against defendants and alleged claims for

violation of the FLSA and state common law related to unpaid

wages.  The defendants asserted the plaintiffs' common-law claims

for unjust enrichment, conversion, fraud, misrepresentation,

breach of contract, breach of the implied covenant of good faith

and fair dealing, and *quantum meruit* were preempted by the FLSA.

The court concluded

> plaintiffs' claims for unpaid overtime are
> directly covered by the FLSA.  While the FLSA's
> savings clause allows states and municipalities to
> enact wage and hour legislation that is more
> favorable to workers than the FLSA, the federal
> statute preempts common law claims that seek
> remedies for rights protected by the FLSA (such as
> minimum wage and overtime pay).

*Id*. at 1076.  The court granted the defendants' motion to dismiss

with prejudice the plaintiffs' common-law claims that were

duplicative of the FLSA, dismissed without prejudice the

plaintiffs' common-law claims that were "not based on rights

granted by the FLSA," and granted the plaintiffs leave to amend

those claims to "provide some factual basis for their allegation

that they are owed wages beyond unpaid overtime."  *Id*.  In

reaching that conclusion the court explained:

> The Ninth Circuit instructs that there are three
> types of preemption:
>
> > (1) *express preemption* — where Congress
> > explicitly defines the extent to which its
> > enactments preempt state law; (2) *field
> > preemption* — where state law attempts to
> > regulate conduct in a field that Congress
> > intended the federal law exclusively to
> > occupy; and (3) *conflict preemption* — where
> > it is impossible to comply with both state

>and federal requirements, or where state law
>stands as an obstacle to the accomplishment
>and execution of the full purposes and
>objectives of Congress.

*Id.* (quoting *Williamson*, 208 F.3d at 1149).  The court noted
neither express nor field preemption were relevant to the
plaintiffs' claims under Ninth Circuit law.  The court noted at
issue in *Helm* was the second type of conflict preemption:
"whether plaintiffs' common law claims stand as an obstacle to
the purposes of Congress, as evidenced in the FLSA."  *Id*.  The
plaintiffs in *Helm* asserted their common-law claims did not
conflict with the FLSA because they sought relief for violations
that are not provided by the FLSA.  Specifically, the plaintiffs
alleged they sought "relief for defendants' failure to compensate
plaintiffs for all hours worked[,] regardless of whether
plaintiffs were . . . paid the minimum wage and regardless of
whether plaintiffs worked overtime."  *Helm*, 696 F. Supp. 2d at
1075.  The court "agree[d] with plaintiffs that state laws do not
stand as an obstacle to the enforcement of the FLSA [when] the
state laws regulate conduct outside the ambit of the federal
statute" and concluded the plaintiffs' "common law claims are
therefore not preempted if plaintiffs seek to hold defendants
liable for conduct that is not covered by the FLSA."  *Id*.  The
court, however, also noted "plaintiffs' characterization of their
complaint is not entirely accurate. . . .  [P]laintiffs' common
law claims are at least partially duplicative of claims for

48 - OPINION AND ORDER

unpaid overtime that could be brought under the FLSA." *Id*.  The
plaintiffs asserted "even common law claims that are duplicative
of the FLSA are not preempted," but the court rejected that
assertion.

> The Ninth Circuit rejected this argument in
> *Williamson*.  "Claims that are directly covered by
> the FLSA (such as overtime and retaliation
> disputes) must be brought under the FLSA."
> *Williamson*, 208 F.3d at 1154.  *Accord Anderson v.*
> *Sara Lee Corp.*, 508 F.3d 181, 194–95 (4th Cir.
> 2007)(collecting district court cases "deeming
> state claims to be preempted by the FLSA where
> those claims have merely duplicated FLSA
> claims.").
>
> * * *
>
> [I]n *Williamson*, the Ninth Circuit found that the
> state law at issue was not covered by the FLSA; it
> was not a duplicative claim and thus was not
> preempted.  *Id.* at 1153.  Because the underlying
> claim in *Williamson* did not involve "[c]laims that
> are directly covered by the FLSA (such as overtime
> and retaliation disputes) [which] must be brought
> under the FLSA," they were not preempted.

*Id.* at 1076.  Thus, to the extent that the plaintiffs' claims
were duplicative of claims directly covered by the FLSA, the
court found those claims to be preempted.

The Court finds the reasoning of *Helm* to be persuasive,
and to the extent that Plaintiffs' Seventh and Eighth Claims are
duplicative of claims covered by the FLSA (*i.e.*, claims for
overtime, minimum wages, etc.), the Court concludes those claims
are preempted by the FLSA.

