**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
**Jon M. Egan, PC**
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JESSICA GESSELE, ASHLEY ORTIZ, NICOLE GESSELE, TRICIA TETRAULT,** and **CHRISTINA MAULDIN,** both on behalf of themselves individually and, in addition, on behalf of the other similarly situated employees,<br><br>               Plaintiffs,<br>  vs.<br><br>**JACK IN THE BOX INC.**,<br><br>               Defendant. | Case No. 3:14-cv-01092-BR<br><br>Declaration of Jon M. Egan in support of plaintiffs' motion to certify Rule 23(b)(3) Classes |

I, Jon M. Egan, hereby declare and say:

1. I am the attorney for Plaintiffs in the above-captioned case. All statements herein are made of my own personal knowledge, and I am competent to testify thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of the relevant excerpts from Jack in the Box's responses to Plaintiffs' Requests for Admission.

**Dec. of Jon M. Egan in Support of Plaintiffs' Motion to Certify**    Page 1

## Workers' Benefit Fund

3. Attached hereto as Exhibit 2 is a true and correct copy of the relevant excerpts from the February 14, 2012 deposition of Paul Barnard, former Senior Payroll Analyst for Jack in the Box.

4. Attached hereto as Exhibit 3 is a true and correct copy of the relevant excerpts from the February 9, 2012 deposition of Sylvia DeChandt, former Director of Payroll Services for Jack in the Box.

5. Attached hereto as Exhibit 4 is a true and correct copy of the relevant excerpts from the February 10, 2012 and February 16, 2012 deposition sessions of Barbara Klusek, then-current Payroll Manager at Jack in the Box and 30(b)(6) designee.

6. Attached hereto as Exhibit 5 is a true and correct copy of the relevant excerpts from the February 8, 2012 and February 16, 2012 deposition sessions of Wendy Sanderlin, then-current Director of Payroll and Accounting Systems at Jack in the Box and 30(b)(6) designee.

7. Attached hereto as Exhibit 6 is a true and correct copy of Bates page JITB 104123, a letter dated February 8, 2012 and received by me from the Oregon Department of Consumer and Business Services in response to inquiries regarding Jack in the Box's Workers' Benefit Fund payment history and the notice process that DCBS undergoes to inform the public and employment tax payers of each year's new rates.

8. Attached hereto as Exhibit 7 is a true and correct copy of Bates pages JITB 104124–JITB 104125, a sample annual notice that DCBS sends out containing the following year's Workers' Benefit Fund assessment rate. This document was obtained from Jack in the Box in discovery.

9. Attached hereto as Exhibit 8 is a true and correct copy of an authenticating subpoena from BSI's custodian of records, as well as excerpts from the documents produced by BSI, showing the notices that were sent to Jack in the Box of the new Workers' Benefit Fund rates.

10. Attached hereto as Exhibit 9 is a true and correct copy of Bates page JITB 127004, a sample from the redacted spreadsheets produced by Jack in the Box covering Oregon employees. Exhibit 9 has two pay periods highlighted, each with a box drawn around it. In the first box, we see both a shoe deduction ("SFC") and a wrongful Workers' Benefit Fund overdeduction ("WC-OR") in a week in which the employee worked overtime. In the second box, we see both a shoe deduction and a wrongful Workers' Benefit Fund overdeduction in a week in which (even using Jack in the Box's own hours worked total, without accounting for any unpaid breaks) the employee made less than minimum wage due to the deductions.

## Shoes

11. Attached hereto as Exhibit 10 is a true and correct copy of the relevant excerpts from the January 30, 2012 deposition of Donna Basham, a then-current District Manager with Northwest Group (a Jack in the Box franchisee that owns multiple restaurants in Oregon), who was previously a corporate employee of Jack in the Box at various times in the positions of Assistant Manager, Restaurant Manager, Associate Area Coach and Area Coach.

12. Attached hereto as Exhibit 11 is a true and correct copy of the relevant excerpts from the February 6, 2012 deposition of Gene James, then-current Director of

Asset Protection for Jack in the Box and 30(b)(6) designee.

13. Attached hereto as Exhibit 12 is a true and correct copy of the relevant excerpts from the February 8, 2012 deposition of Shelly Mosteller, then-current Merchandising Manager for Jack in the Box and 30(b)(6) designee.

14. Attached hereto as Exhibit 13 is a true and correct copy of the relevant excerpts from the February 7, 2012 deposition of Susan Pettijohn, then-current HR Project Manager for Jack in the Box and 30(b)(6) designee.

15. Attached hereto as Exhibit 14 is a true and correct copy of the relevant excerpts from the February 10, 2012 deposition of Leanne Tellez, then-current Payroll Representative 2 at Jack in the Box and 30(b)(6) designee.

16. Attached hereto as Exhibit 15 is a true and correct copy of the relevant excerpts from the January 31, 2012 deposition of Jeffrey Tennant, then-current Area Coach for Jack in the Box and 30(b)(6) designee.

17. Attached hereto as Exhibit 16 is a true and correct copy of Bates page JITB 100218, the shoe policy that preceded Jack in the Box's 2002 Safety Symposium.

18. Attached hereto as Exhibit 17 is a true and correct copy of Bates page JITB 100257, Jack in the Box's HACCP food safety inspection form that incorporates the Uniform, Appearance and Grooming standards.

19. Attached hereto as Exhibit 18 is a true and correct copy of Bates pages JITB 101789 and JITB 103402, which deal with the incorporation of the slip-resistant shoe requirement into the restaurant's QFC food safety inspection. The difficult-to-read line reads "SLIP-RESISTANT FOOTWEAR WORN (6 points)".

20. Attached hereto as Exhibit 19 is a true and correct copy of Bates pages JITB 101811 and 101815, the Managing Safety course for Managers describing a

fictional accident by an employee and asking the management trainee whether he was wearing Shoes for Crews.

21. Attached hereto as Exhibit 20 is a true and correct copy of the Restaurant Manager's Incident Report of Employee Injury, Bates page JITB 101924, the standard injury report for managers to fill out after any injury, which specifically asks whether the injured person was wearing Shoes for Crews.

22. Attached hereto as Exhibit 21 is a true and correct copy of Bates pages JITB 102668 and JITB 102672, excerpts from the Food Safety Computer-Based Training module, which instructs employees to check their uniforms in the mirror as part of food safety.

23. Attached hereto as Exhibit 22 is a true and correct copy of Bates pages JITB 102731–JITB 102733 and JITB 102743–JITB 102745, Safety and Security video scripts from 2005 and 2009, wherein the voiceover says "approved shoes" and the picture on the screen is of Shoes for Crews.

24. Attached hereto as Exhibit 23 is a true and correct copy of Bates pages JITB 102837, JITB 102937 and JITB 102989, the sections of Jack in the Box's Crew On-Boarding CBT scripts from 2004, 2005 and 2011. Each of these scripts tells the employee, "You're responsible for providing your own shoes. You must wear company-approved, slip-resistant footwear." It does NOT tell them that they have the option of wearing company-provided slip-on shoe guards instead of buying their own shoes.

25. Attached hereto as Exhibit 24 is a true and correct copy of Bates pages JITB 103413–JITB 103414, excerpts from the 2002 Safety Program presentation. They show the advantages and disadvantages of Shoes for Crews and the main

competitor they were considering as an alternative shoe provider. A disadvantage of the competitor was that it does not provide a $2 "rebate," and listed directly under that disadvantage was the fact that its shoes are on average $2 per pair cheaper than Shoes for Crews. The advantages of Shoes for Crews were that it offers the medical payment indemnity program and the $2 rebate.

26. Attached hereto as Exhibit 25 is a true and correct copy of the authenticating Declaration from Shoes for Crews's records custodian (stating that there is no written contract or agreement containing the $2-per-pair "rebate" terms), as well as the accompanying documents laying out the terms of the indemnity agreement (only shoes purchased through payroll deduction qualify; the slip-on shoe guards are excluded) and breaking down the over $1,000,000 in "rebates" paid to Jack in the Box since 2003.

27. Attached hereto as Exhibit 26 is a true and correct copy of the relevant excerpts from the February 7, 2012 deposition of Susan Burtchett, then-current Manager of Restaurant Systems for Jack in the Box and 30(b)(6) designee.

28. Attached hereto as Exhibit 27 is a true and correct copy of the relevant excerpts from the February 13, 2012 deposition of Dianne Evans, then-current Senior Business Systems Analyst and 30(b)(6) designee.

29. Attached hereto as Exhibit 28 is a true and correct copy of the relevant excerpts from the February 6, 2012 deposition of Shelly Rohlfs, then-current People and Organizational Effectiveness Manager for Jack in the Box and 30(b)(6) designee.

### Franchise Transfer

30. Attached hereto as Exhibit 29 is a true and correct copy of the December 6, 2013 Declaration of then-Jack in the Box in-house counsel James Stubblefield, Dkt.

243 in the *Gessele I* case, 3:10-cv-0961-BR, laying out the dates that the various groups of Oregon stores were transferred to franchisee operation.

## Unpaid Breaks

31. Attached hereto as Exhibit 30 is a true and correct copy of sample On-Duty Meal Policy agreements agreed to by Plaintiffs.

32. Attached hereto as Exhibit 31 is a true and correct copy of Bates page JITB 102524–JITB 102525, an activity from the Timekeeping section of the Labor Management portion of the Assistant Manager Training Program Workbook, which asks the trainee, "What is the policy for punching in/out for breaks," and JITB 102631, the suggested answer, "Employees must clock out and in for meal breaks if they are totally relived [sic] of duty during the meal break. If meal breaks are interrupted by calls to duty, then entire meal break must be counted as hours worked."

33. Attached hereto as Exhibit 32 is a true and correct copy of excerpts from Jack in the Box's payroll department manual produced in discovery, identifying "Franchised" as one of the reasons for termination of an employee, and also that "meal breaks are 24 min. or greater in the state WA and 20 min. or greater in all other states. All other breaks are rest breaks which are paid."

34. Attached hereto as Exhibit 33 is a true and correct copy of Bates page 129043, the sections of the Kronos Timekeeping CBT scripts that reads, "Employees must clock out and in for meal breaks if they are totally relieved of duty during the meal break. If meal breaks are interrupted by calls to duty, the entire meal break must be counted as hours worked."

35. Attached hereto as Exhibit 34 are true and correct copies of various versions of

Jack in the Box's CBT requirements for different levels of employees, showing that employees and managers are required to learn Jack in the Box's timekeeping policies. Pages 2–7 were marked "Confidential" by Jack in the Box, but they are taken from publicly available Franchise Disclosure Documents (FDDs) and therefore not covered by the Stipulated Protective Order on file [Dkt. 43 at ¶ 9(a)].

36. Attached hereto as Exhibit 35 is a true and correct copy of excerpts from Jack in the Box's Franchise Disclosure Document and attached exhibits, showing that each store is required to use Jack in the Box's timekeeping software. Like the FDD excerpts in Exhibit 34, the pages of Exhibit 35 were marked "Confidential" by Jack in the Box, but they are taken from publicly available Franchise Disclosure Documents (FDDs) and therefore not covered by the Stipulated Protective Order on file [Dkt. 43 at ¶ 9(a)].

37. Attached hereto as Exhibit 36 is a true and correct copy of an image captured from Jack in the Box's electronic CBT program, electronic file name UpdatingTimecards_UpdateTimecardDemo3.swf, showing a sample image from the Kronos back-office screen.

38. Attached hereto as Exhibit 37 is a true and correct copy of a page produced by Jack in the Box in discovery, showing the time punches and pay information for plaintiff Tricia Tetrault (f/k/a Tricia Cortes Cruz) for the pay period ending October 15, 2006.

39. Attached hereto as Exhibit 38 is a true and correct copy of Bates Page JITB 103204, Jack in the Box's timekeeping policy poster regarding clock-ins and clock-outs under the Kronos timekeeping system.

40. Attached hereto as Exhibit 39 is a true and correct copy of excerpts from Jack in the box's deposition of plaintiff Christina Mauldin (f/k/a Christina Luchau).

41. Attached hereto as Exhibit 40 is a true and correct copy of an excerpt from Jack in the Box's Jack's Timekeeping Manager Training Participant's Guide, showing their responsibility to daily review the employees' time punches for long breaks and short meal periods.

42. Attached hereto as Exhibit 41 is a true and correct copy of an excerpt from Jack in the Box's CBT class, regarding the manager override requirement to clock back in early from meal periods in the new Jack's Timekeeping system.

43. Attached hereto as Exhibit 42 is a true and correct copy of the quiz from the Jack's Timekeeping CBT regarding the override requirement for employees to clock back in early from meal periods.

44. Attached hereto as Exhibit 43 is a true and correct copy of excerpts from Jack in the Box's discovery production laying out the descriptions of the time codes in the new Jack's Timekeeping system; the graphic on page 3 is a true and correct screen print from the Jack'sTimekeepingOverview_Terminology.swf CBT file.

45. Attached hereto as Exhibit 44 is a true and correct PDF copy of an excerpt from a Jack in the Box internal training PowerPoint presentation regarding the new Jack's Timekeeping system, showing how managers access the Jack's Timekeeping software.

46. Attached hereto as Exhibit 45 is a true and correct PDF copy of another excerpt from a Jack in the Box internal training PowerPoint presentation regarding the new Jack's Timekeeping system, showing how managers access the Jack's Timekeeping software.

47. Attached hereto as Exhibit 46 is a true and correct PDF copy of an excerpt from another Jack in the Box internal training PowerPoint presentation regarding the new Jack's Timekeeping system, produced in discovery as electronic file "Jack's Timekeeping -Payroll Guide.pptx".

48. Attached hereto as Exhibit 47 is a true and correct PDF copy of the electronic spreadsheet produced by Jack in the Box in discovery, file name "20101217 Pay rule summary with calc group explanations.xlsx", which explains the break and meal calculation rules for the different Calc Groups, as well as which employees each Calc Group represents.

49. Attached hereto as Exhibit 48 is a true and correct copy of excerpts from Jack in the Box training materials, which shows the time code breakdown for a 35-minute rest period, and contains a 9-minute meal period for the training managers to practice entering (Bates Pages JITB 109592 and JITB 109611).

50. The indications on pages 28–29 of the Memorandum of how many employees were paid late on the transfer dates for franchised stores are summaries created by my office, summarizing voluminous records produced by Jack in the Box in discovery; they incorporate transfer dates from Mr. Stubblefield's Declaration (Exhibit 29 hereto), the identification of which stores were transferred on which dates produced by Jack in the Box in discovery as JITB2 000779, as well as the thousands of pages of redacted payroll spreadsheets (a sample of which is included as Exhibit 9 hereto).

51. The tables in the Memorandum showing which plaintiffs had which deductions or unpaid breaks in which pay periods were created by my office to summarize voluminous records produced by Jack in the Box in discovery. They incorporate

information from discovery produced in *Gessele I* as well as discovery produced in *Gessele II*. By definition, Jack in the Box already has all of the documents from which these summaries were prepared and can check the summaries against those original documents if it wishes.

52. Attached hereto as Exhibit 49 is the August 1, 2011 Declaration of BOLI Wage and Hour Division Administrator Christine Hammond Dec, confirming that the June 2010 changes to O.A.R. 839-020-0050 were intended to clarify, not change, BOLI's long-held interpretation that meal periods must be paid unless they are at least 30 minutes long.

**Adequacy of Representation**

53. I am the former Head Page of the United States Senate and a graduate of Yale University and the University of Texas School of Law. I am admitted in Oregon state court as well as the United States District Court for the District of Oregon and the United States Court of Appeals for the Ninth Circuit. I specialize in wage and hour collective and class action cases and have extensive experience in this area. I regularly field wage and hour questions from my colleagues in the Bar, and they refer me wage and hour cases on a regular basis. I am a member of the national Wage and Hour Clearinghouse (an invitation-only professional association open only to attorneys who exclusively practice wage-and-hour law on behalf of plaintiffs); the Low-Wage Workers Legal Network; the Employment Law Section of the Oregon Trial Lawyers Association; the Wage and Hour and Class and Collective Sections of the National Employment Lawyers Association; the Employment and Litigation Sections of the Oregon State Bar Association; and the Rule 23, Class Actions and Derivative Suits, Employment and Labor

Relations, and Employment Law Comittees of the Litigation Section of the American Bar Association. I have also spoken at events, edited pamphlets, been the subject of local and national media coverage regarding wage-and-hour cases, and provided pro bono legal advice and assistance on wage and hour issues to nonprofit organizations such as the Portland Restaurant Workers Association. While working as an associate attorney at the law firm of Bailey Pinney & Associates LLC, I was employed exclusively for wage and hour individual and collective and class action cases, including acting as one of the counsel of record in *McElmurry et al. v. US Bank N.A.*, USDC No. 3:04-cv-00642-HA. Since leaving Bailey Pinney, I have been lead counsel on the following wage and hour collective and class action cases: *Cooper v. Thomason et al.*, USDC No. 3:06-cv-01018-KI; *Nielsen v. American Home Mortgage Corp.*, USDC No. 6:06-cv-01161-AA; *Richins v. Jack Fabel et al.*, Multnomah County Case No. 0708-08879; *Jackson v. Plew et al.,* Multnomah County Case No. 0712-15516, USDC No. 3:08-cv-00099-BR (after removal); *Rother et al. v. Lupenko et al.*, USDC No. 3:08-cv-161-MO / Ninth Circuit No. 11-35922 (first appeal) / Ninth Circuit No. 14-35771 (second appeal); *Cumbie v. Woody Woo, Inc. et al.*, USDC No. 3:08-cv-504-PK, Ninth Circuit No. 08-35718; *Lopes et al. v. Bush Gardens of Oregon, Inc. et al.*, USDC No. 3:08-cv-1492-HU; *Di Giovanni et al. v. Alu, Inc. et al.*, USDC No. 3:09-cv-314-PK; *Norris et al. v. Butler Investments, Inc. et al.*, USDC No. 3:09-cv-339-AC; *Jones et al. v. Columbia Helicopters, Inc.*, USDC No. 3:09-cv-691-PK; *Perillo et al. v. Conklin et al.*, USDC No. 3:10-cv-359-ST; *Weir et al. v. Jolie et al.*, USDC No. 3:10-cv-898-HA; *Fredrickson et al. v. Starbucks Corporation*, Multnomah County No. 1212-15734 / USDC No. 3:13-cv-29-HU / Ninth Cir. No.

13-36067; *Chastain et al. v. Cam et al.*, USDC No. 3:13-cv-1802-SI; *Allison et al. v. Dolich et al.*, USDC No. 3:14-cv-01005-AC (federal case) / Multnomah County No. 14CV07294 / USDC No. 3:14-cv-1179-AC (on removal, then remanded) / NLRB Nos. 19-CA-131696 and 19-CA-132787; *Safaty v. Columbia Medical Clinic, P.C. et al.*, Multnomah County No. 14CV09397; *Wright v. Special Logistics Portland LLC et al.*, USDC no. 3:15-cv-02058-SB; *Duffard v. Vibrant Table Catering and Events, Inc.*, Multnomah County No. 16CV15430; *Rodgers v. Canby Post No. 122, The American Legion*, USDC No. 3:16-cv-02381-PK; *Brinkmann v. ABM Onsite Services – West, Inc.*, USDC No. 3:17-cv-00275-BR / Multnomah County No. 17CV06683; *Wesphal v. Ed's Mufflers Unlimited, Inc.*, USDC No. 3:17-cv-00299-YY / Multnomah County No. 17CV07802; *Astle v. Dave & Buster's Management Corporation, Inc.*, Multnomah County No. 17CV08556, as well as numerous individual wage and hour cases.

DATED this 1st day of March, 2017

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

JON M. EGAN, P.C.

*/s/ Jon M. Egan*

Jon M. Egan, OSB #002467
(503) 697-3427