**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
**Jon M. Egan, PC**
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JESSICA GESSELE, ASHLEY ORTIZ, NICOLE GESSELE, TRICIA TETRAULT,** and **CHRISTINA MAULDIN,** both on behalf of themselves individually and, in addition, on behalf of the other similarly situated employees,<br><br>                         Plaintiffs,<br>    vs.<br>**JACK IN THE BOX INC.**,<br><br>                         Defendant. | Case No. 3:14-cv-01092-BR<br><br>Declaration of Jon M. Egan in support of plaintiffs' motions for summary judgment and in opposition to defendant's motions for summary judgment |

I, Jon M. Egan, hereby declare and say:

1.     I am the attorney for Plaintiffs in the above-captioned case. All statements herein are made of my own personal knowledge, and I am competent to testify thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the relevant excerpts from Jack in the Box's responses to Plaintiffs' Requests for Admission.

## Workers' Benefit Fund

3. Attached hereto as Exhibit 2 is a true and correct copy of the relevant excerpts from the February 14, 2012 deposition of Paul Barnard, former Senior Payroll Analyst for Jack in the Box.

4. Attached hereto as Exhibit 3 is a true and correct copy of the relevant excerpts from the February 9, 2012 deposition of Sylvia DeChandt, former Director of Payroll Services for Jack in the Box.

5. Attached hereto as Exhibit 4 is a true and correct copy of the relevant excerpts from the February 10, 2012 and February 16, 2012 deposition sessions of Barbara Klusek, then-current Payroll Manager at Jack in the Box and 30(b)(6) designee.

6. Attached hereto as Exhibit 5 is a true and correct copy of the relevant excerpts from the February 8, 2012 and February 16, 2012 deposition sessions of Wendy Sanderlin, then-current Director of Payroll and Accounting Systems at Jack in the Box and 30(b)(6) designee.

7. Attached hereto as Exhibit 6 is a true and correct copy of Bates page JITB 104123, a letter dated February 8, 2012 and received by me from the Oregon Department of Consumer and Business Services in response to inquiries regarding Jack in the Box's Workers' Benefit Fund payment history and the notice process that DCBS undergoes to inform the public and employment tax payers of each year's new rates.

8. Attached hereto as Exhibit 7 is a true and correct copy of Bates pages JITB 104124–JITB 104125, a sample annual notice that DCBS sends out containing the following year's Workers' Benefit Fund assessment rate. This document was obtained from Jack in the Box in discovery.

**Dec. of Jon M. Egan in Support of cross-MSJ Briefing**                    Page 2

9. Attached hereto as Exhibit 8 is a true and correct copy of an authenticating subpoena from BSI's custodian of records, as well as excerpts from the documents produced by BSI, showing the notices that were sent to Jack in the Box of the new Workers' Benefit Fund rates.

10. Attached hereto as Exhibit 9 is a true and correct copy of Bates page JITB 127004, a sample from the redacted spreadsheets produced by Jack in the Box covering Oregon employees. Exhibit 9 has two pay periods highlighted, each with a box drawn around it. In the first box, we see both a shoe deduction ("SFC") and a wrongful Workers' Benefit Fund overdeduction ("WC-OR") in a week in which the employee worked overtime. In the second box, we see both a shoe deduction and a wrongful Workers' Benefit Fund overdeduction in a week in which (even using Jack in the Box's own hours worked total, without accounting for any unpaid breaks) the employee made less than minimum wage due to the deductions.

### Shoes

11. Attached hereto as Exhibit 10 is a true and correct copy of the relevant excerpts from the January 30, 2012 deposition of Donna Basham, a then-current District Manager with Northwest Group (a Jack in the Box franchisee that owns multiple restaurants in Oregon), who was previously a corporate employee of Jack in the Box at various times in the positions of Assistant Manager, Restaurant Manager, Associate Area Coach and Area Coach.

12. Attached hereto as Exhibit 11 is a true and correct copy of the relevant excerpts from the February 6, 2012 deposition of Gene James, then-current Director of

**Dec. of Jon M. Egan in Support of cross-MSJ Briefing**     Page 3

Asset Protection for Jack in the Box and 30(b)(6) designee.

13. Attached hereto as Exhibit 12 is a true and correct copy of the relevant excerpts from the February 8, 2012 deposition of Shelly Mosteller, then-current Merchandising Manager for Jack in the Box and 30(b)(6) designee.

14. Attached hereto as Exhibit 13 is a true and correct copy of the relevant excerpts from the February 7, 2012 deposition of Susan Pettijohn, then-current HR Project Manager for Jack in the Box and 30(b)(6) designee.

15. Attached hereto as Exhibit 14 is a true and correct copy of the relevant excerpts from the February 10, 2012 deposition of Leanne Tellez, then-current Payroll Representative 2 at Jack in the Box and 30(b)(6) designee.

16. Attached hereto as Exhibit 15 is a true and correct copy of the relevant excerpts from the January 31, 2012 deposition of Jeffrey Tennant, then-current Area Coach for Jack in the Box and 30(b)(6) designee.

17. Attached hereto as Exhibit 16 is a true and correct copy of Bates page JITB 100218, the shoe policy that preceded Jack in the Box's 2002 Safety Symposium.

18. Attached hereto as Exhibit 17 is a true and correct copy of Bates page JITB 100257, Jack in the Box's HACCP food safety inspection form that incorporates the Uniform, Appearance and Grooming standards.

19. Attached hereto as Exhibit 18 is a true and correct copy of Bates pages JITB 101789 and JITB 103402, which deal with the incorporation of the slip-resistant shoe requirement into the restaurant's QFC food safety inspection. The difficult-to-read line reads "SLIP-RESISTANT FOOTWEAR WORN (6 points)".

20. Attached hereto as Exhibit 19 is a true and correct copy of Bates pages JITB 101811 and 101815, the Managing Safety course for Managers describing a

fictional accident by an employee and asking the management trainee whether he was wearing Shoes for Crews.

21. Attached hereto as Exhibit 20 is a true and correct copy of the Restaurant Manager's Incident Report of Employee Injury, Bates page JITB 101924, the standard injury report for managers to fill out after any injury, which specifically asks whether the injured person was wearing Shoes for Crews.

22. Attached hereto as Exhibit 21 is a true and correct copy of Bates pages JITB 102668 and JITB 102672, excerpts from the Food Safety Computer-Based Training module, which instructs employees to check their uniforms in the mirror as part of food safety.

23. Attached hereto as Exhibit 22 is a true and correct copy of Bates pages JITB 102731, JITB 102733 and JITB 102743, JITB 102745, Safety and Security video scripts from 2005 and 2009, wherein the voiceover says "approved shoes" and the picture on the screen is of Shoes for Crews.

24. Attached hereto as Exhibit 23 is a true and correct copy of Bates pages JITB 102837, JITB 102937 and JITB 102989, the sections of Jack in the Box's Crew On-Boarding CBT scripts from 2004, 2005 and 2011. Each of these scripts tells the employee, "You're responsible for providing your own shoes. You must wear company-approved, slip-resistant footwear." It does NOT tell them that they have the option of wearing company-provided slip-on shoe guards instead of buying their own shoes.

25. Attached hereto as Exhibit 24 is a true and correct copy of Bates pages JITB 103413–JITB 103414, excerpts from the 2002 Safety Program presentation. They show the advantages and disadvantages of Shoes for Crews and the main

competitor they were considering as an alternative shoe provider. A disadvantage of the competitor was that it does not provide a $2 "rebate," and listed directly under that disadvantage was the fact that its shoes are on average $2 per pair cheaper than Shoes for Crews. The advantages of Shoes for Crews were that it offers the medical payment indemnity program and the $2 rebate.

26. Attached hereto as Exhibit 25 is a true and correct copy of the authenticating Declaration from Shoes for Crews's records custodian (stating that there is no written contract or agreement containing the $2-per-pair "rebate" terms), as well as the accompanying documents laying out the terms of the indemnity agreement (only shoes purchased through payroll deduction qualify; the slip-on shoe guards are excluded) and breaking down the over $1,000,000 in "rebates" paid to Jack in the Box since 2003.

27. Attached hereto as Exhibit 26 is a true and correct copy of the relevant excerpts from the February 7, 2012 deposition of Susan Burtchett, then-current Manager of Restaurant Systems for Jack in the Box and 30(b)(6) designee.

28. Attached hereto as Exhibit 27 is a true and correct copy of the relevant excerpts from the February 13, 2012 deposition of Dianne Evans, then-current Senior Business Systems Analyst and 30(b)(6) designee.

29. Attached hereto as Exhibit 28 is a true and correct copy of the relevant excerpts from the February 6, 2012 deposition of Shelly Rohlfs, then-current People and Organizational Effectiveness Manager for Jack in the Box and 30(b)(6) designee.

### Franchise Transfer

30. Attached hereto as Exhibit 29 is a true and correct copy of the December 6, 2013 Declaration of then-Jack in the Box in-house counsel James Stubblefield, Dkt.

243 in the *Gessele I* case, 3:10-cv-0961-BR, laying out the dates that the various groups of Oregon stores were transferred to franchisee operation.

31. Attached hereto as Exhibit 30 is a true and correct copy of excerpts from Jack in the Box's payroll department manual produced in discovery, identifying "Franchised" as one of the reasons for termination of an employee.

32. Attached hereto as Exhibit 31 is the report of Jack in the Box's expert, Emil Czechowski, submitted by Jack in the Box on the issue of damage calculations. On page 2 of his Report, Mr. Czechowski acknowledges that he was "retained by counsel for Defendant Jack in the Box ('JITB') in the matter of *Gessele v. Jack in the Box Inc.*, District Court of Oregon Case No. 3:14-cv-01092-BR, to review bi-weekly payroll data for JITB's Oregon employees in order to provide an estimate of potential damages and statutory penalties related to Plaintiffs' claims," "asked to assess any potential statutory penalties related to an additional claim that employees were not timely paid their final wages upon the transfer of JITB-owned locations to franchisees," and "asked to estimate prejudgment interest on Plaintiffs' unpaid wage and penalty claims."

DATED this 24th day of May, 2019

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

                                              JON M. EGAN, P.C.

                                              */s/ Jon M. Egan*
                                              _____
                                              Jon M. Egan, OSB #002467
                                              Attorney for Plaintiffs