Douglas S. Parker, OSB No. 821017
dparker@littler.com
Jennifer A. Nelson, OSB No. 034086
jnelson@littler.com
Don H. Stait, OSB No. 105134
dstait@littler.com
LITTLER MENDELSON, P.C.
121 SW Morrison, Suite 900
Portland, OR  97204
Telephone:    503.221.0309
Fax No.:       503.242.2457

Attorneys for Defendant
JACK IN THE BOX INC., a Corporation of Delaware

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JESSICA GESSELE, ASHLEY GESSELE, NICOLE GESSELE and TRICIA TETRAULT, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>JACK IN THE BOX INC., a Corporation of Delaware,<br><br>        Defendant. | CV. CV 10-960-ST<br><br>DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION |

TO:    Plaintiffs Jessica Gessele, Ashley Gessele, Nicole Gessele, Christina Luchau, and Tricia

Tetrault, and their attorney.

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, Defendant

Jack in the Box, Inc. ("Defendant") hereby submits its responses, answers, and objections to

Plaintiffs' Request for Production of Documents, as follows:

///

///

PAGE 1 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 1 of 35

Defendant's Response to each Request for Admission specifically incorporates these General Objections by this reference.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1**: Admit that each Plaintiff signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE**: Admit.

**REQUEST NO. 2**: Admit that each of your Oregon hourly employees hired during 2003 signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE**: In response to this request, Defendant objects on the grounds that it is unduly burdensome in that in order to ascertain whether every single Oregon hourly employee hired during 2003 signed an On-Duty Meal Policy agreement, Defendant will have to physically check every employee file. Defendant further objects on the grounds that the burdensome nature of ascertaining the response to this request is premature given that no class has been certified. Without waiving any of its objections, Defendant responds that the On-Duty Meal Policy agreement was part of the on-boarding procedure for Oregon hourly employees in 2003.

PAGE 4 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 2 of 35

**REQUEST NO. 3:**  Admit that each of your Oregon hourly employees hired during 2004 signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE:**  In response to this request, Defendant objects on the grounds that it is unduly burdensome in that in order to ascertain whether every single Oregon hourly employee hired during 2004 signed an On-Duty Meal Policy agreement, Defendant will have to physically check every employee file.  Defendant further objects on the grounds that the burdensome nature of ascertaining the response to this request is premature given that no class has been certified. Without waiving any of its objections, Defendant responds that the On-Duty Meal Policy agreement was part of the on-boarding procedure for Oregon hourly employees in 2004.

**REQUEST NO. 4:**  Admit that each of your Oregon hourly employees hired during 2005 signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE:**  In response to this request, Defendant objects on the grounds that it is unduly burdensome in that in order to ascertain whether every single Oregon hourly employee hired during 2005 signed an On-Duty Meal Policy agreement, Defendant will have to physically check every employee file.  Defendant further objects on the grounds that the burdensome nature of ascertaining the response to this request is premature given that no class has been certified.

PAGE 5 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 3 of 35

Without waiving any of its objections, Defendant responds that <mark>the On-Duty Meal Policy agreement was part of the on-boarding procedure for Oregon hourly employees in 2005.</mark>

**REQUEST NO. 5:** Admit that <mark>each of your Oregon hourly employees hired during 2006</mark> signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE:** In response to this request, Defendant objects on the grounds that it is unduly burdensome in that in order to ascertain whether every single Oregon hourly employee hired during 2006 signed an On-Duty Meal Policy agreement, Defendant will have to physically check every employee file. Defendant further objects on the grounds that the burdensome nature of ascertaining the response to this request is premature given that no class has been certified. Without waiving any of its objections, Defendant responds that <mark>the On-Duty Meal Policy agreement was part of the on-boarding procedure for Oregon hourly employees in 2006.</mark>

**REQUEST NO. 6:** Admit that each of your Oregon hourly employees hired during 2007 signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE:** Deny.

PAGE 6 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 4 of 35

waiving any of its objections, Defendant denies this request in regard to Oregon employees in the specified timeframe.

**REQUEST NO. 21:**  Admit that each of your hourly employees hired during 2012 signed an On-Duty Meal Policy agreement when they were hired, reading, "I hereby agree with my employer that on those sporadic occasions when the nature of my work prevents me from being relieved of all duties during my required meal period, I shall be paid for those meal periods. I may revoke this agreement in writing at any time."

**RESPONSE:**  Deny.

**REQUEST NO. 22:**  Admit that none of the Plaintiffs ever revoked an On-Duty Meal Policy agreement.

**RESPONSE:**  Defendant is without information sufficient to admit or deny this request, and therefore denies it on that basis.

**REQUEST NO. 23:**  Admit that as part of each hourly employee's training, they are told that their meal periods are 30 minutes long.

**RESPONSE:**  Defendant objects to this request on the grounds that it is overbroad and unduly burdensome.  Defendant further objects on the grounds that this request seeks information related to employees outside the state of Oregon and is therefore not reasonably calculated to lead to the discovery of admissible evidence, as Plaintiffs' meal period claims are state-specific.  Defendant further objects on the grounds that this request seeks pre-certification discovery beyond the Oregon region to which pre-certification discovery is limited.  Without

PAGE 14 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 5 of 35

waiving any of its objections, <mark>Defendant admits that its Oregon employees are trained on the Company's rest and meal policies, and that its policy provides that meal breaks are to be 30 minutes long.</mark> Without conducting an exhaustive individualized inquiry, Defendant is without knowledge sufficient to admit or deny the request as to what each Oregon employee was actually trained.

**REQUEST NO. 24:**  Admit that Oregon law and its interpretive rules require you to pay your Oregon hourly employees for any break that is less than 30 minutes long.

**RESPONSE:**  Defendant objects to this request on the grounds that it calls for a legal conclusion.  Defendant further objects to this request on the grounds that this request is overbroad in time, as the regulations in question did not change until 2010.  Without waiving any of its objections, Defendant denies that Oregon regulations purported to require Defendant to pay employees for meal breaks less than 30 minutes long prior to July 2010, and admits that said regulations purport to require payment for meal breaks less than 30 minutes long after July 2010.

**REQUEST NO. 25:**  Admit that the federal Fair Labor Standards Act and its interpretive regulations require you to pay your hourly employees for any break that is less than 30 minutes long absent special circumstances.

**RESPONSE:**  Defendant objects to this request on the grounds that it calls for a legal conclusion.  Defendant further objects to this request on the grounds that it seeks information related to employees outside the state of Oregon and is therefore not reasonably calculated to lead to the discovery of admissible evidence, as Plaintiffs' meal period claims are state-specific.

PAGE 15 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 6 of 35

**REQUEST NO. 37:** Admit that you did not pass any $2 shoe rebate on to the employee who purchased that pair of shoes.

**RESPONSE:** Deny.

**REQUEST NO. 38:** Admit that you were the ultimate recipient of $2 of the money withheld from every employee's wages who purchased their shoes through payroll deduction.

**RESPONSE:** Deny.

**REQUEST NO. 39:** Admit that for every calendar year since 2003, you were prohibited from withholding or deducting from your employees' wages any more than half of the operative Oregon Workers' Benefit Fund assessment rate established by the State of Oregon.

**RESPONSE:** Admit.

**REQUEST NO. 40:** Admit that in calendar year 2004, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 3.4 cents per hour worked.

**RESPONSE:** Admit.

**REQUEST NO. 41:** Admit that in calendar year 2003, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2004 would be 3.4 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.

PAGE 19 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 7 of 35

**REQUEST NO. 42**: Admit that in calendar year 2003, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2004 would be 3.4 cents per hour worked.

**RESPONSE**: Defendant is without knowledge sufficient to admit or deny this request.


**REQUEST NO. 43**: Admit that in calendar year 2003, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2004 would be 3.4 cents per hour worked.

**RESPONSE**: Defendant admits that it received notice of the assessment rate through the "Otter" system.


**REQUEST NO. 44**: Admit that in calendar year 2004, you remitted no more than 3.4 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.


**REQUEST NO. 45**: Admit that in calendar year 2004, you paid no more than 1.6 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.


PAGE 20 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 8 of 35

**REQUEST NO. 46:**  Admit that in calendar year 2004, you were prohibited by law from withholding or deducting any more than 1.7 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** <mark>Admit.</mark>

'

**REQUEST NO. 47:**  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2004.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 48:**  Admit that you were not required by law to withhold or deduct more than 1.7 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2004.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 49:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.7 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2004.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 50:**  Admit that your withholding or deduction of more than 1.7 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2004 was not for those employees' benefit.

PAGE 21 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 9 of 35

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 51:** Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2004.

**RESPONSE:** Deny.

**REQUEST NO. 52:** Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.7 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2004.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 53:** Admit that in calendar year 2005, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 3.4 cents per hour worked.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 54:** Admit that in calendar year 2004, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2005 would be 3.4 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 55:** Admit that in calendar year 2004, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the

PAGE 22 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 10 of 35

Oregon Workers' Benefit Fund assessment rate for calendar year 2005 would be 3.4 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 56:** Admit that in calendar year 2004, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2005 would be 3.4 cents per hour worked.

**RESPONSE:** Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 57:** Admit that in calendar year 2005, you remitted no more than 3.4 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 58:** Admit that in calendar year 2005, you paid no more than 1.6 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 59:** Admit that in calendar year 2005, you were prohibited by law from withholding or deducting any more than 1.7 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

PAGE 23 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 11 of 35

**REQUEST NO. 60:**  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2005.

**RESPONSE:**  Admit.

**REQUEST NO. 61:**  Admit that you were not required by law to withhold or deduct more than 1.7 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2005.

**RESPONSE:**  Admit.

**REQUEST NO. 62:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.7 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2005.

**RESPONSE:**  Admit.

**REQUEST NO. 63:**  Admit that your withholding or deduction of more than 1.7 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2005 was not for those employees' benefit.

**RESPONSE:**  Admit.

PAGE 24 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 12 of 35

**REQUEST NO. 64:** Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2005.

**RESPONSE:** Deny.


**REQUEST NO. 65:** Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.7 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2005.

**RESPONSE:** Admit.


**REQUEST NO. 66:** Admit that in calendar year 2006, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 3.0 cents per hour worked.

**RESPONSE:** Admit.


**REQUEST NO. 67:** Admit that in calendar year 2005, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2006 would be 3.0 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.


**REQUEST NO. 68:** Admit that in calendar year 2005, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2006 would be 3.0 cents per hour worked.

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 13 of 35

**RESPONSE:**  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 69:**  Admit that in calendar year 2005, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2006 would be 3.0 cents per hour worked.

   **RESPONSE:**  Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 70:**  Admit that in calendar year 2006, you remitted no more than 3.0 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

   **RESPONSE:**  Admit.

**REQUEST NO. 71:**  Admit that in calendar year 2006, you paid no more than 1.2 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

   **RESPONSE:**  Admit.

**REQUEST NO. 72:**  Admit that in calendar year 2006, you were prohibited by law from withholding or deducting any more than 1.5 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

   **RESPONSE:**  Admit.

PAGE 26 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 14 of 35

**REQUEST NO. 73**:  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2006.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 74**:  Admit that you were not required by law to withhold or deduct more than 1.5 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2006.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 75**:  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.5 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2006.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 76**:  Admit that your withholding or deduction of more than 1.5 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2006 was not for those employees' benefit.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 77**:  Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2006.

PAGE 27 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 15 of 35

**RESPONSE**: Deny.

**REQUEST NO. 78**: Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.5 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2006.

**RESPONSE**: Admit.

**REQUEST NO. 79**: Admit that in calendar year 2007, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 2.8 cents per hour worked.

**RESPONSE**: Admit.

**REQUEST NO. 80**: Admit that in calendar year 2006, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2007 would be 2.8 cents per hour worked.

**RESPONSE**: Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 81**: Admit that in calendar year 2006, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2007 would be 2.8 cents per hour worked.

**RESPONSE**: Defendant is without knowledge sufficient to admit or deny this request.

PAGE 28 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 16 of 35

**REQUEST NO. 82:** Admit that in calendar year 2006, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2007 would be 2.8 cents per hour worked.

**RESPONSE:** Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 83:** Admit that in calendar year 2007, you remitted no more than 2.8 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 84:** Admit that in calendar year 2007, you paid no more than 1.0 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 85:** Admit that in calendar year 2007, you were prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 86:** Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2007.

Exhibit 1
Page 17 of 35

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 87**: Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2007.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 88**: Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2007.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 89**: Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2007 was not for those employees' benefit.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 90**: Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2007.

**RESPONSE**: Deny.

PAGE 30 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 18 of 35

**REQUEST NO. 91:** Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2007.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 92:** Admit that in calendar year 2008, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 2.8 cents per hour worked.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 93:** Admit that in calendar year 2007, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2008 would be 2.8 cents per hour worked.

**RESPONSE**: Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 94:** Admit that in calendar year 2007, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2008 would be 2.8 cents per hour worked.

**RESPONSE**: Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 95:** Admit that in calendar year 2007, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2008 would be 2.8 cents per hour worked.

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 19 of 35

**RESPONSE**: Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 96**: Admit that in calendar year 2008, you remitted no more than 2.8 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.

**REQUEST NO. 97**: Admit that in calendar year 2008, you paid no more than 1.0 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.

**REQUEST NO. 98**: Admit that in calendar year 2008, you were prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.

**REQUEST NO. 99**: Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2008.

**RESPONSE**: Admit.

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 20 of 35

**REQUEST NO. 100:**  Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2008.

**RESPONSE**:  <mark>Admit.</mark>

**REQUEST NO. 101:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2008.

**RESPONSE**:  <mark>Admit.</mark>

**REQUEST NO. 102:**  Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2008 was not for those employees' benefit.

**RESPONSE:**  Deny.

**REQUEST NO. 103:**  Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2008.

**RESPONSE:**  Deny.

**REQUEST NO. 104:**  Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2008.

PAGE 33 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 21 of 35

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 105:** Admit that in calendar year 2009, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 2.8 cents per hour worked.

**RESPONSE:** <mark>Admit.</mark>

**REQUEST NO. 106:** Admit that in calendar year 2008, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2009 would be 2.8 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 107:** Admit that in calendar year 2008, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2009 would be 2.8 cents per hour worked.

**RESPONSE:** Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 108:** Admit that in calendar year 2008, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2009 would be 2.8 cents per hour worked.

**RESPONSE:** Defendant <mark>admits that it received notice of the assessment rate through the "Otter" system.</mark>

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 22 of 35

**REQUEST NO. 109:**  Admit that in calendar year 2009, you remitted no more than 2.8 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

**REQUEST NO. 110:**  Admit that in calendar year 2009, you paid no more than 1.0 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

**REQUEST NO. 111:**  Admit that in calendar year 2009, you were prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

**REQUEST NO. 112:**  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2009.

**RESPONSE:**  Admit.

**REQUEST NO. 113:**  Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2009.

**RESPONSE:**  Admit.

PAGE 35 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 23 of 35

**REQUEST NO. 114:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2009.

**RESPONSE:**  <mark>Admit.</mark>

**REQUEST NO. 115:**  Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2009 was not for those employees' benefit.

**RESPONSE**:  Deny.

**REQUEST NO. 116:**  Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2009.

**RESPONSE:**  Deny.

**REQUEST NO. 117:**  Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2009.

**RESPONSE**:  <mark>Admit.</mark>

**REQUEST NO. 118:**  Admit that in calendar year 2010, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 2.8 cents per hour worked.

PAGE 36 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 24 of 35

**RESPONSE**: Admit.

**REQUEST NO. 119**:  Admit that in calendar year 2009, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2010 would be 2.8 cents per hour worked.

**RESPONSE**:  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 120**:  Admit that in calendar year 2009, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2010 would be 2.8 cents per hour worked.

**RESPONSE**:  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 121**:  Admit that in calendar year 2009, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2010 would be 2.8 cents per hour worked.

**RESPONSE**:  Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 122**:  Admit that in calendar year 2010, you remitted no more than 2.8 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE**: Admit.

PAGE 37 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 25 of 35

**REQUEST NO. 123:** Admit that in calendar year 2010, you paid no more than 1.0 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 124:** Admit that in calendar year 2010, you were prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:** Admit.

**REQUEST NO. 125:** Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2010.

**RESPONSE:** Admit.

**REQUEST NO. 126:** Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2010.

**RESPONSE:** Admit.

**REQUEST NO. 127:** Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2010.

PAGE 38 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

Littler Mendelson, P.C.
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 26 of 35

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 128**:  Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2010 was not for those employees' benefit.

**RESPONSE**:  Deny.

**REQUEST NO. 129**:  Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2010.

**RESPONSE**:  Deny.

**REQUEST NO. 130**:  Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2010.

**RESPONSE**: <mark>Admit.</mark>

**REQUEST NO. 131**:  Admit that in calendar year 2011, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon was 2.8 cents per hour worked.

**RESPONSE**: <mark>Admit.</mark>

PAGE 39 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 27 of 35

**REQUEST NO. 132:**  Admit that in calendar year 2010, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2011 would be 2.8 cents per hour worked.

**RESPONSE**:  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 133:**  Admit that in calendar year 2010, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2011 would be 2.8 cents per hour worked.

**RESPONSE:**  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 134:**  Admit that in calendar year 2010, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2011 would be 2.8 cents per hour worked.

**RESPONSE:**  Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 135:**  Admit that in calendar year 2011, you were prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE**:  Admit.

PAGE 40 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 28 of 35

**REQUEST NO. 136:**  Admit that in calendar year 2011, you remitted no more than 2.8 cents per hour worked to the State of Oregon for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

**REQUEST NO. 137:**  Admit that in calendar year 2011, you paid no more than 1.0 cents per hour worked to the State of Oregon for the employer portion of the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

**REQUEST NO. 138:**  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2011.

**RESPONSE 1:**  Admit.

**REQUEST NO. 139:**  Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2011.

**RESPONSE 2** :  Admit.

**REQUEST NO. 140:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2011.

**RESPONSE:**  Admit.

PAGE 41 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 29 of 35

**REQUEST NO. 141:** Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during calendar year 2011 was not for those employees' benefit.

**RESPONSE:** Deny.

**REQUEST NO. 142:** Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2011.

**RESPONSE:** Deny.

**REQUEST NO. 143:** Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2011.

**RESPONSE:** Admit.

**REQUEST NO. 144:** Admit that during calendar year 2012, the Oregon Workers' Benefit Fund assessment rate established by the State of Oregon has been 2.8 cents per hour worked.

**RESPONSE:** Admit.

PAGE 42 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 30 of 35

**REQUEST NO. 145:**  Admit that in calendar year 2011, the State of Oregon published notice in print and on the web that the Oregon Workers' Benefit Fund assessment rate for calendar year 2012 would be 2.8 cents per hour worked.

**RESPONSE:**  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 146:**  Admit that in calendar year 2011, the State of Oregon mailed a notice to you at the address you had registered with the Oregon Secretary of State that the Oregon Workers' Benefit Fund assessment rate for calendar year 2012 would be 2.8 cents per hour worked.

**RESPONSE:**  Defendant is without knowledge sufficient to admit or deny this request.

**REQUEST NO. 147:**  Admit that in calendar year 2011, you received notice from the State of Oregon that the Oregon Workers' Benefit Fund assessment rate for calendar year 2012 would be 2.8 cents per hour worked.

**RESPONSE:**  Defendant admits that it received notice of the assessment rate through the "Otter" system.

**REQUEST NO. 148:**  Admit that in calendar year 2012, you have been prohibited by law from withholding or deducting any more than 1.4 cents per hour worked from your Oregon employees' paychecks for the Oregon Workers' Benefit Fund assessment.

**RESPONSE:**  Admit.

PAGE 43 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 31 of 35

**REQUEST NO. 149:**  Admit that you withheld or deducted 1.8 cents per hour worked from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during at least one pay period in calendar year 2012.

**RESPONSE:**  <mark>Admit.</mark>

**REQUEST NO. 150:**  Admit that you were not required by law to withhold or deduct more than 1.4 cents per hour worked from any paycheck of any Oregon employee for the Oregon Workers' Benefit Fund assessment during calendar year 2012.

**RESPONSE:**  <mark>Admit.</mark>

**REQUEST NO. 151:**  Admit that no Oregon employee authorized you in writing to withhold or deduct more than 1.4 cents per hour worked for the Oregon Workers' Benefit Fund assessment during calendar year 2012.

**RESPONSE:**  <mark>Admit.</mark>

**REQUEST NO. 152:**  Admit that your withholding or deduction of more than 1.4 cents per hour worked from Oregon employees' wages for the Oregon Workers' Benefit Fund assessment during at least one pay period in calendar year 2012 was not for those employees' benefit.

**RESPONSE:**  Deny.

PAGE 44 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 32 of 35

**REQUEST NO. 153:**  Admit that you were the ultimate recipient of the overwithholding/overdeduction from every paycheck of every Oregon employee for the Oregon Workers' Benefit Fund assessment during at least one pay period in calendar year 2012.

**RESPONSE**:  Deny.

**REQUEST NO. 154:**  Admit that no Oregon employee voluntarily signed an authorization for you to withhold or deduct more than 1.4 cents per hour worked from any paycheck for the Oregon Workers' Benefit Fund assessment during calendar year 2012.

**RESPONSE**:  Admit.

**REQUEST NO. 155:**  Admit that you withheld or deducted Workers' Benefit Fund assessments from more than 50 Oregon employees on or after August 13, 2004.

**RESPONSE**:  Admit.

**REQUEST NO. 156:**  Admit that you withheld or deducted Workers' Benefit Fund assessments from more than 100 Oregon employees on or after August 13, 2004.

**RESPONSE**:  Admit.

**REQUEST NO. 157:**  Admit that you withheld or deducted Workers' Benefit Fund assessments from more than 500 Oregon employees on or after August 13, 2004.

**RESPONSE**:  Admit.

PAGE 45 – DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 33 of 35

Dated:  March 2%, 2012

Douglas S. Parker, OSB No. 821017
Jennifer A. Nelson, OSB No. 034086
Don H. Stait, OSB No. 105134
Littler Mendelson, P.C.

Attorneys for Defendant
JACK IN THE BOX INC., a Corporation of
Delaware

Firmwide:109554843.1 063201.1002

PAGE 87 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 34 of 35

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2012, I served a full, true, and correct copy of the foregoing DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSION:

☒ By delivery via messenger, or otherwise by hand,
☐ By facsimile,
☒ By e-mail,
☐ Mailing same, postage paid,

addressed to:

Jon M. Egan
240 Sixth Street
Lake Oswego, OR 97034-2931
Telephone: 503.697.3427
Fax: 866.311.5629
E-mail: jegan@eganleglateam.com

Of Attorneys for Plaintiff

By: _____
Joanna R. Aufmuth
Assistant to Jennifer A. Nelson

Firmwide:109554843.1 063201.1002

PAGE 88 – DEFENDANT'S RESPONSES TO PLAINTIFFS'
REQUESTS FOR ADMISSION

**Littler Mendelson, P.C.**
121 SW Morrison Street, Suite 900
Portland, Oregon 97204
Telephone 503.221.0309

Exhibit 1
Page 35 of 35

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
        3:10-cv-960-ST


JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPED DEPOSITION OF PAUL BARNARD**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**TUESDAY, FEBRUARY 14, 2012**

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

NAEGELI REPORTING
"The Deposition Experts"

Exhibit 2
Page 1 of 4

1    Q.    Okay.

2    A.    And someone supplied the hours to me.

3    Q.    **And someone supplied the rate to you as**

4    **well?**

5    A.    No.  The state does that.

6    Q.    **Oh, okay.**

7    A.    Because if you work with OTTER, that's --

8    remember, that field I can't change.

9    Q.    **Right.**

10    A.    So each year, the state would send us to

11    OTTER, our OTTER copy, the rate -- the percentages

12    that -- I can't change the UI rate.  I can't change

13    any of this stuff.

14    Q.    **I just -- and I apologize.**

15    A.    That's okay.

16    Q.    **Perhaps my question was wrong.**

17    A.    That's okay.

18    Q.    **I just meant I think I remember you saying**

19    **that you checked the rate that was on the form to**

20    **see if it matched the rate that was in Lawson?**

21    A.    No, I never said that.

22    Q.    **No?  Oh, okay.  Did anyone do that?  Do**

23    **you know?**

24    A.    I don't know anything about workers' comp.

25    Q.    **Okay.**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 2
Page 2 of 4

```
 1                    CERTIFICATE OF VIDEOGRAPHER

 2

 3        I the undersigned, Jamie Carlson, am a videographer

 4   behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

 5   certify that I have accurately made the video recording of

 6   the deposition of Paul Barnard, in the above captioned

 7   matter on the 14th day of February, 2012, taken at the

 8   location of 9330 Balboa Avenue, Corporate Headquarters,

 9   Diego, CA 92123, consisting of 1 DVD(s).

10

11        No alterations, additions or deletions were made

12   thereto.

13

14        I further certify that I am not related to any of the

15   parties in the action and have no financial interest in

16   outcome of this matter.

17

18

19   Jamie Carlson

20   Videographer

21

22

23   2/14/2012

24   Date

25
```

**NAEGELI REPORTING**
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 2
Page 3 of 4

```
 1                    STATE OF CALIFORNIA

 2                    COUNTY OF SAN DIEGO

 3

 4  I, Lynette Marie Nelson, Certified Shorthand Reporter, in

 5  and for the State of California, Certificate No. 11585,do

 6  hereby certify:

 7

 8  That the witness in the foregoing deposition was by me

 9  duly sworn to testify to the truth, the whole truth, and

10  nothing but the truth in the foregoing cause; that the

11  deposition was then reported by me in shorthand and

12  transcribed, through computer-aided transcription, under

13  direction; and that the above and foregoing transcript, is

14  true record of the testimony elicited and proceedings

15  said deposition.

16

17  I do further certify that I am a disinterested person

18  in no way interested in the outcome of this action or

19  connection with or related to any of the parties in this

20  action or to their respective counsel.

21

22  In witness whereof, I have hereunto set my hand this 23rd

23  day of February, 2012.

24  /S/

25  Lynette Marie Nelson, CSR No. 11585
```



NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 2
Page 4 of 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

   Plaintiffs,

Vs.  Civil No.:
   3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

   Defendant.
_____



**VIDEOTAPE DEPOSITION OF SYLVIA DE CHANDT**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**THURSDAY, FEBRUARY 9, 2012**

(800) 528-3335

NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation

Selected "Best Court Reporting Firm"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

NAEGELI REPORTING
"The Deposition Experts"

Exhibit 3
Page 1 of 15

1     Q.   What was his title?

2     A.   He was payroll analyst.

3     Q.   Do you know how long he was in that

4 position?

5     A.   I'm sorry, I don't recall the full length.

6 It was well over 10 years, though.

7     Q.   Okay.  Were you still at the company when

8 he left that position?

9     A.   No.  I left before he left.

10    Q.   All right.  So how did Mr. Bernard, or who

11 -- whoever helped him in that, or -- or you

12 overseeing, how did the payroll department figure

13 out what the various different taxes were that they

14 had to take out of everyone's paychecks in the

15 different jurisdictions?

16    A.   Okay.  Are you talking about withholding?

17    Q.   What's -- what's the difference?  What do

18 you mean?

19    A.   Well, there's employer taxes as well --

20    Q.   Okay.

21    A.   -- as you probably know.  So I need to

22 know which --

23    Q.   Sure.  Well --

24    A.   -- tax you're talking about.

25    Q.   Yeah.  We'll -- we'll split it up.  For --

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 2 of 15

1    for now, let's just talk about the taxes that are

2    taken out of employee paychecks.

3         A.    Okay.  So the withholding, we worked with

4    the Talx Corporation for some of it.  But mainly for

5    the 2000s it was with BSI.  That was -- that is the

6    tax engine that is attached to the Lawson payroll

7    system.

8         Q.    And would that be a different answer for

9    the employer paid taxes?

10        A.    For the FUI and SUI, that would be

11   different because those are -- were negotiated with

12   the state with the Talx Corporation, depending upon

13   -- well, when I say "negotiate," that's probably the

14   wrong word -- depending upon our experience rating.

15        Q.    Okay.  The state taxing authorities don't

16   tend to do too much negotiating.

17        A.    Right.

18        Q.    They just tell you what you're supposed to

19   pay.

20        A.    Right.

21        Q.    And are you familiar, or do you remember

22   anything about Oregon's worker benefit fund tax?  I

23   -- I can't figure out which of the categories that

24   would fall into.

25        A.    That is a whole different issue since it's

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 3 of 15

1    Q.   Okay.  And then so whether the updated

2  rate came from the State of Oregon or from risk

3  management or directly from the Workers' Comp

4  carrier, who would be the person who would update

5  those rates in the Lawson program?

6    A.   It was either myself, Paul, or Beth

7  Lipold.

8    Q.   This is Paul Bernard?

9    A.   Yes.

10    Q.   Is that L-I-P-O-L-D for Beth's name?

11    A.   Yes.

12    Q.   Okay.  So once the tax rate was inputted

13  into Lawson, did Lawson do the multiplying and --

14  and figuring out of how much should be deducted from

15  people's checks?

16    A.   Yes.

17    Q.   And is -- is that rate just inputted once

18  into a master place, or does it have to be put into

19  every employee's record?

20    A.   It is put in once in a deduction table

21  because every deduction has a code, and then that

22  table is updated to all the employees individually.

23  There's a program that's run to update all of the

24  deductions.

25    Q.   And does that update everyone in the same

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 4 of 15

1  know, the exact process that Paul --

2       Q.    Right.

3       A.    -- did.

4       Q.    Okay.  Is -- is that -- is there some

5  generally acceptable or general approach to auditing

6  numbers that -- is that -- how would that come about

7  in general? Is there -- are you comparing two

8  different things to each other, or what would be the

9  process of that?

10      A.    Again, I don't think I should answer that

11 because I don't recall the exact steps that Paul

12 took.

13      Q.    Okay.  And again, I can only ask you what

14 you know.

15      A.    Right.

16      Q.    And so that's all I'm asking.

17            Was there a name for the process, or a

18 button that you would push, or some other way to

19 identify what happens when you input the rate, let's

20 say for Oregon workers benefit fund, and then that

21 somehow gets populated to all of the employees in

22 that area, and is there some name for how that

23 happens or...

24      A.    There's a program that's run on Lawson,

25 and it's Employee Deduction Update.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 5 of 15

1      Q.    Okay.  It's called Employee Deduction

2  Update?

3      A.    Yes.  It's a job.

4      Q.    So if that's -- if that's been done, can

5  you -- if everybody in Oregon is supposed to have

6  the same rate, can you work backwards?  Can you just

7  pick up one person's pay stub and say, okay, if

8  that's the rate on this pay stub, it must be the

9  rate for everyone in the state?

10     A.    You can.

11     Q.    Okay.

12     A.    Depending upon, again, the work comp class

13  --

14     Q.    Right.

15     A.    -- of the individual at that given point

16  in time.

17     Q.    Okay.  Is it your understanding that all

18  of the crew members, just the regular crew member

19  classification, were the same Workers' Comp class in

20  the state?

21     A.    Yes.

22     Q.    And how about the -- the team leaders?

23  Are they in the same work comp class?

24     A.    Yes.

25     Q.    So basically, all of the nonexempt hourly

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 6 of 15

1    employees; is that what -- is that what you mean by

2    the Workers' Comp class?  Are they all in the same

3    one?

4         A.    Yes.

5         Q.    All right.  So they would all have the

6    same workers benefit fund rate?

7         A.    Yes.

8         Q.    Okay.  If you wanted to go back after the

9    fact and check to see if the proper rate was

10   withheld during any period of time, how would you go

11   about that, given your knowledge of the computer

12   systems that I don't have? What would you check to

13   see if that was done correctly?

14        A.    I would first have to see the person, what

15   position they held, that would be my first thing, at

16   the time that they received payment, and then check

17   with our historical documentation on what the rate

18   should have been at that time.

19        Q.    Okay.  And what would that historical

20   documentation be?

21        A.    The form that came in from the state

22   and/or the insurance carrier.

23        Q.    And you said that those were kept by --

24   would those be Arlette that kept that -- the -- that

25   paperwork?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 7 of 15

1        A.    Biweekly, or whenever we would need it.

2   You know, if we were going to franchise a restaurant

3   or, you know, what -- whatever we needed for payment

4   given the circumstance.

5        Q.    Right.  In -- in the typical situation

6   that wasn't a franchise or a termination or

7   something where you needed it in the middle, was the

8   typical transfer period for everybody for those

9   biweekly pay periods?

10        A.    Correct.

11        Q.    And so now shifting gears to the Jack's

12   Timekeeping system.  First of all, when -- when did

13   that start, or approximately?

14        A.    That was such a long project.  I cannot

15   remember when that started.  But when I left, the

16   project was going on seven or eight years.

17        Q.    Had it gone live yet?

18        A.    It had gone live, but not a hundred

19   percent throughout the company restaurants.

20        Q.    Okay.  Was it a different software

21   provider than Kronos?

22        A.    Yes, it was.

23        Q.    Okay.  Who -- and who was the new one?

24        A.    I've forgotten --

25        Q.    Okay.

NAEGELI REPORTING

"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 8 of 15

1    A.    -- the -- the -- the name because we then

2  subsequently purchased the whole thing and renamed

3  it "Jack's Timekeeping."

4    Q.    Oh, okay.  All right.  Were you involved

5  in the decision to change from Kronos to the new

6  system?

7    A.    Yes.

8    Q.    Okay.  And why was that decision made?

9  Why did they decided to switch over?

10    A.    The main reason is that the punches reside

11  on a file server here in this building, and now

12  you're not at the mercy of that specific PC at every

13  single restaurant. And if there's a problem with

14  that specific PC at the restaurant, it was a real

15  hardship on trying to get that file.  And many --

16  you know, it would -- then we'd have to be dealing

17  with reports that manager had, and we tried to --

18  you know, it -- that -- that was the main thing, is

19  that -- the other thing is that we could put more,

20  you know, monitors on -- on the system.

21    Q.    Tell me what you mean by that.

22    A.    Employees have to have their full 10-

23  minute break.  We don't want them clocking in at 8

24  minutes. They must have their half-an-hour break.

25  We don't want them clocking back in at 23 minutes.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 9 of 15

1  And they may have thought that was okay, but we

2  realized that was not okay, and we had to, you know,

3  make them take their full break.

4      Q.   Okay.  Was there a team that went about

5  planning and making the transition and deciding what

6  would be changed?

7      A.   Oh, yeah.  And -- and it was a rather

8  large team because, you know, we had to have

9  restaurant managers involved, area coaches, regional

10 staff, HR, payroll, IS.

11     Q.   Was legal involved as well?

12     A.   Yes.

13     Q.   Okay.  Do you know what the rules were

14 from Jack's Timekeeping in terms of how long a break

15 had to be before it was paid or unpaid?

16     A.   I do not.

17     Q.   Okay.  If a manager needs to make a change

18 to an employee punch, say that an employee forgot to

19 punch in at the beginning of the day --

20     A.   Um-hum.

21     Q.   -- or something like --

22     A.   Um-hum.

23     Q.   -- that, under the Kronos system, after

24 the information had already been transferred to FM

25 Timekeeping (sic), would there be a way for that

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 10 of 15

Silvia De Chandt    February 9, 2012    NRC File # 15004-6                    Page 102

```
 1        Q.    This talks about the graveyard shift,

 2   which says here is between -- if they take a meal

 3   break between 11:00 p.m. and 4:00 a.m., then they're

 4   paid for that time; is that your understanding?

 5        A.    Yes.

 6        Q.    Okay.  And it's -- other people have

 7   testified that that's because they're not allowed to

 8   leave the store.

 9        A.    Correct.

10        Q.    Would it -- is that separated out in any

11   way on their pay stub as to separately paid, or is

12   it just contained in that hours-worked number?

13        A.    It's contained in that hours-worked

14   number.

15        Q.    Okay.  If it says then -- after those

16   examples it says, "Remember that meal breaks are 24

17   minutes or greater in the state of Washington, and

18   20 minutes or greater in all other states.  All

19   other breaks are rest breaks which are paid."  Is

20   that -- does that mean that anything more than 20

21   minutes in Oregon would be unpaid?

22        A.    What it's saying here is if the break is

23   over 20 minutes long --

24        Q.    Um-hum.

25        A.    -- it would be considered a meal break.
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 11 of 15

```
 1      Q.    I see.  And so -- and they don't pay?

 2      A.    And it would be unpaid.

 3      Q.    Okay.

 4      A.    But if the break was 20 minutes or under,

 5  it would be considered a break and would be a rest

 6  break and would be paid.

 7      Q.    I see.

 8      A.    The 20 minutes is a federal law.

 9      Q.    Okay.  Do you know whether there's an

10  Oregon law, a separate Oregon law?

11      A.    I do not --

12      Q.    Okay.

13      A.    -- know.

14      Q.    Where would you go to find that out if you

15  had to?

16      A.    We used an online service called RIA

17  Checkpoint, and that was our online service.  We

18  would, you know, pay it annually, or -- or maybe

19  contract sometimes for a couple of years.  Besides

20  which the -- when we would find out if there was a

21  change or, you know, something like that, we would

22  check that, as well as we'd go out to the -- a state

23  labor board website and get whatever requirements we

24  can find there just to make sure that the

25  information is consistent.
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 12 of 15

1          THE VIDEOGRAPHER:  Back on record.  The

2    time is 11:48 a.m.

3    BY MR. EGAN:

4          Q.    Just a couple more things before we let

5    you go.  That 20-minute dividing line between what's

6    paid and what's unpaid for a rest period or a meal

7    period, was that the same under the Kronos system

8    and the Jack's Timekeeping system?

9          A.    Yes.

10         Q.    All right.  And my other question is, who

11   did you report to?  Who was above you on the

12   hierarchy in the company?

13         A.    I reported to Jim Lebbs for a while, and

14   then -- I remembered his last name this time.  And -

15   - and then I reported to Wendy Sanderlin.  And

16   previous to that, it was Mary Kregan.

17         Q.    After Jim?

18         A.    It was before Jim.

19         Q.    Okay.  So Mary Kregan, then Jim Lebbs,

20   then Wendy Sanderlin?

21         A.    Correct.

22         Q.    Did they all have the same job title?

23         A.    No.

24         Q.    Okay.  What -- what were their different

25   job titles?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 13 of 15

```
 1              CERTIFICATE OF VIDEOGRAPHER

 2

 3      I the undersigned, Jamie Carlson, am a videographer

 4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

 5  certify that I have accurately made the video recording of

 6  the deposition of Sylvia Dechandt, in the above captioned

 7  matter on the 9th day of February, 2012, taken at the

 8  location of 9330 Balboa Avenue, Corporate Headquarters,

 9  Diego, CA 92123, consisting of 2 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/9/2012

24  Date

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 14 of 15

```
 1                          CERTIFICATE

 2

 3       I, Leo Kniebel, do hereby certify that pursuant to

 4  Rules of Civil Procedure, the witness named herein

 5  before me at the time and place set forth in the caption

 6  herein; that at the said time and place, I reported in

 7  stenotype all testimony adduced and other oral proceedings

 8  had in the foregoing matter; and that the foregoing

 9  transcript pages constitute a full, true and correct

10  of such testimony adduced and oral proceeding had and of

11  whole thereof.

12

13       IN WITNESS HEREOF, I have hereunto set my hand this

14  17th day of February, 2012.

15

16

17

18

19

20

21  /S/ Leo Kniebel

22

23  Commission Expiration: March 2, 2012

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 3
Page 15 of 15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
        3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPE DEPOSITION OF BARBARA KLUSEK**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**FRIDAY, FEBRUARY 10, 2012**

Exhibit 4
Page 1 of 16

(800) 528-3335

NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation

Selected "Best Court Reporting Firm"

NAEGELI REPORTING

"The Deposition Experts"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

```
 1  analyst.  She's actually new to the tax group.  She

 2  just joined.

 3           There is Danielle Sullivan.  She's a

 4  analyst responsible for taxes.  And Arlette Jumoc.

 5       Q.   J-u-m-o-c?

 6       A.   J-u-m-o-c, yes.

 7       Q.   And she -- an analyst as well?

 8       A.   She's an analyst as well.

 9       Q.   How long has Sherry Hudson been dealing

10  with the tax part of it?

11       A.   Sherry joined Jack in the Box in June of

12  last year, so it's --

13       Q.   In that role?

14       A.   In that role, yes.

15       Q.   Do you know how long Danielle Sullivan has

16  been with the tax group?

17       A.   Don't know exactly.

18       Q.   Since before you came?

19       A.   Absolutely.

20       Q.   And how about Arlette Jumoc?

21       A.   Same situation, many years.

22       Q.   Okay.

23       A.   But I don't know exactly how many.

24       Q.   In preparing for today's deposition, did

25  you go back and look at the rate of worker's benefit
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 2 of 16

1    fund deduction that was deducted from employees in

2    Oregon?

3         A.    Yes.

4         Q.    And what was the rate that was used?

5         A.    The rate that was used on the paychecks

6    that I reviewed was 1.8 percent.

7         Q.    Cents per hour?

8         A.    Per -- yes.

9         Q.    Do you know what rate was paid to the

10   Oregon government?

11        A.    I -- the last report that was sent to the

12   Oregon was paid at .28.

13        Q.    2.8 cents per hour?

14        A.    Yes.

15             MR. PARKER:    Wait a minute.

16             THE WITNESS:    No.  2.8 percent total.

17   BY MR. EGAN:

18        Q.    Percent of the wages?

19        A.    Percent of -- not wages, hours -- 2 cent

20   per hour.

21        Q.    So for -- if an employee works one hour,

22   Jack in the Box sends a check to the state for 2.8

23   cents?

24        A.    Correct.

25        Q.    All right.  And so is it your

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 3 of 16

1    understanding that Jack in the Box corporation pays

2    one cent towards that total and the employees paid

3    1.8 cents towards that total?

4         A.    Based on the calculations that I've seen,

5    I believe that was the case.

6         Q.    Okay.  And what time frame were the

7    examples that you reviewed?

8         A.    I reviewed 2004 to present.

9         Q.    Are there corporate stores in Oregon

10    still?

11         A.    No.

12         Q.    Does Jack in the Box have any employees in

13    Oregon?

14         A.    No.

15         Q.    When was the last time Jack in the Box had

16    any current employees in Oregon?

17         A.    In September of last year.

18         Q.    2011?

19         A.    Yes.

20         Q.    And at that time 2.8 cents an hour was

21    still being paid and 1.8 cents an hour was still

22    being withheld?

23         A.    Correct.

24         Q.    Do you have any understanding as to what

25    the legal rate that was required by the state of

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 4 of 16

1    Oregon was for that withholding?

2        A.    Yes.

3        Q.    Okay.  And what is that?

4        A.    The rate should be total 2.8 cents per

5    hour split evenly between employee and employer.

6        Q.    And do you have any idea why Jack in the

7    Box was withholding more -- more than half?

8        A.    No, I myself found out the details of it

9    just last week as I was doing my preparation for

10   this deposition.  So I didn't know that there was an

11   error.

12       Q.    Okay.

13       A.    So I can't speak to what happened in the

14   past years.

15       Q.    Okay.  Do you know whether there are

16   papers that are -- or some form of notice that's

17   received from the Oregon government as to what the

18   new rates are?

19       A.    I have not seen one.

20       Q.    Okay.

21       A.    I heard that there were, but I can't -- I

22   have never seen one.

23       Q.    Okay.  Who -- if it was your attorneys,

24   don't tell me, but did you hear from someone else

25   what those notices were?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 5 of 16

1      A.   No.

2      Q.   Okay.  And who are the employees in the

3 group that answers questions about shoe deductions?

4      A.   Lisa Dearing, Leanne Tellez, and the

5 supervisor Tonya Elsom-Walton.  She's a supervisor

6 of Lisa.  She would be able to assist in questions

7 about shoes.

8      Q.   You're going to have to spell her name for

9 us.

10      A.   Tonya, T-o-n-y-a, Elsom, E-l-s-o-m,

11 Walton, W-a-l-t-o-n.

12      Q.   So we understand from other people that

13 have come in and talked to us in these depositions

14 that employees can purchase shoes from various

15 vendors, nonslip shoes, by payroll deduction.  Is

16 that still the case?

17      A.   Correct.

18      Q.   And how many paychecks is that split over?

19      A.   Four.

20      Q.   Does the employee get to pick how many or

21 that's just automatically done?

22      A.   That is automatically the same, and that

23 would apply to all employees.

24      Q.   And are there different vendors that have

25 that option available?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 6 of 16

1    Q.    Arlette Jumoc?

2    A.    Jumoc.

3    Q.    And are these paper files like file

4    cabinets or are they in the computer or --

5    A.    Both.

6    Q.    Both?

7    A.    Yes.

8    Q.    Okay.  Do you know whether all of the

9    workers in Oregon paid the same workers' benefit

10    fund rate?

11    A.    I don't know that for sure.  I would

12    assume.

13    Q.    All right.  Is there a program that

14    automatically populates all the workers in a

15    jurisdiction with the same tax rate or does somebody

16    have to go in and change them one by one?

17    A.    It's automatic because the deduction, for

18    example, Oregon workers' comp is a -- is one

19    deduction code, but it's used in the same way for

20    any employees.

21    Q.    So the deduction code is programmed with

22    the percentage rate?

23    A.    Correct.

24    Q.    And then anyone who uses that deduction

25    code has the same rate applied to them?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 7 of 16

1    A.    Correct.

2    Q.    **Do you know whether all of the Oregon --**

3    **let's say the Oregon hourly employees had that same**

4    **deduction code for the workers' benefit fund?**

5    A.    I would assume so.

6    Q.    **Okay.  If you had to check, how could you**

7    **find that out?**

8    A.    I could use the report that I mentioned

9    earlier, but that would mean looking at everybody's

10   paycheck for quite a few years.

11   Q.    **And having to do the math yourself?**

12   A.    I mean, the deduction would be visible on

13   that report per employee, so possibly, yes, using --

14   using one of the reporting features and loss -- and

15   showing all the deductions per employee.

16   Q.    **Is there a way to look at a deduction**

17   **code, any features of it or settings of it and see**

18   **how it's changed over time?**

19   A.    I'm not sure.  I'm not sure.  I don't

20   think there is because that's not a transaction

21   within Lawson that would create historical record,

22   so I don't think there is.

23   Q.    **So you would -- you could pick an employee**

24   **and drill down to their historical record, but you**

25   **can't do the same thing for a deduction code?**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 8 of 16

```
 1              CERTIFICATE OF VIDEOGRAPHER

 2

 3      I the undersigned, Jamie Carlson, am a videographer

 4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

 5  certify that I have accurately made the video recording of

 6  the deposition of Barbara Klusek, in the above captioned

 7  matter on the 10th day of February, 2012, taken at the

 8  location of 9330 Balboa Avenue, Corporate Headquarters, CA

 9  92123, consisting of 1 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/10/2012

24  Date

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 9 of 16

```
 1                    CERTIFICATE

 2

 3      I, Lorie Rhyne, the certified Shorthand Reporter, in

 4  and for the State of California, do hereby certify:

 5

 6      THAT the foregoing proceedings were reported by me

 7  stenographically and later transcribed under my direction;

 8  that the foregoing is a true record of the proceedings

 9  at that time.

10

11      IN WITNESS HEREOF, I have transcribed my name this

12  day of February, 2012.

13

14

15

16

17

18

19  /S/ Lorie Rhyne

20  CSR No. 12905

21

22

23

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 10 of 16

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
           3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



VOLUME II
VIDEOTAPED DEPOSITION OF BARBARA KLUSEK
TAKEN ON BEHALF OF THE PLAINTIFFS
THURSDAY, FEBRUARY 16, 2012

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

NAEGELI REPORTING
"The Deposition Experts"

Exhibit 4
Page 11 of 16

1    Workers' Benefit Fund purposes, we just add up all

2    of everybody's hours, and that's the hours that are

3    used?

4         A.    Correct.

5         Q.    All right.  Thank you.

6               And then what do we have here as Exhibit

7    8. This looks to be screen shots from Lawson.

8         A.    It is --

9         Q.    Tell us what we're looking at.

10        A.    It is a screen shot from Lawson.  This is

11   a sample how of -- how our deductions are set up.

12   This particular one shows the deduction called 80R,

13   which is for Oregon workers' compensation employee

14   portion, meaning Workers' Benefit Fund.

15              It shows several different details about

16   the deduction, including how that deduction would

17   show on the employee paycheck, how is it calculated,

18   and the rate that it's calculated at.  The rate that

19   you see there under amount and percent is the rate

20   that I adjusted.  Once I found out about the error,

21   I changed that rate to 1.4.

22        Q.    Okay.  And approximately when was that?

23        A.    Last week.  Friday.  I might be mixing

24   days here.

25        Q.    Okay.  The PR260 reports that we received

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 12 of 16

1    separate cycle had to be determined, et cetera.

2        Q.    Okay.  So that doesn't necessarily

3    indicate some kind of calendar cycle or how often

4    something gets done.  Those are just designations of

5    in which circumstances is this particular deduction

6    taken out?

7        A.    Correct.

8        Q.    All right.  Going to the second page of

9    Exhibit 8, it has self-adjust tax Y.  What does that

10   mean?

11       A.    That would, again, be if a change would

12   have been made to the rate this tells Lawson to

13   recalculate anything that could -- that could result

14   in a different amount because of a change to how

15   deduction is set up.

16       Q.    I see.  So does this tell Lawson that if I

17   make a change in the rate in this master entry, you

18   need to populate that out to everybody in that

19   jurisdiction?

20       A.    Correct.

21       Q.    All right.  And then the third and final

22   page of Exhibit 8 has an effective date on there?

23       A.    That's January 1, 1997.

24       Q.    Okay.  Does that mean that that's when

25   that started, when this deduction was first

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 13 of 16

```
 1   implemented?
 2        A.   That's when this deduction was first added
 3   to Lawson.
 4        Q.   And the accrual account, is that -- well,
 5   I don't know.  What does that tell us, that accrual
 6   account information?
 7        A.   That just tells -- I'm sorry.  That tells
 8   our accounting department where to record those
 9   expenses.
10        Q.   Okay.  And how about the workers' -- that
11   WC rate table, what does that mean?
12        A.   I'm not sure.  I did not look in detail in
13   there.
14        Q.   Okay.  I think we said when we were
15   looking at Exhibit 7, the PR278, that it doesn't
16   matter which category people fall into, they all pay
17   the same Workers' Benefit Fund rate.
18        A.   Right.
19        Q.   Do you think that might be what that has
20   to do with or . . .
21        A.   I don't think so.
22        Q.   Okay.
23        A.   No.
24        Q.   Okay.
25        A.   Because the pay -- the calculation is set
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 14 of 16

1                    CERTIFICATE OF VIDEOGRAPHER

2

3        I the undersigned, Jamie Carlson, am a videographer

4   behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

5   certify that I have accurately made the video recording of

6   the deposition of Wendy Sanderlin, in the above captioned

7   matter on the 16th day of February, 2012, taken at the

8   location of 9330 Balboa Avenue, Corporate Headquarters,

9   Diego, CA 92123, consisting of 1 DVD(s).

10

11       No alterations, additions or deletions were made

12  thereto.

13

14       I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/16/2012

24  Date

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 15 of 16

```
 1                          CERTIFICATE

 2

 3  I KRISTY A. HUTCHINS, Certified Shorthand Reporter for the

 4  State of California, do hereby certify:

 5

 6  That the witness in the foregoing deposition was by me

 7  duly sworn to testify to the truth, the whole truth and

 8  nothing but the truth in the foregoing cause; that the

 9  deposition was taken by me in machine shorthand and later

10  transcribed into typewriting, under my direction, and that

11  the foregoing contains a true record of the testimony of

12  witness.  Dated this 1st day of March, 2012, at San Diego,

13  California.

14

15

16

17

18

19  _____

20  KRISTY A. HUTCHINS

21  C.S.R. NO. 13551

22

23

24

25
```

**NAEGELI REPORTING**
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 4
Page 16 of 16

(800) 528-3335

NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation

Selected "Best Court Reporting Firm"

NAEGELI REPORTING

"The Deposition Experts"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
        3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPE DEPOSITION OF WENDY SANDERLIN**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**WEDNESDAY, FEBRUARY 8, 2012**

Exhibit 5
Page 1 of 17

1      A.    Yes.

2      Q.    -- is that AP?

3      A.    Um-hum.

4      Q.    What processes are in place to make sure

5  that the right percentages are deducted from

6  people's checks for payroll taxes?

7      A.    Within Lawson, there's VSI, which is an --

8  which is a module within Lawson where each state and

9  local type of tax is configured, and that's applied

10  from the system to each of the employees as -- as

11  they -- as payments are made.

12      Q.    Okay.  Is that updated annually?  Or how

13  does that work?

14      A.    It's updated more often than that.  As

15  things change, and as we go into new states and new

16  localities, updated as rates change, unemployment

17  rates we put in.

18      Q.    And how do you know when the rates change?

19  Do you receive notice from the states, or...

20      A.    We actually get notices from Talx, our

21  unemployment partner.

22      Q.    How do you spell "Talx"?

23      A.    T-A-L-X.

24      Q.    Okay.  And do they only give you

25  unemployment updates, or is that for everything?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 2 of 17

1   out a notice every year that says for the following

2   year, these are going to be the tax rates that we

3   want you to apply to employees for withholding

4   purposes -- and by "withholding," I mean anything

5   that you take out of an employee's check, not just

6   income tax.

7        A.   Um-hum.

8        Q.   Where would that go?

9        A.   So -- and I'm not certain about the income

10  tax tables.

11       Q.   Okay.

12       A.   I think that they're in Lawson.  I think

13  it's VSI.  But the unemployment is what I'm more

14  familiar with, and we get notices of rate --

15  unemployment rates that we put into the system.

16       Q.   Is there one person that is designated to

17  receive those?

18       A.   It -- that would be the responsibility of

19  Sherry --

20       Q.   The payroll tax manager?

21       A.   -- and that she -- yeah.  And she works

22  with our IT person with applying patches and how VSI

23  works.

24       Q.   Does the mailroom guy just know anything

25  that comes from --

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 3 of 17

1        A.    Those are electronic.

2        Q.    **Okay.**

3        A.    We don't get them in the mail.

4        **Q.    So the payroll tax manager is the one who**

5   **electronically receives the notice updates every**

6   **year from the states?**

7        A.    And -- and she's proactively getting ones

8   that she doesn't get.  So the -- the states release

9   them at different times.

10       Q.    **Okay.**

11       A.    Some of them back in November, and some of

12  them we haven't got yet -- gotten yet.  So for the

13  ones we haven't gotten, we're putting in last year's

14  rate until we get -- but there's a -- a schedule of

15  when we should receive each state.  And if we

16  haven't received it and that state has given them

17  out, then she's practically calling and making sure

18  that we locate it.

19       Q.    **Okay.  Is that true also of municipal or**

20  **local or county or transit district?  Anything less**

21  **than the state local taxes --**

22       A.    Um-hum.

23       Q.    **-- is -- is that also being tracked by the**

24  **payroll tax manager?**

25       A.    Yes.  As we go into new -- new counties

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 4 of 17

1      A.    For unemployment, they should be applied

2  uniformly.

3      **Q.    All right.  How about for other kind of**

4  **non-tax deductions, like for the shoes, Shoes for**

5  **Crews purchases or other shoes purchases, or other**

6  **things that aren't specifically for taxes?  How --**

7  **how does that money flow through for accounting**

8  **purposes?**

9      A.    If we had a Shoes for Crews, we get a file

10  from Shoes for Crews, and that file is processed

11  through a program that Scott created to split it.

12  So one file goes to payroll and one file goes to AP.

13  AP pays the vendor and payroll deducts the amounts.

14  And again, from a geo-perspective, those should be

15  equal and offsetting.

16      **Q.    What about Shoes for Crews' $2 rebate that**

17  **it gives the company for shoes that are purchased by**

18  **the employees?  Is that applied to the employee's**

19  **purchase, or is that cancelled out some other way in**

20  **accounting?**

21      A.    I do not believe it's applied to the

22  employee.

23      Q.    Okay.

24      A.    I think it's meant to offset the write-

25  offs that occur.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 5 of 17

```
 1              CERTIFICATE OF VIDEOGRAPHER

 2

 3      I the undersigned, Jamie Carlson, am a videographer

 4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

 5  certify that I have accurately made the video recording of

 6  the deposition of Wendy Sanderlin, in the above captioned

 7  matter on the 2nd day of February, 2012, taken at the

 8  location of 9330 Balboa Avenue, Corporate Headquarters,

 9  Diego, CA 92123, consisting of 1 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/8/2012

24  Date

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 6 of 17

```
 1                    CERTIFICATE

 2

 3       I, Leo Kniebel, do hereby certify that pursuant to

 4  Rules of Civil Procedure, the witness named herein

 5  before me at the time and place set forth in the caption

 6  herein; that at the said time and place, I reported in

 7  stenotype all testimony adduced and other oral proceedings

 8  had in the foregoing matter; and that the foregoing

 9  transcript pages constitute a full, true and correct

10  of such testimony adduced and oral proceeding had and of

11  whole thereof.

12

13       IN WITNESS HEREOF, I have hereunto set my hand this

14  17th day of February, 2012.

15

16

17

18

19

20

21  /S/ Leo Kniebel

22

23  Commission Expiration: March 2, 2012

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 7 of 17

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

NAEGELI REPORTING
"The Deposition Experts"

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.       Civil No.:
          3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



VOLUME II
VIDEOTAPED DEPOSITION OF WENDY SANDERLIN
TAKEN ON BEHALF OF THE PLAINTIFFS
THURSDAY, FEBRUARY 16, 2012

Exhibit 5
Page 8 of 17

1    and shoe credits.

2        Q.    Okay.  So let's take those one at a time.

3        A.    Okay.

4        Q.    When you say "write-offs" --

5        A.    When -- if an employee leaves the company

6    after making one payment and they didn't pay the

7    other three, then we are still liable to Shoes for

8    Crews.  We still paid it.  That's a loss.

9        Q.    Just a loss to the company?

10       A.    Yes.

11       Q.    Now, let's say that an employee works two

12   days and then leaves.

13       A.    Mm-hmm.

14       Q.    Do they still have a payment deducted from

15   their final paycheck?

16       A.    Not -- a lot of times we don't necessarily

17   know they're terminated until after they've gone, so

18   it depends.  If we've been -- currently, we do not

19   but, historically, if we've known that that is their

20   final paycheck, then, yes.

21       Q.    Is it just one payment that's deducted or

22   the balance?

23       A.    The balance.

24       Q.    Okay.  So if you're aware that an employee

25   who's terminating has an unpaid balance, then the

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 9 of 17

1    entire balance is deducted from their final

2    paycheck?

3        A.    Yes.

4        Q.    Okay.  And then -- so then you said the

5    rebates also go into this.  That's the $2 per shoe

6    ordered through payroll deduction?

7        A.    The rebates are also in this account, yes.

8        Q.    And then the shoe credits, what are those?

9        A.    There is -- once a year, team leader and

10   above get a $25 credit to offset the cost of the

11   shoes.

12       Q.    And is that only applied to shoes

13   purchased or is it per --

14       A.    It's through payroll deducts, because

15   those are the only ones that we're aware of.

16       Q.    Okay.  So let's say that a team leader

17   goes a year without buying any shoes.

18       A.    Uh-huh.

19       Q.    Is $25 still applied to this account?

20       A.    No.

21       Q.    Only if they purchase shoes?

22       A.    Yes.

23       Q.    All right.  And so these would -- then

24   would be a total -- these numbers that we're looking

25   at on Exhibit 4 would be a total of the write-offs,

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 10 of 17

1          A.    Yes.

2          Q.    **Net of write-offs, rebates and shoe**

3    **credits?**

4          A.    Yes.

5          Q.    **All right.**

6              MR. STUBBLEFIELD:    There is a reason why I

7    didn't study accounting.

8    **BY MR. EGAN:**

9          Q.    **And just so we're clear, that $2 rebate,**

10    **that's never refunded or applied to any individual**

11    **employee, is it?**

12         A.    That is true.

13         Q.    **It's correct that it's not?**

14         A.    That is correct that it's not.

15         Q.    **All right.  So employees pay the full**

16    **price, Jack in the Box pays the shoe company the**

17    **full price, and then Jack in the Box receives a $2**

18    **rebate later that's applied to a different account?**

19         A.    It's applied against the write-offs and

20    the credits, yes.

21         Q.    Okay.  Is there any reason why we don't

22    have -- why we didn't bring a rebate check, or is

23    that just --

24         A.    You know, we just asked last minute last

25    night, and this is the -- it was provided quickly.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 11 of 17

1  Protection?

2      A.   Okay.  It's changed recently.  Yes, I

3  believe that to be true.

4      Q.   Okay.  That was meant to be a question,

5  not a statement.

6      A.   Yes.

7      Q.   But that's the general area that he's in?

8      A.   Yes.

9      Q.   All right.  And then Lisa Dearing, what's

10  her current position?

11      A.   She's the payroll representative.

12      Q.   And what information did Lisa Dearing

13  provide to you?

14      A.   She provided this.

15      Q.   That's Exhibit 3?

16      A.   Yes.

17      Q.   And what information did Mr. James provide

18  to you?

19      A.   He indicated that there was no written --

20  written agreement as to the rebates.

21      Q.   Okay.  And do you know that to be the

22  case, or you're relying on him?

23      A.   I am relying on him.  I have not seen any

24  written.

25      Q.   And do you understand that to be true for

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 12 of 17

1        Q.    Okay.  And I understand -- Mr. Parker made

2    a brief statement before we went on the record, but

3    just so it's on the record, you're being produced

4    today as Jack in the Box's representative to speak

5    on the tracking of the shoe rebate through the

6    accounting system?

7        A.    Yes.

8        Q.    Okay.  We've already spoken with you

9    before about your own personal knowledge, but today

10   you're here on behalf of Jack in the Box?

11       A.    Yes.

12       Q.    Okay.  The rebate -- the $2 rebate per

13   shoe, per pair of shoes purchased, has that been the

14   same since -- well, how long has that been in place?

15       A.    I'm not aware of any changes --

16       Q.    Okay.

17       A.    -- to that.

18       Q.    And I couldn't tell before from my notes.

19   I think you said -- is it currently the policy that

20   if you're aware an employee is going to be

21   terminated and they have a balance from a shoe

22   purchase, that that full balance is deducted from

23   their final paycheck?

24       A.    It's currently the policy to only do one

25   payment.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 13 of 17

1      Q.    Okay.  And how long has that been the

2  policy?

3      A.    About a week.

4      Q.    Okay.  All right.  And what -- before

5  that, what was the policy?

6      A.    We were deducting any remaining balance.

7      Q.    Oh, okay.  Perhaps I misunderstood.  So --

8      A.    Okay.

9      Q.    -- a week ago the policy became to only

10  deduct one of the four payments from the final

11  check.  Is that what you're --

12      A.    Right.

13      Q.    Okay.

14      A.    So if after one payment there were three

15  left, we were taking the three out from their final

16  paycheck.

17      Q.    Before a week ago?

18      A.    Yes.

19      Q.    And what is it now?

20      A.    We are taking only one.

21      Q.    Only one.  So let's say that they worked,

22  received one paycheck in the course of their work,

23  and then were terminated.  They will have only made

24  two full payments, including the one off that other

25  final check?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 14 of 17

```
 1  a $2 rebate every time somebody buys shoes?

 2            MR. EGAN:  Yes.

 3            MR. PARKER:  Okay.

 4            THE WITNESS:  I assume so.  The -- what

 5  you're asking about whether or not they were

 6  terminated --

 7  BY MR. EGAN:

 8       Q.   Right.

 9       A.   -- we're paying the rest of those, so

10  Shoes for Crews wouldn't have knowledge.

11       Q.   I see.  So those are independent from each

12  other?

13       A.   Yes.

14       Q.   Whether someone pays all of the shoe

15  payments or not, the $2 rebate is independent of

16  that?

17       A.   Yes.

18            MR. EGAN:  Okay.  That's what I wanted to

19  know. Mr. Parker has the ability to ask you any

20  questions now, but other than that, those were all

21  of my questions. Thank you.

22            THE WITNESS:  Okay.

23            MR. PARKER:  Okay.  I have no questions.

24  Thank you very much.

25            MR. EGAN:  Thanks for coming in --
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 15 of 17

CERTIFICATE OF VIDEOGRAPHER

1

2

3      I the undersigned, Jamie Carlson, am a videographer

4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

5  certify that I have accurately made the video recording of

6  the deposition of Wendy Sanderlin, in the above captioned

7  matter on the 16th day of February, 2012, taken at the

8  location of 9330 Balboa Avenue, Corporate Headquarters,

9  Diego, CA 92123, consisting of 1 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/16/2012

24  Date

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 16 of 17

```
 1                      CERTIFICATE

 2

 3   I KRISTY A. HUTCHINS, Certified Shorthand Reporter for the

 4   State of California, do hereby certify:

 5

 6   That the witness in the foregoing deposition was by me

 7   duly sworn to testify to the truth, the whole truth and

 8   nothing but the truth in the foregoing cause; that the

 9   deposition was taken by me in machine shorthand and later

10   transcribed into typewriting, under my direction, and that

11   the foregoing contains a true record of the testimony of

12   witness.  Dated this 1st day of March, 2012, at San Diego,

13   California.

14

15

16

17

18

19   _____

20   KRISTY A. HUTCHINS

21   C.S.R. NO. 13551

22

23

24

25
```

**NAEGELI REPORTING**
*"The Deposition Experts"*

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 5
Page 17 of 17



**Oregon**

John A. Kitzhaber, MD, Governor

**Department of Consumer and Business Services**
Fiscal and Business Services
350 Winter St. NE, Room 400
P.O. Box 14480
Salem, OR 97309-0405
503-947-7977
Fax: 503-378-3134
www.oregon.gov/DCBS/FABS

February 8, 2012

Mr. Jon M. Egan
240 Sixth Street
Lake Oswego, OR 97034-2931

Dear Mr. Egan,

This is in response to your inquiries of February 1, 2012, regarding the Workers' Benefit Fund (WBF) assessment for Jack in the Box, Inc. This information is being provided under Oregon Revised Statute (ORS) 192.420 and 192.410(4).

To calculate the WBF assessment owed each quarter, the number of hours worked by each subject worker is multiplied by the assessment rate in effect for that quarter. ORS 656.506 (2) and (3) (as well as Oregon Administrative Rule (OAR) 436-070-0020(1)(b)) require that no more than half of the calculated assessment may be paid by the worker.

Listed below are the WBF assessment rates that were in effect from 2003-2012, and the dates each year's rate notice was mailed to employers.

| Year | WBF assessment rate | Employee portion | Date Notice sent to Employers |
|------|---------------------|------------------|-------------------------------|
| 2003 | .036 | .018 | 10/21/2002 |
| 2004 | .034 | .017 | 10/21/2003 |
| 2005 | .034 | .017 | 10/21/2004 |
| 2006 | .030 | .015 | 10/21/2005 |
| 2007 | .028 | .014 | 10/20/2006 |
| 2008 | .028 | .014 | 10/23/2007 |
| 2009 | .028 | .014 | 10/21/2008 |
| 2010 | .028 | .014 | 10/23/2009 |
| 2011 | .028 | .014 | 11/15/2010 |
| 2012 | .028 | .014 | 11/18/2011 |

Rate notices are mailed to the employer address of record as provided on the Combined Employer's Registration form that is submitted to the Oregon Employment Department when an employer registers for Oregon payroll tax reporting. Rate notices for 2003-2012 were sent to Jack in the Box Inc. at 9330 Balboa Ave, San Diego, CA 92123.

From 2003-2007 and fourth quarter 2009 to present, the account has had no credits other than penny credits created by discrepancies between how the employer and our automated system round the assessment calculation.

For first quarter 2008 through second quarter 2009, the employer filed amended reports. These amendments resulted in overpayments, which the employer requested be applied to offset debt in third quarter 2009.

Sincerely,

Maureen Ficek

Maureen Ficek, Assistant Manager
WBF Assessment Section
Dept. of Consumer & Business Services
503-947-7944



EXHIBIT
9
Kluser



## NOTICE TO OREGON EMPLOYERS
### NOVEMBER 18, 2011

---

### WHAT EMPLOYERS WILL PAY FOR WORKERS' COMPENSATION IN 2012:

- ■ Workers' compensation insurance premiums: The average pure premium rate will increase by 1.9 percent from the average 2011 level. Pure premiums are the base rates, before insurer costs are added.

- ■ Workers' Benefit Fund ("cents-per-hour") assessment: 2.8 cents per hour or partial hour worked by each paid employee subject to workers' compensation coverage, unchanged from the past five years.

- ■ Premium assessment: 6.2 percent for 2012, based on premiums paid, a decrease from 6.4 percent in 2011.

**Please share this notice with your payroll and risk management staff.**

---

## 2012 Workers' Compensation Insurance Average Premium Rate

The average pure premium rate Oregon employers will pay for workers' compensation insurance in 2012 will increase by 1.9 percent from the average 2011 level. The pure premium rate reflects market conditions in Oregon and is based on a recommendation from the National Council on Compensation Insurance (NCCI). Before this year's increase, the rate had decreased more than 60 percent since 1990, saving employers billions of dollars. The 1.9 percent increase in 2012 — driven by declining wages and increasing medical costs — represents an average across all types of businesses. Rates for specific businesses and industry groups may be higher or lower, depending on group and individual claim records. Your insurance carrier will provide you with rate information for policy year 2012. Employers pay their premiums directly to their insurers. Premiums do not fund state programs or services.

## 2012 Workers' Benefit Fund Assessment ("Cents-Per-Hour") Rate

For 2012, the Department of Consumer and Business Services has set the Workers' Benefit Fund assessment rate at 2.8 cents, unchanged from the past five years. This applies to each full or partial hour worked by each paid individual that an employer is required or chooses to provide with workers' compensation insurance coverage. This fund pays for programs that provide direct benefits to injured workers and their beneficiaries. The fund also provides money to help employers help injured workers return to work. Employers who fail to provide workers' compensation coverage required by law are still subject to the assessment. The rate of 2.8 cents per hour is the employer's and worker's rate combined. Employers pay at least half (1.4 cents per hour) of this assessment, and deduct no more than half from workers' wages. Each quarter, employers use Forms OQ and OTC (or approved electronic equivalents) to report and pay the assessment through Oregon's Combined Payroll Tax Reporting System. For more information about the assessment, go to www.oregon.gov/DCBS/FABS/wbf.shtml, call 503-378-2372, or e-mail wbfassess.fabs@state.or.us.

## 2012 Workers' Compensation Premium Assessment Rate

Effective Jan. 1, 2012, the assessment used to fund workers' compensation related programs and workplace safety and health programs that serve Oregon employers and workers will be set at an amount equal to 6.2 percent of the premiums charged for workers' compensation coverage, a decrease from 6.4 percent in 2011. Self-insured employers and self-insured employer groups will continue to pay an additional 0.2 percent into a reserve to pay claims in the event of a bankruptcy. Workers' compensation insurers, self-insured employers, and self-insured employer groups pay this assessment to the state. Insurers can pass on the cost of the assessment to the employers they cover, but must identify that cost as a separate line item on billing statements.

---

> For more information about workers' compensation costs, contact your insurer,
> call the Oregon Department of Consumer and Business Services, 800-452-0288,
> or visit www.dcbs.oregon.gov and click on "Workers' Compensation Rates."

## Workers' Compensation Services for Employers

The Department of Consumer and Business Services provides many programs and services that have driven Oregon's success in keeping workers' compensation costs low and continuously improving workplace safety and health.

**Return-to-work programs:** Wage subsidies, premium exemptions, and reimbursements for worksite modifications and certain purchases. www.oregonrtw.info, 503-947-7813 or 800-445-3948 (toll-free)

**Safety and health consultations:** Free, confidential, on-site consultations from Oregon OSHA. 503-378-3272, 800-922-2689 or e-mail consult.web@state.or.us

**Small Business Ombudsman for Workers' Compensation:** For employers looking for workers' compensation insurance coverage and needing help in claim processing or claim management. 503-378-4209

**Training:** Oregon OSHA training on basic safety and health programs, safety committees, and accident investigation as well as technical training on specific topics such as ergonomics and excavations. 503-947-7443, 888-292-5247 or www.orosha.org. Workers' compensation training, conferences, workshops, and speakers. 503-947-7515

**Dispute resolution:** Help resolving disputes concerning medical services, medical fees, vocational assistance, claim closures, and workers' compensation insurance coverage issues. 503-947-7816 or 800-452-0288 (toll-free)

Premium Rate Information Enclosed

2012 Workers' Compensation

PRSRT STD
US POSTAGE
PAID
SALEM OR
PERMIT NO 24

Oregon Department of
Consumer and Business Services
350 Winter St. NE
P.O. Box 14480
Salem, OR 97309-0405


DEPARTMENT OF
CONSUMER
& BUSINESS
SERVICES

JITB 104125   Exhibit 7
Page 2 of 2

**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
**Jon M. Egan, PC**
240 Sixth Street
Lake Oswego, OR 97034-2931
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JESSICA GESSELE, ASHLEY GESSELE, NICOLE GESSELE, TRICIA TETRAULT** and **CHRISTINA LUCHAU**, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>**JACK IN THE BOX INC. A CORPORATION OF DELAWARE**,<br><br>    Defendant. | Case No. 3:10-cv-960-ST<br><br>DECLARATION OF AUTHENTICATION |

I do hereby declare and say:

1.    My name is ___ANNETTE    STEWART___.

2.    My employer is Business Software, Inc. ("BSI").

3.    My current position is ___DIRECTOR, CUSTOMER SUPPORT SERVICES___

4.    I have been designated as the agent of BSI's custodian of records for purposes of

       authenticating the documents produced in response to a subpoena duces tecum

       in the above-captioned case. All statements herein are made of my own personal

**Declaration of Authentication**                                                    Page 1

Exhibit 8
Page 1 of 41

knowledge, and I am competent to testify thereto.

5.   On March 20, 2012, counsel for BSI emailed counsel for the Plaintiffs 24 documents responsive to Plaintiffs' counsel's subpoena. Copies of each of those documents are attached hereto, Bates-numbered BSI 0001 – BSI 0082. Each of the documents was produced in its native electronic format (or, if no native electronic format existed, in PDF format) and is a true and correct copy of the original. All documents produced were created in the regular and normal course of business by an individual or individuals at BSI with personal knowledge of their contents and charged with their production as part of their normal duties. None of the documents produced were created for the purposes of this or any other litigation.

6.   The original electronic file entitled "BSI_Tax Order Notification.pdf" and Bates-numbered PDF file entitled "BSI 0001_BSI_Tax Order Notification.pdf" and Bates-numbered BSI 0001 is a January 14, 1997 order form showing that a license in BSI-TAX was granted to Jack in the Box predecessor corporation Foodmaker, Inc.

7.   The original electronic file entitled "BSI-Docs.pdf" and Bates-numbered PDF file entitled "BSI 0002-04_BSI-Docs.pdf" and Bates-numbered BSI 0002 – BSI 0004 contains the documents showing Jack in the Box's cancellation of support for BSI-TAX in 2003.

8.   The original electronic file entitled "jac Amend 4 090630.pdf" and Bates-numbered PDF file entitled "BSI 0005-06_Amendment No. 4.pdf" and Bates-numbered BSI 0005 – BSI 0006 is a 2009 amendment to BSI's contract with Jack in the Box.

9.    The original electronic file entitled "jac Amend No5 100713.pdf" and Bates-numbered PDF file entitled "BSI 0007_Amendment No. 5.pdf" and Bates-numbered BSI 0007 is a 2010 amendment to BSI's contract with Jack in the Box.

10.    The original electronic file entitled "jac PVMA 040712.pdf" and Bates-numbered PDF file entitled "BSI 0008-10_Platform Version Mod. Agreement.pdf" and Bates-numbered BSI 0008 – BSI 0010 is a 2004 Platform Version Modification Agreement.

11.    The original electronic file entitled "Platform Change Req. Agreement.pdf" and Bates-numbered PDF file entitled "BSI 0011-13_Platform Change Req. Agreement.pdf" and Bates-numbered BSI 0011 – BSI 0013 is a 2003 Platform Change Requirements Agreement.

12.    The original electronic file entitled "Platform Version Change Req. Agreement.pdf" and Bates-numbered PDF file entitled "BSI 0014-16_Platform Version Change Req. Agreement.pdf" and Bates-numbered BSI 14 – BSI 0016 is a 2005 Platform Version Change Requirements Agreement.

13.    The original electronic file entitled "Sublicense_Support Notification.pdf" and Bates-numbered PDF file entitled "BSI 0017-18_Sublicense_Support Notification.pdf" and Bates-numbered BSI 0017 – BSI 0018 is a 2001 order form showing that a license in TaxFactory was granted to Jack in the Box.

14.    The original electronic file entitled "Support agreement.pdf" and Bates-numbered PDF file entitled "BSI 0019-21_Support agreement.pdf" and Bates-numbered BSI 0019 – BSI 0021 is the 2001 contract between Jack in the Box and BSI for support for BSI-TAX.

15.    The original electronic file entitled "TaxFactory_Locator Upgrade_Support

**Declaration of Authentication**                                                          Page 3

Exhibit 8
Page 3 of 41

Agmt.pdf" and Bates-numbered PDF file entitled "BSI 0022-25_TaxFactory_Locator Upgrade_Support Agmt.pdf" and Bates-numbered BSI 0022 – BSI 0025 is the 2001 contract between Jack in the Box and BSI for support for TaxFactory.

16. Since 1997, BSI has made Cylic and Release Bulletins available for download by our customers through our website.  Customers are notified via e-mail when a new Cyclic or Release Bulletin is posted.  The original electronic file entitled "TF 60 m Client notice.rtf" and Bates-numbered BSI 0026 (included in Bates-numbered PDF file entitled "BSI 0026-28_Patti Odell emails.pdf") is an e-mail notice sent on August 13, 2004 from BSI employee Patty Odell to Jack in the Box (among others) regarding the TaxFactory Cyclic Release 6.0.m client package.

17. The original electronic file entitled "TF 70 b AS400-RPB API changes.rtf" and Bates-numbered BSI 0027 – BSI 0028 (included in Bates-numbered PDF file entitled "BSI 0026-28_Patti Odell emails.pdf") is a September 16, 2004 email from BSI employee Patty Odell to Jack in the Box (among others) regarding the TaxFactory Release 7.0.b.

18. The original electronic file entitled "tfu06m.htm" and Bates-numbered PDF file entitled "BSI 0029-32_Cyclic Data_Version m.pdf" and Bates-numbered BSI 0029 – BSI 0032 is an August 2, 2004 document describing the contents of Cyclic Data – Version m for TaxFactory Release 6.0.

19. The original electronic file entitled "tfu07b.htm" and Bates-numbered PDF file entitled "BSI 0033-36_Cyclic Data_Version b.pdf" and Bates-numbered BSI 0033 – BSI 0036 is an October 5, 2004 document describing the contents of Cyclic Data – Version B for TaxFactory Release 7.0.

20. The original electronic file entitled "tfu06026.htm" and Bates-numbered PDF file entitled "BSI 0037-40_Regulatory Bulletin No. 26.pdf" and Bates-numbered BSI 0037 – BSI 0040 is a March 6, 2000 document describing the contents of Regulatory Bulletin Number 26 for TaxFactory Release 6.0.

21. The original electronic file entitled "tfu06049.htm" and Bates-numbered PDF file entitled "BSI 0041-45_Regulatory Bulletin No. 49.pdf" and Bates-numbered BSI 0041 – BSI 0045 is a November 6, 2000 document describing the contents of Regulatory Bulletin Number 49 for TaxFactory Release 6.0.

22. The original electronic file entitled "tfu06078.htm" and Bates-numbered PDF file entitled "BSI 0046-49_Regulatory Bulletin No. 78.pdf" and Bates-numbered BSI 0046 – BSI 0049 is a May 3, 2001 document describing the contents of Regulatory Bulletin Number 78 for TaxFactory Release 6.0.

23. The original electronic file entitled "tfu06114.htm" and Bates-numbered PDF file entitled "BSI 0050-53_Regulatory Bulletin No. 114.pdf" and Bates-numbered BSI 0050 – BSI 0053 is a December 14, 2001 document describing the contents of Regulatory Bulletin Number 114 for TaxFactory Release 6.0.

24. The original electronic file entitled "tfu06115.htm" and Bates-numbered PDF file entitled "BSI 0054-60_Regulatory Bulletin No. 115.pdf" and Bates-numbered BSI 0054 –BSI 0060 is a December 21, 2001 document describing the contents of Regulatory Bulletin Number 115 for TaxFactory Release 6.0.

25. The original electronic file entitled "tfu06246.htm" and Bates-numbered PDF file entitled "BSI 0061-64_Regulatory Bulletin No. 246.pdf" and Bates-numbered BSI 0061 – BSI 0064 is a November 14, 2003 document describing the contents of Regulatory Bulletin Number 246 for TaxFactory Release 6.0., including the

**Declaration of Authentication**

decrease in the tax rate for the Oregon Employee Workers' Benefit Fund Assessment from 1.8¢ per hour to 1.7¢ per hour, effective 1/1/2004.

26.   The original electronic file entitled "tfu07012.htm" and Bates-numbered PDF file entitled "BSI 0065-68_Regulatory Bulletin No. 012.pdf" and Bates-numbered BSI 0065 – BSI 0068 is a November 14, 2003 document describing the contents of Regulatory Bulletin Number 012 for TaxFactory Release 7.0., including the decrease in the tax rate for the Oregon Employee Workers' Benefit Fund Assessment from 1.8¢ per hour to 1.7¢ per hour, effective 1/1/2004.

27.   The original electronic file entitled "TFU07121.HTM" and Bates-numbered PDF file entitled "BSI 0069-72_Regulatory Bulletin No. 121.pdf" and Bates-numbered BSI 0069 – BSI 0072 is a November 23, 2005 document describing the contents of Regulatory Bulletin Number 121 for TaxFactory Release 7.0, including the decrease in the tax rate for the Oregon Employee Workers' Benefit Fund Assessment from 1.7¢ per hour to 1.5¢ per hour, effective 1/1/2006.

28.   The original electronic file entitled "TFU07167 .HTM" and Bates-numbered PDF file entitled "BSI 0073-77_Regulatory Bulletin No. 167.pdf" and Bates-numbered BSI 0073 – BSI 0077 is a November 10, 2006 document describing the contents of Regulatory Bulletin Number 167 for TaxFactory Release 7.0, including the decrease in the tax rate for the Oregon Employee Workers' Benefit Fund Assessment from 1.5¢ per hour to 1.4¢ per hour, effective 1/1/2007.

29.   The original electronic file entitled "tfu08007.htm" and Bates-numbered PDF file entitled "BSI 0078-82_Regulatory Bulletin No. 007.pdf" and Bates-numbered BSI 0078 – BSI 0082 is a November 10, 2006 document describing the contents of Regulatory Bulletin Number 007 for TaxFactory Release 8.0, including the

decrease in the tax rate for the Oregon Employee Workers' Benefit Fund

Assessment from 1.5¢ per hour to 1.4¢ per hour, effective 1/1/2007.

DATED _APRIL 2_____, 2012

**I hereby declare and certify that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

_____
Signature

**Declaration of Authentication**

Page 7

Exhibit 8
Page 7 of 41

**From:**          Patty Odell
**Sent:**          Friday, August 13, 2004 11:08 AM
**To:**            Patty Odell
**Subject:**       BSI TaxFactory 6.0.m Client Package


August 13, 2004


Dear Client:

The TaxFactory Cyclic Release 6.0.m client package has been corrected and re-posted on the BSI web site. A problem with the printing of the What-If Detail Calculation Results has been corrected.

If you have already upgraded to TaxFactory Cyclic 6.0.m you will need to re-download and re-install the TaxFactory Cyclic 6.0.m Client package only.

To download the Client Software, Server Software and Cyclic Data:
- Go to www.bsi.com
- Click on the Customer Portal
- Log in using your User ID and Password
- Select TaxFactory
- Select Support Services
- Select Cyclic Bulletins
- Select "go" at the top of the page to bring up the Client Package and Server Package Download

To read the General Instructions for Downloading:
- Click on the "Help" button to read the General Instructions for Downloading

To view and print the Cyclic and Cyclic Data Bulletins:
- Select Bulletin Information and Bulletin Data Information under Documents

If you have not already obtained the TaxFactory Cyclic 6.0.m installation password, the contact for your company should e-mail BSI.SECURITY@BSI.COM Monday through Friday between the hours of 9:00 a.m. and 5:30 p.m. Eastern Time, excluding holidays, indicating in the subject "Password Request – TF 6.0.m." Requests outside of these hours will be processed on the next business day.


We apologize for any inconvenience this may have caused.

Please contact support@bsi.com if you have further questions.

Thank you,
BSI Support Staff

| | |
|---|---|
| **From:** | Patty Odell |
| **Sent:** | Thursday, September 16, 2004 11:20 AM |
| **To:** | Patty Odell |
| **Subject:** | BSI TaxFactory 7.0.b |

**TaxFactory 7.0.b**
**Notice of AS400 – RPG API changes**
**and Mandatory Cyclic Upgrade**
**(September 16, 2004)**

Release 7.0.b of TaxFactory is scheduled to be provided to you by September 20th, 2004. TaxFactory 7.0.b corrects the length of a data structure in the AS400 QRPGLESRC/RPGIFPGM API copy module. We reduced the TaxLocator field TLTREC from 30 characters to 28 characters and changed it to be a multiple occurrence (50) data structure. Fields TLTX01 – TLTX50 were modified according to the new TLTREC data structure definition.

This upgrade also includes non-resident reciprocal tax credit processing. Effective 7/1/2004, Maryland has enacted an additional 1.25% non-resident tax rate. This Maryland non-resident tax increase only applies to those Maryland non-residents not subject to a county income tax, such as residents of a Delaware or a New York locality that imposes a non-resident tax.

TF 7.0.b also introduces new calculation methods that will use year-to-date wages instead of annualized wages. Calculation methods are used when overriding BSI supported tax formulas or setting up unique Custom Tax formulas. These new methods can be established via the Group Overrides or Custom Formula Modeling Tools. The new calculation methods utilize the year-to-date wage and year-to-date tax parameters, which must be passed in the program-to-program interface between TaxFactory and your payroll system.

Normally cyclic bulletin changes are optional. However, due to the Maryland Regulatory data changes and other cyclic data format changes, this **mandatory cyclic upgrade** must be installed as soon as possible, but no later than <u>November 30th, 2004</u> in order to keep your TaxFactory system current.

Please note that a complete list of 7.0.b features and enhancements will be provided with the Cyclic Bulletin.

If you have any questions, please email us at <u>support@bsi.com</u>.

Sincerely,

BSI Support Staff



# TaxFactory™ Release 6.0
# Regulatory Bulletin Number 26

### March 6, 2000

© Business Software, Inc. 2000
Confidential Information Proprietary To BSI

## ENGINES AFFECTED BY DATA CHANGES:

| | |
|---|---|
| **BSI-TAX™ Engine** | X |
| **ReciprocalTax™ Engine** | X |
| **WageAssessor™ Engine** | |
| **BenefitPlan™ Engine** | X |
| **PensionTax™ Engine** | |
| **TaxLocator™ Engine** | |

## BSI-TAX™ Engine

| | |
|---|---|
| **Federal Taxes** | |
| | |
| **States and Possessions Taxes** | X |
| | |
| **Local Taxes** | X |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| | | | | Adds an Alabama Job Development Fee which is identical to the existing withholding formula. This |

BSI 0037   Exhibit 8
Page 11 of 41

| Alabama | 00010000 | Withholding | N/A | is an employee paid tax used by approved employers who require a means to identify covered employees and amounts withheld for reporting purposes. This change is effective immediately.<br><br>If this fee is applicable to your organization and you wish to use the fee in lieu of the state withholding formula, pass the value "2" in the BSI Formula Number parameter of the program-to-program interface between BSI-TAX and your payroll system. |
|---|---|---|---|---|
| California | 00060000 | Employee Disability Tax | 04/01/2000 | Increases the tax rate from .5% to .7% and the maximum tax from $231.64 to $324.29. This tax will automatically self adjust based on current and year-to-date information, unless self adjust has been turned off. |
| California | 00060000 | Employee Voluntary Disability Tax | 04/01/2000 | Increases the tax rate from .5% to .7% and the maximum tax from $231.64 to $324.29. This tax will automatically self adjust based on current and year-to-date information, unless self adjust has been turned off. |
| New Mexico | 00350000 | Employee Worker Compensation | 01/01/2000 | Adds a new tax (Tax Type=40). This is a flat $2.00 quarterly tax which is assessed on each employee who is covered under worker's compensation on the last day of each quarter. Please note that you are responsible for making sure that this tax is only requested for covered employees. You must also initialize the payroll quarter-to-date accumulators for this tax for the first payroll run in each quarter.<br><br>In order to activate the Employee Worker Compensation Tax type, your payroll code for this tax must be converted in the program to program interface between BSI-TAX and your payroll to the value 40 in the BSI Tax Type parameter. You must also pass the quarter-to-date tax amount prior to this pay period in the To Date Tax parameter. |
| New Mexico | 00350000 | Employer Worker Compensation | 01/01/2000 | Adds a new tax (Tax Type=30). This is a flat $2.00 quarterly tax which is assessed on each employee who is covered under worker's compensation on the last day of each quarter. Please note that you are responsible for making sure that this tax is only requested for covered employees. You must also initialize the payroll quarter-to-date accumulators for this tax for the first payroll run in each quarter.<br><br>In order to activate the Employer Worker Compensation Tax type, your payroll code for this tax must be converted in the program to program interface between BSI-TAX and your payroll to the value 30 in the BSI Tax Type parameter. You must also pass the quarter-to-date tax amount prior to this pay period in the To Date Tax parameter. |
| Oregon | 00410000 | Employee Worker Compensation | 01/01/2000 | Decreases the tax amount from .21 to .20 per hour and changes the description to "EE Workers Benefit Fund Assessment". |
| Oregon | 00410000 | Employer Worker Compensation | 01/01/2000 | Decreases the tax amount from .21 to .20 per hour and changes the description to "ER Workers Benefit Fund Assessment". |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| Tuskegee (City) | 00010013 | AL | Macon | Occupation Tax | 01/01/1999 | Rescinds the minimum taxable |

BSI 0038   Exhibit 8
Page 12 of 41

wage limit of $3,000.

# ReciprocalTax™ Engine

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Louisiana | 00210000 | Withholding | N/A | Modifies the Louisiana resident default reciprocal formula to tax on all taxable wages in all reciprocal states while returning taxable wages based on percent worked in the resident authority. |
| Pennsylvania | 00420000 | Withholding | N/A | Modifies the Pennsylvania resident default reciprocal formula to tax the resident authority only when there is no non-resident tax, ignoring any excess wages in the resident authority. |

# BenefitPlan™ Engine

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | |
| | |
| Local Taxes | X |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| Delaware (City) | 00391116 | OH | Delaware | Withholding | N/A | Modifies the tax formula for all employer contributions to be nontaxable. This change is effective immediately. |

BSI 0039   Exhibit 8
Page 13 of 41

## Comments

| | |
|---|---|
| **BSI will be *closed* on the following day(s):**<br>    **May 29, 2000** | |

## Notes

| | |
|---|---|
| **1.** | It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770 448-3208), e-mail (CUSTOMER.SERVICES@BSIHQ.COM) or regular mail. |
| **2.** | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| **3.** | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team. If you receive your updates via e-mail, set your notification options so that you are immediately notified through your e-mail system when updates are delivered. |
| **4.** | QuickFormulas have been updated for the tax changes listed above.<br><br>QuickFormulas is an Add-On product to TaxFactory.  For more information on QuickFormulas, visit our Web site (WWW.BSIHQ.COM). |

**© Business Software, Inc. 2000**
**Confidential Information Proprietary To BSI**

**BSI 0040**   Exhibit 8
Page 14 of 41

✕ BSIsm.gif (10148 bytes)

# TaxFactory™ Release 6.0
# Regulatory Bulletin Number 49

## November 6, 2000

© Business Software, Inc. 2000
Confidential Information Proprietary To BSI

## ENGINES AFFECTED BY DATA CHANGES:

| | |
|---|---|
| BSI-TAX™ Engine | X |
| ReciprocalTax™ Engine | X |
| WageAssessor™ Engine | |
| BenefitPlan™ Engine | |
| PensionTax™ Engine | X |
| TaxLocator™ Engine | X |

## BSI-TAX™ Engine

| | |
|---|---|
| Federal Taxes | |
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | X |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Illinois | 00170000 | Withholding | 01/01/2000 | Modifies the formula to allow any valid marital status value. |

BSI 0041    Exhibit 8
Page 15 of 41

TFU06049                                                                                          Page 2 of 5

| Maine | 00230000 | Withholding | 01/01/2001 | Changes the withholding bracket tables. |
|-------|----------|-------------|------------|------------------------------------------|
| Minnesota | 00270000 | Withholding | 01/01/2001 | Changes the withholding bracket tables and increases the exemption amount from $2,800 to $2,900.<br><br>Decreases the supplemental flat rate from 7% to 6.25%. |
| Montana | 00300000 | Employer Unemployment | 01/01/2001 | Increases the wage base from $17,700 to $18,200. |
| Oregon | 00410000 | Employee Worker Compensation | 01/01/2001 | Decreases the tax amount from .20 to .18 per hour. |
| Oregon | 00410000 | Employer Worker Compensation | 01/01/2001 | Decreases the tax amount from .20 to .18 per hour. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|-----------|-----------------|-------|--------|----------|----------------|--------------------|
| Texarkana (City) | 00050001 | AR | N/A | Withholding | N/A | Rescinds the null formula previously issued in Tax Update Bulletin #46. A cyclic release will be required to utilize a null formula. |
| North Kidder (Township) | 00423086 | PA | Carbon | Withholding | 10/01/1993 | Adds a new authority. This tax carries a .5% resident and 1% non-resident tax rate.<br><br>Note: BSI is re-using a duplicate code that was established for Fairview Borough, Erie County. The code which is currently used for Fairview Borough is 00420856. |
| Independent (Township) | 00423087 | PA | Venango | Withholding | 10/01/1993 | Adds a new authority. This tax carries a 0% resident and non-resident tax rate.<br><br>Note: BSI is re-using a duplicate code that was established for Fairview Township, Erie County. The code which is currently used for Fairview Township is 00420857. |
| Texarkana (City) | 00480001 | TX | N/A | Withholding | N/A | Rescinds the null formula previously issued in Tax Update Bulletin #46. A cyclic release will be required to utilize a null formula. |

## ReciprocalTax™ Engine

BSI 0042   Exhibit 8
Page 16 of 41

| Federal Taxes | |
|---|---|
| **States and Possessions Taxes** | |
| | |
| **Local Taxes** | X |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| North Kidder (Township) | 00423086 | PA | Carbon | Withholding | 10/01/1993 | Adds the effective rate of 50%, to be used with Weatherly Area School District. |
| Independent (Township) | 00423087 | PA | Venango | Withholding | 10/01/1993 | Adds the effective rate of 0%, to be used with Oil City School District. |

## PensionTax™ Engine

| Federal Taxes | |
|---|---|
| | |
| **States and Possessions Taxes** | X |
| | |
| **Local Taxes** | |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Maine | 00230000 | Periodic Withholding | 01/01/2001 | Changes the withholding bracket tables. |
| Minnesota | 00270000 | Periodic Withholding<br><br>Non-Periodic Eligible Rollover<br><br>Non-Periodic Nonqualifying | 01/01/2001 | Changes the withholding bracket tables and increases the exemption amount from $2,800 to $2,900.<br><br>Decreases the supplemental flat rate from 7% to 6.25%. |

BSI 0043    Exhibit 8
Page 17 of 41

TFU06049

## TaxLocator™ Engine

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | |
| | |
| Local Taxes | X |

## Local Taxes

| Authority | BSI System Code | State | County | Change Description |
|---|---|---|---|---|
| Alabama Locals | N/A | AR | N/A | Modifies various place names. |
| California Locals | N/A | CA | N/A | Changes place names to exclude parentheses. |
| Colorado Locals | N/A | CO | N/A | Changes place names to exclude parentheses. |
| Indiana Locals | N/A | IN | N/A | Changes place names to exclude parentheses. |

## Comments

BSI will be *closed* on the following day(s):
November 23 & 24, 2000
December 25 & 26, 2000
January 1 & 15, 2001

## Notes

| | |
|---|---|
| 1. | During the months of November and December, special fees will apply to all requests for shipping Tax Sequential Files. |
| 2. | It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770) 448-3208, e-mail (CUSTOMER.SERVICES@BSIHQ.COM) or regular mail. |
| 3. | Information on TaxFactory Support Services is located in the TaxFactory Online Help. |

BSI 0044  Exhibit 8
Page 18 of 41

| | |
|---|---|
| 4. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team. If you receive your updates via e-mail, set your notification options so that you are immediately notified through your e-mail system when updates are delivered. |
| 5. | QuickFormulas and Pension QuickFormulas have been updated for the tax changes listed above.<br><br>QuickFormulas and Pension QuickFormulas are Add-On products to TaxFactory.  For more information on these products, visit our Web site (WWW.BSIHQ.COM). |

© Business Software, Inc. 2000
Confidential Information Proprietary To BSI

BSI 0045    Exhibit 8
Page 19 of 41



# TaxFactory™ Release 6.0
# Regulatory Bulletin Number 246

## November 14, 2003

## ENGINES AFFECTED BY DATA CHANGES:

| | |
|---|---|
| **BSI-TAX™ Engine** | X |
| **ReciprocalTax™ Engine** | |
| **WageAssessor™ Engine** | |
| **BenefitPlan™ Engine** | X |
| **PensionTax™ Engine** | X |
| **TaxLocator™ Engine** | |

## BSI-TAX™ Engine

| | |
|---|---|
| **Federal Taxes** | |
| | |
| **States and Possessions Taxes** | X |
| | |
| **Local Taxes** | X |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| **Kentucky** | 00210000 | **Withholding** | 01/01/2004 | Increases the standard deduction from $1,830 to $1,870. |
| | | | | |

BSI 0061

Exhibit 8
Page 20 of 41

| North Carolina | 00370000 | Withholding | 01/01/2004 | Increases the standard deduction for Married and Qualifying Widow(er) from $2,750 to $3,000. |
| Oregon | 00410000 | Employer Unemployment | 01/01/2004 | Increases the maximum wage base from $26,000 to $27,000. |
| Oregon | 00410000 | Employee Workers' Benefit Fund Assessment | 01/01/2004 | Decreases the tax rate from 1.8% to 1.7% per hour. |
| Oregon | 00410000 | Employer Workers' Benefit Fund Assessment | 01/01/2004 | Decreases the tax rate from 1.8% to 1.7% per hour. |

## BenefitPlan™ Engine

| Federal Taxes | |
|---|---|
| | |
| **States and Possessions Taxes** | **X** |
| | |
| **Local Taxes** | **X** |

## State and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Arizona | 00040000 | Employment Training Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |
| Rhode Island | 00440000 | ER Re-Employment Placement Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |
| Rhode Island | 00440000 | ER Job Devel. Assessment Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| Owensboro (City) | 00210260 | KY | Daviess | Employee Occupation | N/A | Modifies the earnings plan taxability data for various earning plans.  Please refer to your audit report or you may contact BSI support at SUPPORT@BSI.COM to receive a list of effected earning plans. |

# PensionTax™ Engine

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Kentucky | 00210000 | Periodic Withholding<br><br>Non-Periodic Eligible Rollover<br><br>Non-Periodic Non-Qualifying | 01/01/2004 | Increases the standard deduction from $1,830 to $1,870. |
| North Carolina | 00370000 | Periodic Withholding | 01/01/2004 | Increases the standard deduction for Married and Qualifying Widow(er) from $2,750 to $3,000. |

## Comments

BSI will be *closed* on the following day(s):
    November 27 & 28, 2003
    December 25 & 26, 2003
    January 01, 2004

BSI will *close* at Noon on the following day:
    December 17, 2003

## Special Information

Keeping all messages in your Message Viewer may use all available database free space. BSI recommends monitoring table spaces and clearing old messages that are no longer required to prevent this from happening.

## Notes

BSI 0063

Exhibit 8
Page 22 of 41

TFU06246                                                                Page 4 of 4

| | |
|---|---|
| 1. | It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770) 448-3208, e-mail mailto:(CUSTOMER.SERVICES@BSI.COM) or regular mail (155 Technology Parkway, Suite 100, Norcross, GA 30092). |
| 2. | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| 3. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team.  Set your notification options so that you are immediately notified through your e-mail system when updates are available for download. |
| 4. | QuickFormulas™and Pension QuickFormulas™have been updated for the tax changes listed above. |

Copyright 1994-2003 Business Software, Inc.
All Rights Reserved

BSI 0064   Exhibit 8
Page 23 of 41



## TaxFactory™ Release 7.0
## Regulatory Bulletin Number 012

### November 14, 2003

## ENGINES AFFECTED BY DATA CHANGES:

| Engine | |
|---|---|
| **BSI-TAX™ Engine** | X |
| **ReciprocalTax™ Engine** | |
| **WageAssessor™ Engine** | |
| **BenefitPlan™ Engine** | X |
| **PensionTax™ Engine** | X |
| **TaxLocator™ Engine** | |
| **WageAttachment™ Engine** | |

## BSI-TAX™ Engine

| | |
|---|---|
| **Federal Taxes** | |
| | |
| **States and Possessions Taxes** | X |
| | |
| **Local Taxes** | X |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| | 00210000 | Withholding | 01/01/2004 | Increases the standard deduction from $1,830 to |

BSI 0065   Exhibit 8
Page 24 of 41

| Kentucky | | | | $1,870. |
|---|---|---|---|---|
| North Carolina | 00370000 | Withholding | 01/01/2004 | Increases the standard deduction for Married and Qualifying Widow(er) from $2,750 to $3,000. |
| Oregon | 00410000 | Employer Unemployment | 01/01/2004 | Increases the maximum wage base from $26,000 to $27,000. |
| Oregon | 00410000 | Employee Workers' Benefit Fund Assessment | 01/01/2004 | Decreases the tax rate from 1.8% to 1.7% per hour. |
| Oregon | 00410000 | Employer Workers' Benefit Fund Assessment | 01/01/2004 | Decreases the tax rate from 1.8% to 1.7% per hour. |

## BenefitPlan™ Engine

| Federal Taxes | |
|---|---|
| States and Possessions Taxes | X |
| Local Taxes | X |

## State and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Arizona | 00040000 | Employment Training Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |
| Rhode Island | 00440000 | ER Re-Employment Placement Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |
| Rhode Island | 00440000 | ER Job Devel. Assessment Tax | N/A | Deletes the duplicate employee and employer matching benefit and earnings plan data. These changes are effective immediately. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| Owensboro (City) | 00210260 | KY | Daviess | Employee Occupation | N/A | Modifies the earnings plan taxability data for various earning plans.<br><br>Please refer to your audit report or you may contact BSI support |

BSI 0066    Exhibit 8
Page 25 of 41

at SUPPORT@BSI.COM to receive a list of effected earning plans.

# PensionTax™ Engine

| Federal Taxes | |
|---|---|
| | |
| **States and Possessions Taxes** | **X** |
| | |
| Local Taxes | |

# States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Kentucky | 00210000 | Periodic Withholding<br><br>Non-Periodic Eligible Rollover<br><br>Non-Periodic Non-Qualifying | 01/01/2004 | Increases the standard deduction from $1,830 to $1,870. |
| North Carolina | 00370000 | Periodic Withholding | 01/01/2004 | Increases the standard deduction for Married and Qualifying Widow(er) from $2,750 to $3,000. |

# Comments

BSI will be *closed* on the following day(s):
    November 27 & 28, 2003
    December 25 & 26, 2003
    January 01, 2004

BSI will *close* at Noon on the following day:
    December 17, 2003

# Special Information

Keeping all messages in your Message Viewer may use all available database free space.  BSI recommends monitoring table spaces and clearing old messages that are no longer required to prevent this from happening.

BSI 0067   Exhibit 8
Page 26 of 41

# Notes

| | |
|---|---|
| 1. | It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770) 448-3208, e-mail mailto:(CUSTOMER.SERVICES@BSI.COM) or regular mail (155 Technology Parkway, Suite 100, Norcross, GA 30092). |
| 2. | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| 3. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team.  Set your notification options so that you are immediately notified through your e-mail system when updates are available for download. |
| 4. | QuickFormulas$^{TM}$and Pension QuickFormulas$^{TM}$have been updated for the tax changes listed above. |

Copyright 1994-2003 Business Software, Inc.
All Rights Reserved

BSI 0068   Exhibit 8
Page 27 of 41

Case 3:14-cv-01092-BR    Document 182-1    Filed 05/24/19    Page 118 of 194



# TaxFactory™ Release 7.0
# Regulatory Bulletin Number 121

## November 23, 2005

> Please note that BSI will be closed at Noon on Thursday, December 15, 2005 and will re-open for business at 9:00 AM on Friday, December 16, 2005.  Please schedule all BSI-related activities accordingly.

## ENGINES AFFECTED BY DATA CHANGES:

| Engine | |
|---|---|
| BSI-TAX™ Engine | X |
| ReciprocalTax™ Engine | |
| WageAssessor™ Engine | |
| PensionTax™ Engine | |
| TaxLocator™ Engine | |
| WageAttachment™ Engine | |

## BSI-TAX™ Engine

| Tax | |
|---|---|
| Federal Taxes | |
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | X |

## States and Possessions Taxes

| | BSI | Effective | Change Description |
|---|---|---|---|

BSI 0069    Exhibit 8
Page 28 of 41

| Authority | System Code | Tax Type | Date | |
|-----------|-------------|----------|------|---|
| Alaska | 00020000 | Employee Unemployment | 01/01/2006 | Increases the maximum wage base FROM $27,900 TO $28,700.<br><br>Increases the tax rate FROM .5% TO .51% |
| Alaska | 00020000 | Employer Unemployment | 01/01/2006 | Increases the maximum wage base FROM $27,900 TO $28,700. |
| Massachusetts | 00250000 | Employer Retirement Plan - S.S. | N/A | Adds the default tax rate of 1%. |
| Massachusetts | 00250000 | Employer Retirement Plan - MED | N/A | Adds the default tax rate of 1%. |
| Michigan | 00260000 | Withholding | 01/01/2006 | Increases the personal exemption amount FROM $3,200 TO $3,300. |
| Nebraska | 00310000 | Employer Unemployment | 01/01/2006 | Increases the maximum wage base FROM $7,000 TO $8,000. |
| Nebraska | 00310000 | State Unemployment Insurance | 01/01/2006 | Increases the maximum wage base FROM $7,000 TO $8,000. |
| New Jersey | 00340000 | Employee Unemployment | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Unemployment | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employee Health Insurance Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Health Insurance Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800.<br><br>Increases the tax rate FROM .2% TO .4%. |
| New Jersey | 00340000 | Employee Workforce Development Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Workforce Development Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employee Combined UI/WF&SWF/HC/DI Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Combined WF&SWF/HC/DI Tax | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800.<br><br>Increases the tax rate FROM .8175% TO 1.0175%. |
| New Jersey | 00340000 | Employee Disability | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Disability | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |

BSI 0070   Exhibit 8
Page 29 of 41

| New Jersey | 00340000 | Employee Voluntary Disability | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| New Jersey | 00340000 | Employer Voluntary Disability | 01/01/2006 | Increases the maximum wage base FROM $24,900 TO $25,800. |
| North Dakota | 00380000 | Employer Unemployment | 01/01/2006 | Increases the maximum wage base FROM $19,400 TO $20,300. |
| Oklahoma | 00400000 | Employer Unemployment | 01/01/2006 | Decreases the maximum wage base FROM $13,800 TO $13,500. |
| Oregon | 00410000 | Employee Workers Compensation Tax | 01/01/2006 | Decreases the tax rate per hours worked FROM 1.7% TO 1.5%. |
| Oregon | 00410000 | Employer Workers Compensation Tax | 01/01/2006 | Decreases the tax rate per hours worked FROM 1.7% TO 1.5%. |
| Washington | 00530000 | Employer Unemployment | 01/01/2006 | Increases the maximum wage base FROM $30,500 TO $30,900. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| Alexandria (City) | 00210307 | KY | Campbell | Employee Occupation | 01/01/2006 | Increases the maximum wage base FROM $90,000 TO $94,200. |
| Cold Springs (City) | 00210295 | KY | Campbell | Employee Occupation | 01/01/2006 | Increases the maximum wage base FROM $90,000 TO $94,200. |
| Florence (City) | 00210226 | KY | Boone | Employee Occupation | 01/01/2006 | Increases the maximum wage base FROM $90,000 TO $94,200. |
| Newport (City) | 00210258 | KY | Campbell | Employee Occupation | 01/01/2006 | Increases the maximum wage base FROM $90,000 TO $94,200. |
| Vandalia (City) | 00391472 | OH | Montgomery | Withholding | 01/01/2006 | Increases the tax rate FROM 1.75% TO 2%. |
| Tri-Met Trans. District (Other) | 00410101 | OR | N/A | Employer Tri-Met District Excise Tax | 01/01/2006 | Increases the tax rate FROM .6318% TO .6418%. |

## Special Information

**Keeping all messages in your Message Viewer may use all available database free space. BSI recommends monitoring table spaces and clearing old messages that are no longer required to prevent this from happening.**

## Comments

BSI 0071   Exhibit 8
Page 30 of 41

BSI will be *closed* on the following day(s):
   November 24 & 25, 2005
   December 23 & 26, 2005

## Notes

| | |
|---|---|
| 1. | It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770) 448-3208, e-mail (CUSTOMER.SERVICES@BSI.COM) or regular mail (155 Technology Parkway, Suite 100, Norcross, GA 30092). |
| 2. | BSI has two toll free phone numbers that you may use to place calls to the Support Department.  The phone numbers are (877) 274-7873 and (888) 293-3413. |
| 3. | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| 4. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team.  Set your notification options so that you are immediately notified through your e-mail system when updates are available for download. |
| 5. | The BSI Website uses pop-up windows to display information to the user.  If you have software that prevents the display of pop-up windows, you may experience difficulties taking advantage of all the functionality provided by the BSI Website, such as QuickFormulas.  It may be necessary for you to modify the configuration of your pop-up disabling tool to allow the BSI Website to function correctly. |
| 6. | QuickFormulas$^{TM}$ has been updated for the tax changes listed above. |

**BSI_TAG_COPYRIGHT**

BSI 0072   Exhibit 8
Page 31 of 41



# TaxFactory™ Release 7.0
# Regulatory Bulletin Number 167

## November 10, 2006

> **Please note that BSI will be closed at 12:00 PM EST on Friday, November 17, 2006 and will re-open for business at 9:00 AM EST on Monday, November 20, 2006.  Please schedule all BSI-related activities accordingly.**

## ENGINES AFFECTED BY DATA CHANGES:

| | |
|---|---|
| **TaxFactory™ Engine** | X |
| **ReciprocalTax™ Engine** | |
| **WageAssessor™ Engine** | X |
| **PensionTax™ Engine** | X |
| **TaxLocator™ Engine** | X |
| **WageAttachment™ Engine** | |

## TaxFactory™ Engine

| | |
|---|---|
| **Federal Taxes** | |
| | |
| **States and Possessions Taxes** | X |
| | |
| **Local Taxes** | X |

## States and Possessions Taxes

| | BSI | | Effective | |
|---|---|---|---|---|

BSI 0073   Exhibit 8
Page 32 of 41

| Authority | System Code | Tax Type | Date | Change Description |
|---|---|---|---|---|
| Hawaii | 00150000 | Withholding Tax Type 001 | 01/01/2007 | Changes the wage bracket tables. |
| Oregon | 00410000 | Employer Special Payroll Tax Tax Type 009 | 01/01/2007 | Increases the maximum wage base FROM $28,000 TO $29,000. This tax is effective for the first quarter of 2007 only. |
| Oregon | 00410000 | Employer Unemployment Tax Tax Type 010 | 01/01/2007 | Increases the maximum wage base FROM $28,000 TO $29,000. |
| Oregon | 00410000 | Employer Workers Compensation Tax Tax Type 030 | 01/01/2007 | Decreases the tax rate per hours worked FROM 1.5% TO 1.4%. |
| Oregon | 00410000 | Employee Workers Compensation Tax Tax Type 040 | 01/01/2007 | Decreases the tax rate per hours worked FROM 1.5% TO 1.4%. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| South Clackamas Transit District (Other) | 00410103 | OR | Clackamas | Transit District Excise Tax Type 035 | 01/01/2007 | Increases the tax rate FROM .3% TO .5%. |
| Beaver Falls (City) | 00420132 | PA | Beaver | Withholding Tax Type 001 | N/A | Increases the non-resident tax rate FROM .5% TO 1%. |

# WageAssessor™ Engine

| | |
|---|---|
| **Federal Taxes** | **X** |
| | |
| **States and Possessions Taxes** | **X** |
| | |
| **Local Taxes** | **X** |

## ALL Taxes

| Authority | BSI System | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|

BSI 0074   Exhibit 8
Page 33 of 41

| | Code | | | |
|---|---|---|---|---|
| ALL | N/A | N/A | 01/01/2007 | **Increases employee benefit plan contribution non-taxable excludable limit FROM $15,000 TO $15,500 for the following plans:   401k (P001), 403b (P002), 408k (P003), 457b State & Local Government (P004), 7701j (P005 and 457b Tax Exempt Entity (P022).**<br><br>**Increases employee benefit plan contribution non-taxable excludable limit FROM $10,000 TO $10,500 for Simple 401k (P014).**<br><br>**These changes apply to state and local taxing authorities and tax types that follow the Federal benefit plan taxability guidelines.** |

## PensionTax™ Engine

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Maryland | 00240000 | Pension Non Periodic Eligible Rollover<br><br>Tax Type 071 | N/A | Adds the non-periodic eligible rollover distribution method.  Maryland income tax is required to be withheld from an eligible rollover distribution that is also subject to mandatory withholding of Federal income tax.  The withholding amount is equal to the sum of the top marginal state income tax rate and the median local income tax rate.<br><br>This composite State and local formula must be used in lieu of the standard Maryland local non-periodic withholding formulas when the non-periodic distribution is a "Federally-defined non-periodic eligible rollover distribution". Withholding from all other non-periodic distributions is voluntary, and should be calculated in accordance with the withholding methods provided within each of the Maryland City and County non-periodic withholding formulas.<br><br>The tax is determined under this method by applying a flat rate to the eligible rollover distribution if the annual minimum distribution amount  has been met. |

## TaxLocator™ Engine

BSI 0075  Exhibit 8
Page 34 of 41

| Federal Taxes | | |
|---|---|---|
| | | |
| States and Possessions Taxes | | |
| | | |
| Local Taxes | | X |

## Local Taxes

| Authority | BSI System Code | State | County | Change Description |
|---|---|---|---|---|
| Elkland | N/A | OH | Tioga | Adds unique identifier of "Township" to the place name. |
| Tioga | N/A | OH | Tioga | Adds unique identifier of "Township" to Tioga. |
| Tioga | N/A | OH | Tioga | Adds unique identifier of "County" to Tioga. |
| VARIOUS | N/A | OH | VARIOUS | Removes school district from locator mapping data. |

## Special Information

**Keeping all messages in your Message Viewer may use all available database free space. BSI recommends monitoring table spaces and clearing old messages that are no longer required to prevent this from happening.**

## Comments

BSI will be *closed* on the following day(s):
   November 17, 2006 - Close at 12:00 PM EST
   November 23 & 24, 2006
   December 25 & 26, 2006

## Notes

1.   It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770)

BSI 0076   Exhibit 8
Page 35 of 41

|   | |
|---|---|
|   | 448-3208, e-mail (CUSTOMER.SERVICES@BSI.COM) or regular mail (155 Technology Parkway, Suite 100, Norcross, GA 30092). |
| 2. | BSI has two toll free phone numbers that you may use to place calls to the Support Department.  The phone numbers are (877) 274-7873 and (888) 293-3413. |
| 3. | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| 4. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team.  Set your notification options so that you are immediately notified through your e-mail system when updates are available for download. |
| 5. | The BSI Website uses pop-up windows to display information to the user.  If you have software that prevents the display of pop-up windows, you may experience difficulties taking advantage of all the functionality provided by the BSI Website, such as QuickFormulas.  It may be necessary for you to modify the configuration of your pop-up disabling tool to allow the BSI Website to function correctly. |
| 6. | QuickFormulas[TM] and Pension QuickFormulas[TM] have been updated for the tax changes listed above. |

BSI_TAG_COPYRIGHT

BSI 0077   Exhibit 8
Page 36 of 41



# TaxFactory™ Release 8.0
# Regulatory Bulletin Number 007

## November 10, 2006

Please note that BSI will be closed at 12:00 PM EST on Friday, November 17, 2006 and will re-open for business at 9:00 AM EST on Monday, November 20, 2006.  Please schedule all BSI-related activities accordingly.

## ENGINES AFFECTED BY DATA CHANGES:

| | |
|---|---|
| TaxFactory™ Engine | X |
| ReciprocalTax™ Engine | |
| WageAssessor™ Engine | X |
| PensionTax™ Engine | X |
| TaxLocator™ Engine | X |
| WageAttachment™ Engine | |

## TaxFactory™ Engine

| | |
|---|---|
| Federal Taxes | |
| | |
| States and Possessions Taxes | X |
| | |
| Local Taxes | X |

## States and Possessions Taxes

| | BSI | | Effective | |
|---|---|---|---|---|
| | | | | |

BSI 0078   Exhibit 8
Page 37 of 41

| Authority | System Code | Tax Type | Date | Change Description |
|---|---|---|---|---|
| Hawaii | 00150000 | Withholding Tax Type 001 | 01/01/2007 | Changes the wage bracket tables. |
| Oregon | 00410000 | Employer Special Payroll Tax Tax Type 009 | 01/01/2007 | Increases the maximum wage base FROM $28,000 TO $29,000. This tax is effective for the first quarter of 2007 only. |
| Oregon | 00410000 | Employer Unemployment Tax Tax Type 010 | 01/01/2007 | Increases the maximum wage base FROM $28,000 TO $29,000. |
| Oregon | 00410000 | Employee Workers Compensation Tax Tax Type 030 | 01/01/2007 | Decreases the tax rate per hours worked FROM 1.5% TO 1.4%. |
| Oregon | 00410000 | Employee Workers Compensation Tax Tax Type 040 | 01/01/2007 | Decreases the tax rate per hours worked FROM 1.5% TO 1.4%. |

## Local Taxes

| Authority | BSI System Code | State | County | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|---|---|
| South Clackamas Transit District (Other) | 00410103 | OR | Clackamas | Transit District Excise Tax Type 035 | 01/01/2007 | Increases the tax rate FROM .3% TO .5%. |
| Beaver Falls (City) | 00420132 | PA | Beaver | Withholding Tax Type 001 | N/A | Increases the non-resident tax rate FROM .5% TO 1%. |

## WageAssessor™ Engine

| | |
|---|---|
| **Federal Taxes** | **X** |
| | |
| **States and Possessions Taxes** | **X** |
| | |
| **Local Taxes** | **X** |

## ALL Taxes

| Authority | BSI System | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|

BSI 0079    Exhibit 8
Page 38 of 41

| | Code | | | |
|---|---|---|---|---|
| ALL | N/A | N/A | 01/01/2007 | Increases employee benefit plan contribution non-taxable excludable limit FROM $15,000 TO $15,500 for the following plans:  401k (P001), 403b (P002), 408k (P003), 457b State & Local Government (P004), 7701j (P005) and 457b Tax Exempt Entity (P022).<br><br>Increases employee benefit plan contribution non-taxable excludable limit FROM $10,000 TO $10,500 for Simple 401k (P014).<br><br>These changes apply to state and local taxing authorities and tax types that follow the Federal benefit plan taxability guidelines. |

## PensionTax™ Engine

| Federal Taxes | |
|---|---|
| States and Possessions Taxes | X |
| Local Taxes | |

## States and Possessions Taxes

| Authority | BSI System Code | Tax Type | Effective Date | Change Description |
|---|---|---|---|---|
| Maryland | 00240000 | Pension Non Periodic Eligible Rollover<br><br>Tax Type 071 | N/A | Adds the non-periodic eligible rollover distribution method.  Maryland income tax is required to be withheld from an eligible rollover distribution that is also subject to mandatory withholding of Federal income tax.  The withholding amount is equal to the sum of the top marginal state income tax rate and the median local income tax rate.<br><br>This composite State and local formula must be used in lieu of the standard Maryland local non-periodic withholding formulas when the non-periodic distribution is a "Federally-defined non-periodic eligible rollover distribution". Withholding from all other non-periodic distributions is voluntary, and should be calculated in accordance with the withholding methods provided within each of the Maryland City and County non-periodic withholding formulas.<br><br>The tax is determined under this method by applying a flat rate to the eligible rollover distribution if the annual minimum distribution amount  has been met. |

## TaxLocator™ Engine

BSI 0080   Exhibit 8
Page 39 of 41

| Federal Taxes | |
|---|---|
| | |
| States and Possessions Taxes | |
| | |
| Local Taxes | X |

## Local Taxes

| Authority | BSI System Code | State | County | Change Description |
|---|---|---|---|---|
| Elkland | N/A | OH | Tioga | Adds unique identifier of "Township" to the place name. |
| Tioga | N/A | OH | Tioga | Adds unique identifier of "Township" to Tioga. |
| Tioga | N/A | OH | Tioga | Adds unique identifier of "County" to Tioga. |
| VARIOUS | N/A | OH | VARIOUS | Removes school district from locator mapping data. |

## Special Information

Keeping all messages in your Message Viewer may use all available database free space.  BSI recommends monitoring table spaces and clearing old messages that are no longer required to prevent this from happening.

## Comments

BSI will be *closed* on the following day(s):
November 17, 2006 - Close at 12:00 PM EST
November 23 & 24, 2006
December 25 & 26, 2006

## Notes

1. It is important that we have your firm's proper contact name, address, phone number, e-mail address and hardware information. Please contact BSI with any corrections or changes in writing via fax (770)

BSI 0081    Exhibit 8
Page 40 of 41

| | |
|---|---|
| | 448-3208, e-mail (CUSTOMER.SERVICES@BSI.COM) or regular mail (155 Technology Parkway, Suite 100, Norcross, GA 30092). |
| 2. | BSI has two toll free phone numbers that you may use to place calls to the Support Department.  The phone numbers are (877) 274-7873 and (888) 293-3413. |
| 3. | Information on TaxFactory Support Services is located in the TaxFactory On-line Help. |
| 4. | Tax updates are made available to customers as soon as they are certified for production by the Quality Assurance Team.  Set your notification options so that you are immediately notified through your e-mail system when updates are available for download. |
| 5. | The BSI Website uses pop-up windows to display information to the user.  If you have software that prevents the display of pop-up windows, you may experience difficulties taking advantage of all the functionality provided by the BSI Website, such as QuickFormulas.  It may be necessary for you to modify the configuration of your pop-up disabling tool to allow the BSI Website to function correctly. |
| 6. | QuickFormulas$^{TM}$ and Pension QuickFormulas$^{TM}$ have been updated for the tax changes listed above. |

**BSI_TAG_COPYRIGHT**

BSI 0082   Exhibit 8
Page 41 of 41

DT

| EmpID | Code | Date | Check No | Net | Type | Hrs | Pay Amt | EE Tax | EE $ | WC / Other | ER Tax | ER $ | Gross |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07133 (Redacted) | 8278 (Redacted) | 11/5/2004 | 5449277 System | 495.09 | | | | | | | WCER TAX | 33.93 | |
| 07133 | 8278 | 11/19/2004 | 5481850 System | 499.51 | REG | 74.46 | 551.00 | FED TAX | | WC-OR 1.34 | SOCR TAX | 34.16 | 551.00 |
| 07133 | 8278 | 11/19/2004 | 5481850 System | 499.51 | | | | SOC TAX | 34.16 | | MEDR TAX | 7.99 | 551.00 |
| 07133 | 8278 | 11/19/2004 | 5481850 System | 499.51 | | | | MED TAX | 7.99 | | FUTA TAX | | 551.00 |
| 07133 | 8278 | 11/19/2004 | 5481850 System | 499.51 | | | | OR WH | 8.00 | | OR SUI | 14.33 | 551.00 |
| 07133 | 8278 | 11/19/2004 | 5481850 System | 499.51 | | | | | | | WCER TAX | 34.25 | |
| 07133 | 8278 | 12/3/2004 | 5513983 System | 482.71 | OT 1 | 3.02 | 33.52 | FED TAX | | WC-OR 1.27 | SOCR TAX | 32.94 | 531.24 |
| 07133 | 8278 | 12/3/2004 | 5513983 System | 482.71 | REG | 67.26 | 497.72 | SOC TAX | 32.94 | | MEDR TAX | 7.70 | 531.24 |
| 07133 | 8278 | 12/3/2004 | 5513983 System | 482.71 | | | | MED TAX | 7.70 | | FUTA TAX | | 531.24 |
| 07133 | 8278 | 12/3/2004 | 5513983 System | 482.71 | | | | OR WH | 6.62 | | OR SUI | 13.81 | 531.24 |
| 07133 | 8278 | 12/3/2004 | 5513983 System | 482.71 | | | | | | | WCER TAX | 32.33 | |
| 07133 | 8278 | 12/17/2004 | 5546377 System | 441.51 | REG | 65.25 | 482.85 | FED TAX | | WC-OR 1.17 | SOCR TAX | 29.94 | 482.85 |
| 07133 | 8278 | 12/17/2004 | 5546377 System | 441.51 | | | | SOC TAX | 29.94 | | MEDR TAX | 7.00 | 482.85 |
| 07133 | 8278 | 12/17/2004 | 5546377 System | 441.51 | | | | MED TAX | 7.00 | | FUTA TAX | | 482.85 |
| 07133 | 8278 | 12/17/2004 | 5546377 System | 441.51 | | | | OR WH | 3.23 | | OR SUI | 12.55 | 482.85 |
| 07133 | 8278 | 12/17/2004 | 5546377 System | 441.51 | | | | | | | WCER TAX | 30.02 | |
| 07133 | 8278 | 12/31/2004 | 5578804 System | 508.32 | REG | 75.86 | 561.36 | FED TAX | | WC-OR 1.37 | SOCR TAX | 34.80 | 561.36 |
| 07133 | 8278 | 12/31/2004 | 5578804 System | 508.32 | | | | SOC TAX | 34.80 | | MEDR TAX | 8.14 | 561.36 |
| 07133 | 8278 | 12/31/2004 | 5578804 System | 508.32 | | | | MED TAX | 8.14 | | FUTA TAX | | 561.36 |
| 07133 | 8278 | 12/31/2004 | 5578804 System | 508.32 | | | | OR WH | 8.73 | | OR SUI | 14.60 | 561.36 |
| 07133 | 8278 | 12/31/2004 | 5578804 System | 508.32 | | | | | | | WCER TAX | 34.90 | |
| 07139 | 9813 | 1/9/2004 | 4712183 System | 398.46 | OT 1 | 4.00 | 42.60 | FED TAX | 19.88 | WC-OR 1.25 | SOCR TAX | 31.40 | 506.51 |
| 07139 | 9813 | 1/9/2004 | 4712183 System | 398.46 | REG | 65.34 | 463.91 | SOC TAX | 31.40 | SFC 11.37 | MEDR TAX | 7.34 | 506.51 |
| 07139 | 9813 | 1/9/2004 | 4712183 System | 398.46 | | | | MED TAX | 7.34 | | FUTA TAX | 4.05 | 506.51 |
| 07139 | 9813 | 1/9/2004 | 4712183 System | 398.46 | | | | OR WH | 36.81 | | OR SUI | 13.17 | 506.51 |
| 07139 | 9813 | 1/9/2004 | 4712183 System | 398.46 | | | | | | | WCER TAX | 31.90 | |
| 07139 | 9813 | 1/23/2004 | 4747109 System | 394.53 | REG | 70.60 | 501.26 | FED TAX | 19.36 | WC-OR 1.27 | SOCR TAX | 31.08 | 501.26 |
| 07139 | 9813 | 1/23/2004 | 4747109 System | 394.53 | | | | SOC TAX | 31.08 | SFC 11.37 | MEDR TAX | 7.27 | 501.26 |
| 07139 | 9813 | 1/23/2004 | 4747109 System | 394.53 | | | | MED TAX | 7.27 | | FUTA TAX | 4.01 | 501.26 |
| 07139 | 9813 | 1/23/2004 | 4747109 System | 394.53 | | | | OR WH | 36.38 | | OR SUI | 13.03 | 501.26 |
| 07139 | 9813 | 1/23/2004 | 4747109 System | 394.53 | | | | | | | WCER TAX | 32.48 | |
| 07139 | 9813 | 2/6/2004 | 4781232 System | 410.20 | REG | 71.42 | 507.08 | FED TAX | | WC-OR 1.29 | SOCR TAX | 31.44 | 507.08 |
| 07139 | 9813 | 2/6/2004 | 4781232 System | 410.20 | | | | SOC TAX | 31.44 | | MEDR TAX | 7.36 | 507.08 |
| 07139 | 9813 | 2/6/2004 | 4781232 System | 410.20 | | | | MED TAX | 7.36 | | FUTA TAX | 4.06 | 507.08 |
| 07139 | 9813 | 2/6/2004 | 4781232 System | 410.20 | | | | OR WH | 36.85 | | OR SUI | 13.18 | 507.08 |
| 07139 | 9813 | 2/6/2004 | 4781232 System | 410.20 | | | | | | | WCER TAX | 32.85 | |
| 07139 | 9813 | 2/20/2004 | 4814805 System | 614.42 | OT 1 | 0.19 | 2.02 | FED TAX | 47.46 | WC-OR 1.44 | SOCR TAX | 48.50 | 782.31 |
| 07139 | 9813 | 2/20/2004 | 4814805 System | 614.42 | REG | 79.90 | 567.29 | SOC TAX | 48.50 | | MEDR TAX | 11.34 | 782.31 |
| 07139 | 9813 | 2/20/2004 | 4814805 System | 614.42 | VAC | 30.00 | 213.00 | MED TAX | 11.34 | | FUTA TAX | 6.26 | 782.31 |
| 07139 | 9813 | 2/20/2004 | 4814805 System | 614.42 | | | | OR WH | 59.15 | | OR SUI | 20.34 | 782.31 |
| 07139 | 9813 | 2/20/2004 | 4814805 System | 614.42 | | | | | | | WCER TAX | 50.64 | |
| 07139 | 9813 | 3/5/2004 | 4848945 System | 443.89 | REG | 77.83 | 552.59 | FED TAX | 24.49 | WC-OR 1.40 | SOCR TAX | 34.26 | 552.59 |
| 07139 | 9813 | 3/5/2004 | 4848945 System | 443.89 | | | | SOC TAX | 34.26 | | MEDR TAX | 8.01 | 552.59 |
| 07139 | 9813 | 3/5/2004 | 4848945 System | 443.89 | | | | MED TAX | 8.01 | | FUTA TAX | 4.42 | 552.59 |
| 07139 | 9813 | 3/5/2004 | 4848945 System | 443.89 | | | | OR WH | 40.54 | | OR SUI | 14.37 | 552.59 |
| 07139 | 9813 | 3/5/2004 | 4848945 System | 443.89 | | | | | | | WCER TAX | 35.80 | |
| 07139 | 9813 | 3/19/2004 | 4882573 System | 422.45 | REG | 73.75 | 523.63 | FED TAX | 21.59 | WC-OR 1.33 | SOCR TAX | 32.47 | 523.63 |
| 07139 | 9813 | 3/19/2004 | 4882573 System | 422.45 | | | | SOC TAX | 32.47 | | MEDR TAX | 7.59 | 523.63 |
| 07139 | 9813 | 3/19/2004 | 4882573 System | 422.45 | | | | MED TAX | 7.59 | | FUTA TAX | 4.19 | 523.63 |
| 07139 | 9813 | 3/19/2004 | 4882573 System | 422.45 | | | | OR WH | 38.20 | | OR SUI | 13.61 | 523.63 |
| 07139 | 9813 | 3/19/2004 | 4882573 System | 422.45 | | | | | | | WCER TAX | 33.93 | |
| 07139 | 9813 | 4/2/2004 | 4916418 System | 486.09 | OT 1 | 4.57 | 48.67 | FED TAX | 30.19 | WC-OR 1.50 | SOCR TAX | 37.79 | 609.57 |
| 07139 | 9813 | 4/2/2004 | 4916418 System | 486.09 | REG | 79.00 | 560.90 | SOC TAX | 37.79 | | MEDR TAX | 8.84 | 609.57 |
| 07139 | 9813 | 4/2/2004 | 4916418 System | 486.09 | | | | MED TAX | 8.84 | | FUTA TAX | 4.88 | 609.57 |
| 07139 | 9813 | 4/2/2004 | 4916418 System | 486.09 | | | | OR WH | 45.16 | | OR SUI | 15.85 | 609.57 |
| 07139 | 9813 | 4/2/2004 | 4916418 System | 486.09 | | | | | | | WCER TAX | 38.44 | |
| 07139 | 9813 | 4/16/2004 | 4950436 System | 412.58 | REG | 71.87 | 510.28 | FED TAX | 20.26 | WC-OR 1.29 | SOCR TAX | 31.64 | 510.28 |
| 07139 | 9813 | 4/16/2004 | 4950436 System | 412.58 | | | | SOC TAX | 31.64 | | MEDR TAX | 7.40 | 510.28 |
| 07139 | 9813 | 4/16/2004 | 4950436 System | 412.58 | | | | MED TAX | 7.40 | | FUTA TAX | 4.08 | 510.28 |
| 07139 | 9813 | 4/16/2004 | 4950436 System | 412.58 | | | | OR WH | 37.11 | | OR SUI | 13.27 | 510.28 |
| 07139 | 9813 | 4/16/2004 | 4950436 System | 412.58 | | | | | | | WCER TAX | 33.06 | |
| 07139 | 9813 | 4/30/2004 | 4984576 System | 400.49 | REG | 69.57 | 493.95 | FED TAX | 18.63 | WC-OR 1.25 | SOCR TAX | 30.63 | 493.95 |
| 07139 | 9813 | 4/30/2004 | 4984576 System | 400.49 | | | | SOC TAX | 30.63 | | MEDR TAX | 7.16 | 493.95 |
| 07139 | 9813 | 4/30/2004 | 4984576 System | 400.49 | | | | MED TAX | 7.16 | | FUTA TAX | 3.95 | 493.95 |
| 07139 | 9813 | 4/30/2004 | 4984576 System | 400.49 | | | | OR WH | 35.79 | | OR SUI | 12.84 | 493.95 |
| 07139 | 9813 | 4/30/2004 | 4984576 System | 400.49 | | | | | | | WCER TAX | 32.00 | |
| 07139 | 9813 | 5/14/2004 | 5018690 System | 425.01 | REG | 74.24 | 527.10 | FED TAX | 21.94 | WC-OR 1.34 | SOCR TAX | 32.68 | 527.10 |
| 07139 | 9813 | 5/14/2004 | 5018690 System | 425.01 | | | | SOC TAX | 32.68 | | MEDR TAX | 7.65 | 527.10 |
| 07139 | 9813 | 5/14/2004 | 5018690 System | 425.01 | | | | MED TAX | 7.65 | | FUTA TAX | 4.22 | 527.10 |
| 07139 | 9813 | 5/14/2004 | 5018690 System | 425.01 | | | | OR WH | 38.48 | | OR SUI | 13.70 | 527.10 |
| 07139 | 9813 | 5/14/2004 | 5018690 System | 425.01 | | | | | | | WCER TAX | 34.15 | |
| 07139 | 9813 | 5/28/2004 | 5053179 System | 432.87 | REG | 75.73 | 537.68 | FED TAX | 23.00 | WC-OR 1.36 | SOCR TAX | 33.33 | 537.68 |
| 07139 | 9813 | 5/28/2004 | 5053179 System | 432.87 | | | | SOC TAX | 33.33 | | MEDR TAX | 7.79 | 537.68 |
| 07139 | 9813 | 5/28/2004 | 5053179 System | 432.87 | | | | MED TAX | 7.79 | | FUTA TAX | 4.30 | 537.68 |
| 07139 | 9813 | 5/28/2004 | 5053179 System | 432.87 | | | | OR WH | 39.33 | | OR SUI | 13.98 | 537.68 |
| 07139 | 9813 | 5/28/2004 | 5053179 System | 432.87 | | | | | | | WCER TAX | 34.84 | |
| 07139 | 9813 | 6/11/2004 | 5087028 System | 475.76 | REG | 70.76 | 516.55 | FED TAX | | WC-OR 1.27 | SOCR TAX | 32.03 | 516.55 |
| 07139 | 9813 | 6/11/2004 | 5087028 System | 475.76 | | | | SOC TAX | 32.03 | | MEDR TAX | 7.49 | 516.55 |
| 07139 | 9813 | 6/11/2004 | 5087028 System | 475.76 | | | | MED TAX | 7.49 | | FUTA TAX | 4.13 | 516.55 |
| 07139 | 9813 | 6/11/2004 | 5087028 System | 475.76 | | | | OR WH | | | OR SUI | 13.43 | 516.55 |
| 07139 | 9813 | 6/11/2004 | 5087028 System | 475.76 | | | | | | | WCER TAX | 32.55 | |
| 07139 | 9813 | 6/25/2004 | 5120650 System | 492.14 | REG | 74.20 | 541.66 | FED TAX | | WC-OR 1.34 | SOCR TAX | 33.58 | 541.66 |
| 07139 | 9813 | 6/25/2004 | 5120650 System | 492.14 | | | | SOC TAX | 33.58 | SFC 6.74 | MEDR TAX | 7.86 | 541.66 |
| 07139 | 9813 | 6/25/2004 | 5120650 System | 492.14 | | | | MED TAX | 7.86 | | FUTA TAX | 3.45 | 431.49 |
| 07139 | 9813 | 6/25/2004 | 5120650 System | 492.14 | | | | OR WH | | | OR SUI | 14.08 | 541.66 |
| 07139 | 9813 | 6/25/2004 | 5120650 System | 492.14 | | | | | | | WCER TAX | 34.13 | |
| 07139 | 9813 | 7/9/2004 | 5153922 System | 480.59 | REG | 72.48 | 529.10 | FED TAX | | WC-OR 1.30 | SOCR TAX | 32.80 | 529.10 |
| 07139 | 9813 | 7/9/2004 | 5153922 System | 480.59 | | | | SOC TAX | 32.80 | SFC 6.74 | MEDR TAX | 7.67 | 529.10 |
| 07139 | 9813 | 7/9/2004 | 5153922 System | 480.59 | | | | MED TAX | 7.67 | | FUTA TAX | | 529.10 |
| 07139 | 9813 | 7/9/2004 | 5153922 System | 480.59 | | | | OR WH | | | OR SUI | 13.76 | 529.10 |
| 07139 | 9813 | 7/9/2004 | 5153922 System | 480.59 | | | | | | | WCER TAX | 33.34 | |
| 07139 | 9813 | 7/23/2004 | 5187071 System | 455.10 | REG | 68.69 | 501.44 | FED TAX | | WC-OR 1.24 | SOCR TAX | 31.09 | 501.44 |
| 07139 | 9813 | 7/23/2004 | 5187071 System | 455.10 | | | | SOC TAX | 31.09 | SFC 6.74 | MEDR TAX | 7.27 | 501.44 |
| 07139 | 9813 | 7/23/2004 | 5187071 System | 455.10 | | | | MED TAX | 7.27 | | FUTA TAX | | 501.44 |
| 07139 | 9813 | 7/23/2004 | 5187071 System | 455.10 | | | | OR WH | | | OR SUI | 13.04 | 501.44 |
| 07139 | 9813 | 7/23/2004 | 5187071 System | 455.10 | | | | | | | WCER TAX | 31.60 | |
| 07139 | 9813 | 8/6/2004 | 5220050 System | 468.62 | REG | 70.70 | 516.11 | FED TAX | | WC-OR 1.27 | SOCR TAX | 32.00 | 516.11 |
| 07139 | 9813 | 8/6/2004 | 5220050 System | 468.62 | | | | SOC TAX | 32.00 | SFC 6.74 | MEDR TAX | 7.48 | 516.11 |

IN THE US DISTRICT COURT
FOR THE DISTRICT OF OREGON


GESSELE, et al.,

          Plaintiffs,

Vs.          Case No. 3:10-CV-060-ST

JACK IN THE BOX,

          Defendant.

_____




DEPOSITION OF DONNA BASHAM
TAKEN IN BEHALF OF THE PLAINTIFF
MONDAY, JANUARY 30, 2012

Exhibit 10
Page 1 of 14

1       A.   They do the hiring.

2       Q.   **Okay.  And do they also decide what level**

3  **-- what pay level that person will start at?**

4       A.   Anything above minimum has to -- has to go

5  through the area coach.

6       Q.   **So every -- the default is everybody**

7  **starts at minimum wage and then if you want to start**

8  **them higher you have to get permission from the area**

9  **coach?**

10      A.   Correct.

11      Q.   **Okay.**

12      A.   And if the area coach is not available,

13 then they would call the -- the office and talk to

14 HR.

15      Q.   **Was that common?**

16      A.   To call HR?

17      Q.   **Well, to -- to start someone at higher**

18 **than minimum wage?**

19      A.   No.

20      Q.   Were there any levels of employee besides

21 just crew level?

22      A.   Yes.

23      Q.   And what was the next level up?

24      A.   Team leader.

25      Q.   Was that considered a manager position?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 2 of 14

1    has got a paid lunch.

2        Q.    Is that something that the manager has to

3    tell payroll or --

4        A.    No.

5        Q.    -- payroll just figures that out based on

6    what the rules are in the computer?

7        A.    We never wrote anything, so I -- I'm --

8    they had to know.

9        Q.    When you first started at Jack In The Box,

10   was there any requirement that employees wear a

11   certain brand of shoes?

12       A.    Not in the very beginning.  It was just

13   slip resistant.

14       Q.    And when did that change?

15       A.    Exact time frame, I don't remember what it

16   -- it did change.

17       Q.    And what did it change to?

18       A.    Shoes For Crews.

19       Q.    They were required to wear a specific

20   brand of shoes?

21       A.    Correct.

22       Q.    Shoes For Crews is the company that makes

23   that brand of shoes?

24       A.    Correct.

25       Q.    What was your position at that time that

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 3 of 14

1    that change happened?

2        A.    Had to be area coach because I was area

3    coach after 2000.

4        Q.    Okay.  So it was after 2000 that that

5    happened?

6        A.    I think so.  It could have been in '99,

7    but I always wore Shoes For Crews.  I -- you know, I

8    just remember that it went from slip resistant to

9    Shoes For Crews.

10       Q.    And how did corporate let you know that

11   was going to be the change?

12       A.    Our regional vice president told us.

13       Q.    Was there a meeting or something?

14       A.    We had a region meeting.

15       Q.    Do -- are those regular or was this called

16   just for that reason?

17       A.    We have them every month.

18       Q.    Every month the area coaches meet with the

19   regional vice president?

20       A.    Uh-huh.

21       Q.    Is that live or over the phone?

22       A.    Live.

23       Q.    Where -- where did that meeting take

24   place?

25       A.    At the Portland office.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 4 of 14

1    Q.    Where is that in Portland?

2    A.    Just -- one used to be on -- they had --

3    they had -- they had three different offices.    They

4    had Lake Oswego.    They had -- the other two were in

5    Portland.

6    Q.    And what did the vice president tell you

7    about that transition?

8    A.    That the company was going with Shoes For

9    Crews as the official shoe.

10    Q.    And did he say why?

11    A.    Oh, gee, why?  Yeah, I don't remember the

12    exact verbiage.  Just that that was the decision

13    made.

14    Q.    Was -- was there a program at the

15    beginning where employees had to buy those shoes

16    themselves or were those ever provided by the

17    company?

18    A.    We always bought our own shoes.

19    Q.    And was there a payroll deduction program

20    in the beginning or was that --

21    A.    No.  They had that.  There was a payroll

22    deduction plan.

23    Q.    Where people would choose what shoes they

24    wanted and then that would be paid for out of their

25    paycheck?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 5 of 14

```
 1    they got a discount on their shoes.

 2        Q.    And is there shipping associated with

 3    that?

 4        A.    I believe so.  I'm not exactly sure.

 5        Q.    Was -- was that paid by the employee, as

 6    well?

 7        A.    It was all in the price of the shoes.

 8        Q.    Okay.  And did that all come out of one

 9    paycheck?

10        A.    They had a choice of one check or two

11    checks.  I believe if they bought real expensive

12    shoes they could maybe do a third.  I'm not sure on

13    that.

14        Q.    And who would check to make sure that all

15    the employees wore Shoes For Crews?

16        A.    The manager.

17        Q.    Is that part of the manager's duties to

18    make sure that everybody --

19        A.    And we kept -- we had -- well, we had shoe

20    guards too that if someone didn't have them on, had

21    Shoes For Crews like they -- they couldn't -- they

22    didn't -- you know, when they're first starting they

23    don't have the option so we gave them shoe guards to

24    wear.

25        Q.    And those could be slipped on over regular
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 6 of 14

1    shoes?

2         A.    Correct.

3         Q.    **Were they told that eventually they have**

4    **to buy the Shoes For Crews?**

5         A.    Yeah.  So that when the next new person

6    was hired they could have the guards.

7         Q.    **I see.  So they can't just wear the shoe**

8    **guards forever?**

9         A.    They're not supposed to but if -- if you

10   hired -- if they hired somebody that was really --

11   couldn't do it, they would let them wear them until

12   they could really do the other.

13        Q.    **Did they ever have any other brand of**

14   **shoes that you could buy, or was it always Shoes For**

15   **Crews?**

16        A.    The year I left they were talking about

17   adding Sketchers.  I don't know if that -- I think

18   that happened but I was not there when that

19   happened.

20        Q.    **Did anyone during inspections ever ask or**

21   **ever check to see if people were wearing Shoes For**

22   **Crews?**

23        A.    Yes.

24        Q.    **Is that part of your score on the**

25   **inspection?**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 7 of 14

1  company.

2        Q.    That's a separate department?

3        A.    Uh-huh.

4        Q.    And do they handle, like, Workers' Comp

5  claims, as well?

6        A.    No, that's through HR.

7        Q.    Do you know whether Shoes For Crews had

8  any deal with Jack In The Box where they would pay

9  for slip-and-fall injuries?

10        A.    I -- not just Jack In The Box.  Shoes For

11  Crews had an insurance policy that anybody that uses

12  their shoes.

13        Q.    Is that why they would go through Asset

14  Protection?  Would they handle that part of it?

15        A.    No.  They would just -- you know, normally

16  it was -- normally HR, but then if there was a --

17  suspicious of something, like they said they fell --

18  fell in the -- the kitchen but nobody in the kitchen

19  said they did fall, that's when they would get

20  involved.

21        Q.    Okay.  Fraud and those sorts of --

22        A.    Uh-huh.

23        Q.    How about uniforms?  Were employees

24  required to wear a uniform?

25        A.    Yes.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 8 of 14

1        Q.    And what was that uniform?

2        A.    Hat, shirt, pants and shoes.

3        Q.    Were they provided with any of that

4    uniform?

5        A.    They got the hat and the shirt, and at the

6    time they could wear any jeans, and then they'd buy

7    their shoes.  Hat, shirt, name tag and apron was

8    provided.

9        Q.    And did they have -- they didn't have to

10    buy those?

11        A.    Nope.

12        Q.    What would happen if they needed a

13    replacement?

14        A.    Manager would give them one.  People that

15    -- yeah, they just gave it to them.

16        Q.    Is that also the case at franchise stores,

17    or is that up to each franchise?

18        A.    I don't know what other franchises are

19    doing.  I know what we do.

20        Q.    Okay.  And let -- let me just take a

21    moment now to kind of explore the relationship,

22    because what I'm trying to figure out is which of

23    these requirements are part of being in the Jack In

24    The Box system that would apply no matter whether

25    you're corporate-owned or franchise-owned.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 9 of 14

1  **Crews --**

2       A.    Uh-huh.

3       **Q.    -- and taxes, I assume --**

4       A.    Uh-huh.

5       **Q.    -- would come out of everybody's paycheck.**

6             **Do you know of anything else that would**

7  **come out of their paychecks?**

8       A.    If they got a garnishment.

9       **Q.    Anything else?**

10      A.    Child support orders.

11      **Q.    All right.**

12      A.    Something they know about.

13      **Q.    Would those get sent to the manager or do**

14 **those --**

15      A.    They're sent to HR, and HR and the payroll

16 department take care of that.  The manager doesn't

17 ever know about any of that.

18      **Q.    How about uniforms?  Do employees ever pay**

19 **for uniforms?**

20      A.    They had to buy their own pants and they

21 had to buy their shoes.  That was it.

22      **Q.    But that doesn't come out of their**

23 **paycheck except for the shoes?**

24      A.    No.  Just the shoes.

25      Q.    All right.  If they break something or

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 10 of 14

 1      A.    Yes.

 2      Q.    **Or a 15?**

 3      A.    If they went on lunch for that amount of

 4 time, yes.

 5      Q.    **So anything less than 30 is supposed to be**

 6 **paid, is that --**

 7      A.    No, that's not what I'm saying.

 8      Q.    **Oh.**

 9      A.    My -- what I understood the question is if

10 they took only a 25-minute lunch --

11      Q.    **Right.**

12      A.    -- was that unpaid.

13      Q.    **No.**

14      A.    No, they don't -- no, they did not go back

15 and say you only worked 18 minutes so you get paid

16 for it, no.

17      Q.    **Okay.**

18      A.    If you worked under 19, it was paid.

19      Q.    **All right.**

20      A.    That's just how the computers were set up.

21      Q.    **I see.  So the computers were set up so**

22 **that if you took a 25-minute lunch that was unpaid.**

23      A.    Correct.

24      Q.    **But an 18-minute lunch would have been**

25 **paid?**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 11 of 14

1    A.    Correct.

2    Q.    Okay.  So and that 20 was the -- was the

3  line?

4    A.    In the very beginning.  It could have

5  changed. But that's what I remember.

6    Q.    You don't know that it changed.  You just

7  don't know whether it changed or not after that?

8    A.    No.

9    Q.    I'd like to ask you some questions about

10  the on-boarding process, which is, from what I

11  understand, what Jack In The Box calls it when a new

12  employee begins and receives their training and

13  fills out the paperwork and things that happen at

14  the beginning of their employment.

15        Is that what they call it?

16    A.    Uh-huh.

17    Q.    And, again, I'm talking about the

18  corporate stores here.

19        What kind of paperwork does an employee

20  have to fill out on their -- let's say on their

21  first day or once they're hired?

22    A.    They have to fill out W-4 information and

23  an I-9 form.

24    Q.    Anything else?

25    A.    I think -- I think those are the two main

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 12 of 14

CERTIFICATE OF VIDEOGRAPHER

I the undersigned, Scott Gibson, am a videographer on behalf of the NAEGELI REPORTING CORPORATION.  I do hereby certify that I have accurately made the video recording of the deposition of Donna Basham, in the above captioned matter on the 30th day of January, 2012, taken at the location of 121 SW Morrison, Suite 900, Portland, OR consisting of 1 DVD(s).

No alterations, additions or deletions were made thereto.

I further certify that I am not related to any of the parties in the action and have no financial interest in outcome of this matter.

Scott Gibson

Videographer

1/30/2012

Date

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 13 of 14

```
 1                        CERTIFICATE

 2

 3      I, Mary T. Jacks, do hereby certify that pursuant to

 4  the Rules of Civil Procedure, the witness named herein

 5  appeared before me at the time and place set forth in the

 6  caption herein; that at the said time and place, I

 7  in stenotype all testimony adduced and other oral

 8  proceedings had in the foregoing matter; and that the

 9  foregoing transcript pages constitute a full, true and

10  correct record of such testimony adduced and oral

11  had and of the whole thereof.

12

13      IN WITNESS HEREOF, I have hereunto set my hand this

14  6th day of February, 2012.

15

16

17

18

19

20

21  /S/ Mary T. Jacks

22

23  Commission Expiration: October 15, 2014

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 10
Page 14 of 14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
         3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPE DEPOSITION OF GENE JAMES**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**MONDAY, FEBRUARY 6, 2012**

Exhibit 11
Page 1 of 21

1  friction?

2      A.    That would be correct.

3      Q.    Is that testing done by Jack In The Box?

4      A.    No.

5      Q.    Who is the testing done by?

6      A.    We went to an independent laboratory

7  called Precision Laboratories in Nashville,

8  Tennessee, and we funded the laboratory -- we -- we

9  -- we funded the test at the laboratory of a number

10  of different shoes almost 10 years ago.  We then did

11  it again I think about a year ago, maybe a year-and-

12  a-half ago, where we brought in shoes from -- from

13  K-Mart shoes, from Sears, different -- different

14  shoes to -- to establish that they had an acceptable

15  level of coefficient of friction.

16      Q.    What is the acceptable level of

17  coefficient of friction?

18      A.    0.5.

19      Q.    Do all of the shoes currently approved for

20  wear by employees in Jack In The Box restaurants

21  exceed 0.5?

22      A.    Yes.

23      Q.    Is the coefficient of friction affected by

24  wear?

25      A.    It would be.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 2 of 21

1  of the risk management manual, how would you go

2  about doing that?

3      A.    I would probably come to me first.  I

4  would go to risk management, the -- and then HR

5  training, and operations.

6      Q.    Okay.

7      A.    I do not have one from that -- from those

8  days.

9      Q.    Is there a separate asset protection

10  manual, or are the asset protection policies

11  contained within the risk management materials?

12      A.    There's not a separate asset protection

13  management manual.  Everything's contained within

14  risk management manual.

15      Q.    And when did the -- when was the first

16  shoe policy that you are aware of -- became aware of

17  since you started at Jack In The Box?

18      A.    We would have developed it in 2002 for a

19  roll-out in January of 2003.

20      Q.    You say you developed it.  Who was

21  involved in that?

22      A.    Over a period of four, five, six months, a

23  prolonged period, we convened what we called our

24  safety symposium, and we brought in representatives

25  from across the company, from operations from

Naegeli Reporting
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 3 of 21

1  different parts of the country, from distribution,

2  HR, training.  We probably had anywhere from 15 to

3  20 people involved at any one time, and the group

4  would contract or expand as -- as needed as we met.

5  We probably met four times over -- over about four

6  or five months.  And the object of the exercise was

7  not to plan in a vacuum, to involve all aspects of

8  the company in the -- in what we then called the new

9  -- new safety program.

10          And at the end of -- at the end of the

11  process is when we came up with what we called our

12  new safety program, with a slip-resistant shoe

13  program being probably the cornerstone of our safety

14  program.

15      Q.    What other stones besides the cornerstone

16  were there in the safety program?

17      A.    There was a requirement for manage -- for

18  area managers to report lost-time claims and to --

19  to investigate them, basically do a postmortem on --

20  on claims to find out what the causal factors were.

21  There was the requirement to have a -- a slip-

22  resistant -- excuse me, a -- a mop for -- a mop and

23  a bucket for the back of the restaurant, and a mop

24  and a bucket for the front of the restaurant so we

25  weren't bringing contaminated water from the -- the

NAEGELI REPORTING

"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 4 of 21

1  average street shoe or a sneaker?

2      A.   I would -- I don't know.  I'd have to do

3  that research.

4      Q.   **How was it determined that the minimum co-**

5  **friction -- coefficient of friction -- excuse me --**

6  **would be 0.5 for Jack In The Box's non-slip shoes?**

7      A.   There's a -- there's a -- there's a Dr.

8  Brungrocker (phonetic), who is the world's expert on

9  slip-resistant shoes and coefficients.  And -- and

10  actually, it derived from a -- a phone conversation

11  I had with him -- a phone interview I had with him

12  back in 2002.

13      Q.   He said that that was a good minimum?

14      A.   Yes.  I would also point out that we -- in

15  2000 -- in 2001 going into 2002, Jack In The Box had

16  an injury frequency rate of 8.7, which was about 25

17  percent above the industry average.  And if you

18  would review the data, you would see that once we

19  executed our slip-resistant shoe program, our

20  injury-frequency rate went down into the low 3s,

21  high 2s, and from time to time was even in the low

22  2s.  So I think we have some pretty good data that

23  our shoe program was quite effective.

24      Q.   **8.7 what?**

25      A.   Injury-frequency rate.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 5 of 21

1    purchase Shoes for Crews, that they can't wear the

2    shoe guards forever?

3        A.    It's not the intent of the policy or the

4    program that we developed.

5        Q.    Okay.   But you don't know whether that's

6    done or not?

7        A.    I can't be accountable for what a thousand

8    restaurant managers say or do.

9        Q.    Okay.   When you had the Precision Lab

10   study funded 10 years ago, or almost 10 years ago,

11   the first time you did it...

12       A.    Um-hum.

13       Q.    Who -- what were the brands that passed?

14       A.    I would have to go back -- oh, certainly

15   Shoes for Crews passed, certainly Footstar passed.

16   We didn't know of Keuka at the time.   Keuka was

17   tested later. There were other brands there, and I

18   couldn't begin to tell you which ones passed and

19   didn't pass.

20       Q.    Were there any that passed that were not

21   added to the list of approved shoes?

22       A.    I'm sure there -- there were.

23       Q.    Why?

24       A.    Because -- they passed because they

25   probably were built in a certain way that -- that

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 6 of 21

1    achieved the coefficient of friction that we were

2    looking for.

3        Q.    I'm sorry.  Maybe my question was

4    confusing.  Were there any shoes that passed that had

5    a high enough coefficient of friction but that

6    nevertheless were not approved for restaurant wear?

7        A.    I'm sure there were.

8        Q.    And I'm asking why would -- why would that

9    decision have been made if they -- if they passed at

10    the end -- at the Precision Laboratories test?

11        A.    Possibly cost, possibly the -- how the

12    product looked, what -- what we perceived as the

13    quality of the product, or what we thought the --

14    the quality of the service would be.  This goes back

15    10 years ago, so I'm -- I would only be guessing at

16    this point.

17        Q.    Well, I don't want you to guess.  But if

18    you have an estimate based on your recollection,

19    then we -- I want to know what you know and -- and

20    what you've been prepared to answer --

21        A.    Yeah.

22        Q.    -- on behalf of the company, so...

23        MR. PARKER:  Well, I'm going to object.  I

24    don't know what an estimate based on recollection

25    is. Sounds like a guess to me.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 7 of 21

1  claim to Shoes for Crews.

2      Q.    Do you know if that's done electronically,

3  or by telephone, or...

4      A.    I do not know how that's done.

5      Q.    We talked at the beginning about what you

6  had done to prepare for the deposition.  You said

7  that you looked at the amounts of rebates from Shoes

8  for Crews?

9      A.    Um-hum, yes.

10     Q.    What was that?

11     A.    The amount of rebates from Shoes for Crews

12  since 2003 is $1,052,000.

13     Q.    And what does that mean, "rebates"?

14     A.    It means basically for every pair of shoes

15  that were sold to a Jack In The Box employee, Jack

16  In The Box receives a $2 rebate from Shoes for

17  Crews.

18     Q.    Rebate from what?

19     A.    From -- receives a $2 payment.

20     Q.    So does that mean that there were

21  approximately 500,000 pairs of shoes sold since

22  2003?

23     A.    That would be the rough math.

24     Q.    Okay.  Tell me about the indemnity

25  payments from Shoes for Crews.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 8 of 21

1      A.   Since 2004 -- excuse me.  Since 2007,

2  there has been $295,000 in indemnity payments.

3  There were indemnity payments prior to that, but we

4  cannot reconstruct that data at this time.

5      Q.   And how about write-offs from Shoes for

6  Crews?

7      A.   Jack In The Box has written off, since

8  2004, $1.76 million.  It's $1.76 million.

9      Q.   In -- in what?

10      A.   In shoes that we paid for that we were not

11  able to recoup from our payroll deduction program.

12  Employee left, and we were unable to continue to

13  deduct from his paycheck for those shoes.

14      Q.   Okay.  We take breaks from time to time

15  just so everyone can stay fresh.  So why don't we

16  take a break now, and we'll come back and continue

17  with the questions.

18      A.   How long?  Five minutes?

19      Q.   As long as you need, yeah.

20      A.   I'll only need five minutes.

21          THE VIDEOGRAPHER:  Going off record.  The

22  time is 9:55 a.m.

23          (Whereupon, there was a short recess

24  taken.)

25          THE VIDEOGRAPHER:  Going back on the

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 9 of 21

1    record. The time is 10:08 a.m.

2    BY MR. EGAN:

3        Q.    Before the break we were talking about one

4    of the statistics that you looked up in preparation

5    for this deposition was the amount of rebates from

6    Shoes for Crews.  You said that Jack In The Box

7    receives a $2 rebate for every pair of shoes that's

8    sold.  Does that apply to the crew guards as well,

9    or just the shoes?

10        A.    No, just the shoes.

11        Q.    Does it apply only to shoes that are

12    purchased through payroll deduction, or any -- in

13    any way?

14        A.    Payroll deduction.

15        Q.    Okay.  And what happens to that money?

16    Does that get refunded to the stores, or what

17    happens to it?

18        A.    It comes back to -- to CSC.  It does not

19    cascade back to the stores.

20        Q.    And I believe you also said that the crew

21    guards are -- first you said they were -- they were

22    purchased by the company, and then you said that

23    they're stocked at the distribution center.  Is --

24    is there some sort of consignment arrangement, or

25    does Jack In The Box have to purchase them before

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 10 of 21

1    they're stocked there?

2        A.    No.   The -- the distribution centers would

3    -- would get to a certain level in -- in crew

4    guards, and I'm not sure what that level would be.

5    But they would then order them as they deem

6    appropriate so they could fill the -- fill orders as

7    orders come in from restaurants.

8        Q.    But does Shoes for Crews charge you upon

9    delivery of the shoe guards, or do they only charge

10   upon the -- their -- their final delivery to the

11   restaurant?

12       A.    No, they -- they -- they -- they charge

13   upon delivery to Jack In The Box.

14       Q.    So Jack In The Box pays Shoes for Crews

15   directly and then charges that, "cascaded down," I

16   think was your term, to the restaurant when they're

17   actually delivered?

18       A.    That's correct.

19       Q.    Okay.

20       A.    Yeah.   There would be a charge for those.

21       Q.    All right.   Do any of the other shoe

22   manufacturers provide similar rebates to Jack In The

23   Box?

24       A.    Every -- every manufacturer we've dealt

25   with, with the exception of -- of -- of -- with the

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 11 of 21

1    exception of Sketchers, has provided a -- a -- a

2    similar rebate.

3        Q.    Are they --

4        A.    An identical rebate, I should say.

5        Q.    Has that been true since the beginning of

6    the safety program?

7        A.    Yes.

8        Q.    At the beginning, how would employees --

9    excuse me.  At the beginning of the safety program,

10   how would employees go about ordering a pair of

11   Shoes for Crews?

12       A.    They could call Shoes for Crews.

13       Q.    And what would -- would they have to give

14   their employee number, or can anybody off the street

15   just call?

16       A.    No, they would call and give their

17   employee number.

18       Q.    Okay.  And has that method changed now?

19   Do they still have to call, or can they do that

20   online?

21       A.    The -- they still call.  We're working on

22   an -- on an online program.

23       Q.    All right.  When they call, is there any

24   kind of form they have to sign that...

25       A.    Yes.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 12 of 21

1    region and provide that -- that PowerPoint

2    presentation.

3    **Q.    And did Paul Schultz approve that safety**

4    **program?**

5    A.    Yes.

6    **Q.    Did he have to get approval from the board**

7    **of directors for that?**

8    A.    No.

9    **Q.    Do you ever make -- report directly to the**

10   **board of directors?**

11   A.    I never have.

12   **Q.    All right.  Did Mr. Schultz also approve**

13   **the portion of the program where employees could pay**

14   **for the shoes through payroll deductions?**

15   A.    I'm not sure he would have had to have

16   done that considering it was already in place.  But

17   what he did approve was taking the payroll deduction

18   from three deductions -- from three pay periods to

19   four pay periods, which -- the reason why that was

20   important, it significantly increased our exposure

21   to write-offs.

22   **Q.    Oh, that's why you had to have his**

23   **approval for that?  Or what do you mean by was it**

24   **important?**

25   A.    Yes, because it -- it was an important

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 13 of 21

1    part of -- of the program to lessen -- we wanted to

2    lessen -- we wanted to lessen the burden on our

3    employees on a paycheck-by-paycheck period if they

4    ordered the shoes; but at the same time with a 230

5    or 40 percent turnover rate with company employees,

6    certainly extending our payroll deduction out

7    another two weeks was going to significantly

8    increase our write-offs.  So yeah, it was a

9    discussion that we had to have with Paul Schultz,

10    the president of the company.

11        Q.    Earlier you said that Shoes for Crews, one

12    of their caveats for indemnifying Jack In The Box is

13    that the shoes be less than six months old; is that

14    right?

15        A.    That's correct.

16        Q.    Is there any -- does Jack In The Box keep

17    track of how old any particular employee's shoes

18    are, or how -- how long ago it was that they ordered

19    them?

20        A.    We do not.

21        Q.    Okay.  And how about the crew guards?  Is

22    there any time limitation on them for -- for

23    indemnification?

24        A.    No.

25        Q.    Does Jack In The Box carry Workers'

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 14 of 21

1  Compensation insurance?

2       A.   I -- I would not be the person most

3  knowledgeable on what our -- on how we structure our

4  risk management program.

5       Q.   Okay.  Who would be that person?

6       MR. PARKER:  I think Ray Pepper was the

7  person designated for that.

8  BY MR. EGAN:

9       Q.   Would you agree with that?

10      A.   I would agree with that.

11      Q.   Okay.  If an employee quits or is

12  terminated before they have paid for their shoes

13  with the four payroll deductions, does Jack In The

14  Box get charged that amount by Shoes for Crews?  Or

15  how -- how does that work?

16      A.   What occurs in -- in all likelihood, we

17  have already paid an invoice for those shoes.  We

18  get invoiced on a regular basis from Shoes for Crews

19  for the -- for the shoes that our employees order

20  through the payroll deduction program.  So in all

21  likelihood, we've -- we've either already paid that

22  invoice, or we're about to pay that invoice.

23      Q.   Okay.  So -- so Jack In The Box pays for

24  the shoes right away?

25      A.   Exactly.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 15 of 21

1      Q.    And then recoups that payment from the
2  payroll deductions?

3      A.    Yes.

4      Q.    And if an employee doesn't stay long
5  enough for Jack In The Box to recoup the whole
6  payment, is that amount charged back to the store,
7  or does it just remain here at CSC?

8      A.    Remains here at CSC.

9      Q.    Okay.  Tell me about how stores are
10  inspected for safety issues, how often that happens,
11  and what's involved with that.

12      A.    The -- at the beginning of this -- of this
13  program, there was a QFC process.

14      Q.    What does that stand for?

15      A.    Quality food cleanliness.  And there
16  actually was a -- there actually was a section of --
17  of that QFC that had to do with safety, and at the
18  time there were eight or nine safety questions.  But
19  the one thing that would fail the store would be
20  employees -- having just one employee that didn't
21  have approved footwear.

22      Q.    One employee would fail the store?

23      A.    One employee without the approved footwear
24  could fail the store on the safety component of the
25  QFC. There was also the -- the conventional part of

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 16 of 21

1          A.    I am.

2          Q.    Okay.

3              MR. STUBBLEFIELD:  Ask him where.

4  BY MR. EGAN:

5          Q.    Okay.  I'm going to now have to turn to

6  Bates page 1331.  It's in another volume that we'll

7  get for you.

8          A.    Okay.

9          Q.    So this is a document that I think we got

10  from the training department.  It lists which of the

11  computer-based training sessions have to be

12  accomplished by which level of -- which employee.

13  But I just wanted to ask you in general, the safety

14  program that we're talking about and the changes

15  that have been made to that over time, those

16  requirements have been implemented by being passed

17  down through the management chain and having them

18  trained in the corporate methods; is that right?

19          A.    Yes.

20          Q.    None of -- none of the shoe policies that

21  we've talked about differ from region to region or

22  from district to district or anything like that?

23          A.    We -- we sent out a policy, a procedure, a

24  program, and I can't really attest to how an

25  individual manager or an area manager might add

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 17 of 21

1  something or delete something.

2      Q.    But they're not supposed to?

3      A.    They are not supposed to.

4      Q.    Because they're intended to be companywide

5  policies and procedures?

6      A.    Companywide policies and procedures.

7      Q.    All right.  If you'd flip now to Bates

8  page 1764.  Actually, that may be in the next one.

9      A.    Okay.

10     Q.    So this is Jack's safety program --

11         MR. PARKER:  Can you wait for me?

12         MR. EGAN:  Oh, sure, yeah.  1764.

13         MR. PARKER:  17 what?

14         MR. EGAN:  64.

15  BY MR. EGAN:

16     Q.    All right.  So as we were discussing, this

17  is Jack's safety program.  This is the -- what's the

18  -- as far as I understand, this is part of the

19  training that's given to restaurant managers to tell

20  them about the safety program; is that right?

21     A.    That would be correct.

22     Q.    Okay.  And so did you have any input into

23  the development of this training program or this

24  document?

25     A.    Indirectly.  I had Dave Parham serve on --

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 18 of 21

1 program has made that not to be the case anymore?

2     A.    That's exactly the case.

3     Q.    Do you have any idea how much slip-and-

4 fall injuries were costing the company in terms of

5 dollars before we implemented this program?

6     A.    If you look at the 2002 numbers of -- of -

7 - of $9,000,000, what -- what I will tell you is the

8 slip and falls accounted for more than 30 percent of

9 -- of all claims, and slip and falls had a

10 disproportionately high -- higher cost than all

11 claims.  So doing some triangulation of numbers, you

12 could -- you could come up with a big number there.

13     Q.    In excess of $3,000,000?

14     A.    I would say so, yes.

15     Q.    And if -- if you had to estimate how much

16 the mandatory shoe program is -- is saving the

17 company every year, could -- could you come up with

18 some sort of number?

19     A.    Not sitting here right now.

20     Q.    Okay.  I've got a checklist of documents

21 to discuss, and some of the topics we have already

22 covered in other discussions.  So please forgive me

23 while I page through here.

24         One question that I did have for you that

25 doesn't involve any particular page is, I came

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 19 of 21

1                    CERTIFICATE OF VIDEOGRAPHER

2

3       I the undersigned, Jamie Carlson, am a videographer

4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

5  certify that I have accurately made the video recording of

6  the deposition of Gene James, in the above captioned

7  on the 6th day of February, 2012, taken at the location of

8  9330 Balboa Avenue, San Diego, CA 92123, consisting of 2

9  DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/6/2012

24  Date

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 20 of 21

```
 1                      CERTIFICATE

 2

 3      I, Leo Kniebel, do hereby certify that pursuant to

 4  Rules of Civil Procedure, the witness named herein

 5  before me at the time and place set forth in the caption

 6  herein; that at the said time and place, I reported in

 7  stenotype all testimony adduced and other oral proceedings

 8  had in the foregoing matter; and that the foregoing

 9  transcript pages constitute a full, true and correct

10  of such testimony adduced and oral proceeding had and of

11  whole thereof.

12

13      IN WITNESS HEREOF, I have hereunto set my hand this

14  16th day of February, 2012.

15

16

17

18

19

20

21  /S/ Leo Kniebel

22

23  Commission Expiration: March 2, 2012

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 11
Page 21 of 21

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.       Civil No.:
           3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPE DEPOSITION OF SHELLY MOSTELLER**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**WEDNESDAY, FEBRUARY 8, 2012**

(800) 528-3335

NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation

Selected "Best Court Reporting Firm"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

NAEGELI REPORTING

"The Deposition Experts"

Exhibit 12
Page 1 of 4

1    A.    Okay.

2    Q.    If I say turn to Bates page 242, it'll --

3    it'll be the same.  It'll be a 1 with a bunch of

4    zeros, but 242, that last part is what I'm going to

5    refer to them as.

6    A.    Sure.

7    Q.    So when we try to find them, that's what -

8    - that's what you can look at.

9              All right.  So have you seen this document

10    before?

11    A.    Yes.

12    Q.    Okay.  What is this document?

13    A.    This is the dressing/grooming policy for

14    all the employees at the restaurant level.

15    Q.    Was this issued during the time that you

16    were the uniform person?

17    A.    Yes.

18    Q.    All right.

19    A.    Multiple times.

20    Q.    Has it changed or...

21    A.    As reminders, as well as some changes.

22    Like I said, the 2007 change of the uniform program,

23    and at one point there was a grooming change, I

24    think, where -- it was regarding hair.  So you could

25    have different colored hair and you could have a

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 12
Page 2 of 4

```
 1              CERTIFICATE OF VIDEOGRAPHER

 2

 3      I the undersigned, Jamie Carlson, am a videographer

 4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

 5  certify that I have accurately made the video recording of

 6  the deposition of Shelly Mosteller, in the above captioned

 7  matter on the 2nd day of February, 2012, taken at the

 8  location of 9330 Balboa Avenue, Corporate Headquarters,

 9  Diego, CA 92123, consisting of 1 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/8/2012

24  Date

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 12
Page 3 of 4

1                          CERTIFICATE

2

3        I, Leo Kniebel, do hereby certify that pursuant to

4    Rules of Civil Procedure, the witness named herein

5    before me at the time and place set forth in the caption

6    herein; that at the said time and place, I reported in

7    stenotype all testimony adduced and other oral proceedings

8    had in the foregoing matter; and that the foregoing

9    transcript pages constitute a full, true and correct

10   of such testimony adduced and oral proceeding had and of

11   whole thereof.

12

13       IN WITNESS HEREOF, I have hereunto set my hand this

14   17th day of February, 2012.

15

16

17

18

19

20

21   /S/ Leo Kniebel

22

23   Commission Expiration: March 2, 2012

24

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 12
Page 4 of 4

**UNITED STATES DISTRICT COURT
DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

Vs.      Civil No.:
          3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

        Defendant.
_____



**VIDEOTAPE DEPOSITION OF SUSAN PETTIJOHN
TAKEN ON BEHALF OF THE PLAINTIFFS
TUESDAY, FEBRUARY 7, 2012**

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

NAEGELI REPORTING
"The Deposition Experts"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

Exhibit 13
Page 1 of 6

1  franchisees under the system here in San Diego, or

2  do they do that on their own?

3      A.    They're -- they're applied through the

4  system. They're called calc groups in Jack's

5  Timekeeping, and there are different calc groups

6  based on the different labor laws.  And -- and yeah,

7  they -- that's what the systems run -- runs against.

8      Q.    Okay.  Can a manager -- or, excuse me.

9  Can a franchisee request that you calculate their

10  hours paid, let's say, based on different rules?

11      A.    There are a couple of configuration

12  choices that they have.  One would be to choose

13  their holidays, so whether their holidays are paid

14  or not; whether or not once they reach daily

15  overtime in California, they're paid at -- continue

16  to be paid at time-and-a-half or bumped into double

17  time, which is the company decision. And then there

18  are some automatic premiums that we apply for

19  company restaurants that they can choose to either

20  use or not use.  Those would be the -- the only

21  choices they have regarding how the system would

22  calculate their employees' pay.

23      Q.    Okay.  So if I'm a franchise owner, I

24  can't say, "Jack In The Box, I want you to --

25  anything less than 30 minutes, I want you to count

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 13
Page 2 of 6

1  as a paid break instead of the 20-minute default,"

2  that's not an option that's available to them?

3        A.    No.

4        Q.    Okay.  Another question that Ms. Burtchett

5  punted to you was whether -- under the Kronos

6  system, did the Kronos software at the back-office

7  PC in each restaurant -- if a manager made changes

8  to the punches before the times were communicated to

9  San Diego to payroll, did those changes get sent

10 down here, or was only the final times get sent?

11       A.    I am not an expert on the Kronos --

12       Q.    Sure.

13       A.    -- system.  But my understanding as to how

14 it would work is, they would make changes that could

15 be polled from their system, but that they weren't

16 sent every pay period.  At the end of the pay period

17 they did a process called mailing their timecards.

18 That took their final time.  But I believe changes

19 to punches could be accessed via another way.  But

20 again, that's not my --

21       Q.    Training?

22       A.    -- area of expertise.  It's just my

23 understanding.

24       Q.    And I appreciate that.  I'm only asking

25 what you know.  So if you do know, I -- I want to

NAEGELI REPORTING

"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 13
Page 3 of 6

1  testing. You -- you become familiar with looking at

2  slip-resistant shoes.  There's a sole that you can

3  usually get a -- get a good idea from, but it's

4  difficult to instruct them on how to figure that

5  out, so we work with them when the need comes up.

6      Q.    Okay.  How about in terms of assessing

7  whether a given pair of shoes might be too worn to

8  be very slip resistant anymore?  Is that something

9  that the managers are expected to look at or

10  evaluate?

11      A.    I've never seen anything -- any

12  instructions to -- to that.

13      Q.    Okay.  How about if the shoes are just

14  ratty looking?  Is that something that they would be

15  asked to --

16      A.    Yeah.  We ask -- they need to look clean

17  and neat and presentable.  That's in the

18  dressing/grooming policy.  So I would think that

19  would fall under that criteria.

20      Q.    Okay.  You were in the company when the

21  switch was made to have mandatory slip-resistant

22  shoes or shoe guards for all of the employees.  Were

23  you aware of that policy as it was being

24  implemented?  Were you part of that?

25      A.    I was aware of it, but I was not part of

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 13
Page 4 of 6

CERTIFICATE OF VIDEOGRAPHER


1      I the undersigned, Jamie Carison, am a videographer

2   behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

3   certify that I have accurately made the video recording of

4   the deposition of Susan PettiJohn, in the above captioned

5   matter on the 7th day of February, 2012, taken at the

6   location of 9330 Balboa Ave, San Diego, CA 92123,

7   of 1 DVD(s).


8      No alterations, additions or deletions were made

9   thereto.


10      I further certify that I am not related to any of the

11   parties in the action and have no financial interest in

12   outcome of this matter.


Jamie Carison

Videographer


2/7/2012

Date

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 13
Page 5 of 6

```
 1                    CERTIFICATE

 2

 3       I, Leo Kniebel, do hereby certify that pursuant to

 4  Rules of Civil Procedure, the witness named herein

 5  before me at the time and place set forth in the caption

 6  herein; that at the said time and place, I reported in

 7  stenotype all testimony adduced and other oral proceedings

 8  had in the foregoing matter; and that the foregoing

 9  transcript pages constitute a full, true and correct

10  of such testimony adduced and oral proceeding had and of

11  whole thereof.

12

13       IN WITNESS HEREOF, I have hereunto set my hand this

14  17th day of February, 2012.

15

16

17

18

19

20

21  /S/ Leo Kniebel

22

23  Commission Expiration: March 2, 2012

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 13
Page 6 of 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

JESSICA GESSELE, ASHLEY GESSELE,
NICOLE GESSELE, TRICIA TETRAULT,
and CHRISTINA LUCHAU on behalf
of themselves and all others
similarly situated,

       Plaintiffs,

Vs.     Civil No.:
        3:10-cv-960-ST

JACK IN THE BOX INC., a
corporation of Delaware,

       Defendant.
_____



**VIDEOTAPE DEPOSITION OF LEANNE TELLEZ**
**TAKEN ON BEHALF OF THE PLAINTIFFS**
**FRIDAY, FEBRUARY 10, 2012**

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

NAEGELI REPORTING
"The Deposition Experts"

Videoconferencing | Interpreters | Trial Presentation | Copying and Scanning | Videography | Court Reporting

Exhibit 14
Page 1 of 4

1    A.    Yes.

2    Q.    Okay.  And is there something in there

3    that says that it -- that shipping and handling is

4    included?

5    A.    Yes.

6    Q.    And is there any kind of rebate or

7    reduction or deduction in those that you can see in

8    Lawson?

9    A.    No.

10    Q.    Okay.  Because we've had some people

11    testify that an arrangement that each of the shoe

12    manufacturers has had with the company is that they

13    will provide a rebate of $2 to the company for every

14    pair of shoes that an employee purchases through a

15    payroll deduction?

16    A.    Yes.

17    Q.    Okay.  And -- but that doesn't go back to

18    the employee, that just stays within the company?

19    A.    Correct.

20    Q.    At some point I understand there to have

21    been a team assembled or a project initiated for

22    online ordering for Shoes For Crews.

23    A.    Okay.

24    Q.    Were you a part of that or were you --

25    A.    No.

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 14
Page 2 of 4

CERTIFICATE OF VIDEOGRAPHER

1

2

3      I the undersigned, Jamie Carlson, am a videographer

4  behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

5  certify that I have accurately made the video recording of

6  the deposition of Leanne Tellez, in the above captioned

7  matter on the 10th day of February, 2012, taken at the

8  location of 9330 Balboa Avenue, Corporate Headquarters, CA

9  92123, consisting of 1 DVD(s).

10

11      No alterations, additions or deletions were made

12  thereto.

13

14      I further certify that I am not related to any of the

15  parties in the action and have no financial interest in

16  outcome of this matter.

17

18

19  Jamie Carlson

20  Videographer

21

22

23  2/10/2012

24  Date

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 14
Page 3 of 4

```
 1                          CERTIFICATE

 2

 3        I, Lorie Rhyne, the certified Shorthand Reporter, in

 4   and for the State of California, do hereby certify:

 5

 6        THAT the foregoing proceedings were reported by me

 7   stenographically and later transcribed under my direction;

 8   that the foregoing is a true record of the proceedings

 9   at that time.

10

11        IN WITNESS HEREOF, I have transcribed my name this

12   day of February, 2012.

13

14

15

16

17

18

19   /S/ Lorie Rhyne

20   CSR No. 12905

21

22

23

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 14
Page 4 of 4

IN THE US DISTRICT COURT
FOR THE DISTRICT OF OREGON


GESSELE, et al.,

      Plaintiffs,

Vs.     Case No. 3:10-CV-060-ST

Jack In The Box,

      Defendant.

_____



DEPOSITION OF JEFFREY TENNANT
TAKEN IN BEHALF OF THE PLAINTIFF
TUESDAY, JANUARY 31, 2012

Exhibit 15
Page 1 of 14

```
 1   the restaurant, so those breaks are paid.

 2           But breaks taken -- I believe it's from

 3   11:00 to 4 o'clock in the morning are paid breaks

 4   regardless if they're clocked in and out.  The idea

 5   is that the employee is supposed to clock-out for

 6   those breaks and that they would need to clock back

 7   in from their breaks if they were not able to take a

 8   break.

 9       Q.   If they don't clock-out, is that break

10   just added in for recordkeeping purposes?

11       A.   That is not the policy, no.

12       Q.   So if a manager went back in to add 30-

13   minute meal periods to everyone who worked graveyard

14   during a --

15       A.   Uh-huh.

16       Q.   -- given time, that would be against the

17   policy?

18       A.   That is against our policy, yes.

19           However, the employee would be paid,

20   though. They're just on a break.  That would be an

21   administrative function.

22       Q.   Right.

23       A.   Not an actual -- where they're going to

24   get paid for the hours worked.

25       Q.   And then so assuming -- and how -- how
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 2 of 14

1  **often are the time punches reviewed by management to**

2  **make sure that they're correct?**

3      A.    Well, in order to reconcile the system

4  each day the system will produce an error if there's

5  an odd number of punches.  When an employee clocks-

6  out, only does one punch in between and then another

7  break or something is wrong and that shoots out an

8  error report.

9          And then anytime that that error report is

10 -- anytime you -- anytime you make any changes to

11 the P.C. there's supposed to be written

12 documentation as well as far as that punch has been

13 changed.

14         So my -- myself as manager would write

15 down that I had to change Jeff's punch for lunch.

16 And then there's a form that we have as far as

17 whether we're adding or deleting it, what the reason

18 was.  And then that employee is -- is required to

19 sign to acknowledge that that punch has been changed

20 for our recordkeeping as far as that way there's so

21 no dispute who got paid or why things were changed.

22     Q.    **And that's a physical piece of paper that**

23 **you write those changes on?**

24     A.    Correct.

25     Q.    **Where are those kept?**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 3 of 14

 1        A.    (Witness complied.)

 2        Q.    At the end of that first paragraph it

 3   says, "The following are some of the actions which

 4   are violations of restaurant policies and rules, and

 5   which also may result in disciplinary action,

 6   suspension or termination."

 7              So these are --

 8        A.    Uh-huh.

 9        Q.    -- general conduct rules that they're

10   warning you ahead of time you can be disciplined

11   for?

12        A.    Correct.

13        Q.    Okay.  And that little -- that little icon

14   in the upper right-hand corner of the page where it

15   says, "company," I notice on some of these pages

16   that little triangle says "system" on it.  What

17   would be the difference between those two?

18        A.    My understanding would be difference in

19   company and franchise.  A lot of this same

20   information is provided to a franchise committee, as

21   well.  And this would have been -- this particular

22   document was applied to the company operations.

23        Q.    Only the company, not --

24        A.    That's my understanding, yes.  That's not

25   something that's in the system.  That would be a --

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 4 of 14

1     Q.    Okay.

2     A.    Uh-huh.

3     Q.    So, I mean, I can imagine things like

4  uniforms, Jack In The Box would want all of its

5  store to appear the same to the public so that the

6  public wouldn't know whether it was a franchise

7  store or a company store. And so that might be a

8  system-wide requirement.  Whereas Jack In The Box,

9  Inc., the company, might have its own human

10  resources things or something that.

11        Is that --

12     A.    That's my understanding, as well.

13     Q.    All right.  So let's look at general

14  conduct on this page number three.  It says, "Not

15  cooperating with fellow employees or management or

16  insubordination, not following directions."

17        Does that mean that if an employee doesn't

18  follow the directions of their supervisor they could

19  be disciplined?

20     A.    Yeah.  I think in the title it says

21  general conduct, so maybe if we had anything that

22  was a violation of these, you want to investigate to

23  figure out the severity of it and determine what

24  course of action as far as some type of

25  documentation or whether it's actually a termination

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 5 of 14

1  this on the computer based training or is this on

2  the office computer?

3      A.    No, it wouldn't have been computer based

4  training at this time.  This would have been the

5  restaurant P.C.

6      Q.    So new hires sat down at the restaurant

7  P.C. and they'd go through these policies and sign

8  them?

9      A.    Correct.

10      Q.    And I'd like to direct your attention now

11  to the on-duty meal policy down at the bottom.

12  Would you just read that for us for the record?

13      A.    All right.  As it says here on the

14  statement, "I hereby agree with my employer that on

15  those sporadic occasions where the nature of my work

16  prevents me from being relieved of all duties during

17  my required meal period, I shall be paid for those

18  meal periods.  I may revoke this agreement in

19  writing at any time."

20      Q.    Okay.  Is that -- you understand that to

21  be the policy still?

22      A.    Yeah.  You would go back and clock on and

23  be paid.

24      Q.    Okay.  Do you know whether employees

25  received a copy of any of these agreements or

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 7 of 14

1  action record.  Does that look right to you?

2       A.    Uh-huh.  Correct.

3       Q.    The number is a little blurry in the upper

4  left-hand corner.  Is that P108?

5       A.    Yeah.

6       Q.    Is that a form that was filled out when

7  employees received discipline?

8       A.    Yeah, that -- that continues to be the

9  standard form today.

10      Q.    Do they do that on the computer now?

11      A.    This would still be handwritten.

12      Q.    And are those kept at the restaurant level

13  or at corporate?

14      A.    These would be kept at the restaurant

15  level to deal with restaurant employees.  To deal

16  with the manager, the manager ones would be kept at

17  the corporate level.

18      Q.    Let's look at page 311.

19      A.    (Witness complied.)

20      Q.    Bates page 311 is a similar new-hire

21  report to the one we saw before.  It's another on-

22  duty meal policy signed by Nicole Gessele with a

23  different date.

24            Do employees do this every time they are

25  rehired?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 8 of 14

1      A.    Yeah.   This was a new -- a new-hire

2   agreement.

3      Q.    Okay.   So if somebody works for Jack In

4   The Box and then leaves and comes back, they fill

5   out a new one of these agreements?

6      A.    That would be my understanding.

7      Q.    Okay.   And this one is a little different

8   than the one before.   It doesn't have the on-

9   boarding handbook acknowledgement.   So these --

10  these may change over time, the things that are

11  included in here?

12     A.    Well, it's likely we went to the computer

13  based training, replaced the employee handbook.

14     Q.    I see.   Okay.   All right.   Let's go to

15  321, Bates 321.

16     A.    (Witness complied.)

17     Q.    I see a name on the top of this page,

18  Shauna Kilpatrick.   Do you know who that is?

19     A.    Uh-huh.   Previous area coach.

20     Q.    For this area?

21     A.    Worked in this area, yes.

22     Q.    Do you know if she is still employed by

23  Jack In The Box?

24     A.    No, she's not.

25     Q.    Do you know where she lives?

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 9 of 14

1    can --

2        Q.    With a touch screen?

3        A.    Yeah, touch screen.

4        Q.    Go to 679, if you would, Bates page 679.

5        A.    (Witness complied.)

6        Q.    At the top of the page there it talks

7    about lockouts for rest and meal periods.  I think

8    we started to talk about this before, that the new

9    Jack's timekeeping system is set up to prevent

10   employees from clocking back in until they've

11   received their full 10-minute or 30-minute rest

12   period; is that right?

13       A.    The only reason an employee would return

14   from a 10-minute or 30-minute ahead of time would be

15   due to the manager on duty had told them to come

16   back to work. This was to prevent people from simply

17   coming in and clocking in early from their

18   designated meal break.

19       Q.    Okay.  And I think we talked about that on

20   the previous system no one could clock in before 10

21   minutes but that anything after that was -- was

22   fine, there was no override; is that accurate?

23       A.    That is my understanding of the time

24   clock.

25       Q.    Okay.  Would you go to page 720, please,

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 10 of 14

1          A.   (Witness complied.)

2          Q.   **Second box from the top there it says,**

3   **"Assign meal periods and breaks."  Would you read**

4   **what it says underneath there?**

5          A.   Yeah, under assign meal periods and

6   breaks, "Always assign breaks.  Remember, the

7   schedule is used for planning and breaks should be

8   administered in consideration of the needs of the

9   business."

10         Q.   **Tell me what that means to you.**

11         A.   I think that continues out from what I

12  just said. It's that the restaurant is -- it's been

13  written as far as the schedule but there's --

14  there's always things that maybe -- when you're the

15  person in charge, you have to make the best decision

16  in the interest of the business, and maybe it's

17  become very busy in the morning.  Trying to figure

18  out when these breaks should go out, you know, might

19  mean you deviate from that said schedule.

20         Q.   **Are they authorized to ask someone to come**

21  **back early from a meal period, for example, if it's**

22  **really busy?**

23         A.   Yes.

24         Q.   **And would that be like we saw earlier with**

25  **the on-duty meal policy where they would be able to**

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 11 of 14

1    make that judgment call, we'll pay this person for

2    the entire meal break because we need them now for

3    the -- the restaurant?

4        A.    Yeah, and the person in charge would have

5    to make that type of decision.  That doesn't negate

6    the fact that they would need a full break still.

7        Q.    This is a good time for a break.

8             THE VIDEOGRAPHER:  The time is 2:42.

9             We are off the record.

10            (Whereupon, a brief recess was taken.)

11            THE VIDEOGRAPHER:  We are back on the

12   record.  This marks the beginning of video number

13   three in the deposition of Jeff Tennant.  The time

14   is 2:59.

15   BY MR. EGAN:

16       Q.    All right.  Mr. Tennant, we are still

17   talking about the training materials for the

18   different levels of manager.  If you will flip to

19   Bates page 1511, please.

20       A.    Excuse me.

21       Q.    Yeah.  No.  I think we're on to the next

22   volume. I can only fit 750 pages per notebook, so --

23   thanks.

24       A.    You said 1511?

25       Q.    Yes, please.

NAEGELI REPORTING

"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com

Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 12 of 14

1                  CERTIFICATE OF VIDEOGRAPHER

2

3        I the undersigned, Scott Gibson, am a videographer on

4    behalf of the NAEGELI REPORTING CORPORATION.  I do hereby

5    certify that I have accurately made the video recording of

6    the deposition of Jeff Tennant, in the above captioned

7    matter on the 31st day of January, 2012, taken at the

8    location of 121 SW Morrison, Suite 900, Portland, OR.,

9    consisting of 3 DVD(s).

10

11       No alterations, additions or deletions were made

12   thereto.

13

14       I further certify that I am not related to any of the

15   parties in the action and have no financial interest in

16   outcome of this matter.

17

18

19   Scott Gibson

20   Videographer

21

22

23   1/31/2012

24   Date

25

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 13 of 14

```
 1                        CERTIFICATE

 2

 3        I, Mary T. Jacks, do hereby certify that pursuant to

 4   the Rules of Civil Procedure, the witness named herein

 5   appeared before me at the time and place set forth in the

 6   caption herein; that at the said time and place, I

 7   in stenotype all testimony adduced and other oral

 8   proceedings had in the foregoing matter; and that the

 9   foregoing transcript pages constitute a full, true and

10   correct record of such testimony adduced and oral

11   had and of the whole thereof.

12

13        IN WITNESS HEREOF, I have hereunto set my hand this

14   10th day of February, 2012.

15

16

17

18

19

20

21   /S/ Mary T. Jacks

22

23   Commission Expiration: October 15, 2014

24

25
```

NAEGELI REPORTING
"The Deposition Experts"

(800) 528-3335
NaegeliReporting.com
Serving all of Washington, Oregon, Idaho and the Nation
Selected "Best Court Reporting Firm"

Exhibit 15
Page 14 of 14