IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY
ORTIZ, NICOLE GESSELE, TRICIA
TETRAULT, and CHRISTINA
MAULDIN, on behalf of
themselves and all others
similarly situated,

       Plaintiffs,

v.

JACK IN THE BOX, INC., a
corporation of Delaware,

       Defendant.

3:14-CV-01092-BR

OPINION AND ORDER

JON M. EGAN
240 Sixth Street
Lake Oswego, OR 97034-2931
(503) 697-3427

       Attorney for Plaintiffs

DOUGLAS S. PARKER
JENNIFER NETH WARBERG
DON STAIT
Littler Mendelson, P.C.
121 S.W. Morrison Street
Suite 900
Portland, OR 97204
(503) 221-0309

       Attorneys for Defendant

DEFENDANT'S MOTION (#161) FOR SUMMARY JUDGMENT NO. 1 -
ARBITRATION OF CLAIM. . . . . . . . . . . . . . . . . . . . 23
    I.   Arbitration Agreement.. . . . . . . . . . . . . 24
    II.  Terms of the Agreement. . . . . . . . . . . . . 26
    III. Waiver. . . . . . . . . . . . . . . . . . . . . 27

DEFENDANT'S MOTION (#162) FOR SUMMARY JUDGMENT NO. 2 - WBF
DEDUCTION CLAIMS BARRED BY TAX LAWS.. . . . . . . . . . . . 34
    I.   The WBF.. . . . . . . . . . . . . . . . . . . . 36
    II.  The WBF assessments are not a tax pursuant to Oregon
        Revised Statutes § 316.197. . . . . . . . . . . 37
        A.   Oregon Rules of Statutory Construction.. . . . 38
        B.   The WBF as Assessment or Tax. . . . . . . . . 39
        C.   Applicability of § 316.197.. . . . . . . . . 43
    III. Plaintiffs' WBF claims are not barred by federal tax
        law.. . . . . . . . . . . . . . . . . . . . . . 46

PLAINTIFF'S MOTION (#172) FOR PARTIAL SUMMARY JUDGMENT ON THE
ISSUE OF *PRIMA FACIE* LIABILITY ON THEIR WORKERS' BENEFIT FUND
CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    I.   Defendant improperly over-withheld Plaintiffs' WBF
        contributions.. . . . . . . . . . . . . . . . . 51
    II.  Penalty Wages under Oregon Revised Statutes
        § 652.150.. . . . . . . . . . . . . . . . . . . 52
        A.   The Law. . . . . . . . . . . . . . . . . . . 53
        B.   Analysis.. . . . . . . . . . . . . . . . . . 55
    IV.  Defendant's Due-Process Rights. . . . . . . . . 56
    V.   Summary.. . . . . . . . . . . . . . . . . . . . 59

PLAINTIFFS' MOTIONS (#173, #179, #180, #181) RELATED TO THEIR
SHOE CLAIMS.. . . . . . . . . . . . . . . . . . . . . . . . 60
    I.   Deductions from Employees' Wages Permitted under
        Oregon Law. . . . . . . . . . . . . . . . . . . 63
    II.  Uniforms. . . . . . . . . . . . . . . . . . . . 64
        A.   Facts.. . . . . . . . . . . . . . . . . . . . 64
        B.   Non-Slip Shoes as Part of Employees' Uniforms. 68
    III. Exceptions Permitting Deductions. . . . . . . . . 70
        A.   Exception under Oregon Revised Statutes
        § 653.035(1).. . . . . . . . . . . . . . . . 71
        B.   Exceptions under Oregon Revised Statutes
        § 652.610(3)(b). . . . . . . . . . . . . . . 72
        C.   Oregon Revised Statutes § 652.610(3)(c). . . 87
    IV.  Summary of Rulings on Shoe-Deduction Motions. . 92

DEFENDANT'S MOTION (#163) FOR SUMMARY JUDGMENT NO. 3 - REMEDIES
RELATED TO ALLEGED WRONGFUL DEDUCTIONS ARE LIMITED. . . . . 94
    I.   Background. . . . . . . . . . . . . . . . . . . 95
    II.  Penalties Pursuant to Oregon Revised Statutes

           §§ 652.615 and 652.150. . . . . . . . . . . . . . 96
   III. Plaintiffs may recover penalties under §§ 652.615 and
       652.150 for improper WBF or shoe deductions that
       reduced their pay below minimum wage or resulted in
       them receiving insufficient overtime. . . . . . . 98
   IV.  Plaintiffs are limited to a single $200 sum or actual
       damages for improper WBF deductions and/or a single
       $200 sum or actual damages for improper shoe
       deductions. . . . . . . . . . . . . . . . . . . 102
   V.   Willfulness of Defendant's Alleged Violations.. . . 104
   VI.  Limitations Period. . . . . . . . . . . . . . . . 104
   VII. Due-Process Concerns. . . . . . . . . . . . . . . 106
   VIII.Summary.. . . . . . . . . . . . . . . . . . . . . 106

DEFENDANT'S MOTION (#164) FOR SUMMARY JUDGMENT NO. 4 – BREACH OF
FIDUCIARY DUTY TORT CLAIMS IS TIME-BARRED.. . . . . . . . . . 107
   I.   Background. . . . . . . . . . . . . . . . . . . . 108
   II.  Parties' Arguments. . . . . . . . . . . . . . . . 115
   III. The Law. . . . . . . . . . . . . . . . . . . . . . 116
   IV.  Analysis. . . . . . . . . . . . . . . . . . . . . 118

DEFENDANT'S MOTION (#165) FOR SUMMARY JUDGMENT NO. 5 – QUASI-
CONTRACT/UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW.. . 123
   I.   The Law.. . . . . . . . . . . . . . . . . . . . . 124
   II.  Analysis. . . . . . . . . . . . . . . . . . . . . 125

PLAINTIFFS' MOTION (#174) FOR PARTIAL SUMMARY JUDGMENT ON THE
ISSUE OF *PRIMA FACIE* LIABILITY ON THEIR FRANCHISE TRANSFER CLAIMS
AND PLAINTIFFS' MOTION (#178) FOR PARTIAL SUMMARY
JUDGMENT ON THE ISSUE OF DAMAGES UNDER O.R.S. 652.140.. . . . 128
   I.   Willfulness.. . . . . . . . . . . . . . . . . . . 130
       A.   The Law. . . . . . . . . . . . . . . . . . . 131
       B.   Analysis.. . . . . . . . . . . . . . . . . . 133
   II.  Calculation of Penalty Wages. . . . . . . . . . . 135

PLAINTIFFS' MOTION (#175) FOR PARTIAL SUMMARY JUDGMENT ON THE
ISSUE OF DAMAGES UNDER O.R.S. 652.615.. . . . . . . . . . . . 138

PLAINTIFFS' MOTION (#176) FOR PARTIAL SUMMARY JUDGMENT ON THE
ISSUE OF DAMAGES UNDER O.R.S. 653.025 and PLAINTIFFS' MOTION
(#177) FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES
UNDER O.R.S. 653.261. . . . . . . . . . . . . . . . . . . . . 139

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . 141

**BROWN, Senior Judge.**

This matter comes before the Court on the following Motions by Defendant Jack in the Box, Inc.:

1.   Motion (#161) for Summary Judgment No. 1 - Arbitration of Claim

2.   Motion (#162) for Summary Judgment No. 2 - WBF Deduction Claims Barred by Tax Laws

3.   Motion (#163) for Summary Judgment No. 3 - Remedies Related to Alleged Wrongful Deductions Are Limited

4.   Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty Tort Claims is Time-Barred

5.   Motion (#165) for Summary Judgment No. 5 - Quasi-Contract/Unjust Enrichment Claim Fails as a Matter of Law

and on the following Motions by Plaintiffs Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin:

1.   Motion (#172) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims

2.   Motion (#173) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims

3.   Motion (#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims

4.   Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615

5.   Motion (#176) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.025

6.   Motion (#177) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.261

7.  Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140

8.  Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions)

9.  Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees)

10. Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

The Court concludes the record for each of these Motions is sufficiently developed, and, particularly in light of the many interrelated issues raised in these several motions, oral argument would not be helpful to resolve them. *See United States v. Delgado*, 640 F. App'x 620, 621 (9th Cir. 2016)("Whether [a] . . . hearing is appropriate rests in the reasoned discretion of the district court.")(quotation omitted)); L.R. 7-1(d)("The Court will determine whether oral argument would help it resolve the matter.").

For the following reasons the Court:

1.  **DENIES** Defendant's Motion (#161) for Summary Judgment No. 1 - Arbitration of Claim;

2.  **DENIES** Defendant's Motion (#162) for Summary Judgment No. 2 - WBF Deduction Claims Barred by Tax Laws;

3.  **GRANTS in part** and **DENIES in part** Defendant's Motion (#163) for Summary Judgment No. 3 - Remedies Related to Alleged Wrongful Deductions Are Limited;

4.  **GRANTS** Defendant's Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty Tort Claims is Time-Barred;

5. **DENIES** Defendant's Motion (#165) for Summary Judgment No. 5 - Quasi- Contract/Unjust Enrichment Claim Fails as a Matter of Law;

6. **GRANTS** Plaintiffs' Motion (#172) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims

7. **DENIES** Plaintiffs' Motion (#173) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims

8. **GRANTS** Plaintiffs' Motion (#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims

9. **DENIES** Plaintiffs' Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615

10. **DENIES** Plaintiffs' Motion (#176) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.025

11. **DENIES** Plaintiffs' Motion (#177) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.261

12. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140

13. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions)

14. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees)

15. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

## BACKGROUND

Until September 30, 2011, Defendant Jack in the Box, Inc., owned and operated several restaurants in Oregon. From May 2006

through September 2011 Defendant sold its Oregon restaurants to various franchise operators as follows:

|                     |               |
|---------------------|---------------|
| May 1, 2006:        | 6 restaurants  |
| March 29, 2010:     | 21 restaurants |
| March 7, 2011:      | 13 restaurants |
| September 30, 2011: | 3 restaurants  |

After September 30, 2011, Defendant did not own or operate any restaurants in Oregon and did not have any Oregon employees. The last Jack in the Box restaurant in Oregon owned by Defendant at which any of the named Plaintiffs worked was sold to Northwest Group, Inc. (NWG) on March 29, 2010.

Plaintiffs were employed by Defendant in its Oregon restaurants at various times. Plaintiffs received their final paychecks from Defendant on the following dates:

|                   |                   |
|-------------------|-------------------|
| Tricia Tetrault:  | July 11, 2008     |
| Ashley Ortiz:     | December 26, 2008 |
| Nicole Gessele:   | March 20, 2009    |
| Jessica Gessele:  | November 23, 2009 |
| Christina Mauldin:| March 30, 2010.   |

On August 13, 2010, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault, on behalf of all those similarly situated, filed a putative class-action Complaint in this Court against Defendant Jack in the Box (*Gessele I*, Case No. 3:10-CV-00960-ST)[1] for violation of the minimum-wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., and various Oregon wage-and-hour laws. *Gessele I*

---

[1] In *Gessele I* Ashley Ortiz proceeded as Ashley Gessele and Christina Mauldin proceeded as Christina Luchau.

was assigned to Magistrate Judge Janice M. Stewart.

On May 16, 2011, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault filed a First Amended Complaint in *Gessele I* in which they added Christina Mauldin as a named Plaintiff.

On March 20, 2012, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin filed a Second Amended Complaint in *Gessele I* in which they alleged Defendant (1) failed to pay minimum wages in violation of the FLSA, (2) failed to pay overtime wages in violation of the FLSA, (3) failed to pay minimum wages in violation of Oregon Revised Statutes § 653.025, (4) failed to pay overtime wages in violation of Oregon Revised Statutes § 653.261, (5) failed to pay all wages due following termination of Plaintiffs' employment in violation of Oregon Revised Statutes § 652.140, (6) deducted unauthorized amounts from Plaintiffs' paychecks in violation of Oregon Revised Statutes § 652.610, and (7) failed to pay all wages when due as required by Oregon Revised Statutes § 652.120.

On August 13, 2012, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin filed a Motion to Certify Oregon Rule 23(b)(3) Classes and Alternative Motions to Either Certify Hybrid FLSA Classes or Certify FLSA 216(b) Collectives in *Gessele I.*

On December 13, 2012, Jessica Gessele, Ashley Ortiz, Nicole

Gessele, Tricia Tetrault, and Christina Mauldin filed a Motion for Leave to File Third Amended Complaint in *Gessele I*.  On January 7, 2013, Magistrate Judge Janice M. Stewart denied the Motion on the grounds of undue delay and prejudice.

On January 28, 2013, Magistrate Judge Stewart issued Findings and Recommendation in which she recommended granting in part and denying in part Plaintiffs' Motion to Certify. Specifically, Magistrate Judge Stewart recommended conditional certification of the proposed FLSA Workers Benefit Fund and Shoe Collectives and Subcollectives under § 216(b) and certification of the proposed Rule 23(b)(3) Oregon Workers Benefit Fund and Shoe Classes and Subclasses.  Magistrate Judge Stewart also recommended denying certification of the proposed FLSA Break Collective and the Rule 23(b)(3) Break Classes and Subclasses.

On April 1, 2013, District Judge Ancer L. Haggerty entered an Order adopting the January 28, 2013, Findings and Recommendation; conditionally certifying Plaintiffs' proposed FLSA Workers' Benefit Fund and Shoe Collectives and Subcollectives under § 216(b); certifying Plaintiffs' proposed Rule 23(b)(3) Oregon Workers Benefit Fund and Shoe Classes and Subclasses; and denying certification of the FLSA Break Collective and the Rule 23(b)(3) Break Classes and Subclasses.

From May 31, 2011, to June 18, 2013, Defendant filed four Answers in *Gessele I* in which it asserted between eight and

twelve affirmative defenses.  Defendant, however, did not assert arbitration as a defense in any of its Answers in *Gessele I.*

On May 7, 2013, Defendant filed a Motion for Summary Judgment in *Gessele I* as to all of the claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin on the grounds that their FLSA claims were barred by the statute of limitations and that the court may not exercise supplemental jurisdiction over Plaintiffs' state-law claims.

On June 26, 2013, *Gessele I* was reassigned to this Court.

On November 5, 2013, Jason Diaz filed a Consent to Join Law Suit in *Gessele I*.  Diaz, however, did not become a named Plaintiff in *Gessele I*.

On March 19, 2014, this Court issued an Opinion and Order in *Gessele I* in which it granted Defendant's Motion for Summary Judgment on the ground that Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin were required to file written consents with the Court to commence their FLSA collective action, but they failed to file those written consent forms timely.  The Court, therefore, concluded it never acquired jurisdiction over the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin, and, as a result, the Court could not exercise supplemental jurisdiction over their state-law claims.  The Court also concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia

Tetrault, and Christina Mauldin did not file written consents within the applicable limitations period; neither equitable tolling nor equitable estoppel applied; and, therefore, their FLSA claims were barred by the applicable statute of limitations. Accordingly, the Court dismissed the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin with prejudice and dismissed their state-law claims without prejudice.

On April 16, 2014, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin filed in *Gessele I* an unopposed Motion to Amend/Correct in which they moved the Court to amend its March 19, 2014, Opinion and Order to dismiss their FLSA claims without prejudice on the ground that the Court lacked jurisdiction over those claims.

On May 15, 2014, the Court granted the Motion to Amend/Correct in *Gessele I* and issued an Amended Opinion and Order in which it granted Defendant's Motion for Summary Judgment on the ground that Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin failed to file written consent forms within the time required by the FLSA. The Court, therefore, never acquired jurisdiction over the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin, and, as a result, the Court could not exercise supplemental jurisdiction over their state-law claims.

Accordingly, on May 15, 2014, the Court entered a Judgment dismissing *Gessele I* without prejudice.

On June 10, 2014, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, Christina Mauldin, and Jason Diaz filed a putative class action against Jack in the Box in Multnomah County Circuit Court (*Gessele II*) in which they alleged claims for violation of Oregon's wage-and-hour laws, violation of the FLSA, breach of fiduciary duty, and equitable and quasi-contractual claims for return of money.

On July 9, 2014, Defendant removed *Gessele II* to this Court on the ground of federal-question jurisdiction based on Plaintiffs' FLSA claims and/or jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).

On July 16, 2014, Defendant filed an Answer to Plaintiffs' Complaint in which it asserted sixteen Affirmative Defenses including one for arbitration in which Defendant stated "[c]ertain named Plaintiffs and putative collective and class action members' claims are barred from litigation in this Court pursuant to arbitration agreements with Defendant." Def.'s Answer at ¶ 90.

On August 8, 2014, Plaintiffs filed a Motion to Remand Case to State Court on the grounds that (1) issue preclusion/ collateral estoppel barred litigation of *Gessele II* in this Court; (2) the "law of the case" barred litigation in this Court

if issue preclusion did not bar litigation; and (3) judicial estoppel barred litigation of *Gessele II* in this Court if neither issue preclusion nor law of the case barred such litigation.

On October 17, 2014, the Court entered an Opinion and Order in *Gessele II* in which it granted in part and denied in part Plaintiffs' Motion to Remand. The Court concluded (1) although issue preclusion barred relitigation as to whether the Court had jurisdiction to hear the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin, it did not bar litigation of Diaz's FLSA claims against Defendant brought for the first time in *Gessele II*; (2) the law of the case did not bar relitigation as to whether this Court had jurisdiction; (3) the Court's decision regarding its lack of jurisdiction over *Gessele I* did not apply to Diaz because he was never a named plaintiff in *Gessele I*, and, therefore, judicial estoppel did not apply nor require remand of Diaz's FLSA claims; (4) judicial estoppel applied to and estopped Defendant from relitigating the issue of this Court's lack of jurisdiction over the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin; and (5) Defendant did not waive its right to remove *Gessele II* by seeking dismissal of *Gessele I* on jurisdictional grounds.

On October 29, 2014, Defendant moved for a stay of *Gessele II* pending the outcome of Defendant's intended appeal of the

Court's October 17, 2014, Opinion and Order to the Ninth Circuit.

On November 6, 2014, the Court granted Defendant's Motion for Stay.

On June 11, 2015, the Ninth Circuit issued a Mandate in which it reversed in part the Court's October 17, 2014, Opinion and Order and remanded the matter to this Court for further proceedings.  Specifically, the Ninth Circuit held (1) the doctrine of issue preclusion precluded Defendant from relitigating "the jurisdictional issues" in *Gessele I*; (2) Defendant "[was] not precluded from invoking federal jurisdiction" in *Gessele II* because *Gessele I* did not address jurisdiction under CAFA nor the timeliness of the new FLSA claims asserted in *Gessele II*; (3) Defendant's position in *Gessele I* that the Court lacked jurisdiction over the FLSA claims asserted in that matter "is not inconsistent with [Defendant's] . . . [assertion in *Gessele II* that] there is no time bar to the newly asserted FLSA claims, or that the district court has CAFA jurisdiction over the state-law claims"; and (4) Defendant did not waive its right to remove *Gessele II* "through its filings in the state court or its prior conduct in this litigation."

On August 31, 2015, Defendant filed a Motion for Partial Summary Judgment in *Gessele II* in which it asserted Diaz's claims were subject to an arbitration agreement.  On the same day Plaintiffs filed a Motion for Partial Summary Judgment (Statute

of Limitations) and to Establish Tolling for FLSA Collective Members and a Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses.

On December 22, 2015, the Court issued an Order in which it denied as premature (1) those portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) as to whether the California putative class members are subject to binding settlements in two California state cases; (2) those portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) relating to Defendant's status as a joint employer; and (3) Plaintiffs' Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses as to Defendant's Ninth Affirmative Defense.  The Court granted the parties leave to re-address those issues after limited discovery and after the Court issued its Opinion and Order on the remaining portions of the pending Motions.

On February 16, 2016, the Court heard oral argument on those issues in the pending Motions for Partial Summary Judgment that it did not address in its December 22, 2015, Opinion and Order. At oral argument the parties agreed the issue as to

whether Diaz's claims were subject to mandatory arbitration required more extensive briefing by both parties, and Defendant, therefore, withdrew that portion of its Motion for Partial Summary Judgment.

On March 10, 2016, the Court issued an Opinion and Order in which it granted Defendant's Motion for Partial Summary Judgment; denied Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling; and granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment on Jack in the Box's 8th (Private Right Of Action), 9th (Due Process) and 12th (Preemption) Affirmative Defenses. Specifically, the Court (1) granted Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Eighth Affirmative Defense and dismissed that Defense with prejudice; (2) granted Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Twelfth Affirmative Defense as to those portions of Plaintiffs' Seventh and Eighth Claims that are preempted by the FLSA or Oregon's wage-and-hour laws as set out in the Court's March 10, 2016, Opinion and Order; and (3) denied in part Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Twelfth Affirmative Defense as to those portions of Plaintiff's Seventh and Eighth Claims that are not preempted by the FLSA or Oregon's wage-and-hour laws as set out in the Court's March 10, 2016, Opinion and Order. In summary, the Court noted this matter would go forward as to named

Plaintiffs' state-law wage-and-hour claims; Jason Diaz's FLSA claims; and named Plaintiffs' FLSA claims from March 29, 2010, to the present.

On March 24, 2016, the parties filed a Joint Statement in which they agreed the following claims remained in this matter: (1) Plaintiffs' state-law wage-and-hour claims; (2) Plaintiffs' Seventh and Eighth Claims to the extent that they do not overlap with state or federal statutory claims; (3) Diaz's FLSA claims; and (4) Plaintiffs' FLSA claims for the period from March 29, 2010, to the present. Defendant also advised the Court that it intended to move for summary judgment against Diaz's claims based in part on his arbitration agreement with Defendant.

On July 7, 2016, the Court issued an Order in which it granted Defendant leave to file dispositive motions as to the following issues:

(1) all FLSA claims asserted by Plaintiffs for the period beginning March 29, 2010, to the present on the ground that Defendant is not a joint employer of franchisee employees;

(2) all FLSA claims asserted by Diaz on the ground that he failed to file a written consent under the FLSA;

(3) all state and federal claims asserted by Diaz on the grounds that (a) he was required to arbitrate those claims and (b) he failed to pursue his claims in

arbitration after his individual lawsuit (3:11-cv-0006-JO) was dismissed; and

(4)   all FLSA claims of any California putative class members subject to the class settlements in the cases of *Frederick v. Jack-In-The-Box, Inc.,* No. RIC50144, and *Olvera v. Jack In The Box, Inc.,* No. 37-2013-00072707.

On September 1, 2016, Defendant filed its Motion for Partial Summary Judgment as permitted by the Court in its July 7, 2016, Order.

On December 13, 2016, the Court issued an Opinion and Order in which it granted in part and denied in part Defendant's Motion as follows:

1.   granted Defendant's Motion as to Plaintiffs' FLSA claims for the period beginning March 29, 2010, to the present on the ground that Defendant was not Plaintiffs' joint employer during that period;

2.   granted Defendant's Motion as to Diaz's state and federal claims on the ground that Diaz is required to arbitrate his claims under the terms of the arbitration agreement; and

3.   denied as premature Defendant's Motion as to the FLSA claims of California putative class members subject to

the class settlements in the *Frederick* and *Olvera* cases.

On February 2, 2017, the Court held a status conference and directed Plaintiffs to file their Motion to Certify Rule 23(b)(3) Classes by March 3, 2017.

On March 2, 2017, Plaintiffs filed a Motion for Rule 23(b)(3) Class Certification.

On June 12, 2017, the Court issued an Opinion and Order in which it granted in part and denied in part Plaintiffs' Motion as follows:

1. granted Plaintiff's Motion to Certify the Workers Benefit Fund (WBF) Class,

2. granted Plaintiff's Motion to Certify the Shoe Class,

3. granted Plaintiff's Motion to Certify the Franchise Transfer Class, and

4. denied Plaintiffs' Motion to Certify the Unpaid Break Class.

On May 3, 2019, Defendant filed five Motions for Summary Judgment:

1. Motion (#161) for Summary Judgment No. 1 - Arbitration of Claim

2. Motion (#162) for Summary Judgment No. 2 - WBF Deduction Claims Barred by Tax Laws

3. Motion (#163) for Summary Judgment No. 3 - Remedies Related to Alleged Wrongful Deductions Are Limited

4. Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty Tort Claims is Time-Barred

5. Motion (#165) for Summary Judgment No. 5 - Quasi-Contract/Unjust Enrichment Claim Fails as a Matter of Law.

On May 24, 2019, Plaintiffs filed ten Motions for Partial Summary Judgment:

1. Motion (#172) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims

2. Motion (#173) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims

3. Motion (#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims

4. Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615

5. Motion (#176) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.025

6. Motion (#177) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.261

7. Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140

8. Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions)

9. Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees)

10. Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).


**STANDARDS**

Summary judgment is appropriate when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a genuine dispute as to a material fact. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598

(9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.

## **DEFENDANT'S MOTION (#161) FOR SUMMARY JUDGMENT NO. 1 - ARBITRATION OF CLAIM**

For the reasons that follow the Court **DENIES** Defendant's Motion (#161) for Summary Judgment No. 1 - Arbitration of Claim.

Defendant moves for summary judgment as to all of Plaintiffs' claims on the ground that those claims are subject to mandatory arbitration.  Plaintiffs, however, assert Defendant has not established Plaintiffs signed an Arbitration Agreement that

requires them to arbitrate their claims, Defendant waited too long to demand arbitration, and the proper remedy would be to stay this matter rather than dismiss it even if the Arbitration Agreement was enforceable.

## I.  Arbitration Agreement

Defendant relies on the Declaration of Susan Pettijohn to support its assertion that the named Plaintiffs remaining in this action signed the same Arbitration Agreement as Diaz, which, as noted, required Diaz to arbitrate his claims.  *See* Opin. and Order (#108)(Dec. 13, 2016).  Pettijohn testifies she has been a Human Resources Project Manager for Defendant for 22 years.  She states

> [b]etween 2005 and 2014, new employees were required to log onto a CBT terminal to review various new-hire documents such as Jack in the Box's arbitration agreement. . . .  After the new employee reviewed the agreement, he or she was presented with an acknowledgement screen.  The new employee would then either click "yes" to accept the agreement or click "no" if they did not.  If the employee clicked "yes", he or she was then required to enter a confidential password which acted as his or her electronic signature to the agreement.  An electronic record of the new employee signing the agreement is then stored in Jack in the Box's HRIS system and becomes part of the employee's personnel record.
>
> Each of the named plaintiffs Jessica Gessele, Ashley Gessele, Nicole Gessele, Tricia Tetrault, and Christina Mauldin electronically signed Jack in the Box's Dispute Resolution Agreement in the manner described above.  Their agreements and the dates thereof ("Transaction Date") are found in the electronic records stored in Jack in the Box's HRIS system in the regular course of business.

> Attached Exhibit BB contains true and accurate copies (excepting the redaction of SSN and Birth Date) of the named plaintiffs' electronic agreements to Jack in the Box's Dispute Resolution Agreement.
>
>                               * * *
>
> [The] December 2003 version of Jack in the Box's Dispute Resolution Agreement was used with all employees between December 2003 and October 2010.

Decl. of Susan Pettijohn at ¶¶ 4-6. Exhibit BB to Pettijohn's Declaration contains electronic printouts of each remaining named Plaintiff's acknowledgment of an Arbitration Agreement.

Defendant's Arbitration Agreement in place between 2003 and 2010 provided:

> In signing the Acknowledgment and Receipt, both the Company and the Employee agree that all claims or disputes covered by this Agreement must be submitted to binding arbitration, and that this binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute. This promise to resolve claims by arbitration is equally binding upon the Company and the Employee.
>
>                               * * *
>
> This Agreement applies to the following allegations, disputes, and claims for relief Employee may presently or in the future have against the Company . . . and all claims that the Company may presently or in the future have against the Employee in any way related to Employee's employment or termination: . . . compensation disputes including wages, overtime, penalties, bonus payments and benefits; [and] contractual violations (although no contractual relationship is hereby created other than this Agreement).

Pettijohn Decl., Ex. CC at 1.

As the Court noted in its December 13, 2016, Opinion and Order, Oregon law specifically permits electronic signatures to bind individuals to agreements. *See, e.g.,* Or. Rev. Stat. § 84.004(8)("Electronic signature" means an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."); Or. Rev. Stat. § 84.019(1)("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

On this record the Court concludes Defendant has established the remaining named Plaintiffs signed an Arbitration Agreement in a legally binding and acceptable manner.

## II. Terms of the Agreement

According to Plaintiffs, however, even if Defendant has established Plaintiffs signed the Arbitration Agreement, Defendant has not established the terms of the Arbitration Agreement apply because it has "produced no evidence whatsoever that any of the named plaintiffs' claims exceed $15,000," and the Arbitration Agreement provides: "The following claims or disputes are not covered by this Agreement: . . . claims seeking only monetary recovery where the total amount of the claim does not exceed $15,000." Pettijohn Decl., Ex. CC at 2.

Defendant, however, points out that Plaintiffs are asking the Court to "order an accounting; declare Defendant's violations

as enumerated herein and enjoin Defendant from committing similar

violations in future."  Thus, Defendant contends Plaintiffs do

not seek only "monetary recovery."  Compl. at 34.

The Court agrees, and, therefore, the Court concludes on

this record that the Arbitration Agreement provision exempting

claims less than $15,000 does not apply to Plaintiffs' claims.

## III. Waiver

Plaintiffs also assert Defendant "has waited too long to

demand arbitration" and, therefore, has either waived its right

to do so and/or the arbitration defense is barred by the statute

of limitations.

According to Defendant, however, it has not waived its right

to arbitrate because it asserted arbitration as an affirmative

defense in *Gessele II*, it has not acted inconsistently with the

right to arbitrate, and "[t]he passage of time alone is not

sufficient to establish prejudice."

Under Oregon law "a waiver is the 'intentional

relinquishment of a known right.'"  *Wood Park Terrace Apartments

Ltd. P'ship v. Tri-Vest, LLC*, 254 Or. App. 690, 695 (2013)

(quoting *Guardian Mgmt. LLC v. Zamiello*, 194 Or. App. 524, 529

(2004)).  Oregon courts have held:

> "[I]n the absence of an express agreement a waiver
> will not be presumed or implied contrary to the
> intention of the party whose rights would be
> injuriously affected thereby, unless by his
> conduct the opposite party has been misled, to his
> prejudice, into the honest belief that such waiver

> was intended or consented to.  To make out a case
> of waiver of a legal right there must be a clear,
> unequivocal, and decisive act of the party showing
> such a purpose or acts amounting to an estoppel on
> his part."

*Baumgarner v. Cmty. Svcs., Inc.*, 992 F. Supp. 2d 1081, 1088 (D. Or. 2014)(quoting *Brown v. Portland Sch. Dist. No. 1*, 291 Or. 77, 84 (1981)).  The Ninth Circuit has made clear that "[w]aiver of a contractual right to arbitration is not favored," and, therefore, "any party arguing waiver of arbitration bears a heavy burden of proof."  *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013)(quotation omitted).  When "the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law."  *Id*.

As noted, the remaining named Plaintiffs in this matter signed the Arbitration Agreement in 2008, but Defendant did not assert arbitration as an affirmative defense in any of its four Answers filed in *Gessele I*, which did not include Diaz as a Plaintiff.  In addition, *Gessele I* was pending in this Court for four years during which time Defendant filed, among other things, a Motion to Dismiss, an Opposition to Plaintiffs' Motion to Certify Class, a Motion for Summary Judgment, and a Cross-Motion for Summary Judgment, but Defendant did not assert in any of those filings that the named Plaintiffs' claims were subject to mandatory arbitration.

In *Gessele II*, which commenced more than three years after *Gessele I* and included Diaz as a named Plaintiff, Defendant first asserted an Affirmative Defense of arbitration. In particular, Defendant stated "[c]ertain named Plaintiffs and putative collective and class action members' claims are barred from litigation in this Court pursuant to arbitration agreements with Defendant." Def.'s Answer at ¶ 90. Notably, however, Defendant did not specify which of the named Plaintiffs allegedly had claims barred by arbitration agreements. When Defendant filed its August 2015 Motion for Partial Summary Judgment, Defendant asserted Diaz's claims were subject to the Arbitration Agreement. Defendant, however, did not assert in its Motion that the other named Plaintiffs' claims were subject to the Arbitration Agreement even though Defendant knew at the time that the other named Plaintiffs had signed the same Arbitration Agreement as Diaz and Defendant based its argument that Diaz's claims were subject to mandatory arbitration on that same Agreement. Defendant also did not assert the remaining named Plaintiffs' claims were subject to mandatory arbitration in its Opposition to Plaintiffs' Motion for Rule 23(b)(3) Class Certification. In fact, it was not until November 2018, which was more than four years after Plaintiffs filed *Gessele II*, that Defendant raised the issue of any Plaintiff other than Diaz being subject to mandatory arbitration.

Defendant asserts some courts have held the passage of time alone is not sufficient to establish that a party "has been misled, to his prejudice, into the honest belief that [a] waiver [of a mandatory arbitration clause] was intended or consented to." *See, e.g., Call v. Harris Stowe State Univ.*, No. 4:17-cv-1548, 2018 WL 1470453, at *5-7 (E.D. Mo. Mar. 26, 2018) (holding litigation that lasted more than three years and included extensive discovery did not prejudice the plaintiffs because the defendants had not litigated "substantial issues on the merits" and "compelling arbitration would [not] require a duplication of efforts.").

Here, however, Plaintiffs note it is more than the passage of time that indicates Defendant waived its right to compel arbitration. Specifically, Plaintiffs emphasize that Defendant acted inconsistently assert any right to arbitrate for all of the years that *Gessele I* and *Gessele II* were pending before Defendant first pleaded that defense as to these named Plaintiffs. For example, Defendant did not assert the Affirmative Defense of arbitration in *Gessele I* when Diaz was not a named Plaintiff; although Defendant engaged in substantial litigation in *Gessele I* on the merits of the named Plaintiffs' claims, it did not include mandatory arbitration in its assertion of numerous defenses; in *Gessele II* Defendant did not assert an Affirmative Defense of arbitration until Diaz was a named Plaintiff and then stated the

Affirmative Defense applied only to "certain named Plaintiffs"; and, finally, Defendant asserted the Affirmative Defense of mandatory arbitration only as to Diaz.  Thus, for more than eight years throughout two cases and despite the litigation of several substantive motions, Defendant did not allege any named Plaintiff other than Diaz was subject to a mandatory arbitration agreement.

Defendant concedes it "was aware that all of the named plaintiffs had signed arbitration agreements, but with the then-prevalent trend among courts to strike class waivers . . . it was unclear how availing the arbitration defense would be."  Def.'s Mot. for Summ. J. No. 1 at 5.  Rather than controverting Plaintiffs' waiver argument, however, this statement suggests Defendant made a conscious and strategic decision not to raise arbitration as to the named Plaintiffs other than Diaz. Notwithstanding its statement, Defendant, nevertheless, points to the Supreme Court's recent decision in *Epic Systems v. Lewis*, 138 S. Ct. 1612 (2018), to support its assertion that it did not wait too long to raise the issue of arbitration as to the named Plaintiffs other than Diaz.

In *Epic* the Supreme Court resolved a split in the circuits as to whether arbitration agreements that require employees to participate in individualized arbitration proceedings violate the "concerted activity" provision of the National Labor Relations Act (NLRA) and are, therefore, unenforceable.  In resolving the

issue the Supreme Court addressed three cases from different circuits including *Morris v. Ernst & Young*, 834 F.3d 975, 990 (9th Cir. 2016).

In *Morris* the plaintiffs entered into employment agreements that required them to arbitrate any disputes that might arise between the plaintiffs and their employer, Ernst & Young. The agreements "specified individualized arbitration, with claims 'pertaining to different [e]mployees [to] be heard in separate proceedings.'" *Epic*, 138 S. Ct. at 1620. The defendant employer brought a motion to compel arbitration, which the district court granted. The Ninth Circuit, however, reversed the district court and concluded the agreement's requirement of individualized arbitration proceedings violated the NLRA because it barred employees from engaging in the "concerted activity" provision of the NLRA, 29 U.S.C. § 157. *Morris*, 834 F.3d at 990. The Supreme Court reversed the Ninth Circuit's decision and concluded provisions in employment contracts that require individualized arbitration proceedings are enforceable:

> Congress has instructed that arbitration agreements like those before us must be enforced as written. While Congress is of course always free to amend this judgment, we see nothing suggesting it did so in the NLRA-much less that it manifested a clear intention to displace the Arbitration Act. Because we can easily read Congress's statutes to work in harmony, that is where our duty lies. The judgments in Epic, No. 16-285, and Ernst & Young, No. 16-300, are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*Epic*, 138 S. Ct. at 1632.

Although *Epic* changed the landscape of individualized-action requirements in arbitration agreements, it did not alter the enforceability of arbitration agreements generally.  In fact, this Court relied on *Morris* in its December 2016 Opinion and Order in which it concluded the mandatory Arbitration Agreement in Diaz's employment contract with Defendant was enforceable. Although this Court concluded based on *Morris* that it was required to sever the provision of the Arbitration Agreement that prohibited employees from bringing or participating in collective action, this Court, nevertheless, concluded the arbitration clause itself was enforceable.  Thus, even before the Supreme Court's decision in *Epic* the Ninth Circuit had concluded employment arbitration agreements such as the one at issue here were enforceable and mandated arbitration.  Moreover, Defendant was obviously aware of this fact because it moved for summary judgment as to Diaz's claims in August 2015 on the ground that Diaz signed an Arbitration Agreement, and this Court granted Defendant's Motion as to that issue in December 2016.  The Supreme Court's decision in *Epic*, therefore, does not support Defendant's assertion that Plaintiffs have not been "'misled, to [their] prejudice, into the honest belief that [a] waiver [of the Arbitration Agreement] was intended or consented to" by Defendant.'"  *Baumgarner*, 992 F. Supp. 2d at 1088 (D. Or. 2014)

(quoting *Brown*, 291 Or. at 84).

In summary, the Court concludes Defendant not only has acted inconsistently as to its late-asserted right to arbitrate the remaining named Plaintiffs' claims, nine years of substantive litigation has occurred in this Court between the remaining named Plaintiffs and Defendant without Defendant specifically asserting its arbitration defense against the named Plaintiffs even though Defendant was well aware of that defense.  On this record the Court concludes Defendant has waived the right to seek arbitration of the named Plaintiffs' claims, and, in any event, Plaintiffs would be prejudiced if the Court mandated the parties to arbitrate this matter at this late date.[2]

Accordingly, the Court denies Defendant's Motion (#161) for Summary Judgment No. 1 - Arbitration of Claims.


## DEFENDANT'S MOTION (#162) FOR SUMMARY JUDGMENT NO. 2 - WBF DEDUCTION CLAIMS BARRED BY TAX LAWS

For the reasons that follow the Court **DENIES** Defendant's Motion (#162) for Summary Judgment No. 2 - WBF Deduction Claims Barred by Tax Laws.

As noted, on March 2, 2017, Plaintiffs filed a Motion for Rule 23(b)(3) Class Certification in which they moved to certify

---

[2] In light of this ruling, the Court need not address Plaintiffs' alternative argument that Defendant's arbitration defense is barred by the statute of limitations.

four classes, including the Workers Benefit Fund (WBF) class, which consists of all Oregon employees of Defendant's restaurants who had a WBF assessment deducted from their paychecks between August 13, 2004, and February 10, 2012.[3] In its Response to Plaintiffs' Motion Defendant conceded it "over-withheld" assessments for the WBF from its Oregon employees from August 13, 2004, through February 10, 2012, and, therefore, it did "not challenge certification of Plaintiff's WBF class under Rule 23(a)(2) on substantive grounds."

In its Motion for Summary Judgment No. 2 Defendant, nevertheless, asserts the Court must dismiss Plaintiffs' claims based on WBF deductions because those claims are barred by state and federal tax laws. According to Plaintiffs, however, Defendant may not assert an unpled affirmative defense at this point, and, in any event, Plaintiffs' WBF claims are not barred by federal or state tax laws because the WBF is not a "tax" within the meaning of those laws. In the alternative, Plaintiffs state they would not oppose remand of this matter to the state tax court under the Tax Injunction Act, 28 U.S.C. § 1341.

---

[3] As the Court noted in its June 2017 Opinion and Order, Defendant sold the last of its Oregon locations to a franchisee on September 30, 2011. Defendant, therefore, did not have any employees in Oregon as of September 30, 2011. Thus, it is questionable whether any putative Plaintiff for any of the proposed classes will be able to recover damages incurred after that date.

## I. The WBF

The WBF is a program that provides various benefits to workers injured on the job in Oregon since 1966. The WBF is authorized pursuant to Oregon Revised Statutes § 656.605, which provides the WBF is "separate and distinct from the General Fund" and "consist[s] of . . . (a) Moneys received pursuant to ORS 656.506 . . . [and] (d) All moneys received by the Director of the Department of Consumer and Business Services pursuant to law or from any other source for purposes for which the fund may be expended." Or. Rev. Stat. § 656.605(1). In addition, "all moneys in the [WBF] are appropriated continuously to the Director of the Department of Consumer and Business Services to carry out the activities for which the fund may be expended." Or. Rev. Stat. § 656.605(3). Finally, § 656.605(2) provides funds in the WBF may be expended only for certain specific purposes, none of which apply here.

As noted, the WBF consists in part of funds received pursuant to § 656.506 as follows:

> Every employer shall retain from the moneys earned by all employees an amount determined by the Director of the Department of Consumer and Business Services for each hour or part of an hour the employee is employed and pay the money retained in the manner and at such intervals as the Director of the Department of Consumer and Business Services shall direct.
>
> In addition to all moneys retained under subsection (2) of this section, the director shall assess each employer an amount equal to that

assessed pursuant to subsection (2) of this
section.

Or. Rev. Stat. § 656.506(2) and (3). Thus, pursuant to § 656.506
employers and employees are required to pay equal amounts into
the WBF. For example, in 2003 the WBF assessment rate was 3.6¢
per hour. Employers, therefore, were required to pay to the WBF
at least 1.8¢ for every hour that their employees worked during
2003. Although employers were permitted to pay more than 1.8¢,
they were not permitted to withhold from their employees'
paychecks more than 1.8¢ for every hour that their employees
worked during 2003.

## II. The WBF assessments are not a tax pursuant to Oregon Revised Statutes § 316.197.

As noted, Defendant asserts Plaintiffs' claims based on WBF
assessments are barred by state tax laws. Specifically,
Defendant contends WBF assessments are taxes within the meaning
of Oregon Revised Statutes § 316.197 and are subject to the
provisions of § 316.197 even though they are referred to as
"assessments" in their authorizing statute, and, therefore,
Plaintiffs do not have a private right of action against
Defendant for employees' overpayment of WBF assessments pursuant
to § 316.197(2).

Plaintiffs, however, assert even if WBF assessments are
taxes, which Plaintiffs dispute, they are not taxes covered by
§ 316.197. According to Plaintiffs, the lack of a private right

of action provision in § 316.197(2), therefore, does not apply to
Plaintiffs' claims.

Oregon Revised Statutes § 316.197 provides:

> [W]ithin the time that each employer is required
> to pay over taxes withheld for federal income tax
> purposes for any period, the employer shall pay
> over to the Department of Revenue or to a
> financial agent of the department the amounts
> required to be withheld under ORS 316.167 and
> 316.172 and 320.550 for the same period.
>
> * * *
>
> Every amount so paid over shall be accounted for
> as part of the collections under this chapter.
> *No employee has any right of action against an
> employer in respect of any moneys deducted from
> wages and paid over in compliance or intended
> compliance with this section.*

Or. Rev. Stat. § 316.197(1) and (2)(emphasis added).

## A.     Oregon Rules of Statutory Construction

Traditionally Oregon courts have followed the
methodology for interpreting statutes "outlined in *PGE v. Bureau
of Labor and Industries*, 317 Or. 606, 610-12, 859 P.2d 1143
(1993)." *State v. Gaines*, 346 Or. 160, 164 (2009). This
methodology

> entails three sequential levels of analysis to
> determine the legislature's intent. First, the
> court examines the text and context of the
> statute. *Id*. at 610-11, 859 P.2d 1143. If the
> legislature's intent is obvious from that first
> level of analysis, "further inquiry is unneces-
> sary." *Id*. at 611, 859 P.2d 1143. "If, but only
> if," the legislature's intent is not obvious from
> the text and context inquiry, "the court will then
> move to the second level, which is to consider
> legislative history[.]" *Id*. at 611, 859 P.2d

1143.  If the legislature's intent remains unclear
after examining legislative history, "the court
may resort to general maxims of statutory
construction to aid in resolving the remaining
uncertainty."  *Id.* at 612, 859 P.2d 1143.

*Id.* at 164-65.  In 2009, however, the Oregon Supreme Court

concluded:

[I]n light of the 2001 amendments to ORS 174.020,
the appropriate methodology for interpreting a
statute is as follows.  The first step remains an
examination of text and context.  *PGE*, 317 Or. at
610-11, 859 P.2d 1143.  But, contrary to this
court's pronouncement in *PGE*, we no longer will
require an ambiguity in the text of a statute as
a necessary predicate to the second step --
consideration of pertinent legislative history
that a party may proffer.  Instead, a party is
free to proffer legislative history to the court,
and the court will consult it after examining text
and context, even if the court does not perceive
an ambiguity in the statute's text, where that
legislative history appears useful to the court's
analysis.  However, the extent of the court's
consideration of that history, and the evaluative
weight that the court gives it, is for the court
to determine.  The third, and final step, of the
interpretive methodology is unchanged.  If the
legislature's intent remains unclear after
examining text, context, and legislative history,
the court may resort to general maxims of
statutory construction to aid in resolving the
remaining uncertainty.

*Id.* at 171-72.

B.    **The WBF as Assessment or Tax**

As noted, Defendant asserts the WBF assessment is a

tax, and, therefore, Plaintiffs' claims related to WBF

withholdings are barred by state and federal law.  Defendant

relies on the dictionary definition of tax and its reading of the

statutes applicable to the WBF as "treat[ing] the assessment like a payroll tax."

As it must, the Court first begins with the text and context of the WBF statute. "Relevant context includes other provisions of the same statute and other related statutes." *Matter of Comp. of Gadalean*, 364 Or. 707, 719 (2019)(quotation omitted).

The WBF authorizing statute describes the funds collected therein as "assessments." *See* Or. Rev. Stat. § 656.605(4)("the amount of the hourly assessments provided in subsections (2) and (3) of this section annually may be adjusted to meet the needs of the [WBF]"); § 656.605(5)("It is the intent of the Legislative Assembly that the department set rates for the collection of assessments pursuant to subsections (2) and (3) of this section in a manner so that . . . the cash balance shall be an amount of not less than six months of projected expenditures from the [WBF]"); § 656.605(6)("Every employer required to pay the assessments referred to in this section shall make and file a report of employee hours worked and amounts due under this section upon a combined report form prescribed by the Department of Revenue"). In contrast, other Oregon statutes use the word "tax" or "taxes" to describe funds collected by employers. For example, Oregon Revised Statutes § 316.167, which directs every employer to "withhold tax" from every employee's wages "at the

time of the payment of wages," provides if a person

> who supplies funds to or for the account of an
> employer for the purpose of paying wages of the
> employees of such employer has actual notice or
> knowledge that such employer does not intend to or
> will not be able to make timely payment or deposit
> of the *tax* required to be deducted and withheld,
> such lender, surety or other person shall be
> liable to the State of Oregon in a sum equal to
> the *taxes* together with interest which are not
> timely paid over to the department.

Or. Rev. Stat. § 316.167(3)(emphasis added).

> As the Oregon Supreme Court recently explained:

> "When the legislature uses different terms in
> related statutes, we presume that the legislature
> intended different meanings." *State v. Guzek*, 322
> Or. 245, 265 (1995). The same rule applies if the
> legislature used different terms in the same
> statute. *See State v. Keeney*, 323 Or. 309, 316
> (1996)(citing *State v. Harp*, 299 Or. 1, 7 n.7
> (1985), for principle); *see also Jordan v. SAIF*,
> 343 Or. 208, 217 (2007)("[The] use of a term in
> one section and not in another section of the same
> statute indicates a purposeful omission.").

*Matter of Comp. of Gadalean*, 364 Or. at 719. *See also United States v. Patrick*, No. 6:98-CR-60099-MC, 2017 WL 4683929, at *5 (D. Or. Oct. 18, 2017)(When "provisions of the same statute use different terms, it is presumed that the enacting legislature meant those terms to have . . . different meanings.").

The Oregon Legislature's use of the word "assessment" as opposed to the word "tax" in the WBF authorizing statute indicates a purposeful distinction by the Oregon Legislature between the WBF assessment and taxes that are elsewhere authorized in Oregon statutes. It also indicates the terms

"assessment" and "tax" have different meanings.  This distinction
is further supported by the fact that the statutes applicable to
the WBF on which Defendant relies refer in specific ways to both
taxes and assessments.  For example, § 316.168, which applies to
"every employer subject to the provisions of ORS 316.162 to
316.221, 656.506 and ORS chapter 657," universally refers to both
quarterly taxes and assessments.  *See, e.g.,* § 316.168(1)(every
employer "shall make and file a combined quarterly tax *and
assessment* report")(emphasis added)); § 316.168(3)(requires the
tax report to be "accompanied by payment of any tax *or assessment*
due and a combined tax *and assessment* payment coupon . . . [and
to] . . . indicate . . . the portions of the payment to be paid
to each of the tax *or* assessment programs")(emphasis added));
§ 316.168(4)(requires the Department of Revenue to "credit the
payment to the tax *or assessment* programs . . . and shall
promptly remit the payments to the appropriate taxing *or
assessing* body")(emphasis added)).

        In summary, the fact that the Oregon Legislature used
the words tax and assessment as separate and distinct concepts
rather than interchangeably indicates a purposeful distinction
and difference in the meaning of the terms.  Accordingly, after
examining the text and context of the WBF, the Court concludes
the WBF is not a "tax."

### C.   Applicability of § 316.197

Plaintiffs assert even if WBF assessments were a tax rather than an assessment, they are not subject to § 316.197. Section 316.197(1) sets out three specific sections of Oregon statutes to which it applies:  "[T]he employer shall pay over to the Department of Revenue . . . the amounts required to be withheld under ORS 316.167 and 316.172 and 320.550."

#### 1.   Oregon Revised Statutes § 316.197(1) does not indicate WBF assessments are taxes.

As noted, employers are mandated to withhold WBF assessments pursuant to § 656.506, which is not one of the statutes referenced in § 316.197, and the statutes set out in § 316.197(1) do not relate in any way to WBF assessments or payments.  When interpreting statutes in similar circumstances, courts have relied on the maxim of statutory construction that "the expression of one is the exclusion of others." *McDermott v. SAIF Corp.*, 286 Or. App. 406, 415 (2017).  As noted, § 316.197(1) applies to "amounts required to be withheld under ORS 316.167 and 316.172 and 320.550"; other statutes are not enumerated in § 316.197(1); and, therefore, it can be inferred that the Oregon Legislature did not intend to include other Oregon statutory sections. *See, e.g., Murray v. Mayo Clinic*, No. 17- 16803, 2019 WL 3926945, at *6 (9th Cir. Aug. 20, 2019)("Relief under § 2000e-5(g)(2)(B) is available only if the plaintiff proves a violation under § 2000e-2(m).  Section 2000e-2(m) narrowly

42 - OPINION AND ORDER

prohibits the consideration of race, color, religion, sex, or national origin as a motivating factor for any employment practice. It does not prohibit the consideration of disability. Congress's express listing of these status-based considerations under § 2000e-2(m) is best understood as an exclusion of all other considerations."); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)("The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions."). Although this "maxim is merely an auxiliary rule to determine the legislative intention" of a statutory provision (*State ex rel. City of Powers v. Coos County Airport*, 201 Or. App. 222, 234 (2005)), it provides further support for concluding the Oregon Legislature did not intend to include § 656.506 in § 316.197(1). *See also MEC Or. Racing, Inc. v. Or. Racing Comm'n*, 233 Or. App. 9 (2009) ("maxim *expressio unius est exclusio alterius* corroborates, rather than supplies, meaning to a statute."). Thus, the Court concludes § 316.197(1) by its plain language does not apply to WBF assessments.

   **2.    Oregon Revised Statutes § 316.197(2) does not indicate WBF assessments are taxes.**

        Although Defendant acknowledges § 656.506 is not

one of the statutes referred to in § 316.197(1), Defendant still
asserts § 316.197(2) broadens the scope of § 316.197(1) and in so
doing brings WBF assessments within the scope of that statute.
Section 316.197(2) by its terms, however, must be read together
with the limitations set out in § 316.197(1).  As noted,
§ 316.197(2) provides:  "Every amount *so paid over* shall be
accounted for as part of the collections under this chapter.  No
employee has any right of action against an employer in respect
of any moneys deducted from wages and paid over in compliance or
intended compliance *with this section*."  Emphasis added.  The
phrase "so paid over" relates to the provision in § 316.197(1)
for employers to "pay over to the Department of Revenue . . . the
amounts required to be withheld under ORS 316.167 and 316.172 and
320.550."  In addition, the phrase "with this section" makes
clear that employees do not have a private right of action
against employers for amounts "paid over" in compliance with
§ 316.197, which, as noted, is limited to amounts required to be
withheld under Oregon Revised Statutes §§ 316.167, 316.172, and
320.550.

        The Court has already concluded § 316.197(1) by its
language does not apply to WBF assessments.  On this record the
Court also concludes WBF funds are not "amounts paid over in
compliance with § 316.197."  Accordingly, § 316.197(2) does not
bar Plaintiffs' WBF claims against Defendant.

**III. Plaintiffs' WBF claims are not barred by federal tax law.**

Finally, Defendant asserts Plaintiffs' WBF claims are actually a tax-refund action, and, therefore, those claims are barred by federal tax law. Specifically, Defendant asserts Plaintiffs' WBF claims are barred by 26 U.S.C. § 7422 and/or 26 U.S.C. § 3403. The Court notes, however, that Plaintiffs assert their WBF claims are not barred by either of those sections of the Internal Revenue Code because WBF assessments are not taxes or "sums" assessed or collected as taxes pursuant to the Internal Revenue Code.

26 U.S.C. § 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the United States Treasury].

26 U.S.C. § 3403 provides: "The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter [of the United States Internal Revenue Code], and shall not be liable to any person for the amount of any such payment."

Although Defendant cites a number of cases for its assertion that WBF assessments are taxes or sums subject to the Internal Revenue Code, each of those cases involves deductions from employees' wages pursuant to both federal and state tax-

withholding laws that result in the government receiving less tax money.  For example, in *Frederickson v. Starbucks Corporation* the plaintiffs, who were former employees of the defendant, brought a class action against the defendant "challeng[ing] the legality of [the defendant's] practice of withholding state and federal taxes from barista's [*sic*] paychecks based on the cash tips they receive."  840 F.3d 1119, 1120 (9ᵗʰ Cir. 2016).  Specifically, the plaintiffs alleged the defendant violated Oregon's wage-and-hour laws when it deducted state and federal taxes from the plaintiffs' wages, "thereby failing to pay the baristas their full wages when due."  *Id*. at 1121.  The Ninth Circuit concluded the district court lacked jurisdiction to hear the plaintiffs' state-law, wage-and-hour claims pursuant to the Tax Injunction Act because even though the plaintiffs sought only declaratory and injunctive relief rather than a refund of their taxes, the relief the plaintiffs sought would "enjoin, suspend or restrain . . . the collection of state taxes."  *Id*. at 1122 (quotation omitted).  The Ninth Circuit also concluded the Tax Injunction Act deprived the district court of jurisdiction because if the court enjoined the withholding of taxes on the plaintiffs' tips as the plaintiffs requested, "Oregon would no longer receive taxes on the baristas' tip income unless the baristas report that income on their tax returns and have the money to pay the taxes owed when it comes time to file their returns," which would

"stop, not merely inhibit, the flow of tax revenue into Oregon's coffers." *Id.*

The Court already has concluded WBF assessments, unlike the deductions at issue in *Fredrickson*, are not a tax. In addition, unlike the requested declaratory and injunctive relief in *Fredrickson*, the relief requested here would not have any effect on the flow of state tax revenue. Notably, if Plaintiffs are successful on their WBF claims, the State of Oregon would not receive any less revenue because Plaintiffs are only requesting the Court to find Defendant required Plaintiffs to pay more of their percentage of the WBF assessment than is authorized under Oregon law rather than requesting the Court to find that the WBF payments made to the State were in excess of what is required by statute. In other words, the total amount of revenue to the State of Oregon would remain the same regardless whether Plaintiffs are successful on their WBF claims.

Finally, Defendant also relies on *Brennan v. Southwest Airlines Company*, 134 F.3d 1405 (9th Cir. 1998), *amended* 140 F.3d 849 (9th Cir. 1998), to support its assertion that WBF assessments are taxes or sums subject to the Internal Revenue Code. In *Brennan* the defendant airlines collected a ten percent excise tax on domestic air transportation for a number of flights in 1995 and 1996 "to which the [excise] tax did not apply." *Id.* at 1408. The plaintiffs brought a class action in state court

alleging "state-law causes of action for unlawful business
practices and breach of contract" and sought declaratory relief
and an accounting.  The defendants removed the action to federal
court, and the plaintiffs filed a motion to remand.  The district
court concluded even though the plaintiffs filed only state-law
claims, their action arose under federal law because "in
substance, it constitutes a suit for a tax refund" pursuant to 26
U.S.C. § 7422.  The Ninth Circuit affirmed:

> Thus, [§ 7422] means that if someone wrongfully
> collects money as a tax, then a suit to recover
> the sum constitutes a tax refund suit, even if the
> sum did not literally constitute an internal
> revenue tax.
>
> * * *
>
> Here, the airlines may not have collected an
> internal revenue tax, but they nevertheless
> collected a "sum" as a tax.  Therefore, Plaintiffs
> have filed a tax refund suit within the meaning of
> the IRC.

*Id*. at 1410.  Here, however, Plaintiffs do not seek to recover
any sum that was collected as a tax.  As noted, the Court has
concluded the WBF is not a tax.  In addition, Plaintiffs do not
seek recovery of the amounts that were withheld for the WBF but
instead seek penalties under Oregon's wage-and-hour laws for
Defendant's failure to pay its proper percentage of the WBF
assessment.  Thus, *Brennan* is not dispositive of the issues
before this Court.  *See, e.g., McMaster v. Coca-Cola Bottling Co.
of Ca.*, 392 F. Supp. 2d 1107, 1112 (N.D. Cal. 2005)("The cases

cited by defendants as controlling examples of properly-removed
tax refund suits are also distinguishable from the present action
because each presented a direct challenge to federal tax laws
. . . . Unlike the factual scenarios in *Brennan* and *Bright*, the
plaintiff . . . is not protesting the terms of the tax code. The
plaintiff . . . is not disputing the plain terms of IRC
regulations that fringe benefits can include commuting in a
company vehicle, nor that such commutes may be valued at $3 per
day. . . . As plaintiff is not seeking a refund of taxes, nor
challenging a provision of the tax code, this court holds that
plaintiff's claim is thus not a tax refund suit within the
meaning of 26 U.S.C. section 7422(a).").

      On this record the Court concludes Plaintiffs' WBF
claims are not a tax-refund action, and, therefore, Plaintiffs'
WBF claims are not barred by federal tax law. Accordingly, the
Court denies Defendant's Motion (#162) for Summary Judgment No. 2
- WBF Deduction Claims.

### **PLAINTIFF'S MOTION (#172) FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF *PRIMA FACIE* LIABILITY ON THEIR WORKERS' BENEFIT FUND CLAIMS**

For the reasons that follow the Court **GRANTS** Plaintiffs'
Motion (#172) for Partial Summary Judgment on the Issue of *Prima
Facie* Liability on Their Workers' Benefit Fund Claims as
specified herein.

Plaintiffs move for summary judgment on the issue of Defendant's *prima facie* liability on Plaintiffs' WBF claims. Defendant concedes it over-withheld Plaintiffs' portion of the WBF contributions. The Court notes Plaintiffs do not seek a specific sum of damages in their Motion, but Plaintiffs instead seek rulings as to their entitlement to various types of damages generally.

## I. Defendant improperly over-withheld Plaintiffs' WBF contributions.

As noted, the WBF is a program that provides various benefits to workers injured on the job in Oregon since 1966. The WBF is authorized pursuant to Oregon Revised Statutes § 656.605, which provides the WBF "consist[s] of . . . (a) Moneys received pursuant to ORS 656.506 . . . [and] (d) All moneys received by the Director of the Department of Consumer and Business Services pursuant to law or from any other source for purposes for which the fund may be expended." Or. Rev. Stat. § 656.605(1).

The WBF assessment rate is determined by the State of Oregon, which mandates employers to pay at least half of the assessment and to deduct no more than half from workers' wages. For example, in 2003 the WBF assessment rate was 3.6¢ per hour. Employers, therefore, were required to pay to the WBF at least 1.8¢ for every hour that their employees worked during 2003. Although employers were permitted to pay more than 1.8¢, they were not permitted to withhold from their employees' paychecks

more than 1.8¢ for every hour that their employees worked during
2003.

Every year Oregon publishes a new WBF assessment rate and
mails the information about the rate and a written notice to all
employers registered with the Oregon Secretary of State.  The
record in this case reflects Oregon mailed the WBF assessment-
rate notices to Defendant, and Defendant does not dispute it
received the notices.  The record also reflects Defendant paid
the correct total amount of WBF assessments to the State of
Oregon during the relevant period, and the Court, therefore,
infers Defendant received the assessment rate notices from the
Oregon Secretary of State during that period.

As noted, however, the record reflects and Defendant
concedes it over-withheld WBF assessments from Plaintiffs and its
other Oregon employees during the relevant period.  Defendant
also concedes its over-withholding of WBF assessments from its
Oregon employees is a wrongful deduction in violation of Oregon
Revised Statutes § 652.610(3).  Plaintiffs, therefore, have
established Defendant violated § 652.610(3) when it improperly
over-withheld WBF funds from Plaintiffs and other class-member
employees throughout the relevant period.

## II.  Penalty Wages under Oregon Revised Statutes § 652.150

Plaintiffs assert Defendant's violation of § 652.610 was
willful, and, therefore, Plaintiffs are entitled to penalty wages

pursuant to Oregon Revised Statutes § 652.150.  Defendant,
however, asserts its violation was not willful within the meaning
of § 652.150.

### A.    The Law

Oregon Revised Statutes § 652.150(1) provides any
employer who "willfully fails to pay any wages or compensation of
any employee" must pay a penalty for nonpayment.  Although the
statute does not define willful, "[t]he word wilful has a
particular meaning under Oregon law."  *Nance v. May Trucking Co.*,
No. 3:12-CV-01655-HZ, 2014 WL 2113094, at *4 (May 20, 2014).
Specifically,

> [i]n civil cases the word wilful, as ordinarily
> used in courts of law, does not necessarily imply
> anything blamable, or any malice or wrong toward
> the other party, or perverseness or moral
> delinquency, but merely that the thing done or
> omitted to be done was done or omitted
> intentionally.  It amounts to nothing more than
> this:  That the person knows what he is doing,
> intends to do what he is doing, and is a free
> agent.

*Id*. (quoting *Sabin v. Willamette–Western Corp.*, 276 Or. 1083,
1093 (1976)).  "That definition excludes the individual who does
not know that his employee has left his employ or who has made an
unintentional miscalculation."  *Wilson v. Smurfit Newsprint
Corp.*, 197 Or. App. 648, 660 (2005)(quotation omitted).

Oregon courts have held "'[a]n employer acts wilfully
if, having the financial ability to pay wages which he knows he
owes, fails to pay them.  The statute was not intended to impose

52 - OPINION AND ORDER

liability where the employer's refusal to pay wages is based upon a *bona fide* belief that he is not obligated to pay them.'" *Id*. at 661 (quoting *State ex rel Nilsen v. Lee*, 251 Or. 284, 293 (1968)). In addition, "an employer lacks knowledge, and therefore does not act willfully, if it has a good faith belief that one of the elements necessary to trigger the obligation to pay wages owed at termination is lacking." *Wilson*, 197 Or. App. at 661 (citing *Hekker v. Sabre Constr. Co.*, 265 Or. 552, 561 (1973)).

In *Sabin* the defendant owed the plaintiff $500 for unused vacation time when the plaintiff's employment ended. The defendant deducted an outstanding debt of the plaintiff from the $500 believing it had the right to recoupment or set-off. The Oregon Supreme Court ultimately concluded the defendant's conduct was "willful" and that the plaintiff was entitled to penalty wages under § 652.150.

> [W]e hold that there was sufficient evidence to support the finding by the trial judge that defendant's conduct was "wilful" for the purposes of this statute. . . . [D]efendant . . . wrongfully undertook to deduct as a matter of "set-off" or "recoupment" the $91.62 from the wages due to [the plaintiff] for that work.
>
> Although defendant may not have acted with "malice or wrong," or with "perverseness or moral delinquency," we believe that the trial court could reasonably infer from these facts that in making the deduction of $91.62 defendant did not make an "unintentional miscalculation"; but "knew what he was doing, intended to do what he was doing, and was a free agent" and that defendant

was a "careless employer," so as to constitute a "wilful" failure to pay the wages payable to plaintiff within the meaning of ORS 652.150.

276 Or. at 1093-94. These cases

establish that an action is willful if it is fully knowing, intentional, and voluntary. Clearly, a malicious action or one taken in bad faith qualifies. Equally as clearly, an employer does not act willfully if it acts without fully knowing that the historical circumstances triggering the obligation have occurred (for example, that the employee has quit) or if it acts based on an innocent miscalculation that is not careless.

*Wilson*, 197 Or. App. at 662-63.

## B. Analysis

Defendant asserts its over-withholding of WBF assessments was not willful because the record reflects Defendant's payroll software calculated the WBF deduction for each hourly employee in Oregon during the relevant period. When the software was initially programmed and put in place in 2003, the WBF assessment was properly calculated. Beginning in 2004, however, when the State of Oregon decreased the WBF assessment rate, the employee portion of the assessment remained fixed at the 2003 rate in Defendant's computer system causing Defendant's portion of the assessment to decrease. Defendant refers to this as a computer error and asserts it was an unintentional miscalculation.

The record, however, reflects Defendant was aware of the State of Oregon's changes in the overall WBF assessment rate

and that Defendant's corporate agents entered the changed overall WBF assessment rate in Defendant's computer system. Thus, Defendant's failure to adjust the employees' assessment rate also was not an unintentional miscalculation. Regardless whether Defendant failed to review the employee withholding rate during the relevant period or whether Defendant was unaware of its legal requirement not to withhold more of the WBF assessment from employees than from itself, Defendant's failure makes Defendant the kind of "careless employer" the *Sabin* court concluded willfully violated Oregon's wage-and-hour laws. 276 Or. at 1093. *See also Elonis v. U.S.*, 135 S. Ct. 2001, 2009 (2015)("The familiar maxim ignorance of the law is no excuse typically holds true. Instead, . . . a defendant generally must know the facts that make his conduct fit the definition of the offense even if he does not know that those facts give rise to [an offense].")(quotation omitted).

The Court, therefore, concludes Defendant's over-withholding of Plaintiffs' WBF assessments was willful, and Plaintiffs are entitled to penalty wages pursuant to § 652.150 constrained by the relevant statutory limitations periods for penalties arising from the failure to pay minimum wages and sufficient overtime.

## IV. Defendant's Due-Process Rights

In its Response to Plaintiffs' Motion for Partial Summary

Judgment on the Issue of *Prima Facie* Liability on Their Workers'
Benefit Fund Claims Defendant asserts the Court should limit
Plaintiffs' "potential recovery of statutory damages to prevent
violations of [Defendant's] due process rights." Specifically,
Defendant asserts if the Court permits class members to recover
statutory penalties pursuant to § 652.150 in addition to those
permitted under § 652.615, the damages award would be
"potentially so disproportionate as to violate due process."
Def.'s Mot. at 8. For example, Defendant notes pursuant to its
expert report (with which Plaintiffs agree) a full-time employee
in 2008 who had WBF assessments over-withheld for the entire year
would have suffered an over-withholding of $8.32 for 2008. For
that WBF deduction violation the employee would be entitled to
$200 in penalties pursuant to § 652.615. The employee might also
be entitled to a 30-day penalty of $1,872[4] for the employer's
failure to pay minimum wages or a 30-day penalty of $1,872 if the
deduction resulted in insufficient payment of overtime.[5] Thus,

---

[4] This assumes a minimum wage of $7.80 per hour x 8 hours of
work x 30 days.

[5] In the example in its Motion for Summary Judgment No. 3
Defendant hypothesizes an employee could receive penalty wages
for both overtime and minimum-wage violations. As noted,
however, Plaintiffs concede they are not entitled to both
overtime and minimum-wage violation penalties for insufficient
overtime or failures to pay minimum wages that result from the
same underlying violation: over-withholding of WBF funds. The
Court, therefore, uses only one 30-day penalty in its
calculations.

according to Defendant, a class-member employee's remedy could be as much as 249 times the WBF over-deduction.  Even assuming an employee who worked for Defendant from August 13, 2007, through September 30, 2011, and had WBF assessments wrongfully over-withheld, the amount of the wrongful over-withholding would be $22.28 and, according to Defendant's expert, that employee's potential remedy could be as much as 93 times as much as the WBF over-withholding.

Defendant points out that the Supreme Court has found due-process concerns may be implicated when statutory damages or penalty provisions are excessively disproportionate to actual damages.  In particular, Defendant cites *Missouri Pacific Railway Company v. Tucker*, 230 U.S. 340, 351 (1913), in which the Court found a $500 liquidated-damages award for a $3.00 overcharge was "grossly out of proportion to the possible actual damages" and so "arbitrary and oppressive" as to violate the defendants' due-process rights, and *Southwest Telephone & Telegraph v. Danaher*, 238 U.S. 482, 491 (1915), in which the Court concluded a $6,300 statutory-damage award to a plaintiff whose telephone service was cut off for late payment violated the defendant's due-process rights.

The Court notes, however, that the Supreme Court has also held there are factors that militate against finding a verdict is excessive, including the "interests of the public."  *See St.*

*Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 67
(1919)(finding a $75 penalty for overcharging a passenger 66
cents for a train fare to be permissible "[w]hen it is considered
with due regard to the public interest, the numberless
opportunities for committing the offense, and the need for
securing uniform adherence to established passenger rates.").

Although due-process concerns may possibly be implicated
here, the Court finds Defendant has not sufficiently developed
the record on this Motion to resolve whether specific awards of
penalty wages under § 652.150 would violate Defendant's due-
process rights with respect to the WBF claims.  Moreover, the
Court notes Plaintiffs did not seek a specific sum of damages in
this Motion and Defendant's reliance on hypothetical employees is
insufficient in any event to resolve the damages issues
conclusively.  Defendant has not established more than a
hypothetical basis on which the Court could deny Plaintiffs'
Motion because of due-process concerns, and that is not
sufficient to defeat Plaintiffs' Motion for a finding of *prima
facie* liability on their WBF claims.  *See F.T.C. v. Stefanchik*,
559 F.3d 924, 929 (9th Cir. 2009)("A non-movant's bald assertions
or a mere scintilla of evidence in his favor are both
insufficient to withstand summary judgment.").

## V.   Summary

In summary, the Court concludes Plaintiffs have established

Defendant over-withheld WBF assessments, Plaintiffs' WBF claims are not barred by tax law, and Defendant's over-withholding of WBF assessments was willful. The Court also concludes Defendant has failed to establish a dispute of material fact exists precluding partial summary judgment in Plaintiffs' favor on these liability issues.

The Court, therefore, **GRANTS** Plaintiffs' Motion (#172) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims.

<u>**PLAINTIFFS' MOTIONS (#173, #179, #180, #181)**</u>
<u>**RELATED TO THEIR SHOE CLAIMS**</u>

Plaintiffs bring a number of Motions for Summary Judgment related to their Shoe Claims:

1.  Motion (#173) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims,

2.  Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions),

3.  Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees), and

4.  Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

The Court addresses these Motions together as they present

Defendant's Affirmative Defenses related to Plaintiffs' Shoe Claims.

In their Shoe Claims Plaintiffs allege Defendant unlawfully deducted money from Plaintiffs and other Oregon employees for non-slip shoes. Defendant asserts in its Third Affirmative Defense that Plaintiffs' Shoe Claims "fail in whole or in part because Plaintiffs authorized any and all payroll deductions for employee shoe purchases," in its Fourth Affirmative Defense that Plaintiffs' Shoe Claims fail "in whole or in part because payroll deductions for shoe purchases were for Plaintiffs' benefit," and in its Fifth Affirmative Defense that Plaintiffs' Shoe Claims "fail in whole or in part because payroll deductions for shoe purchases were compliant with ORS 652.610(3)."[6] Def.'s Answer at ¶¶ 78, 79, 80 respectively.

In their Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims Plaintiffs assert Defendant wrongfully deducted the cost of non-slip shoes from Plaintiffs and other Oregon employees because non-slip shoes were part of the employees' uniform and/or were another "item required by the employer to be worn . . . by the employee as a condition of employment." Or. Admin. R. 839-020-0020(7).

---

[6] It is not entirely clear in Defendant's Answer or its Responses to Plaintiffs' Motions for Summary Judgment which provision of Oregon Revised Statutes § 652.610(3) it relies on for its Affirmative Defenses, but it appears likely that Defendant relies on § 652.610(b) and/or (c).

In their Motion for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions), Motion for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees), and Motion for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction) Plaintiffs assert the shoe deductions were not for the private benefit of employees within the meaning of Oregon Revised Statutes § 653.035(1), that Defendant has not established the shoe deductions were voluntarily authorized in writing by Plaintiffs and other employees, that the non-slip shoes were not for the benefit of employees within the meaning of Oregon Revised Statutes § 652.610(3)(b), and that Defendant has not established it was not the ultimate recipient of the money withheld.

For the reasons that follow, the Court **DENIES** Plaintiffs' Motion (#173) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims and **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions), Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees), and Plaintiffs' Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

# I.   Deductions from Employees' Wages Permitted under Oregon Law

Oregon Administrative Rules 839-020-0020(3) and (7) provide:

> Employers may not deduct the cost of any of the following items from [an employee's] minimum wage:
>
> * * *
>
> (3) Uniforms, including but not limited to, garments such as suits, dresses, aprons, and all other garments whatsoever as worn by the employees as a condition of employment.  Such apparel of a similar design, color, or material or forming part of the decorative pattern of the establishment or distinguishing the employee as an employee of the concern is presumed to be worn as a condition of employment.
>
> * * *
>
> (7) Any other item required by the employer to be worn or used by the employee as a condition of employment.

Employers, however, may deduct from an employee's minimum wage "[t]he fair market value of . . . facilities or services furnished by the employer to the employee for the *private benefit* of the employee."  Or. Rev. Stat. § 653.035(1).  Emphasis added.

Oregon Administrative Rule 839-020-0025(7) provides:

> [F]acilities or services are furnished for the private benefit of the employee when such . . . . facilities or services are not required by the employer.  For purposes of this rule, lodging or other facilities or services are required by the employer when:
>
> (a) Acceptance of the lodging or other facilities is a condition of the employee's employment; or
>
> * * *

> (c) The acceptance of the lodging or other
> facilities or services is involuntary or coerced.

Oregon Revised Statutes § 652.610(3) provides:

> (3) An employer may not withhold, deduct or divert
> any portion of an employee's wages unless:
>
>> (b) The deductions are voluntarily authorized
>> in writing by the employee, are for the
>> employee's benefit and are recorded in the
>> employer's books;
>>
>> (c) The employee has voluntarily signed an
>> authorization for a deduction for any other
>> item, provided that the ultimate recipient of
>> the money withheld is not the employer and
>> that the deduction is recorded in the
>> employer's books.

## II. Uniforms

As noted, Plaintiffs assert non-slip shoes were part of the employees' uniform or another "item required by [Defendant] to be worn . . . as a condition of employment," and, therefore, Defendant was not permitted to deduct payments for non-slip shoes from the paychecks of Plaintiffs and other Oregon employees.

### A. Facts

It is undisputed that during the relevant period Defendant's employees were required to wear non-slip footwear while working.  It is also undisputed that during the relevant period Defendant offered a program through which employees could purchase non-slip shoes from a company called Shoes for Crews through a payroll deduction.  The parties dispute whether employees were required to wear shoes from Shoes for Crews or

whether they could wear some other brand of non-slip shoe or non-slip shoe guards.

Plaintiffs rely on the testimony of Donna Basham, a coach with Defendant during some part of the relevant period, to support their assertion that Defendant's employees were required to wear shoes from Shoes for Crews and could not wear shoe guards long-term. Basham testified at deposition that when she began working for Defendant there was not any requirement that employees wear a particular brand of non-slip shoe, but at some point "after 2000" Defendant's policy changed and employees were required to wear shoes from Shoes for Crews. Decl. of John Egan, Ex. 10 at 3. Basham states restaurant managers would "check to make sure that all the employees wore Shoes for Crews" shoes. *Id*. at 6. Basham, however, stated restaurants also "had shoe guards too" at each restaurant for employees who were "first starting" and had not ordered shoes from Shoes for Crews. *Id*. Basham noted the employees were told "eventually they have to buy the Shoes for Crews" shoes and "they're not supposed to [wear the shoe guards permanently] but . . . if they hired someone that . . . couldn't [buy shoes from Shoes for Crews], they would let them wear [the shoe guards] until they could" purchase shoes from Shoes for Crews. *Id*. at 7. Plaintiff Nicole Gessele testified "everybody [or] whoever was in management" told her that she had to wear shoes from Shoes for Crews at work. Parker Decl., Ex. C

at 6.  Plaintiff Tricia Tetrault also testified she was told by "[e]very manager when [she] would start - when [she] got rehired [at Jack in the Box]" that she had to order and to wear shoes from Shoes for Crews.  Parker Decl., Ex. E at 9.  Tetrault stated she asked a manager at one point whether she could buy non-slip shoes from Payless because they were less expensive, and she was told she had to purchase her shoes from Shoes for Crews.  *Id*.  In addition, she was told by her manager that she could only wear the shoe guards until she received her order from Shoes for Crews.  *Id*. at 10.

Plaintiffs also point out that the scripts for Defendant's "Crew On-Boarding" computer-based training modules advised employees that they were "required to wear approved slip resistant footwear" and showed a picture of employees wearing shoes from Shoes for Crews.  Egan Decl., Exs. 22-23.  In addition, the materials for Defendant's Managing Safety Course for Managers included a scenario in which an employee is injured and the trainees were required to answer questions such as whether the fictional injured employee was wearing shoes from Shoes for Crews.  Similarly, the Manager's Incident Report of Employee Injury form included the question whether the injured employee was wearing shoes from Shoes for Crews.  Nevertheless, Defendant asserts employees were not "required" to wear shoes from Shoes for Crews.

Defendant relies on the testimony of Plaintiff Christina Mauldin, who stated at deposition that during her time working for Defendant she ordered shoes from Shoes for Crews but also from Keuka, a different company that made non-slip shoes. Decl. of Douglas Parker, Ex. D at 19. In addition, Gene James, Defendant's Director of Asset Protection, testified at deposition that Defendant's employees could purchase shoes from Footstar or Keuka. Parker Decl., Ex. G at 2. James also testified it was "not the intent of the [non-slip shoe] policy or the program that [Defendant] developed" for employees to be "told that they need to purchase Shoes for Crews, that they can't wear the shoe guards forever." *Id.* at 2-3. Defendant also notes its Dress and Grooming Guide required non-slip shoes and that "shoes may be purchased from a Jack in the Box approved vendor, such as Shoes for Crews." Decl. of Susan Pettijohn, Ex. DD at 1.

The Court notes, however, that the record reflects the Dress and Grooming Guide does not include ordering information for any company offering non-slip shoes other than shoes from Shoes for Crews. In addition, in the section advising managers about "things to do," the Dress and Grooming Guide states: "[K]eep a supply of [Shoes for] Crews Program order forms and brochures." *Id.* at 8.

The parties do not dispute Defendant's employees could wear their non-slip shoes outside of work. For example,

Plaintiffs Ashley Gessele, Jessica Gessele, Nicole Gessele, and Tricia Tetrault testified at deposition that they could wear their shoes from Shoes for Crews outside of work, but they did not do so because the non-slip sole would wear out more quickly. Parker Decl., Ex. A at 7, Ex. B at 14, Ex. C at 6, Ex. E at 10.

## B. Non-Slip Shoes as Part of Employees' Uniforms

Defendant asserts in its Response to Plaintiffs' Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims that shoes from Shoes for Crews were not part of their employees' uniform. Defendant asserts federal agencies such as the United States Department of Labor (DOL) and the federal Occupational Health and Safety Organization (OSHA) have made clear that non-slip shoes are not a "uniform" under the Fair Labor Standards Act (FLSA). Defendant notes DOL Wage and Hour Opinion Letter FLSA 2008-4 (May 15, 2008) concluded requiring employees to wear a certain type of footwear does not make such footwear a uniform within the meaning of the FLSA. *Gessele I*, Docket No. 125-5 at 82.

Defendant contends the DOL Opinion Letter applies to the circumstances here. When the DOL issued that opinion, however, it assumed the following facts:

> The Employer operates restaurants and requires employees to wear "dark-colored" shoes without prescribing any particular quality, brand, style, model, or type. Aside from color, the only other requirements are that they not be open-toed and that, for safety reasons, they not have a slippery

> sole. Employees may wear shoes they already own
> when hired or may purchase shoes from any vendor
> they may choose. Employees are free to wear the
> shoes outside of work.

*Id.* The DOL also noted the following general principles when

determining whether an item of clothing is part of a uniform:

> If an employer merely prescribes a general type of
> ordinary basic street clothing to be worn while
> working and permits variations in details of
> dress, the garments chosen by the employees would
> not be considered to be uniforms.
>
> On the other hand, where the employer does
> prescribe a specific type and style of clothing to
> be worn at work, e.g. where a restaurant or hotel
> requires a tuxedo or a skirt and blouse or jacket
> of a specific or distinctive style, color, or
> quality, such clothing would be considered
> uniforms.

*Id.* at 1-2. Notably, the record here reflects there are disputes

of fact as to whether Defendant permitted employees to wear shoes

that they already owned when they were hired and whether

Defendant required employees to wear "any particular . . . brand"

of non-slip shoe (*i.e.,* Shoes for Crews). The DOL Opinion

Letter, therefore, is not dispositive of the uniform issue in

this case.

Although Plaintiffs note under Oregon Administrative

Rule 839-020-0020(7) employers are not permitted to deduct from

employees' wages another category of expense that is not included

in the FLSA or other federal agency definitions of uniform,[7] the parties do not cite nor could this Court find any case in which a court has analyzed this provision of the Oregon Administrative Rules.  The Court, nevertheless, finds the meaning of this provision is plain on its face:  When an employer requires an employee to wear or to use an item as a condition of employment, the employer may not deduct the cost of that item from the employees' minimum wage unless an exception applies.

Here it is undisputed that Defendant required its employees to wear non-slip shoes (whether from Shoes for Crews or another brand).  Thus, the Court concludes pursuant to Oregon Administrative Rule 839-020-0020(7) that the cost of non-slip shoes (whether from Shoes for Crews or another brand) are an item that Defendant was not allowed to deduct from Plaintiffs or other Oregon employees unless an exception applied as set out in Oregon Revised Statutes § 653.035 or § 652.610(3).

## III. Exceptions Permitting Deductions

As noted, in its Third, Fourth, and Fifth Affirmative Defenses Defendant asserts various exceptions to the prohibition on employers deducting the cost of uniforms or "other item[s] required by the employer to be worn or used by the employee as a

---

[7] Specifically, Oregon Administrative Rule 839-020-0020(7) provides an employer may not deduct from an employee's wages "[a]ny other item required by the employer to be worn or used by the employee as a condition of employment."

condition of employment" apply in this case.  Specifically,
Defendant asserts the non-slip shoes were for the private benefit
of its employees within the meaning of Oregon Revised Statutes
§ 653.035(1) and/or Defendant satisfied the requirements of the
exceptions found in Oregon Revised Statutes § 652.610(3)(b)
and (c).

   **A.    Exception under Oregon Revised Statutes § 653.035(1).**

        In its Fourth Affirmative Defense Defendant alleges
Plaintiffs' Shoe Claims fail "in whole or in part because payroll
deductions for shoe purchases were for Plaintiffs' benefit."  In
their Motion for Partial Summary Judgment on Jack in the Box's
Fourth Affirmative Defense (Benefit to Employees) Plaintiffs
assert they are entitled to summary judgment to the extent
Defendant asserts in its Fourth Affirmative Defense that the shoe
deductions were for employees' private benefit under Oregon
Revised Statutes § 653.035(1).

        Oregon Revised Statutes § 653.035(1) authorizes an
exception to Oregon Administrative Rule 839-020-0020(7) and
provides employers may deduct from an employee's minimum wage
"[t]he fair market value of . . . facilities or services
furnished by the employer to the employee for the private benefit
of the employee."  Oregon Administrative Rule 839-020-0025(7)
defines items to be of "private benefit" to an employee when they
are "not required by an employer."

For purposes of Oregon Administrative Rule 839-020-0025(7), items are required by an employer when, among other things, "[a]cceptance of the . . . facilities or services is a condition of the employee's employment."  As noted, it is undisputed that Defendant's employees were required to wear non-slip shoes as a condition of employment (whether from Shoes for Crews or another brand), and, therefore, the Court concludes the non-slip shoes were not for the "private benefit" of employees within the meaning of Oregon Revised Statutes § 653.035(1) as defined in Oregon Administrative Rule 839-020-0025.  Oregon Revised Statutes § 653.035(1), therefore, does not provide an exception that authorizes Defendant to withhold payments for non-slip shoes from Plaintiffs and other employees.

Accordingly, the Court **GRANTS in part** Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees) to the extent that Defendant asserts the shoe deductions were for Plaintiffs' private benefit pursuant to § 653.035(1).

### B.  Exceptions under Oregon Revised Statutes § 652.610(3)(b)

As noted, Oregon Revised Statutes § 652.610(3)(b) permits employers to deduct items from employees' wages even when they are "other item[s] required by the employer to be worn or used by the employee as a condition of employment . . . [if the] deductions are voluntarily authorized in writing by the employee,

are for the employee's benefit and are recorded in the employer's books."

In its Third, Fourth, and Fifth Affirmative Defenses Defendant asserts the exceptions to the prohibition on deducting from employees' minimum wages the cost of "other item[s] required by the employer to be worn or used by the employee as a condition of employment" found in § 652.610(3)(b) permitted Defendant to deduct the shoe payments from its employees' wages.

Plaintiffs, in turn, assert in their Motion for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions), Motion for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees), and Motion for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction) that Defendant has not established the shoe deductions were voluntarily authorized in writing by Plaintiffs and other employees or that the non-slip shoes were for the benefit of employees within the meaning of Oregon Revised Statutes § 652.610(3)(b), and, therefore, the exceptions in Oregon Revised Statutes § 652.610(3)(b) do not apply.

1.    **Defendant's Affirmative Defenses Related to Oregon Revised Statutes § 652.610(3)(b)**

As noted, pursuant to Oregon Revised Statutes § 652.610(3)(b) an employer may deduct funds from employees' wages when the "deductions are voluntarily authorized in writing

72 - OPINION AND ORDER

by the employee, are for the employee's benefit and are recorded in the employer's books."

Plaintiffs do not dispute Defendant recorded the shoe deductions in its books. Plaintiffs, however, assert Defendant cannot establish the shoe deductions were for the employees' benefit within the meaning of § 652.610(3)(b) or that Plaintiffs and other Oregon employees authorized the shoe deductions in writing.

Defendant asserts in its Fourth Affirmative Defense that the deductions for shoes from Shoes for Crews were for its employees' benefit. Defendant also asserts in its Third and Fifth Affirmative Defenses that its employees authorized the deductions for shoes from Shoes for Crews in writing.

### a.    Benefit to Employee under § 652.610(3)(b)

Plaintiffs assert Defendant cannot establish the deduction for shoes from Shoes for Crews was for the Oregon employees' benefit within the meaning of § 652.610(3)(b). Specifically, Plaintiffs assert the provision "for the employee's benefit" indicates the deduction must be for something that is *solely* for the benefit of the employee. Defendant, on the other hand, asserts an item is "for the employee's benefit" if it is of *some benefit* to the employee even if it also benefits the employer.

According to Defendant, the payroll deduction

was for the employees' benefit because it "was convenient and the prices were good, especially considering the large discount offered them." Def.'s Resp. (#191) at 7. The Court notes Defendant does not cite any authority for its assertion that the relevant inquiry is whether an employee's ability to pay for an item via a payroll deduction is the focus of § 652.610(3)(b).

### i. Preliminary Matter

As a preliminary matter the parties dispute the relevant inquiry for evaluating whether the deduction at issue must be solely for the benefit of the employee. Defendant asserts the relevant inquiry is whether the method of deducting the cost of the shoes (*i.e.,* the payroll deduction program) benefitted employees. Plaintiffs assert the relevant inquiry is whether the requirement to purchase non-slip shoes benefitted the employees rather than whether the method of deducting the cost of the shoes benefitted employees.

The few courts that have discussed § 652.610(3)(b) support Plaintiffs' position. For example, in *Wilson v. Decibels of Oregon, Incorporated,* the plaintiff asserted the defendant improperly deducted the cost of a cellular telephone from the plaintiff's wages in violation of § 652.610(3)(b). No. 1:16-cv-00855-CL, 2017 WL 4837199 (D. Or. Sept. 11, 2017). The court evaluated whether the cellular telephone for which the plaintiff was charged was for the benefit

of the plaintiff rather than whether the deduction of the cost of the cellular telephone was for the benefit of the plaintiff. *Id.*, at *15. Similarly, in *Nance v. May Trucking Company* the plaintiff asserted the defendant wrongfully deducted funds from his paycheck for excessive "idling time" for his truck in violation of § 652.610(3)(b). No. 3:12-cv-01655-HZ, 2014 WL 2113094 (D. Or. May 20, 2014). The court evaluated whether employees idled trucks for their own benefit or for the benefit of their employer. *Id.*, at *3.

The Court finds the reasoning in these cases to be persuasive and concludes the relevant inquiry under § 652.610(3)(b) is whether the required non-slip shoe purchase program was for the benefit of Defendant's employees.

### ii. Whether the Benefit Must Be Solely for the Employee

As noted, Defendant asserts an item is "for the employee's benefit" under § 652.610(3)(b) even if it also benefits the employer. Plaintiffs, on the other hand, assert "for the employee's benefit" under § 652.610(3)(b) means the item must be solely for the benefit of the employee. Plaintiffs rely on *Taylor v. Werner Enterprises, Incorporated*, and *Smith v. Woodward* to support their assertion.

In *Taylor* the plaintiff was employed by defendant as a truck driver. The plaintiff signed an agreement at the start of his employment that authorized the defendant "to

75 - OPINION AND ORDER

withhold $10 per week from his wages as a bond, until a total of
$400 had been withheld . . . [and] that the bond would be
refunded approximately 60 days after plaintiff's employment
ended, as long as there were no claims against the bond." 329
Or. 461, 463-64, (1999). In March 1995 the plaintiff stopped
working for the defendant. The defendant did not refund the $400
bond to the plaintiff until May 1995. The plaintiff alleged the
defendant violated § 652.610(3)(b) when it withheld the bond
funds. The court concluded the defendant violated
§ 652.610(3)(b) on the ground that a deduction under that
provision "must be for the ultimate benefit of the employee.
Potential liability of an employee to the employer is not a
reason that supports a lawful deduction." *Id*. at 470. There is
not any indication in *Taylor*, however, that the defendant-
employer asserted the bond was of any benefit to the plaintiff-
employee.

In *Smith* the defendants deducted from
the plaintiff's wages some of the defendant's payroll costs,
including "the employer's portion of FICA and its worker's
compensation premiums for" the plaintiff. No. CV-02-547-ST, 2003
WL 23537985, at *7 (D. Or. Sept. 30, 2003). The plaintiff
brought an action alleging the defendant violated § 652.610(3)(b)
when it made those deductions. The court concluded the defendant
violated § 652.610(3)(b) because that "exception[] require[s]

that the deduction benefit the employee, not the employer.  Here
the deduction benefitted defendants by shifting their payroll
costs to [the plaintiff]."  *Id*.  Again, however, the defendant
did not assert the deductions for its portion of FICA and
worker's compensation premiums also benefitted the plaintiff.

As noted, however, in *Wilson v. Decibels
of Oregon* the parties disagreed as to whether the deduction at
issue was for an item for the employee's benefit.  In that case
the defendant required its technicians to have a company cellular
telephone in order to "respond to customer and dispatch calls."
2017 WL 4837199, at *4.  Technicians were provided with a
cellular telephone by the defendant and given the option to use
it only for company business or to use the telephone for personal
as well as company business.  When a technician chose to use the
cellular telephone for business and personal purposes, the
defendant deducted $35 per month for the cost of the cellular
telephone from the technician's paycheck, which "represent[ed] a
portion of [the defendant's] total cost, which [was] in excess of
$50 per month per phone."  *Id*.  The plaintiff, a technician who
used the company-provided cellular telephone for personal and
business purposes, signed a form authorizing the defendant to
deduct the $35 per month cost from the plaintiff's wages.  The
plaintiff ultimately left the defendant's employ and brought an
action alleging the defendant violated § 652.610(3)(b) when it

deducted the $35 per month from the plaintiff's wages for the cellular telephone. The plaintiff asserted "the cell phone was not for his benefit but instead for [the defendant], as it was necessary for the performance of [the defendant's] business and the position as an installation Technician." *Id.*, at *15. The court concluded the cellular telephone was for the plaintiff's benefit because even though technicians were required to have cellular telephones, the plaintiff also used the cellular telephone for personal purposes and "received his phone at a discounted price." *Id*.

The Court finds the *Wilson* court's holding is pertinent to the Oregon Legislature's use of the phrase "the employee's benefit" in § 652.610(3)(b). In contrast, Oregon Revised Statutes § 653.035(1) authorizes employers to deduct "facilities or services furnished by the employer to the employee for the *private benefit* of the employee." Emphasis added. Thus, the Court concludes the Oregon Legislature has demonstrated it can indicate when an item must be *solely* for the benefit of an employee as in § 653.035(1) and when it may benefit both the employee and the employer as in § 652.610(3)(b).

Here the record reflects employees were permitted to wear their shoes from Shoes for Crews outside of work and to take them when they left Defendant's employ. In addition, employees were able to purchase shoes from Shoes for

Crews at a discount.  On this record, therefore, the Court

concludes the shoe deduction was for the employees' benefit

within the meaning of § 652.610(3)(b).

Accordingly, the Court **DENIES in part**

Plaintiffs' Motion (#180) for Summary Judgment on Defendant's

Fourth Affirmative Defense (Benefit to Employees) to the extent

that defense is premised on an exception for an employee-benefit

deduction pursuant to § 652.610(3)(b).

### b.    Written Authorization

As noted, Defendant asserts it obtained

written authorization for the shoe deductions from Plaintiffs and

other Oregon employees.

### 1.    Spoliation Issue

Defendant asserts in its Responses to

Plaintiffs' Motion for Partial Summary Judgment on Jack in the

Box's Third Affirmative Defense (Authorized Deductions) and

Plaintiffs' Motion for Partial Summary Judgment on Jack in the

Box's Fifth Affirmative Defense (Valid Deduction) that it

obtained written authorizations for the shoe deductions from

Plaintiffs and other Oregon employees.  Defendant, however,

concedes it does not have copies of any of the written

authorizations because all of Defendant's paperwork was destroyed

during the "franchise transition."  Decl. of Jon Egan, Ex. 5 at

2.  Specifically, Jeffrey Tennant testified at deposition:

> On the day of the [franchise]
> transitions we were directed to ensure
> that company things from the
> [restaurant] were thrown out, as far the
> as e-mail programs and such, wiping
> those clean, to make sure there was no
> information that should be given to the
> franchisee. Their employment was being
> terminated with us and that none of
> those files were public and that the
> files transition to the new company they
> were being hired on by the new company.

Egan Decl., Ex. 5 at 2. In any event, the record reflects the

authorizations from all of Defendant's Oregon locations were

destroyed at various times before September 30, 2011.

The Ninth Circuit has explained a

court's inherent authority to impose sanctions for destruction of

evidence as follows:

> "A federal trial court has the inherent
> discretionary power to make appropriate
> evidentiary rulings in response to the
> destruction or spoliation of relevant
> evidence." *Glover v. BIC Corp.*, 6 F.3d
> 1318, 1329 (9th Cir. 1993). This power
> includes the power to sanction the
> responsible party by instructing the
> jury that it may infer that the spoiled
> or destroyed evidence would have been
> *unfavorable to the responsible party.*
> *Id.*; *Akiona v. United States*, 938 F.2d
> 158, 161 (9th Cir. 1991).

*Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d

806, 824 (9th Cir. 2002)(emphasis added). *See also Ingham v.*

*United States*, 167 F.3d 1240, 1246 (9th Cir. 1999)("To be

actionable, the spoliation of evidence must damage the right of a

party to bring an action.").

According to Plaintiffs, the Court should exercise its inherent power to sanction Defendant for failing to preserve the written authorizations because Defendant's actions constitute destruction of material evidence. Specifically, Plaintiffs request the Court to presume under the circumstances that Defendant did not, in fact, obtain any written authorizations from employees to deduct the cost of shoes.

Defendant, however, asserts the written authorizations for the shoe deductions destroyed during the franchise transition would have supported its Affirmative Defenses as to its liability for the payroll deductions. Thus, according to Defendant, preservation of the written authorizations would have been helpful to Defendant, and, therefore, the spoliation doctrine is inapplicable.

On this record the Court concludes the written authorizations for shoe deductions would have been helpful to Defendant's Affirmative Defenses. Thus, the Court concludes the destruction of any such written authorizations harmed Defendant's ability to prove that it complied with the requirements of § 652.610(3). The Court, therefore, concludes the spoliation doctrine is not applicable under these circumstances, and the Court declines to infer that Defendant never obtained any written authorizations for shoe deductions.

## 2.    Evidence of Written Authorizations

Due to the destruction of written authorizations, Defendant relies on Plaintiffs' deposition testimony and the testimony of various employees to support its assertion that it obtained written authorizations for the shoe deductions. Specifically, Ashley Gessele testified she filled out an order form for each pair of shoes she ordered from Shoes for Crews that contained the following statement: "I do hereby authorize the company to deduct the balance owed on my shoe purchase following the payroll department's receipt of the Shoes For Crews invoice." Ashley Gessele stated she understood when she was filling out the order form that she was "authorizing [Defendant] to deduct the balance owed on the shoe purchase from [her] payroll." Parker Decl., Ex. A at 11.

Nicole Gessele testified she ordered shoes from Shoes for Crews from a catalogue that contained an order form with the same authorizing language. Nicole Gessele, however, could not remember whether she filled out the order form that contained the authorization to deduct the balance from her wages or whether she "just called [her order] in over the phone." Parker Decl., Ex. C at 8. Nicole Gessele stated she "underst[ood] that . . . in making these orders [she was] authorizing [Defendant] to make that deduction," but she was not sure she provided that authorization in writing. *Id*.

Tricia Tetrault testified she ordered shoes from Shoes for Crews through a catalogue that contained an order form authorizing Defendant to deduct the cost of the shoes from her wages. Tetrault testified she understood "in ordering Shoes for Crews and possibly filling out one of these [authorization] forms, that [she was] authorizing [Defendant] to deduct the amount that the shoes cost from [her] paychecks," but she could not remember whether she had ever filled out an order form with the authorization. Parker Decl., Ex. E at 11.

Jeffrey Tennant testified in his Declaration that when he was a restaurant manager for Defendant, "a superior" instructed him to have employees fill out the Shoes for Crews order form that included an authorization to deduct the cost of the shoes from the employee's wages. Parker Decl., Ex. J at 3.

Patty Jones stated when she was a restaurant manager "[s]ome of my employees, but not all, filled out the order forms and I would use that form to order shoes. Usually the graveyard employees filled out the order forms." Decl. of Patty Jones at ¶ 12.

Ryan Leach testified in his Declaration:

> As a manager I helped many employees order shoes by calling Shoes for Crews if that is the shoe they wanted. I told new employees that they could buy shoes through payroll deduction and I explained

how that worked or they could buy
shoes on their own.  It didn't
matter to me.

We regularly received catalogs from
Shoes for Crews that had order
forms in them.  Some of my
employees would fill out the order
form and I would use that form to
place the shoe order.  I usually
kept that order form on file with
other paperwork until the quarter
rolled over.

Decl. of Ryan Leach at ¶¶ 11-12.

Vincent O'Rourke stated in his

Declaration:  "At the restaurants I managed, we regularly

received catalogs from Shoes for Crews and Keuka, two shoe

vendors.  These catalogs included order forms [with the payroll

deduction authorization] . . . .  Employees often filled out the

order forms before ordering shoes.  They gave me the filled out

form and I placed the order."  Decl. of Vincent O'Rourke at

¶¶ 7-8.

The record also includes evidence that

some employees never filled out the order form that included the

authorization.  For example, Jessica Gessele testified:  "I know

there [were] order forms available, but nobody ever used them

. . . .  I don't ever remember filling one out. . . .  I never --

I personally never have seen anybody use an order form, to put it

in better words."  Parker Decl., Ex. B at 12.  Jessica Gessele

explained she would tell her manager which Shoes for Crews shoes

she wanted, and her manager would order them. Later in her employment with Defendant, Jessica Gessele ordered shoes for other employees. When she did so, her process was to "ask[] them for their Social Security number, and they would write down their Social Security number and the style of shoes they want, and I would call it in" to Shoes for Crews. *Id*. Similarly, Christina Mauldin testified she did not remember ever filling out an order form for shoes from Shoes for Crews. In addition, when she was a team leader she would order shoes for other employees as follows: "The employee would write down their Social Security number. And we would just call Shoes for Crews, put in a payroll order. They would give them the shoe size and the style number, and they would be shipped to the [restaurant]." Parker Decl., Ex. D at 14. Jennifer Barker stated in her Declaration that she, a team leader, or an assistant manager "ordered shoes over the phone for employees. I explained to employees that the shoes would be paid for by payroll deductions. Occasionally an employee would fill out the order form that came with the catalog sent to the restaurant." Decl. of Jennifer Barker at ¶ 12.

As noted, § 652.610(3)(a) requires deductions to be "authorized in writing by the employee." On this record the Court concludes there is a dispute of material fact as to whether Plaintiffs and other employees authorized Defendant in writing to take the shoe deductions from their

paychecks.

Accordingly, the Court **DENIES in part**
Plaintiffs' Motion (#179) for Summary Judgment as to Defendant's
Third Affirmative Defense (Authorized Deductions) to the extent
that it is premised on Oregon Revised Statutes § 652.610(3)(b).
The Court also **DENIES in part** Plaintiffs' Motion (#181) for
Summary Judgment as to Defendant's Fifth Affirmative Defense
(Valid Deduction) to the extent that Affirmative Defense is
premised on § 652.610(3)(b).

**C.    Oregon Revised Statutes § 652.610(3)(c)**

In its Third and Fifth Affirmative Defenses Defendant
also asserts the shoe deductions were permitted pursuant to
§ 652.610(3)(c), which provides employers may make deductions
from employees' wages when "[t]he employee has voluntarily signed
an authorization . . . . provided . . . the ultimate recipient of
the money withheld is not the employer and that the deduction is
recorded in the employer's books."

Plaintiffs assert in their Motion for Partial Summary
Judgment on Jack in the Box's Third Affirmative Defense
(Authorized Deductions) and Motion for Partial Summary Judgment
on Jack in the Box's Fifth Affirmative Defense (Valid Deduction)
that Defendant has not established all Oregon employees signed
authorizations for shoe deductions.  As noted, however, the Court
has already concluded Defendant has established there is a

dispute of material fact as to whether Plaintiffs and other employees authorized Defendant in writing to take the shoe deductions from their paychecks as required by § 652.610(3)(b), and that conclusion also applies to § 652.310(3)(c).

Plaintiffs also assert Defendant cannot establish it was not the ultimate recipient of at least some of the money withheld from employees' paychecks for shoes purchased from Shoes for Crews in light of the fact that Defendant received a $2 per pair rebate from Shoes for Crews. Defendant, however, asserts it was not the ultimate recipient of the funds deducted from the employees' paychecks because the payroll deductions were "for actual cost" and Defendant ultimately suffered losses due to the payroll- deduction program.

Leanne Tellez, Defendant's payroll expert, testified at deposition in *Gessele I* that "however much the invoice came from [Shoes for Crews], that's how much would be deducted from the . . . employee." *Gessele I* Decl. of Douglas Parker (#235), Ex. B at 5. Wendy Sanderlin explained at deposition that Defendant paid the "full amount" to Shoes for Crews for each shoe order, and that amount was deducted from the ordering employee's wages.[8] Parker Decl., Ex. I at 3. On the other hand, "for every pair of

_____

[8] The record reflects the $2 rebate applied only to shoes purchased through the payroll-deduction program. When employees ordered from Shoes for Crews using some method other than payroll deductions, Shoes for Crews did not pay Defendant the $2 rebate. Parker Decl., Ex. G at 4.

shoes that were sold to a Jack in the Box employee, Jack in the
Box receive[d] a $2 rebate from Shoes for Crews[,] . . . a $2
payment." Parker Decl., Ex. G at 4. The rebate came in the form
of a quarterly check to Defendant from Shoes for Crews.
Defendant, however, did not credit the $2 rebate towards the
employees' shoe price or towards the amount that Defendant
deducted from the employees' wages for their shoe purchases.
Defendant instead placed the rebates received from Shoes for
Crews in a rebate account and used those funds to offset the
losses that Defendant suffered on the shoe-purchase program. The
record reflects Defendant received $1,052,000 in rebate payments
during the relevant period, which it used to offset partially its
$1,760,000 losses from the payroll-deduction program during that
same period. Parker Decl., Ex. G at 4.

       The parties do not cite nor could the Court find any
case that involved circumstances precisely like those in this
case. In *Wilson,* however, the court concluded the defendant did
not wrongfully deduct money for the cellular telephone from the
plaintiff's wages pursuant to § 652.610(3)(c) because the
defendant was not the ultimate recipient of the money that the
defendant deducted. Specifically, the cellular-service provider
received all of the money that the defendant deducted from the
plaintiff's wages, the defendant did not retain any of the funds
withheld from the plaintiff, and there was not any indication

that the defendant received a rebate or return of funds from
the cellular provider.  2017 WL 4837199, at *15.  Similarly,
in *Weir v. Joly* the court concluded the defendant did not
wrongfully deduct money from the plaintiff's wages pursuant to
§ 652.610(3)(c) when it withheld funds for a background-check fee
because it was "undisputed that [the defendant] pa[id] the Port
[of Portland] the background-check fee that it deduct[ed] from
[the plaintiff's] paycheck."  No. 3:10-CV-898-HZ, 2011 WL
6778764, at *3 (D. Or. Dec. 23, 2011).  There was not any
indication that the defendant kept any portion of the funds
deducted from the plaintiff's paycheck for the background-check
fee or that the defendant received any portion of that fee back
from the Port of Portland.  In contrast, in *Taylor* the plaintiff
signed an agreement at the start of his employment that
authorized the defendant "to withhold $10 per week from his wages
as a bond, until a total of $400 had been withheld . . . [and]
that the bond would be refunded approximately 60 days after
plaintiff's employment ended, as long as there were no claims
against the bond."  329 Or. at 463-64.  In March 1995 the
plaintiff stopped working for the defendant.  The defendant did
not refund the $400 bond to the plaintiff until May 1995 after
the defendant had determined there were not any claims against
the bond.  The defendant asserted its actions did not violate
§ 652.610(3)(c) because it "was not the 'ultimate recipient' of

the money." *Id*. at 470.  The court rejected the defendant's
assertion:

> If [the defendant had] needed the money to cover
> any liability that plaintiff owed it at the time
> of plaintiff's termination, then [the defendant]
> would have kept part of or all the wages withheld.
> The fortuity that the condition of the truck and
> equipment met [the defendant's] approval — and,
> thus, that plaintiff eventually received the wages
> — does not make [the defendant's] conduct lawful.

*Id*. at 470-71.  Taken together, these cases indicate when an
employer is not at any time the recipient of any part of the
funds deducted from an employee's paycheck, the employer has
satisfied the requirement of § 652.610(3)(c) that "the ultimate
recipient of the money withheld is not the employer."

　　　　　Here the record reflects Defendant did not directly
receive any of the funds deducted from its employees' wages for
purchases from Shoes for Crews.  The statute, however, uses the
word "ultimate," which is defined as "last in a progression or
series," "eventual," or "most remote in space or time."  *Merriam-
Webster* online https://www.merriam-webster.com/dictionary/
ultimate?src=search-dict-box.  Here, as noted, Defendant
eventually received part of the funds deducted from its
employees' wages for purchases from Shoes for Crews via the $2
rebate, but Defendant did not, in turn, credit the $2 rebate
against the deductions taken from employees' wages and instead
used the rebate to offset Defendant's costs.

　　　　　On this record the Court concludes Plaintiffs have

established as matter of undisputed fact that Defendant was the "ultimate recipient of . . . money withheld" from its employees, and Plaintiffs have established as a matter of law that Defendant was not permitted to withhold Shoes for Crews payments from its employees pursuant to Oregon Revised Statutes § 652.610(3)(c).

Accordingly, the Court **GRANTS in part** Plaintiffs' Motion (#179) for Summary Judgment on Jack In The Box's Third Affirmative Defense (Authorized Deductions) to the extent that Affirmative Defense is premised on § 652.610(3)(c) and **GRANTS in part** Plaintiffs' Motion (#181) for Summary Judgment as to the portion of Defendant's Fifth Affirmative Defense (Valid Deduction) premised on § 652.610(3)(c).

IV. **Summary of Rulings on Shoe-Deduction Motions**

For the reasons noted above, the Court

1. **DENIES** Plaintiffs' Motion (#173) for Partial Summary Judgment on the issue of Defendant's *prima facie* liability on Plaintiffs' Shoe Claims on the ground that a material dispute of fact exists as to whether class members authorized the shoe deductions in writing;

2. **GRANTS in part** Plaintiffs' Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions) to the extent that Affirmative Defense is premised on Oregon Revised Statutes § 652.610(3)(c);

3. **DENIES in part** Plaintiffs' Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions) to the extent that Affirmative Defense is premised on Oregon Revised Statutes § 652.610(3)(b) because a material dispute of fact exists as to whether class members authorized the shoe deductions in writing;

4. **GRANTS in part** Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees) to the extent that Affirmative Defense is premised on Oregon Revised Statutes § 653.035(1);

5. **DENIES in part** Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees) to the extent that Affirmative Defense is premised on Oregon Revised Statutes § 652.610(3)(b);

6. **GRANTS in part** Plaintiffs' Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction) to the extent that Affirmative Defense is premised on Oregon Revised Statutes § 652.610(3)(c); and

7. **DENIES in part** Plaintiffs' Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative

Defense (Valid Deduction) to the extent that

Affirmative Defense is premised on Oregon Revised

Statutes § 652.610(3)(b) because a material dispute of

fact exists as to whether class members authorized the

shoe deductions in writing.

### DEFENDANT'S MOTION (#163) FOR SUMMARY JUDGMENT NO. 3 – REMEDIES RELATED TO ALLEGED WRONGFUL DEDUCTIONS ARE LIMITED

For the reasons that follow the Court **GRANTS in part** and

**DENIES in part** Defendant's Motion (#163) for Summary Judgment

No. 3 – Remedies Related to Alleged Wrongful Deductions Are

Limited.

In its Third Motion for Summary Judgment Defendant requests

the Court grant summary judgment "as to any remedies beyond a

single $200 sum per person under ORS 652.615 for claims

associated with wrongful deductions."  Defendant asserts

(1) Plaintiffs' derivative claims for penalties pursuant to

Oregon Revised Statutes § 652.150 are barred by the "same-

conduct" rule; (2) Plaintiffs are limited to "actual damages or

one $200 sum per class member, not [per] pay period, under

§ ORS 652.615"; (3) Defendant's conduct was not willful; (4) even

if Plaintiffs are entitled to penalty wages pursuant to

§ 652.150, Plaintiffs may not recover those wages for any

violations that occurred outside of the limitations period; and

(5) the Court should limit Plaintiffs "potential recovery of

93 - OPINION AND ORDER

statutory damages to prevent violations of [Defendant's] due
process rights."

Plaintiffs acknowledge "many cases prohibit the recovery of
more than one 30-day penalty for the same conduct." Plaintiffs,
however, state they are not seeking multiple penalties for the
same conduct. Pls.' Resp. at 2. Plaintiffs also assert they
"have never advocated for the availability of more than one
penalty in the same workweek - a single deduction that violated
both the Oregon minimum wage and overtime would only entitle the
employee to one penalty under O.R.S. § 652.150." Pls.' Resp. at
2-3. Nevertheless, Plaintiffs contend they are not prohibited
from recovering both the $200 statutory damages remedy provided
in § 652.615 and the 30-day penalty provided in § 652.150 for
Defendant's improper withholding of WBF funds and/or Defendant's
improper shoe deductions when the deductions reduced an employee
class member's wages below minimum wage and/or prohibited an
employee class member from receiving sufficient overtime.[9]

## I.   Background

As noted, on June 12, 2017, the Court issued an Opinion and
Order in which it granted Plaintiffs' Motion to Certify the WBF
Class, granted Plaintiffs' Motion to Certify the Shoe Class,

_____

[9] The parties agree Plaintiffs' final-paycheck claim relates
only to the Franchise Transfer Class and is "not derivative or
duplicative of Plaintiffs' other claims." The final-paycheck
claim, therefore, is "excluded from [Defendant's] arguments about
prohibiting multiple penalties."

granted Plaintiffs' Motion to Certify the Franchise Transfer Class, and denied Plaintiffs' Motion to Certify the Unpaid Break Class.

In their WBF Claim Plaintiffs allege Defendant improperly allocated its WBF assessments between Defendant and its employees, which resulted in an unauthorized deduction from employees' wages in violation of Oregon Revised Statutes § 652.610(3). Plaintiffs also allege the WBF assessments "reduced [Plaintiffs'] pay below the minimum wage" in violation of Oregon Revised Statutes § 653.025 and "resulted in [Plaintiffs] not receiving time-and-a-half for their overtime hours" in violation of Oregon Revised Statutes § 653.261.

In their Shoe Claims Plaintiffs allege Defendant improperly deducted the price of non-slip shoes from employees' wages in violation of § 652.610(3). Plaintiffs also allege the shoe deduction "resulted in Plaintiffs and the other employees receiving less than the minimum wage, and less than time-and-a-half for their overtime." Compl. at ¶ 26.

## II. Penalties Pursuant to Oregon Revised Statutes §§ 652.615 and 652.150

Oregon Revised Statutes § 652.615 creates "a private cause of action for a violation of ORS 652.610 . . . for actual damages or $200, whichever is greater."

Oregon Revised Statutes § 653.055(1) provides any employer "who pays an employee less than the wages to which the employee

is entitled under ORS 653.010 to 653.261 is liable to the employee affected . . . [f]or civil penalties provided in ORS 652.150."  In turn, Oregon Revised Statutes § 652.150 provides for penalty wages in the same amount as the wages due until the wages are paid or for up to 30 days after the due date of the unpaid wages.

For each pay period that Defendant over-withheld WBF assessments Plaintiffs seek $200 (or actual damages) pursuant to § 652.615 and 30 days of penalty wages pursuant to § 652.150 for each class-member employee whose wages were reduced below minimum wage or who did not receive sufficient overtime due to the improper WBF assessments.

 For each pay period that Defendant improperly deducted shoe payments Plaintiffs seek $200 (or actual damages) pursuant to § 652.615 and 30 days of penalty wages pursuant to § 652.150 for each class-member employee whose wages were reduced below minimum wage or who did not receive sufficient overtime due to the improper shoe deduction.

Defendant asserts Plaintiffs may not recover more than a single $200 sum or actual damages for each class-member employee from whom Defendant improperly withheld WBF funds and may not recover more than a single $200 sum for each class-member employee from whom Defendant improperly took shoe deductions even if the improper deduction also reduced a particular class-member

employee's wages below minimum wage and/or resulted in less than full payment of overtime.[10]

## III. Plaintiffs may recover penalties under §§ 652.615 and 652.150 for improper WBF or shoe deductions that reduced their pay below minimum wage or resulted in them receiving insufficient overtime.

Oregon courts have held a plaintiff may recover more than one penalty under Oregon's wage-and-hour laws only when an employer engages in misconduct that violates two separate statutes, each with their own separate remedies and purposes. For example, in *Hurger v. Hyatt Lake Resort, Incorporated*, 170 Or. App. 320 (2000), the plaintiffs received their final post-termination wages after the required time elapsed under Oregon Revised Statutes § 652.140. The plaintiffs sought one penalty under § 652.150 for late payment of wages on termination in violation of § 652.140 and a second penalty under § 652.150 for failure to pay minimum wages in violation of § 653.261. The plaintiffs asserted the late payment of wages on termination meant the plaintiffs were paid less than the minimum wage (*i.e.*, nothing). *Id.* at 322. The Oregon Court of Appeals held the late payment of the final wages was not separately sanctionable as a failure to pay minimum wage because the argument was a "tail-wagging-the-dog exercise" that was unsupported by the

---

[10] Defendant "does not dispute that class members who had both WBF and shoe deductions would be potentially eligible to recoup separate awards under ORS 652.615." Def.'s Reply at 2 n.1.

statute.  *Id*. at 324–25.

Similarly, in *Herb v. Van Dyke Seed Company* the plaintiff
sought to recover a penalty under § 652.150 for the defendant's
failure to pay overtime and a second penalty under § 652.150 for
the defendant's failure to pay all wages due on termination.
This Court concluded the plaintiff could "not seek a penalty for
[his] employer's failure to pay overtime wages during employment
in addition to a penalty for [his] employer's alleged failure to
pay those same wages upon termination . . . , and, therefore,
Plaintiff is barred from seeking such duplicative penalties."
No. 3:12-CV-01070-BR, 2012 WL 4210613, at *4 (D. Or. Sept. 19,
2012).

In contrast, in *Cornier v. Paul Tulacz, DVM PC*, the
plaintiff alleged the defendant did not pay her for overtime
during her employment in violation of Oregon Revised Statutes
§ 653.261 and that the defendant failed to pay her accumulated
vacation pay after she quit in violation of § 652.140.  176 Or.
App. 245, 247 (2001).  The plaintiff sought two statutory
penalties under § 652.150, one for each violation.  *Id*.  The
plaintiff, however, did not assert the defendant's failure to pay
her overtime after her termination created the right to a third
penalty under § 652.150.  The Oregon Court of Appeals found the
defendant's failure to pay the plaintiff constituted violations
of two distinct parts of the wage statutes and those violations

arose out of different factual contexts and accrued at different

times.  *Id*. at 248.  The court, therefore, concluded the

plaintiff was entitled to the two separate penalties.  *Id*. at

249.  The court noted:

> [T]his case does not present an instance of double
> penalties for the same conduct . . . because here
> the violation that occurred during employment was
> underpayment for overtime, while the violation at
> termination was nonpayment for accrued vacation.
> Plaintiff has asserted separate violations for
> separate acts of her employer. . . .  [I]f this
> case did present two claims for two penalties
> based on the same employer misconduct, one of
> those claims would probably fail under *Hurger v.
> Hyatt Lake Resort, Inc.*

*Id*. at 250.

Likewise, in *Wilson v. Smurfit Newsprint Corporation* the

plaintiffs brought several claims against the defendant,

including a claim that the defendant unlawfully withheld medical

insurance payments from the plaintiffs' last paychecks in

violation of Oregon Revised Statutes § 652.610.  197 Or. App. at

652.  The plaintiffs asserted "defendant's excess withholding

violated not only ORS 652.610(3)(a) but also ORS 652.150, because

the withholding resulted in late payment of wages on

termination."  *Id*. at 671.  The plaintiffs, therefore, contended

the "defendant must pay each of them not only $200 under ORS

652.615 but also 30 days of penalty wages" under Oregon Revised

Statutes § 652.150.  The Oregon Court of Appeals noted there were

not any cases directly on point, but cases that presented

somewhat similar facts "suggest[ed] . . . plaintiffs' argument is correct." *Id.* Specifically, the *Wilson* court relied on the following discussion in *Allen v. County of Jackson*:

> Before the creation of what is now ORS 652.615, the way to recover an illegal deduction was to file a normal wage claim. Nothing in the legislature's action in creating a new, separate claim suggests that it intended to abolish the existing remedy; rather, the legislature added a new remedy to the existing one.
>
> In short, . . . when an employer deducts amounts that are illegal under [ORS 652.615], the employee may file one or both of two different kinds of claims: (1) a regular wage claim under ORS 652.120 . . . or ORS 652.140 (concerning payment of wages at termination of employment); or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount.

*Wilson*, 197 Or. App. at 671-72 (quoting *Allen*, 169 Or. App. 116, 133-34 (2000)). The *Wilson* court also noted the Oregon Supreme Court in *Taylor v. Werner Enterprises, Incorporated,* held "an employer who withholds without authorization violates both ORS 652.150 and ORS 652.610 and that the employee 'is entitled to recover under ORS 652.150 and ORS 652.610(3)(c).'" *Wilson*, 197 Or. App. at 672 (quoting *Taylor*, 329 Or. 461, 471 (1999)).

Here the Court finds the differences between Plaintiffs' claims for wrongful WBF and shoe deductions are similar to the differences between the claims in *Wilson*. Although Plaintiffs' request for statutory penalties pursuant to § 652.150 for failure to pay minimum wage or failure to pay overtime result from Defendant's alleged improper withholding of WBF funds and/or shoe

100 - OPINION AND ORDER

deductions, the Court concludes they present substantially different violations and are not conjoined in the same way as those in *Herb* and *Hurger.*

The Court, therefore, concludes Plaintiffs may recover statutory damages under § 652.615 as well as penalty wages under § 652.150 if they establish Defendant's WBF and/or shoe deductions were improper and reduced employee class members' wages below minimum wage or resulted in employee class members receiving insufficient overtime to the extent that due-process concerns are not implicated as to their WBF claims.

**IV. Plaintiffs are limited to a single $200 sum or actual damages for improper WBF deductions and/or a single $200 sum or actual damages for improper shoe deductions.**

Defendant asserts Plaintiffs are also limited to a single $200 sum or actual damages per class-member employee for improper WBF deductions and/or a single $200 sum or actual damages per class-member employee for improper shoe deductions as opposed to a $200 sum or actual damages per class-member employee for each pay period during which Defendant made improper deductions. Plaintiffs concede this point in their Response and note they "are willing to abide by Judge Simon's recent thoroughly reasoned *Brinkman* opinion on this issue." Pls.' Resp. at 2.

In *Brinkman v. ABM Onsite Services - West, Incorporated,* the plaintiff brought a collective action alleging his employer wrongfully deducted certain WBF assessments from his paychecks

and the paychecks of putative class members.  383 F. Supp. 3d
1120 (D. Or. 2019).  The plaintiff asserted the defendant
"violated ORS § 652.610(3), and therefore . . . [the plaintiff]
and others similarly situated are entitled to (for each
violation) the greater of $ 200 or actual damages in an amount to
be proven at trial, pursuant to ORS 652.615."  *Id*. at 1123
(quotation omitted).  The plaintiff defined "each violation" as
"each paycheck containing a wrongful deduction."  *Id*.  The
defendant moved for partial summary judgment and asserted the
plaintiff was "only entitled to actual damages or a *single* $ 200
penalty under ORS § 652.615 if Plaintiff proves his claims for
alleged multiple wrongful deductions under ORS § 652.610(3)."
*Id*. (emphasis in original).  The court concluded:

> Because the Oregon Supreme Court's statement in
> *Allen* is the best indicator of how the state's
> highest tribunal likely would interpret this
> Oregon law, this Court finds that ORS § 652.615
> allows a successful plaintiff to be awarded actual
> damages or a single sum of $ 200, whichever is
> greater, for a given type of violation of ORS
> § 652.610(3), even if that violation occurs
> multiple times across multiple pay-periods.

*Id*. at 1127 (citing *Allen v. County of Jackson*, 340 Or. 146
(2006)).

Although *Brinkman* is not binding on this Court, the Court
finds it to be well-reasoned and well-supported by authority.
The Court, therefore, adopts the reasoning of *Brinkman* and
concludes Plaintiffs are limited to a single $200 sum or actual

damages per class-member employee for improper WBF deductions and/or a single $200 sum or actual damages per class-member employee for improper shoe deductions even if those violations occurred multiple times across multiple pay periods.

## V.    Willfulness of Defendant's Alleged Violations

Defendant asserts even if the Court permits a potential recovery of penalties under § 652.150, "Plaintiffs cannot establish such relief because the alleged conduct was not willful."  Def.'s Mot. at 11.  Defendant asserts its failure to pay wages as a result of WBF and/or shoe deductions was "at best inadvertent, not willful . . . [b]ecause neither the shoe nor WBF deduction were made willfully under ORS § 652.150."  *Id*. Defendant also reiterates its arguments related to willfulness asserted in its Responses to Plaintiffs' Motion for Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims and Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims.

The Court concludes on this record that Plaintiffs have established Defendant's over-withholding of WBF assessments and/or shoe deductions was willful within the meaning of Oregon Revised Statutes § 652.150 for the reasons set out above.

## VI.   Limitations Period

Defendant asserts even if the Court concludes Plaintiffs may receive penalty wages pursuant to § 652.150 in addition to

statutory damages under § 652.615, Plaintiffs may not recover penalty wages for any violation that occurred outside of the limitations period.

In Oregon the limitations period applicable to a claim for unpaid regular wages is six years. Or. Rev. Stat. § 12.080(1). In contrast, the limitations period applicable to claims for penalties arising out of the failure to pay minimum wages is three years. Or. Rev. Stat. 12.100(2). *See also Russell v. U.S. Bank N.A.*, 246 Or. App. 74, 77 (2011). In addition, the limitations period applicable to claims for unpaid overtime or for penalties arising out of the failure to pay overtime is two years. Or. Rev. Stat. 12.110(3). *See also Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2016 WL 7856433, at *13 (D. Or. Sept. 2, 2016), *report and recommendation adopted*, No. 3:14-CV-01528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017).

The Court, therefore, concludes on this record that penalty wages resulting from WBF or shoe deductions that caused Plaintiffs' wages to fall below the required minimum wage are limited to violations that occurred on or after August 13, 2007. Similarly, penalty wages resulting from WBF or shoe deductions that caused Plaintiffs to receive insufficient overtime are limited to violations that occurred on or after August 13, 2008.

**VII. Due-Process Concerns**

Defendant reiterates its argument that the Court should limit Plaintiffs "potential recovery of statutory damages to prevent violations of [Defendant's] due process rights."

As the Court noted earlier, although due-process concerns may possibly be implicated, the Court finds the record is not sufficiently developed to enable the Court to determine conclusively whether awards of penalty wages under § 652.150 violate Defendant's due-process rights as to the WBF claims because Plaintiffs have not requested a ruling as to a specific sum of damages for their WBF claims and Defendant's reliance on hypothetical employees for the calculation and comparison of statutory damages and penalty wages is insufficient. Accordingly, the Court declines to grant Defendant's Motion on the basis of due-process concerns at this time.

**VIII. Summary**

In summary, the Court concludes Plaintiffs may recover one $200 sum or actual damages per class-member employee pursuant to § 652.615 for any improper WBF assessment and/or one $200 sum or actual damages per class-member employee pursuant to § 652.615 for any improper shoe deductions.

Plaintiffs may also recover penalty wages under § 652.150 for failure to pay minimum wages or overtime in addition to the statutory damages allowed pursuant to § 652.615 to the extent

that the WBF and/or shoe deductions caused a class-member employee to receive insufficient overtime or not to receive minimum wages subject to the two-year limitations period for penalty wages for failure to pay sufficient overtime and the three-year limitation period for penalty wages for failure to pay minimum wages.

Finally, although due-process concerns may be implicated, the Court concludes this record is not sufficiently developed to resolve due-process issues conclusively at this stage of the proceedings.

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's Third Motion (#163) for Summary Judgment.


## DEFENDANT'S MOTION (#164) FOR SUMMARY JUDGMENT NO. 4 – BREACH OF FIDUCIARY DUTY TORT CLAIMS IS TIME-BARRED

For the reasons that follow the Court **GRANTS** Defendant's Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty Tort Claims Is Time-Barred.

In its Fourth Motion for Summary Judgment Defendant asserts Plaintiffs' claim for breach of fiduciary duty is time-barred because it does not relate back to their statutory claims.

Plaintiffs assert their claim for breach of fiduciary duty is not time-barred because it relates back to their statutory Shoe Claims.

## I.   Background

As noted, Plaintiffs received their final paychecks from Defendant on the following dates:

Tricia Tetrault:     July 11, 2008
Ashley Ortiz:        December 26, 2008
Nicole Gessele:      March 20, 2009
Jessica Gessele:     November 23, 2009
Christina Mauldin:   March 30, 2010

On August 13, 2010, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault filed *Gessele I* in this Court alleging claims for violation of the minimum-wage and overtime provisions of the FLSA and Oregon's wage-and-hour laws.  For purposes of their Shoe Claims in *Gessele I* Plaintiffs relied on the following allegations:

> At all relevant times, [Defendant] required its employees to purchase a specific type of shoes from a specific company (called Shoes for Crews), and that they re-purchase new pairs of said shoes from time to time, and willfully deducted the price of said shoes from the pay of its employees without meeting the statutory requirements to do so.

*Gessele I* Compl. at ¶ 7.  Plaintiffs asserted the shoe purchases and other deductions were in violation of Oregon Revised Statutes § 652.610 and that various deductions (including the deductions for shoes) caused certain employees not to receive minimum wages or overtime in violation of Oregon's wage-and-hour laws and the FLSA.

On May 16, 2011, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault filed a First Amended Complaint in

107 - OPINION AND ORDER

*Gessele I* in which they added Christina Mauldin as a named Plaintiff. Plaintiffs did not change or add allegations or claims related to wrongful deductions.

On March 20, 2012, Plaintiffs filed a Second Amended Complaint in *Gessele I* in which they alleged additional factual allegations to support their claims. Specifically, Plaintiffs added the following allegations to their wrongful-deductions claims:

> [Defendant] also required its restaurant employees to wear a specific kind of nonslip shoes . . . made by a specific company-approved manufacturer . . . . [Defendant] only allowed its employees to wear shoes from an approved list of manufacturers, who gave certain benefits to [Defendant]: the manufacturers had to offer [Defendant] a guarantee, and they had to pay [Defendant] a kickback. The guarantee was that the shoe maker would pay the first $5,000 of any medical expense claim resulting from a slip and fall while an employee was wearing that manufacturer's brand of shoes that the employee paid for with payroll deduction. The kickback was that the shoe manufacturer would pay $2 to [Defendant] for every pair of shoes that an employee paid for with payroll deduction. Those extra perks paid to [Defendant] made the shoes more expensive, but [Defendant] didn't allow its employees to wear the less expensive shoes made by manufacturers that didn't offer those perks to [Defendant] (even if those less expensive shoes met the coefficient of friction requirements).
>
> When an employee was told by their manager that they had to order the shoes, the employee picked from the designated catalog of the approved manufacturer. The manager would then phone in the employee's order. [Defendant] would pay the manufacturer for the shoes and then deduct that price from the employee's wages over four paychecks.

* * *

> Each quarter, [Defendant] would get a check from
> the shoe manufacturer for $2 per pair of shoes
> ordered by the employees through payroll
> deduction.  That kickback was not passed on to the
> employees.  The employees therefore paid $2 more
> per pair of shoes than [Defendant] did. . . .
> Because [Defendant] got a $2 kickback per pair of
> approved shoes, plus a medical expense guarantee
> from injured workers wearing approved shoes, the
> approved shoes benefitted [Defendant].  The shoes
> are part of a uniform, for the company's benefit,
> and on top of that, the company charged more for
> them than it paid for them.  The company's
> requiring employees to purchase those shoes (and
> the deduction of the price from their wages) was
> therefore a violation.
>
> Furthermore, the shoe deductions resulted in
> Plaintiffs and the other employees receiving less
> than the minimum wage, and less than
> time-and-a-half for their overtime.

*Gessele I* Second Am. Compl. at ¶¶ 8-11.  Plaintiffs continued to

assert Defendant's shoe deductions violated Oregon Revised

Statutes § 652.610 and the minimum-wage and overtime provisions

of the FLSA and Oregon wage-and-hour laws.

In December 2012 Plaintiffs moved for leave to file a Third

Amended Complaint in *Gessele I* to assert a common-law claim for

breach of fiduciary duty.  Magistrate Judge Stewart denied

Plaintiffs' Motion for Leave to File a Third Amended Complaint on

the ground that *Gessele I* was "too far advanced to add two new

defendants (including a representative of a proposed defendant

class), many new claims unrelated to the pending claims for wage

and hour violations, additional putative class members, and over

109 - OPINION AND ORDER

50 new proposed classes and subclasses." *Gessele I* Order (#157).
*Gessele I*, therefore, never included a claim for common-law
breach of fiduciary duty.

As noted, on May 15, 2014, this Court issued an Amended
Opinion and Order (#293) in *Gessele I* in which it concluded it
never acquired jurisdiction over Plaintiffs' FLSA claims, and, as
a result, the Court could not exercise supplemental jurisdiction
over Plaintiffs' state-law claims. In reaching that conclusion
the Court addressed the Plaintiffs' assertion that they did not
discover the basis for all of their FLSA claims until the
February 6, 2012, deposition of Gene James, Defendant's Director
of Asset Protection, who testified about the $2 per shoe
purchase-rebate program. Plaintiffs asserted their FLSA claims,
therefore, did not accrue until February 2012. The Court
concluded the FLSA does not have a discovery rule, and,
therefore, Plaintiffs' FLSA claims accrued when Defendant
allegedly failed to pay Plaintiffs' compensation and the
limitations period began to run on the date of the named
Plaintiffs' final paychecks. The Court further concluded even if
the FLSA had a discovery rule, Plaintiffs failed to establish
that they did not "discover" their FLSA claims (including claims
relating to the $2 rebate for shoes) until February 2012.
Specifically, the Court noted Plaintiffs included allegations
about the shoe-purchase and deduction program in its original and

First Amended Complaints.  The Court also noted

> Plaintiffs stated in their April 15, 2011, Reply
> in support of their Motion to Compel that they had
> "discovered from other sources" that Shoes for
> Crews pays the first $5,000 of any workers'-
> compensation claim by an employee who slips while
> wearing Shoes for Crews shoes.  This statement
> undermines Plaintiffs' assertion that they did not
> know about the rebates (or kickbacks) from Shoes
> for Crews until James mentioned them at his
> February 2012 deposition.

Am. Opin. and Order (#293) at 22-23.

In their Complaint in *Gessele II* Plaintiffs allege the

following in support of their Seventh Claim for Oregon Common Law

Breach of Fiduciary Duty:

> [Defendant] also acted as the employees'
> purchasing agent with respect to the shoes.  That
> means that [Defendant] bought the shoes at the
> employees' request and on their behalf (not for
> itself).  Purchasing agents have a duty of loyalty
> under common law. . . .  Purchasing agents are not
> supposed to accept kickbacks/commercial bribes
> from the people they buy their goods from. . . .
> [Defendant] accepted kickbacks/commercial bribes
> from shoe vendors in order to give them access to
> its captive pool of employees who were required to
> purchase those shoes.  By accepting those
> kickbacks/commercial bribes, [Defendant] breached
> its fiduciary duty to its employees.

> * * *

> Under equitable principles, the Plaintiffs and
> class members have a greater right to that money
> than [Defendant] does.  [Defendant] should
> therefore provide an accounting of all of the
> money it has taken, and return that money to the
> employees it was taken from. Because the
> Plaintiffs and class members' purchases of the
> shoes from [Defendant] were not voluntary, they
> are entitled to rescind their purchases and get
> their money back.  [Defendant] should also be

prohibited from operating similar kickback/
         commercial bribery schemes in the future.

         The first time anyone disclosed that [Defendant]
         was collecting these kickbacks/commercial bribes
         from the shoe manufacturers was during the
         February 6, 2012 deposition of Gene James, its
         Director of Asset Protection, when he revealed
         that information unprompted by Plaintiffs'
         counsel.  Neither Plaintiffs nor their counsel
         knew or had any reason to know of the
         kickbacks/commercial bribes prior to that date.

*Gessele II* Compl. at ¶¶ 27-29.  In their Seventh Claim for Oregon

Common Law Breach of Fiduciary Duty Plaintiffs allege:

         [Defendant] required Plaintiffs and the Class
         members to purchase a specific quality of
         slip-resistant shoes from its list of approved
         manufacturers.  Plaintiffs and the Class members
         ordered those shoes through their managers, and
         [Defendant] paid the vendor for the shoes.
         [Defendant] then deducted what it said was its
         cost for those shoes from Plaintiffs' and the
         Class members' paychecks.  Throughout this
         process, [Defendant] was acting as Plaintiffs' and
         the Class members' purchasing agent.  As their
         purchasing agent, [Defendant] owed them a
         fiduciary duty of loyalty.

         [Defendant] breached its fiduciary duty of loyalty
         to Plaintiffs and the Class members by securing a
         kickback, bribe or commission from the vendor.
         This self-dealing and conflict of interest
         directly damaged Plaintiffs and the Class members.

Compl. ¶¶ 67-68.

     In its Answer on July 16, 2014, Defendant asserted an

Affirmative Defense of preemption in which it contended

Plaintiffs' common-law claim for breach of fiduciary duty was

preempted by the FLSA and/or Oregon's wage-and-hour laws.

     On August 31, 2015, Plaintiffs moved for summary judgment on

Defendant's Affirmative Defense of preemption.

On March 10, 2016, this Court issued an Opinion and Order in which it granted in part and denied in part Plaintiffs' Motion for Partial Summary Judgment on the issue of preemption. Specifically, the Court reviewed Oregon cases in which the courts made clear that "a plaintiff may assert common-law claims together with statutory claims as long as the common-law claims involve a second or different injury or protect against 'a different evil.'" Opin. and Order (#85) at 51 (citing *Palmer v. Bi-Mart Co.,* 92 Or. App. 470 (1988), and *Carsner v. Freightline Corp.*, 69 Or. App. 666 (1984)). The Court also noted Plaintiffs' explanation at oral argument in which they stated that their Seventh and Eighth Claims involve a different injury than their Oregon statutory wage-and-hour claims because

> [t]here were lots of people that had shoe deductions in non-overtime weeks. There were people that had shoe deductions in weeks that did not drop them below the federal minimum wage. If neither of those two things are true, then the FLSA [and Oregon wage-and-hour statutes] do[] not apply by [their] very terms. [They] only appl[y] to violations of the overtime and federal minimum wage. These [Claims] are saying that defendants obtained the shoe money by telling the plaintiffs that the money that they were collecting from their paychecks was being paid to the shoe company, and that's not true. They got a $2 kickback. That element of falsehood or of misleading or of not passing on money to the ultimate wholesaler that the company took from the plaintiffs is not contained anywhere in the FLSA [or Oregon wage-and-hour statutes].

Feb. 16, 2016, Hearing Tr. at 16. The Court concluded Oregon's

wage-and-hour statutes preempted Plaintiffs' Seventh and Eighth
Claims to the extent that those claims "involve conduct by
Defendant that is prohibited by Oregon's wage-and-hour laws (such
as the failure to pay overtime, the failure to pay minimum wages,
the failure to pay all wages when due, and/or wrongful deductions
in violation of § 652.610(3))." Opin. and Order at 51-52.

## II. Parties' Arguments

As noted, Defendant alleges in its Motion for Summary
Judgment No. 4 - Breach of Fiduciary Duty that Plaintiffs'
Seventh Claim is time-barred. Specifically, Defendant points out
that the statute of limitations in Oregon for claims of breach of
fiduciary duty is two years pursuant to Oregon Revised Statutes
§ 12.110; that Defendant did not own any restaurants in Oregon
after September 30, 2011;[11] and that Plaintiffs did not assert a
claim for breach of fiduciary duty until June 2014, which is more
than two years after the last possible class member could have
been employed in any of Defendant's Oregon restaurants.
According to Defendant, therefore, Plaintiffs did not assert
their claim for breach of fiduciary duty within the two-year
limitations period, and, therefore, that claim is time-barred.

Plaintiffs do not dispute the limitations period for their
Seventh Claim is two years or that they did not assert a claim

---

[11] The last paycheck issued to a named Plaintiff by
Defendant was issued on March 30, 2010.

for breach of fiduciary duty until June 2014. Plaintiffs, however, assert that claim is not time-barred because it relates back to their other claims "based on [Defendant's] illegal deductions for shoes." Pls.' Resp. at 2. Plaintiffs contend "because they are all based on the same shoe deductions, they are all part of the same claim for relation-back purposes. Because the breach of fiduciary duty [claim] relates back to plaintiffs' original complaint,[12] it is not time-barred." *Id*.

In its Reply Defendant asserts Plaintiffs are judicially estopped from asserting their claim for breach of fiduciary duty relates back to their shoe-deduction claims in *Gessele I* because Plaintiffs stated at oral argument and asserted in their Motion for Partial Summary Judgment regarding preemption that Plaintiffs' claim for breach of fiduciary duty was based on "different legal injuries than th[eir] statutory claims, and [it has] different elements and, in most instances, different damages." Opin. and Order (#85) at 46.

## III. The Law

Federal Rule of Civil Procedure 15(c)(1) provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;

---

[12] It is not clear which Complaint Plaintiffs are referring to, but it appears they mean Plaintiffs' original Complaint in *Gessele I*.

[or]

                         (B) the amendment asserts a claim or defense
                         that arose out of the conduct, transaction,
                         or occurrence set out--or attempted to be set
                         out--in the original pleading.

The Ninth Circuit explained:

                         Rule 15(c)(1) incorporates the relation back rules
                         of the law of a state when that state's law
                         provides the applicable statute of limitations and
                         is more lenient.  As a result, if an amendment
                         relates back under the state law that provides the
                         applicable statute of limitations, that amendment
                         relates back under Rule 15(c)(1) even if the
                         amendment would not otherwise relate back under
                         the federal rules.

*Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200

(9th Cir. 2014).  Here, as noted, Oregon law provides the

applicable limitations period.  Accordingly, if Oregon's

relation-back statute is more lenient than the federal statute,

the Court must apply Oregon's relation-back provision.

     Oregon Rule of Civil Procedure 23(c) contains nearly

identical language to Federal Rule of Civil Procedure 15(c)(1)

and provides:  "Whenever the claim or defense asserted in the

amended pleading arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original

pleading, the amendment relates back to the date of the original

pleading."  Courts in Oregon have concluded Rule 23(c) is

substantially the same as Federal Rule of Civil Procedure

15(c)(1).  *See, e.g., Dillon v. Clackamas County*, No. 3:14-cv-

00820-YY, 2018 WL 4523139, at *9 (D. Or. May 2, 2018)(concluding

the relation-back analysis under Oregon Rule of Civil Procedure 23(c) is the same as that under Federal Rule of Civil Procedure 15(c)(1)). The Court, therefore, concludes the relation-back analysis is the same under state and federal law.

For a claim to relate back to a claim in the original pleading "[t]he claims must share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim." *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018)(quotation omitted). The Court does "not look to the legal theory underlying a claim, but to the facts on which it is based." *Ram v. County of Sacramento*, 738 F. App'x 571, 571 (9th Cir. 2018). Thus, an amendment will not relate back if the amended complaint "had to include additional facts to support the [new] claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008).

## IV. Analysis

As noted, Plaintiffs assert their claim for breach of fiduciary duty arises from the same conduct, transaction, or occurrence as their other Shoe Claims; *i.e.*, the shoe-deduction program and the $2 rebate per order that Defendant received from Shoes for Crews but did not credit towards employees' wage deductions for shoe purchases.

Although Plaintiffs rely on many of the same facts to support their shoe-deduction claims and their claim for breach of

fiduciary duty, there are differences in the facts Plaintiffs

must plead and prove in order to establish a claim for breach of

fiduciary duty.  For example, to state a claim for wrongful

deduction under Oregon Revised Statutes § 652.610(3) Plaintiffs

have to allege only that Defendant withheld or deducted funds

from Plaintiffs' wages and that the deductions were not pursuant

to any exceptions set out in the statute.  Similarly, to state

claims for violation of Oregon's minimum-wage and overtime

statutes Plaintiffs must allege only that they were not paid

minimum wages or overtime within the meaning of the statutes.  To

state a claim for breach of fiduciary duty, however, Plaintiffs

must also allege and "present evidence that a special

relationship or fiduciary-type relationship existed between the

parties that was independent of the duties under the [contract]."

*Vanderselt v. Pope*, 155 Or. App. 334, 340 (1998)(quotation

omitted).  As the court explained in *Vanderselt*:  "In deciding

whether plaintiffs have established claims for breach of

fiduciary duty in various circumstances such as employer-employee

relationships Oregon courts have examine[d] the nature of the

relationship between the plaintiff . . . and the defendant . . .

to determine if a special relationship existed giving rise to a

heightened duty."  *Id.* at 342.  One way

> to characterize the types of relationships in
> which a heightened duty of care exists is that the
> party who owes the duty has a special respons-
> ibility toward the other party.  This is so

> because the party who is owed the duty effectively
> has authorized the party who owes the duty to
> exercise independent judgment in the former
> party's behalf and in the former party's
> interests. In doing so, the party who is owed the
> duty is placed in a position of reliance upon the
> party who owes the duty; that is, because the
> former has given responsibility and control over
> the situation at issue to the latter, the former
> has a right to rely upon the latter to achieve a
> desired outcome or resolution.

*Id*. (quotation omitted). Thus, determination of a claim for

breach of fiduciary duty requires an examination of the nature of

the parties' relationship to determine whether it is the kind

that gives "rise to a heightened duty." The facts that underlie

that evaluation are more extensive than and different from those

that underlie Plaintiffs' claims for wrongful deductions pursuant

to § 652.610 and for failure to pay minimum wages and overtime.

Courts have concluded under similar circumstances that a claim

does not relate back to an original complaint. For example, in

*Echlin v. PeaceHealth* the plaintiff brought a putative class

action against the defendants alleging violations of the Fair

Debt Collection Practices Act (FDCPA) "including but not limited

to 15 U.S.C. §§ 1692e and 1692j." 887 F.3d 967, 971 (9th Cir.

2018). The plaintiff alleged the defendants were involved in a

"practice commonly known as flat-rating." *Id*. The defendants

moved for summary judgment. In response to the defendants'

motion the plaintiff asserted even if her flat-rating claims

failed, the defendants' "practices violate[d] [the FDCPA] in

other ways" such as using "false representation or deceptive means to collect any debt" in violation of § 1692e(5). *Id*. The district court granted the defendant's motion for summary judgment and "struck the § 1692e(5) claim [the plaintiff] argued [for] at summary judgment" on the ground that it was barred by the FDCPA's statute of limitations. On appeal the plaintiff asserted her claim for violation of § 1692e(5) related back to her original complaint. The Ninth Circuit disagreed and concluded the plaintiff's § 1692e(5) claim did not relate back to her original complaint on the grounds that:

> Although [the plaintiff's] § 1692e(5) claim arises from the same general transaction as her flat-rating claims, it would not rely on all the same facts and evidence. . . . [The plaintiff's] complaint failed to allege at least two facts critical to support a § 1692e(5) claim: (1) that CCI is a debt collector under the Act and (2) that CCI threatened to take any action against her that it had no authority or intention to take. . . . [T]he first point . . . would . . . turn on questions not presented by [the plaintiff's] original allegations. And the second point would likewise turn on different evidence than [the plaintiff's] flat-rating claims, as it focuses on the specific representations made in the letters rather than the nature of CCI's role in the collection process. To find in Echlin's favor, the trier of fact would be called to [answer] . . . questions that simply are not presented by [the plaintiff's] flat-rating claims.

*Id*. at 978-79.

Here Plaintiffs must plead and prove different facts to support their shoe-deduction claims and their claim for breach of fiduciary duty. In addition, Plaintiffs seek different remedies:

120 - OPINION AND ORDER

equitable relief for their claim for breach of fiduciary duty and statutory damages and penalty wages for their statutory claims. Specifically, in their claim for breach of fiduciary duty Plaintiffs seek the following equitable relief: "an accounting, restitution, and to collect their damages in an amount to be proven at trial, together with pre- and post-judgment interest, as well as declaratory and injunctive relief." *Gessele II* Compl. at ¶ 69. The difference in the nature of the relief sought and the harm from which the alleged damages to Plaintiffs arose indicates Plaintiffs' statutory claims and their claim for breach of fiduciary duty do not share a common nucleus of operative facts. *Compare Concienne v. Asante*, 273 Or. App. 331, 341 (2015)("The consistency between the predicate facts, the harm caused, and the damages sought in both complaints indicate that the amended complaint should relate back to the original complaint.").

On this record the Court concludes Plaintiffs' claim for breach of fiduciary duty is materially different from their statutory wage-and-hour claims because in their claim for breach of fiduciary duty Plaintiffs rely on different predicate facts, seek substantially different relief from their wage-and-hour claims, and seek to remedy a different harm. The Court, therefore, concludes Plaintiffs' claim for breach of fiduciary duty does not relate back to Plaintiffs' claims in *Gessele I*.

Thus, the Court concludes Plaintiffs' claim for breach of fiduciary duty is time-barred.

Accordingly, the Court **GRANTS** Defendant's Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty.


## DEFENDANT'S MOTION (#165) FOR SUMMARY JUDGMENT NO. 5 - QUASI-CONTRACT/UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

For the reasons that follow the Court **DENIES** Defendant's Motion (#165) for Summary Judgment No. 5 - Quasi- Contract/Unjust Enrichment Claim Fails as a Matter of Law.

Plaintiffs allege in their Eighth Claim for "equitable and quasi-contractual claims for return of money: rescission, restitution, unjust enrichment and money had and received" that Defendant

> unlawfully took possession of money belonging to Plaintiffs and the Class members. Plaintiffs and the Class members received nothing in return for the kickback/commercial bribe portion of the money, and overvalued shoes in return for the remainder, both of which were obtained only under duress of losing their jobs.
>
> [Defendant] has failed to refund the money and has been unjustly enriched thereby, and equity and good conscience demand that the Plaintiffs' and the Class members' money be returned.
>
> Plaintiffs and the Class members are entitled to an accounting and to recover in restitution the money unlawfully taken from them, in an amount to be proven at trial, in addition to pre- and post-judgment interest.

Compl. ¶¶ 71-73.

In its Motion for Summary Judgment No. 5 Defendant asserts Plaintiffs' Eighth Claim fails as a matter of law because Defendant was not unjustly enriched by the shoe-deduction program. Specifically, Defendant asserts Plaintiffs did not have to purchase their shoes through Defendant's payroll-deduction program, Plaintiffs received a discount of up to $5 per pair of shoes purchased through the payroll-deduction program, and Defendant actually incurred an overall financial loss from the shoe payroll-deduction program during the relevant period. According to Defendant, therefore, it was not unjustly enriched and Plaintiffs do not have any right to recover in equity.

Contrary to Defendant's assertion that its employees were not required to wear shoes from Shoes for Crews, Plaintiffs maintain in their Response that the record reflects Defendant required employees to wear only shoes from Shoes for Crews. Plaintiffs contend the issue at the core of their claim for unjust enrichment is whether Defendant was enriched at the expense of individual employees who did not receive the benefit of the $2 per pair rebate on their Shoes for Crews orders rather than whether Defendant suffered overall losses from its shoe-deduction program.

I.   **The Law**

"The law of unjust enrichment is undergoing a period of

rapid expansion in Oregon." *LRY, LLC v. Lake Cty.*, No. 1:17-CV-00675-MC, 2018 WL 5300387, at *5 (D. Or. Oct. 25, 2018). In *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115 (2017), the Oregon Supreme Court rejected the 1993 formula used in Oregon for evaluating a claim for unjust enrichment:

> In lieu of applying the formula in *Jaqua* [*v. Nike, Inc.*, 125 Or. App. 294, 298 (1993)], Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust.

*Larisa's Home Care*, 362 Or. at 132. The court identified Oregon case law as well as Restatement (Third) of Restitution and Unjust Enrichment (2011) "as . . . proper authorit[ies] when considering whether allegations of unjust enrichment fall within an established [legal] category" of unjust enrichment. *Id.* at 133.

## II. Analysis

The parties agree Oregon courts have not specifically addressed whether retention of a rebate by an employer constitutes unjust enrichment. In addition, neither party cites nor could this Court find a case from any jurisdiction in which a court evaluated whether retention of a rebate constitutes unjust enrichment. Plaintiffs cite cases from other jurisdictions to support their assertion that the shoe-deduction rebate program as it operated in this case constitutes unjust enrichment, but those cases did not evaluate the issue in this case. For example, in *Prospect St. Energy, LLC v. Bhargava*, No. CA N13C008-203 WCC

124 - OPINION AND ORDER

CCLD, 2016 WL 446202, at *4 (Del. Super. Ct. Jan 27, 2016), the court addressed only whether it had jurisdiction to hear an unjust-enrichment claim.  In *Kleinerman v. 245 E. 87 Tenants Corporation,* 105 A.D.3d 492, 493 (N.Y. App. Div. 2013), the court decided there was an issue of fact as to whether the defendant knew the payments were "kickbacks."  In *Osier v. Burlington Telecom*, 201 Vt. 483 (2016), the court did not address the merits of the plaintiffs' claim because the defendant asserted only a procedural argument against the claim.  These cases, therefore, are of limited assistance to the Court in determining whether the circumstances here constitute a claim for unjust enrichment under Oregon law.

Because Oregon has not addressed facts similar to those at issue here, the Court looks to the Restatement (Third) of Restitution and Unjust Enrichment as directed by *Larisa* to determine whether Plaintiffs' allegations "fall within an established legal category."  Restatement (Third) of Restitution and Unjust Enrichment § 48 provides:  "If a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."  Comment e to § 48 addresses circumstances in which "the claimant has furnished the value for which the defendant is compensated or reimbursed" and

explains "[o]ne salient group" of circumstances that state a
claim for unjust enrichment "consists of cases in which the
defendant has been compensated or reimbursed by a third party for
costs or expenditures incurred by the claimant. The restitution
claim is particularly secure when the basis of the claim is the
payment of money, thereby removing any question about valuation."
*Id.* Comment e contains several illustrative examples of this
type of claim for unjust enrichment, including the following:

> Buyer purchases 100,000 gallons of sweet cider
> from Seller. The contract price is $1.45 per
> gallon plus 10 percent federal tax. Seller
> collects the tax in respect of these sales from
> Buyer and remits $14,500 to the United States.
> A subsequent ruling in a case involving other
> taxpayers establishes that sweet cider is not
> subject to the 10 percent tax. Seller applies for
> a refund, and the United States pays Seller
> $14,500 plus $500 interest. Buyer is entitled to
> recover $15,000 from Seller.
>
>     * * *
>
> A lease of Blackacre provides that Tenant shall
> pay Landlord, in addition to base rent, an
> additional amount corresponding to a portion of
> the real estate taxes assessed on the property.
> Blackacre is taken by condemnation; the final
> award to Landlord includes $500,000 for the value
> of the property and $50,000 as a refund of taxes
> previously collected for the period following the
> taking. . . . By the rule of this section, Tenant
> may recover from Landlord that proportion of the
> $50,000 that corresponds to Tenant's contributions
> to the taxes in question.

In addition, the Court notes Oregon courts have "long held" the
right to a refund of overpayment is implied by law. *See, e.g.,
Digimark Corp. v. Verance Corp.*, No. 10-cv-1489-JE, 2011 WL

7077315, at *11 (D. Or. Sept. 19, 2011)(citing *Smith v. Rubel*, 140 Or. 422, 426 (1932)(right to refund of overpayment is implied by law without regard to the "actual promise" of refund); *Fred S. James & Co. v. E.G. Doll & Co.*, 104 Or. App. 508, 512 (1990) (affirming decision of trial court requiring the defendant to return the plaintiff's overpayment)). Thus, when a party has overpaid for an item, Oregon law implies the right to a refund of the overpayment.

The Court concludes based on Restatement (Third) of Restitution and Unjust Enrichment § 48, Comment e, the illustrations to Comment e, and Oregon's "long-held" right to a refund of overpayment that Plaintiffs' allegations of unjust enrichment fall in "an established [legal] category" of unjust enrichment within the meaning of *Larisa*.

Accordingly, the Court **DENIES** Defendant's Motion (#165) for Summary Judgment No. 5 - Quasi Contract/Unjust Enrichment.


**PLAINTIFFS' MOTION (#174) FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF *PRIMA FACIE* LIABILITY ON THEIR FRANCHISE TRANSFER CLAIMS AND PLAINTIFFS' MOTION (#178) FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES UNDER O.R.S. 652.140**

For the reasons that follow the Court **GRANTS** Plaintiffs' Motion (#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims and **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#178) for Partial

127 - OPINION AND ORDER

Summary Judgment on the Issue of Damages under O.R.S. 652.140.

In their Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims Plaintiffs assert they are entitled to summary judgment on the issue of Defendant's liability for violation of Oregon Revised Statutes § 652.140 for failing to pay Plaintiffs and other employees within the period required by law when Defendant transferred its Oregon restaurants to franchisees.

Plaintiffs allege in their Complaint:

> Plaintiffs . . . and the other employees of company-owned [restaurants] in Oregon that were transferred to the ownership of a franchisee did not receive their earned and unpaid wages within the period required by law following that transfer of ownership. . . . [Defendant] is therefore liable for damages to each employee who was employed at the time their [restaurant] was transferred who was not paid the business day after their last day as a corporate employee. For example, . . . Christina Mauldin . . . [was] employed by the corporation on Sunday, March 28, 2010, but employed by a franchisee at the same [restaurant] on Monday, March 29, 2010. [Her] final paycheck[] from [Defendant was,] therefore due on March 29, 2010. But [she was] not paid until March 30, 2010. The [restaurant] transfers at issue include . . . 6 [restaurants] transferred on May 1, 2006, 21 [restaurants] transferred on March 29, 2010, 13 [restaurants] transferred on March 7, 2011, and 3 [restaurants] transferred on September 30, 2011.

Compl. at ¶ 37. Plaintiffs assert Defendant's failure to pay their wages within the period required by law violated Oregon Revised Statutes § 652.140.

In their Motion for Partial Summary Judgment on the Issue of

Damages under O.R.S. 652.140 Plaintiffs assert when Defendant transferred its Oregon restaurants to franchisees, Defendant's failure to pay their wages due within the time required by law was willful.  Plaintiffs contend they are, therefore, entitled to penalty wages pursuant to Oregon Revised Statutes § 652.150.  Specifically, Plaintiffs allege each class member who did not timely receive his or her final wages within the relevant limitations period (August 13, 2007, to December 2011) are entitled to one 30-day penalty pursuant to Oregon Revised Statutes § 652.150 as calculated by Defendant's expert, Emil Czechowski.

In its Responses to Plaintiffs' Motions Defendant concedes it did not pay "certain employees" their final paychecks on the day following "the termination and transfer of their employment to franchises."  Defendant, however, asserts its failure to pay certain employees timely was not willful and even if it was willful, Plaintiffs have not established every unpaid class member is entitled to 30 days of penalty wages.

## I.    Willfulness

As noted, Defendant asserts even though it failed to pay certain employees' final wages timely, Plaintiffs are not entitled to penalty wages because they have not established Defendant's failure to pay certain employees' wages within the time required by the law was willful within the meaning of

§ 652.150.

**A.   The Law**

Oregon Revised Statutes § 652.150(1) provides any employer who "willfully fails to pay any wages or compensation of any employee" must pay a penalty for nonpayment.  Although the statute does not define willful, "[t]he word wilful [*sic*] has a particular meaning under Oregon law."  *Nance v. May Trucking Co.*, No. 3:12-CV-01655-HZ, 2014 WL 2113094, at *4 (May 20, 2014).  Specifically,

> [i]n civil cases the word wilful [*sic*], as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally.  It amounts to nothing more than this:  That the person knows what he is doing, intends to do what he is doing, and is a free agent.

*Id*. (quoting *Sabin v. Willamette–Western Corp.*, 276 Or. 1083, 1093 (1976)).  "That definition excludes the individual who does not know that his employee has left his employ or who has made an unintentional miscalculation."  *Wilson*, 197 Or. App. at 660 (quotation omitted).

Oregon courts have held "'[a]n employer acts wilfully [*sic*] if, having the financial ability to pay wages which he knows he owes, fails to pay them.  The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a *bona fide* belief that he is not obligated to pay

130 - OPINION AND ORDER

them.'" *Id*. at 661 (quoting *State ex rel Nilsen v. Lee*, 251 Or. 284, 293 (1968)). In addition, "an employer lacks knowledge, and therefore does not act willfully, if it has a good faith belief that one of the elements necessary to trigger the obligation to pay wages owed at termination is lacking." *Wilson*, 197 Or. App. at 661 (citing *Hekker v. Sabre Constr. Co.,* 265 Or. 552, 561 (1973)).

In *Sabin* the defendant owed the plaintiff $500 for unused vacation time when the plaintiff's employment ended. The defendant deducted an outstanding debt of the plaintiff from the $500 believing it had the right to recoupment or a set-off. The Oregon Supreme Court ultimately concluded the defendant's conduct was "willful" and the plaintiff was entitled to penalty wages under § 652.150:

> [W]e hold that there was sufficient evidence to support the finding by the trial judge that defendant's conduct was "wilful" for the purposes of this statute. . . . [D]efendant . . . wrongfully undertook to deduct as a matter of "set-off" or "recoupment" the $91.62 from the wages due to [the plaintiff] for that work.
>
> Although defendant may not have acted with "malice or wrong," or with "perverseness or moral delinquency," we believe that the trial court could reasonably infer from these facts that in making the deduction of $91.62 defendant did not make an "unintentional miscalculation"; but "knew what he was doing, intended to do what he was doing, and was a free agent" and that defendant was a "careless employer," so as to constitute a "wilful" [*sic*] failure to pay the wages payable to plaintiff within the meaning of ORS 652.150.

276 Or. at 1093-94.  Numerous cases

> establish that an action is willful if it is fully
> knowing, intentional, and voluntary.  Clearly, a
> malicious action or one taken in bad faith
> qualifies.  Equally as clearly, an employer does
> not act willfully if it acts without fully knowing
> that the historical circumstances triggering the
> obligation have occurred (for example, that the
> employee has quit) or if it acts based on an
> innocent miscalculation that is not careless.

*Wilson*, 197 Or. App. at 662-63.

## B.  Analysis

As noted, Defendant asserts Plaintiffs are not entitled
to penalty wages because they have not established Defendant's
failure to pay certain employees' wages within the time required
by law was willful within the meaning of § 652.150.  Defendant
relies on the Oregon Supreme Court's statement in *Sabin* that
§ 652.150 "was not intended to impose liability where the
employer's refusal to pay wages is based upon a *bona fide* belief
that he is not obligated to pay them."  *Sabin*, 276 Or. at 1093
(citing *State ex rel. Nilsen v. Lee*, 251 Or. 284, 293—94 (1968)).
The *Sabin* court pointed out that "[i]n defining the term
'willfully' for the purpose of [§ 652.150], however," the court
in *State ex rel. Nilsen v. Johnston* noted the purpose of
§ 652.150 "'is to protect employees from unscrupulous or careless
employers who fail to compensate their employees although they
are fully aware of their obligation to do so.'"  *Sabin*, 251 Or.
at 1093 (quoting *State ex rel. Nilsen v. Johnston et ux.*, 233 Or

103, 108 (1962)). In *Wilson* the court made clear that an employer does not act willfully when it does not "fully know[] that the historical circumstances triggering the obligation have occurred (for example, that the employee has quit) or if it acts based on an innocent miscalculation that is not careless." 197 Or. App. at 662-63.

Here the record reflects Defendant knew when its Oregon restaurants were transferred to franchisees and which employees were working in its restaurants at the time of the transfer. Defendant does not point to any evidence to indicate that it was unaware of any of the "historical circumstances" that triggered its obligation to pay all of the relevant employees their final wages within the time required under Oregon law. Defendant appears to be, at best, the kind of "careless employer" that the *Sabin* court concluded violated Oregon's wage-and-hour laws willfully. 276 Or. at 1093. *See also Elonis v. U.S.*, 135 S. Ct. 2001, 2009 (2015)("The familiar maxim ignorance of the law is no excuse typically holds true. Instead, . . . a defendant generally must know the facts that make his conduct fit the definition of the offense even if he does not know that those facts give rise to [an offense].")(quotation omitted)).

The Court, therefore, concludes on this record that Defendant's failure to pay certain employees their final wages within the time required under Oregon law was willful and that

Plaintiffs are entitled to penalty wages pursuant to § 652.150.

## II.  Calculation of Penalty Wages

Plaintiffs note in their Motion for *Prima Facie* Liability on Franchise Transfer Claims that Defendant's expert prepared a report indicating "within the three-year statute of limitations for penalty wages, 736 employees received their final paychecks at least one day after the statutory due date.  Plaintiffs are willing to accept these figures."  Pls.' Mot. at 2.  Plaintiffs also appear to acknowledge that any penalty calculation is limited to the three-year statue-of-limitations period.

Czechowski states in his expert report that he reviewed the biweekly payroll data for Defendant's Oregon employees over the relevant period and calculated the potential statutory penalty under two different scenarios:

> The first scenario calculates the potential statutory penalty based on the actual number of allegedly late days.  For this, I determined which final paychecks were paid on a date after their location's franchise date.  For each day past the franchise date, eight hours at the given employees' hourly pay rate at the time was calculated, capped at 30 days.  Under this scenario, . . . [f]or the limited 3-year statute of limitations period . . ., 736 employees had late final paychecks.  This amounts to statutory penalties totaling $67,027.

> \* \* \*

> To assess potential statutory penalties under a second scenario where a full 30-day penalty for all employees with a final paycheck violation is assumed, I calculated exactly 30 days x 8 hours x the employee's hourly rate at the time of

> franchising for each employee with a late final
> paycheck. . . . [U]sing a 3-year statute of
> limitations[, a] full 30-day penalty for all
> employees with late final paychecks from
> August 13, 2007 to present yields a total of
> $1,674,910.

Decl. of Jon Egan, Ex. 31 at 81.

In their Motion for Summary Judgment on the Issue of Damages under O.R.S. § 652.140 Plaintiffs urge the Court to adopt Czechowski's second method of calculating statutory penalties for Defendant's failure to pay certain employees' final wages timely. Section 652.150, however, does not authorize 30 days of penalty wages for every employee who was not paid within the time required by Oregon law. Instead § 652.150(1) provides when an employer fails to pay any wages due at the time required under Oregon law, "the wages . . . of the employee shall continue from the due date . . . *until paid,*" but not for more than 30 days from the due date. Emphasis added. The record reflects Defendant paid certain employees at different times after the due date. For example, Defendant paid some employees' wages only one day after the due date. Section 652.150(1) permits penalty wages only until the employer pays the wages for up to 30 days after the due date. Thus, employees who were paid within 30 days of the due date are not entitled to 30 days of penalty wages.

Here the Court concludes Czechowski's first scenario is the proper method to calculate penalty wages for the franchise-transfer class. The Court, therefore, **GRANTS** Plaintiffs' Motion

135 - OPINION AND ORDER

(#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims. The Court also **GRANTS in part** Plaintiffs' Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140 to the extent that the Court concludes

1. Defendant did not timely pay certain employees their final wages on transfer of its restaurants to the franchisees in violation of Oregon Revised Statutes § 652.140;

2. Defendant's failure to pay certain employees' final wages timely was willful; and

3. Czechowski's first method is the proper method of calculating penalty wages.

The Court, however, **DENIES in part** Plaintiffs' Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140 to the extent that the Court declines to decide at this stage of the proceedings the total damages due to Plaintiffs and other class members on the franchise-transfer claim. The Court concludes calculation of the exact amount of damages must await further input from the parties after they have had the opportunity to confer meaningfully as to the rulings in this Opinion and Order and to determine whether they can reach an agreement as to the amount of any claimed damages to be paid.

## PLAINTIFFS' MOTION (#175) FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES UNDER O.R.S. 652.615

For the reasons that follow the Court **DENIES** Plaintiffs' Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615.

In their Motion for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615 Plaintiffs seek an award of $3,709,925.60 for wrongful WBF deductions and wrongful shoe deductions together with pre-judgment interest through February 14, 2019.

As noted, however, the Court has concluded material disputes of fact preclude summary judgment on the issue of the propriety of the shoe deductions. In addition, the Court has concluded Plaintiffs may recover one $200 sum or actual damages per class-member employee pursuant to § 652.615 for any improper WBF withholdings. The Court, therefore, declines to award Plaintiffs a specific amount of damages pursuant to Oregon Revised Statutes § 652.615 at this stage of the proceedings. The Court or another fact-finder will determine the damages based on all of Plaintiffs' claims at the same time so as to avoid duplication of effort and the waste of judicial resources.

Accordingly, the Court **DENIES** Plaintiffs' Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615 as to damages for shoe and WBF deductions at this stage of the litigation.

137 - OPINION AND ORDER

**PLAINTIFFS' MOTION (#176) FOR PARTIAL SUMMARY
JUDGMENT ON THE ISSUE OF DAMAGES UNDER O.R.S. 653.025
and PLAINTIFFS' MOTION (#177) FOR PARTIAL SUMMARY JUDGMENT
ON THE ISSUE OF DAMAGES UNDER O.R.S. 653.261**

For the reasons that follow the Court **DENIES** Plaintiffs'
Motion (#176) for Partial Summary Judgment on the Issue of
Damages under O.R.S. 653.025 and **DENIES** Plaintiffs' Motion (#177)
for Partial Summary Judgment on the Issue of Damages under O.R.S.
653.261.

In their Motion for Partial Summary Judgment on the Issue of
Damages under O.R.S. 653.025 Plaintiffs note they have
"filed . . . motion[s] for summary judgment on the issue of
liability for both of their wrongful-deduction categories of
claims (Workers' Benefit Fund over-deductions and Shoe
deductions). If one or both of those motions are granted, the
Court should award the class damages for violations of Oregon's
minimum-wage law." Plaintiffs seek the full amount of minimum
wages due to them as well as penalty wages pursuant to § 652.150.

Similarly, in their Motion for Partial Summary Judgment on
the Issue of Damages under O.R.S. 653.261 Plaintiffs request the
Court to award "the class damages for violations of Oregon's
overtime law." Plaintiffs seek the full amount of overtime due
to them as well as penalty wages pursuant to § 652.150.[13]

---

[13] It does not appear that either Motion addresses or
requests penalty wages for Plaintiffs' final-paycheck claim
related to the Franchise Transfer Class.

138 - OPINION AND ORDER

As noted, Plaintiffs made clear in their Response to Defendant's Motion for Summary Judgment No. 3 that they "have never advocated for the availability of more than one penalty in the same workweek - a single deduction that violated both the Oregon minimum wage and overtime would only entitle the employee to one penalty under O.R.S. § 652.150." Thus, Plaintiffs acknowledge they may not receive more than one award of penalty wages pursuant to § 652.150 for WBF or shoe deductions that reduced the employees' wages below minimum wage and resulted in those employees not receiving the proper amount of overtime.

The Court has concluded Plaintiffs may recover statutory damages under § 652.615 as well as penalty wages under § 652.150 as to their WBF and/or shoe-deduction claims. The Court, however, has also concluded material disputes of fact exist as to the shoe deductions, and, therefore, the Court has denied the parties' motions for summary judgment related to Plaintiffs' Shoe Claims.

The Court has also concluded Plaintiffs have established Defendant wrongfully deducted WBF amounts from employees' paychecks. The Court, however, has also concluded Plaintiffs' WBF penalties are constrained by the relevant statutory limitations periods for penalties arising from the failure to pay minimum wages and sufficient overtime the Court declines to decide the amount of damages on Plaintiffs' various claims

piecemeal.

In summary, because material disputes of fact exist as to Plaintiffs' shoe-deduction claim and because the Court declines to decide the amount of damages on Plaintiffs' various claims piecemeal, the Court **DENIES** Plaintiffs' Motion (#176) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.025 and Plaintiffs' Motion (#177) for Partial Summary Judgment On the Issue of Damages under O.R.S. 653.261.

## CONCLUSION

For these reasons, the Court

1.  **DENIES** Defendant's Motion (#161) for Summary Judgment No. 1 - Arbitration of Claim;

2.  **DENIES** Defendant's Motion (#162) for Summary Judgment No. 2 - WBF Deduction Claims Barred by Tax Laws;

3.  **GRANTS in part** and **DENIES in part** Defendant's Motion (#163) for Summary Judgment No. 3 - Remedies Related to Alleged Wrongful Deductions Are Limited;

4.  **GRANTS** Defendant's Motion (#164) for Summary Judgment No. 4 - Breach of Fiduciary Duty Tort Claims is Time-Barred;

5.  **DENIES** Defendant's Motion (#165) for Summary Judgment No. 5 - Quasi- Contract/Unjust Enrichment Claim Fails as a Matter of Law;

6.  **GRANTS** Plaintiffs' Motion (#172) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Workers' Benefit Fund Claims

7.  **DENIES** Plaintiffs' Motion (#173) for Partial

Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims

8. **GRANTS** Plaintiffs' Motion (#174) for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Franchise Transfer Claims

9. **DENIES** Plaintiffs' Motion (#175) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.615

10. **DENIES** Plaintiffs' Motion (#176) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.025

11. **DENIES** Plaintiffs' Motion (#177) for Partial Summary Judgment on the Issue of Damages under O.R.S. 653.261

12. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#178) for Partial Summary Judgment on the Issue of Damages under O.R.S. 652.140

13. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#179) for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions)

14. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#180) for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees)

15. **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#181) for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

The Court **DIRECTS** the parties to confer and to file **no later than December 12, 2019,** a Joint Status Report that sets forth a concise summary of all remaining unresolved claims and defenses and that includes a jointly proposed case-management schedule to advance this case to ultimate resolution.  The Court will conduct

a status conference with the parties after receiving and

reviewing their Joint Status Report.

IT IS SO ORDERED.

DATED this 13th day of November, 2019.


                                    s/ Anna J. Brown
                              ANNA J. BROWN
                              United States Senior District Judge