**B.    Oregon Statutory Preemption**

Defendant also contends Plaintiffs' Seventh and Eighth Claims are preempted by Oregon's wage-and-hour laws.  Plaintiffs assert these claims are not preempted and rely on *Palmer v. Bi-Mart Company*, 92 Or. App. 470 (1988), to support their assertion.

In *Palmer* the Oregon Court of Appeals held Oregon Revised Statute § 659 did not preempt the plaintiff's claim for intentional infliction of emotional distress because "common law tort claim[s] [are] not precluded simply because defendant's conduct might also have violated a statute designed to protect against employment discrimination." *Id*. at 477 (citations omitted).  Plaintiffs also rely on *Carsner v. Freightline Corporation*, 69 Or. App. 666 (1984).  In *Carsner* the plaintiff was terminated after complaining about the defendant's job-safety practices.  The plaintiff brought an action alleging claims for violation of Oregon's whistleblower statute, Oregon Revised Statute § 654.062, and intentional infliction of emotional distress.  The Oregon Court of Appeals held

> *Walsh* and *Gilbertson* stand for the proposition that a legislative remedy can supplant or limit common law remedies for a particular injury which the legislation addresses; they do not suggest that conduct that causes that injury cannot simultaneously cause a second injury that is outside the ambit of the statutory protection or that there can be no redress for the second injury because the statute provides an exclusive remedy for the first time. . . .  We perceive no reason why the emotional distress that plaintiff claims he suffered as a result of defendant's alleged

> outrageous conduct should not be redressable
> simply because defendant's conduct may also have
> violated a statute designed to protect against a
> different evil.

*Id.* at 674. *Palmer* and *Carsner,* therefore, make clear that a

plaintiff may assert common-law claims together with statutory

claims as long as the common-law claims involve a second or

different injury or protect against "a different evil."

At oral argument Plaintiffs explained their Seventh and

Eighth Claims involve a different injury than their FLSA and

Oregon statutory claims because

> [t]here were lots of people that had shoe
> deductions in non-overtime weeks.  There were
> people that had shoe deductions in weeks that did
> not drop them below the federal minimum wage.  If
> neither of those two things are true, then the
> FLSA [and Oregon wage-and-hour statutes] do[] not
> apply by its very terms.  It only applies to
> violations of the overtime and federal minimum
> wage.  These [Claims] are saying that defendants
> obtained the shoe money by telling the plaintiffs
> that the money that they were collecting from
> their paychecks was being paid to the shoe
> company, and that's not true.  They got a $2
> kickback.  That element of falsehood or of
> misleading or of not passing on money to the
> ultimate wholesaler that the company took from the
> plaintiffs is not contained anywhere in the FLSA
> [or Oregon wage-and-hour statutes].

Feb. 16, 2016, Hearing Tr. at 16.  As with the Court's analysis

as to the preemption of Plaintiffs' Seventh and Eighth Claims by

the FLSA, to the extent that Plaintiff's Seventh and Eighth

Claims involve conduct by Defendant that is prohibited by

Oregon's wage-and-hour laws (such as the failure to pay overtime,

51 - OPINION AND ORDER

the failure to pay minimum wages, the failure to pay all wages when due, and/or wrongful deductions in violation of § 652.610(3)), the Court concludes Oregon's wage-and-hour statutes preempt those claims.  To the extent that those claims do not involve such conduct, the Court concludes Oregon's wage-and-hour statutes do not preempt them.

Accordingly, the Court grants in part and denies in part Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Twelfth Affirmative Defense of preemption.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (#27) for Partial Summary Judgment[9] and **DENIES** Plaintiffs' Motion (#32) for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling.

The Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion (#33) for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses as follows:

1.    **GRANTS** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Eighth Affirmative Defense and

_____

[9] As noted, the Court denied as premature portions of Defendant's Motion (#27) for Partial Summary Judgment on December 22, 2015 (#62).

52 - OPINION AND ORDER

**DISMISSES** that Defense **with prejudice**;

2. **GRANTS in part** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Twelfth Affirmative Defense as to those portions of Plaintiffs' Seventh and Eighth Claims that are preempted by the FLSA or Oregon's wage-and-hour laws as set out herein; and

3. **DENIES in part** Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Twelfth Affirmative Defense as to those portions of Plaintiff's Seventh and Eighth Claims that are not preempted by the FLSA or Oregon's wage-and-hour laws as set out herein.

IT IS SO ORDERED.

DATED this 10th day of March, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge