IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY ORTIZ,                    No. 3:14-CV-01092-HZ
NICOLE GESSELE, TRICIA
TETRAULT, and CHRISTINA                           OPINION & ORDER
MAULDIN, on behalf of themselves and
all others similarly situated,

        Plaintiffs,

v.

JACK IN THE BOX, INC., a corporation
of Delaware,

        Defendant.


Jon M. Egan
240 6th Street
Lake Oswego, OR 97034-2931
(503) 697-3427

Jim W. Vogele
812 N.W. 17th Avenue
Portland, OR 97209
(503) 779-5415

        Attorney for Plaintiffs

Douglas S. Parker
David P. R. Symes
LITTLER MENDELSON, P.C.
1300 S.W. 5th Avenue
Suite 2050
Portland, OR 97201
(503) 221-0309

1 - OPINION & ORDER

Ian Maher
LITTLER MENDELSON, P.C.
633 West 5th Street
Los Angeles, CA 90071
(213) 443-4300

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       This matter comes before the Court on Defendant's Motion to Decertify Shoe Deduction Claim. For the reasons that follow, the Court denies Defendant's Motion.

BACKGROUND

       Because the parties are familiar with the facts underlying this action, the Court sets out only the facts that are relevant to the pending Motion.

       Until September 30, 2011, Defendant Jack in the Box, Inc., owned and operated several restaurants in Oregon. From May 2006 through September 2011 Defendant sold its Oregon restaurants to various franchise operators as follows:

| | |
|---|---|
| May 1, 2006: | 6 restaurants |
| March 29, 2010: | 21 restaurants |
| March 7, 2011: | 13 restaurants |
| September 30, 2011: | 3 restaurants |

After September 30, 2011, Defendant did not own or operate any restaurants in Oregon and did not have any Oregon employees. The last Jack in the Box restaurant in Oregon owned by Defendant at which any of the named Plaintiffs worked was sold to a franchisee on March 29, 2010.

       Plaintiffs were employed by Defendant in its Oregon restaurants at various times. Plaintiffs received their final paychecks from Defendant on the following dates:

2 - OPINION & ORDER

Tricia Tetrault:      July 11, 2008
Ashley Ortiz:        December 26, 2008
Nicole Gessele:      March 20, 2009
Jessica Gessele:     November 23, 2009
Christina Mauldin:   March 30, 2010.

On August 13, 2010, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia

Tetrault, on behalf of all those similarly situated, filed a putative class-action Complaint in this

Court against Defendant Jack in the Box (*Gessele I*, Case No. 3:10- CV-00960-BR)[1] for

violation of the minimum-wage and overtime provisions of the Fair Labor Standards Act

(FLSA), 29 U.S.C. § 201, *et seq*., and various Oregon wage-and-hour laws.

On May 16, 2011, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault

filed a First Amended Complaint in *Gessele I* in which they added Christina Mauldin as a named

Plaintiff.

After resolving various motions on May 15, 2014, Judge Anna Brown entered a

Judgment dismissing *Gessele I* without prejudice.

On June 10, 2014, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault,

Christina Mauldin, and Jason Diaz filed a putative class action against Jack in the Box in

Multnomah County Circuit Court (*Gessele II*) in which they alleged claims for violation of

Oregon's wage-and-hour laws, violation of the FLSA, breach of fiduciary duty, and equitable

and quasi-contractual claims for return of money.

On July 9, 2014, Defendant removed *Gessele II* to this Court on the ground of federal-

question jurisdiction based on Plaintiffs' FLSA claims and/or jurisdiction under the Class Action

---

[1] In *Gessele I* Ashley Ortiz proceeded as Ashley Gessele and Christina Mauldin
proceeded as Christina Luchau.

3 - OPINION & ORDER

Fairness Act, 28 U.S.C. § 1332(d)(2).

On July 16, 2014, Defendant filed an Answer to Plaintiffs' Complaint in which it asserted sixteen affirmative defenses including authorized deductions, benefit to employees, and valid deduction.

On March 2, 2017, Plaintiffs filed a Motion for Rule 23(b)(3) Class Certification.

On June 12, 2017, Judge Brown issued an Opinion and Order in which, among other things, she granted Plaintiff's Motion to Certify the Shoe Class.

On May 3, 2019, Defendant filed five Motions for Summary Judgment.

On May 24, 2019, Plaintiffs filed ten Motions for Partial Summary Judgment including the following:

1.    Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims

2.    Motion for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions)

3.    Motion for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees)

4.    Motion for Partial Summary Judgment on Jack in the Box's Fifth Affirmative Defense (Valid Deduction).

On November 13, 2019, Judge Brown issued an Opinion and Order in which she denied Plaintiff's Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims and granted in part and denied in part Plaintiffs' Motion for Partial Summary Judgment on Jack in the Box's Third Affirmative Defense (Authorized Deductions), Plaintiffs' Motion for Partial Summary Judgment on Jack in the Box's Fourth Affirmative Defense (Benefit to Employees), and Plaintiffs' Motion for Partial Summary Judgment on Jack in the Box's Fifth

4 - OPINION & ORDER

Affirmative Defense (Valid Deduction).

On January 21, 2021, *Gessele II* was reassigned to this Court.

On July 27, 2021, Defendant filed a Motion to Decertify Shoe Deduction Claim in which it moves to decertify the Rule 23 shoe deduction class.

## STANDARDS

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 979-80 (9th Cir. 2011)(citation omitted). Rule 23(a) requires a party seeking class certification to establish:

> (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

*Id.* at 980 (citing Fed. R. Civ. P. 23(a)). "Federal Rule of Civil Procedure 23 . . . requires that 'questions of law or fact common to class members predominate' over individualized issues." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1959 (2021)(quoting Fed. R. Civ. P. 23(b)(3)). Judge Brown certified shoe class pursuant to Rule 23(b)(3), which provides a "class action may be maintained if Rule 23(a) is satisfied" and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Rule 23 does not set forth a mere pleading standard. A party seeking class

certification must affirmatively demonstrate his compliance with the Rule - that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)(emphasis in original). Certification of a class "is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (quotation omitted).

"A district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)(citing *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 160 (1982)). *See also* Fed. R. Civ. P. 23(c)(1)(C)("An order that grants or denies class certification may be altered or amended before final judgment."). "[A] district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir.1982). *See also Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019)("if future decisions or circumstances" warrant, the "district court can decertify the class"). The burden remains on the plaintiffs to demonstrate that the requirements of Rules 23(a) and (b) are satisfied at all times before final judgment. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)(The district court did not err when it decertified the class and "placed the burden on [the plaintiff] to demonstrate that Rule 23's class-certification requirements had been met.").

## SHOE DEDUCTION CLAIM PRIOR RULINGS

### I.     Shoe Class Background Information

During the period at issue Defendant required employees to wear closed-toe, non-slip shoes. Beginning in early 2003 Defendant required its employees to purchase non-slip shoes

from Shoes for Crews or another company.[2]  Defendant's stores also have slip guards that

employees can wear over their shoes when they forget to wear non-slip shoes or while they are

waiting for their non-slip shoes to arrive. Employees, however, must eventually purchase their

own non-slip shoes. Employees may either buy the non-slip shoes directly from Shoes for Crews

or buy them through a payroll deduction. When employees buy the shoes through a payroll

deduction, Defendant purchases the shoes from Shoes for Crews and deducts the price of the

shoes from the employee's wages.

      Shoes for Crews provided Defendant with a $2 rebate for every pair of shoes sold to

one of Defendant's employees. Defendant, however, did not pass on the $2 rebate to its

employees.

      Defendant asserts that when it began requiring employees to purchase non-slip shoes

from Shoes for Crews, Defendant required employees to do so through a paper order form that

included an authorization that stated:

> Shoes for Crews ® Voluntary Shoe Purchase Agreement
> I do hereby authorize the Company to deduct the balance owed on my
> shoe purchase following the Payroll Department's receipt of the Shoes for
> Crews invoice. If I terminate my position prior to the Shoes for Crews
> purchase being paid in full, I authorize the Company to deduct the unpaid
> balance from my final paycheck. I understand it is my responsibility to
> return shoes to the Shoes for Crews warehouse if a shoe size change or
> refund is desired. THIS IS A VOLUNTARY PROGRAM AND IS NOT A
> CONDITION OF EMPLOYMENT WITH THE COMPANY.

Decl. of Douglas Parker in Supp. of Def.'s Opp. to Pls.' Mot. for Class Cert. ("Parker Decl."),

ECF 129, Ex. M at 19. Plaintiffs dispute that employees consistently used the written order form

---

[2] There is a dispute of fact as to whether employees were required to purchase non-slip
shoes only from Shoes for Crews, but that dispute is not relevant to the current Motion.

that included the written authorization. In addition, at some point telephone ordering of Shoes for Crews "became an option," and the telephone ordering option did not include the authorization statement that was part of the paper order system. Parker Decl., Ex. W ("Pettijohn Dep.") 57:7. Further, it is undisputed that Defendant destroyed various written company records, including the shoe-deduction authorization forms, whenever it sold its Oregon stores to franchisees. As a result "[n]othing is around from [Defendant] at any of the [Oregon stores]. All paperwork has been destroyed from the franchise transition."  Parker Decl., Ex. J ("Tennant Dep.") 233:8-10. Defendant's paper files were not digitized and sent to corporate, rather "[o]n the day of the [franchise] transitions we were directed to ensure that company things from the store were thrown out, as far as email programs and such, wiping those clean, to make sure there was no information that should be given to the franchisee." *Id*. at 233:19-24. On February 7, 2011, however, Defendant instituted a new shoe purchase deduction program in which employee payroll authorizations began to be performed electronically and Defendant represents that the electronic authorizations "have been preserved since that time."  Decl. of James Stubblefield in Supp. Def's Resp. to Pls.' Mot. for Spoliation Sanctions, *Gessele I*, ¶ 8, ECF 228. As a result, there is no paper or electronic record of employees' authorizations for shoe-purchase deductions before February 7, 2011.

## II.    Judge Brown's Class Action Rulings

In their Motion for Rule 23(b)(3) Class Certification Plaintiffs sought, among other things, to certify the shoe class, which consists of Defendant's Oregon employees who had a deduction from a paycheck to pay for non-slip shoes during the relevant period. Defendant did not dispute that the proposed shoe class satisfied the numerosity requirement of Rule 23(a).

8 - OPINION & ORDER

Defendant, however, asserted Plaintiffs did not establish either the commonality or typicality requirements of Rule 23(a). Specifically, Defendant asserted in order to determine liability for shoe deductions, the Court would have to conduct an individualized inquiry for each employee as to whether:  (1) the employee authorized shoe deductions using the shoe order form, (2) the deductions were for the employee's benefit, and (3) the deductions took an employee below minimum wage or the required overtime rate.

        In the June 12, 2017 Opinion and Order granting Plaintiffs' Motion to Certify, Judge Brown noted that whether individual employees authorized shoe deductions using the shoe order form was an affirmative defense that applied to the merits of individual putative Plaintiffs' claims. Judge Brown noted Plaintiffs' allegations of spoliation by Defendant as to shoe-authorization forms also applied to the merits of Plaintiffs' claim. Judge Brown, therefore, concluded those inquiries were not directly relevant to class-certification analysis. Judge Brown also concluded the question whether the shoe deductions were for the employees' benefit pursuant Oregon Revised Statute § 652.610(3)(b) applied to the merits of Plaintiffs' shoe claims and, therefore, was not directly relevant to the class-certification analysis. Ultimately, Judge Brown concluded Plaintiffs satisfied the requirements of Rule 23(a) with respect to the shoe class, that the questions of law or fact common to shoe class members predominated over any questions that only affect individual members, and that a class action was the best way to adjudicate the controversy fairly and efficiently. Judge Brown, however, specifically noted the Court could revise the shoe class if necessary after the parties litigated the merits of the spoliation and employee benefit issues. Accordingly, Judge Brown granted Plaintiffs' Motion to Certify as to the shoe class, but indicated certification could be revisited in the future if

9 - OPINION & ORDER

necessary.

## II.      Judge Brown's Rulings on Summary Judgment

### A.      Basis of Plaintiffs' Shoe Claims

In their shoe claims Plaintiffs allege Defendant unlawfully deducted money from the paychecks of Plaintiffs and other Oregon employees for non-slip shoes. Defendant asserted in its third affirmative defense that Plaintiffs' shoe claims fail "because Plaintiffs authorized any and all payroll deductions for employee shoe purchases." Def.'s Answer at ¶ 78, ECF 5. Defendant asserted in its fourth affirmative defense that Plaintiffs' shoe claims fail "because payroll deductions for shoe purchases were for Plaintiffs' benefit" and in its fifth affirmative defense that Plaintiffs' shoe claims fail "because payroll deductions for shoe purchases were compliant with ORS 652.610(3)."  Def.'s Answer at ¶¶ 79, 80.

In their Motion for Partial Summary Judgment on the Issue of *Prima Facie* Liability on Their Shoe Claims Plaintiffs asserted Defendant wrongfully deducted the cost of non-slip shoes from Plaintiffs and other Oregon employees because non-slip shoes were part of the employees' uniform and/or were another "item required by the employer to be worn . . . by the employee as a condition of employment." Or. Admin. R. 839-020-0020(7).

In their Motions for Partial Summary Judgment on Defendant's third, fourth, and fifth affirmative defenses Plaintiffs asserted the shoe deductions were not for the private benefit of employees within the meaning of Oregon Revised Statute § 653.035(1), that the non-slip shoes were not for the benefit of employees within the meaning of O.R.S. 652.610(3)(b), that Defendant did not establish the shoe deductions were voluntarily authorized in writing, and that Defendant did not establish it was not the ultimate recipient of the money withheld.

B.        **Deductions from Employees' Wages Permitted under Oregon Law**

Oregon Administrative Rules 839-020-0020(3) and (7) provide:

> Employers may not deduct the cost of any of the following items
> from [an employee's] minimum wage:
>
> * * *
>
> (3) Uniforms, including but not limited to, garments such
> as suits, dresses, aprons, and all other garments whatsoever
> as worn by the employees as a condition of employment.
>
> * * *
>
> (7) Any other item required by the employer to be worn or
> used by the employee as a condition of employment.

Employers, however, may deduct from an employee's minimum wage "[t]he fair market value of

. . . facilities or services furnished by the employer to the employee for the *private benefit* of the

employee." O.R.S. 653.035(1)(emphasis added). Private benefit is defined in Oregon

Administrative Rule 839–020–0025(7):

> [F]acilities or services are furnished for the private benefit of the
> employee when such . . . . facilities or services are not required by
> the employer. For purposes of this rule, lodging or other facilities
> or services are required by the employer when:
>
> (a) Acceptance of the lodging or other facilities is a condition of
> the employee's employment; or
>
> * * *
>
> (c) The acceptance of the lodging or other facilities or services is
> involuntary or coerced.

O.R.S. 652.610(3) contains other exceptions to the rule that employers may

not deduct certain items from employees' minimum wages as follows:

11 - OPINION & ORDER

(3) An employer may not withhold, deduct or divert any portion of an employee's wages unless:

* * *

(b) The deductions are voluntarily authorized in writing by the employee, are for the employee's benefit and are recorded in the employer's books;[3]

(c) The employee has voluntarily signed an authorization for a deduction for any other item, provided that the ultimate recipient of the money withheld is not the employer and that the deduction is recorded in the employer's books.

**C.    Uniforms and/or Items Required by Defendant to be Worn as a Condition of Employment**

Plaintiffs asserted at summary judgment that non-slip shoes were part of the employees' uniform or another "item required by [Defendant] to be worn . . . as a condition of employment," and, therefore, Defendant was not permitted to deduct payments for non-slip shoes from the paychecks of Plaintiffs and other Oregon employees. Defendant asserted non-slip shoes were not part of their employees' uniform within the meaning of O.A.R. 839-020-0020(3).

Judge Brown concluded when an employer requires an employee to wear or to use an item as a condition of employment, the employer may not deduct the cost of that item from the employees' minimum wage unless an exception applies. Judge Brown noted it was undisputed that Defendant required its employees to wear non-slip shoes (whether from Shoes for Crews or another brand). Thus, Judge Brown concluded pursuant to O.A.R. 839-020-0020(7) that the cost of non-slip shoes (whether from Shoes for Crews or another brand) are an item that

---

[3] Plaintiffs do not dispute that Defendants recorded the shoe deductions in its books.

Defendant was not allowed to deduct from Plaintiffs or other Oregon employees unless one of the exceptions set out in O.R.S. 653.035 or 652.610(3) applied.

**D.      Exceptions in O.R.S. 653.035 and 652.610(3)**

In its affirmative defenses Defendant asserted that various exceptions to the prohibition on employers deducting the cost of uniforms or "other item[s] required by the employer to be worn or used by the employee as a condition of employment" applied. Specifically, Defendant asserted the non-slip shoes were for the private benefit of its employees within the meaning of O.R.S. 653.035(1) and/or Defendant satisfied the requirements of the exceptions found in O.R.S. 652.610(3)(b) and (c).

**1.      Private Benefit under O.R.S 653.035(1)**

Judge Brown concluded the non-slip shoes were not for the "private benefit" of employees within the meaning of O.R.S. 653.035(1) as defined in O.A.R. 839-020-0025. O.R.S. 653.035(1), therefore, did not provide an exception that authorized Defendant to withhold payments for non-slip shoes from Plaintiffs and other employees.

**2.      Benefit to Employees under O.R.S. 652.610(3)(b)**

Judge Brown concluded Defendant established that the shoe deduction was for the employees' benefit within the meaning of O.R.S. 652.610(3)(b). Judge Brown, therefore, concluded Defendant satisfied the second of the three requirements for the exception for an employee-benefit deduction pursuant to O.R.S. 652.610(3)(b).

**3.      Written Authorizations Required under O.R.S. 652.610(3)(b) and (c)**

Judge Brown concluded disputes of material fact existed as to

whether Defendant obtained written authorizations for the shoe deductions from Plaintiffs and other employees that precluded summary judgment on Defendant's affirmative defenses of authorized deductions and valid deduction.

In reaching that conclusion Judge Brown rejected Plaintiffs' spoliation argument. Specifically, Plaintiffs asserted the Court should exercise its inherent power to sanction Defendant for failing to preserve the written authorizations because Defendant's actions constituted destruction of material evidence. Plaintiffs requested the Court to assume under the circumstances that Defendant did not, in fact, obtain any written authorizations from employees to deduct the cost of shoes. Judge Brown noted courts have "'the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence'" that "includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party." *Med. Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002)(quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). *See also Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999)("To be actionable, the spoliation of evidence must damage the right of a party to bring an action."). In this case, however, the written authorizations for the shoe deductions that were destroyed would have supported Defendant's affirmative defenses as to its liability for the payroll deductions. Judge Brown, therefore, concluded the destruction of any written authorizations harmed Defendant's ability to prove that it complied with the requirements of O.R.S. 652.610(3)(b) and (c). Accordingly, Judge Brown concluded the spoliation doctrine was not applicable and declined to infer that Defendant never obtained any written authorizations for shoe deductions.

14 - OPINION & ORDER

Judge Brown also noted the record reflected Plaintiffs' experiences with the written authorizations varied widely. For example, Ashley Gessele testified she filled out an order form for each pair of shoes she ordered from Shoes for Crews that contained a statement authorizing Defendant to deduct the price of the shoes from her paycheck. Nicole Gessele testified she ordered shoes from Shoes for Crews from a catalogue that contained an order form with the same authorizing language. Nicole Gessele, however, could not remember whether she filled out the order form that contained the authorization to deduct the balance from her wages or whether she "just called [her order] in over the phone." Parker Decl., Ex. C ("Nicole Gessele Dep.") 71:9-15. Tricia Tetrault testified she ordered shoes from Shoes for Crews through a catalogue that contained an order form authorizing Defendant to deduct the cost of the shoes from her wages, but she could not remember whether she had "ever fill[ed] . . . out" an order form with the authorization. Parker Decl., Ex. E ("Tetrault Dep.") 67:14-19. Jessica Gessele testified:  "I know there [were] order forms available, but nobody ever used them . . . . I don't ever remember filling one out. . . . I never - I personally never have seen anybody use an order form, to put it in better words."  Parker Decl., Ex. B ("Jessica Gessele Dep.") 95:15-22. Jessica Gessele explained she would tell her manager which Shoes for Crews shoes she wanted, and her manager would order them. Later in her employment with Defendant, Jessica Gessele ordered shoes for other employees. When she did so, her process was to "ask[] them for their Social Security number, and they would write down their Social Security number and the style of shoes they want, and I would call it in" to Shoes for Crews. *Id*. at 96:21-97:1. Christina Mauldin testified she did not remember ever filling out an order form for shoes. When she was a team leader she would order shoes for other employees as follows:  "The employee would write down

15 - OPINION & ORDER

their Social Security number. And we would just call Shoes for Crews, put in a payroll order.

They would give them the shoe size and the style number, and they would be shipped to the

[restaurant]."  Parker Decl., Ex. D ("Mauldin Dep.") at 116:13-17. In addition, managers testified

to disparate experiences ordering shoes. For example, Jeffrey Tennant testified that "a superior"

instructed him to have employees fill out the Shoes for Crews order form that included an

authorization to deduct the cost of the shoes from the employee's wages. Tennant Dep. 231:6-14.

Patty Jones stated "[s]ome of my employees, but not all, filled out the order forms and I would

use that form to order shoes. Usually the graveyard employees filled out the order forms."  Decl.

of Patty Jones at ¶ 12, ECF 133. Ryan Leach testified he "helped many employees order shoes

by calling Shoes for Crews if that is the shoe they wanted," but some "of [his] employees would

fill out the order form."  Decl. of Ryan Leach at ¶¶ 11-12, ECF 134. Vincent O'Rourke stated

employees "often filled out the order forms before ordering shoes."  Decl. of Vincent O'Rourke

at ¶ 8. Jennifer Barker stated that she, a team leader, or an assistant manager "ordered shoes over

the phone for employees. . . . Occasionally an employee would fill out the order form that came

with the catalog sent to the restaurant."  Decl. of Jennifer Barker at ¶ 12, ECF 130.

On this record Judge Brown concluded there was a dispute of

material fact as to whether Plaintiffs and other employees authorized Defendant in writing to

take the shoe deductions from their paychecks. Accordingly, Judge Brown denied in part

Plaintiffs' Motions for Summary Judgment as to Defendant's third and fifth affirmative defenses

to the extent that Plaintiffs' Motions and those affirmative defenses were premised on written

authorizations required under O.R.S. 652.610(3)(b) and (c).

16 - OPINION & ORDER

4.        **Ultimate Recipient of the Money Withheld**

Plaintiffs asserted at summary judgment that Defendant could not establish that it was not the ultimate recipient of at least some of the money withheld from employees' paychecks for shoes purchased from Shoes for Crews in light of the fact that Defendant received a $2 per pair rebate from Shoes for Crews. Judge Brown concluded Plaintiffs established that Defendant was the "ultimate recipient of . . . money withheld" from its employees, and, therefore, that Defendant had not satisfied the second element of O.R.S. 652.610(3)(c). Accordingly, Judge Brown concluded Defendant did not establish that it was permitted to withhold Shoes for Crews payments from its employees pursuant to O.R.S. 652.610(3)(c).

### DEFENDANT'S MOTION TO DECERTIFY SHOE DEDUCTION CLAIM

Defendant moves for an order decertifying Plaintiffs' shoe deduction claim on the basis that Judge Brown's rulings on summary judgment make clear that class members' shoe deduction claims cannot be resolved without an individualized inquiry into whether each class member provided a written authorization for each shoe deduction, which would necessitate calling thousands of class members as witnesses. According to Defendant, therefore, common questions of fact do not predominate over questions affecting only individual members and the shoe claim no longer satisfies the requirements of Rule 23(b)(3).

Plaintiffs oppose Defendant's motion on the grounds that (1) there has not been any change in law or fact to support revisiting certification, (2) affirmative defenses rarely defeat certification, (3) the shoe class's other elements are susceptible to class treatment, (4) secondary evidence of the written authorizations is not admissible and cannot create an issue of fact, and (5)

17 - OPINION & ORDER

the Court can address the written authorization issue through a post-verdict claims process.

**I.        Change in Law or Fact**

Plaintiffs assert there has not been any change in law or fact to support revisiting certification. The Ninth Circuit, however, has made clear that courts "retain[] the flexibility to address problems with a certified class as they arise." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v. ConocoPhillips Co.,* 593 F.3d 802, 809 (9th Cir. 2010)(quoting *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)). This is in part because "'neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies'" the requirements of Rule 23. *United Steel,* 593 F.3d at 809. At the class certification stage the court evaluates only whether the class apparently satisfies the requirements of Rule 23(b)(3). *See, e.g., Villanueva v. Liberty Acquisitions Serv., LLC,* 319 F.R.D. 307, 318 (D. Or. 2017)(*"*discussing the merits of a claim or affirmative defense is typically not part of the class certification analysis")(citing *Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)(the court should not "advance a decision on the merits to the class certification stage.")). If after summary judgment or other developments in the case it becomes apparent that certification of the class may no longer be reasonable, the court retains the flexibility to reevaluate the certification issue.

Here the record reflects Judge Brown granted Plaintiffs' Motion to Certify as to the shoe class, but specifically indicated the certification issue could be revisited after summary judgment if necessary. As noted, at summary judgment Judge Brown concluded the spoliation doctrine did not apply to the issue of written authorizations and that disputes of material fact

precluded summary judgment as to whether Plaintiffs and other employees provided written authorizations for each shoe deduction. The Court concludes that these rulings taken together provide a sufficient change in the law or facts of this case to merit the reevaluation of certification of the shoe deduction class.

To the extent that Plaintiffs assert decertification of the shoe class would prejudice all of the shoe class members who already "won at least partial summary judgment" on Defendant's third, fourth, and fifth affirmative defenses, the Court does not intend to revisit Judge Brown's rulings related to whether the shoe deductions were for the private benefit of employees under O.R.S. 653.035(1) or for the benefit of employees under O.R.S. 652.610(3)(b), the spoliation issues, or the conclusion that Defendant was not permitted to withhold shoe deductions from employees pursuant to O.R.S. 653.610(3)(c). The sole remaining basis on which Defendant can establish it properly took shoe deductions from Plaintiffs' paychecks is pursuant to O.R.S. 652.610(3)(b). Shoe class members, therefore, are not prejudiced by the decertification of the shoe class.

## II.    Affirmative Defenses Rarely Defeat Certification

Plaintiffs state they do not assert that affirmative defenses are irrelevant to the question of class certification, but they point out that affirmative defenses rarely defeat certification. Plaintiffs rely on a number of cases in which courts have noted that although "[a]ffirmative defenses should be considered in making class certification decisions[,] . . . [c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Villanueva*, 319 F.R.D. at 317 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Cameron v. E.M. Adams &*

19 - OPINION & ORDER

*Co.*, 547 F.2d 473, 478 (9th Cir. 1976)). The cases Plaintiffs rely on, however, were decided before summary judgment or litigation on the merits of the claims or affirmative defenses.

Here Defendants' affirmative defenses of authorized deduction and valid deduction are not theoretical defenses that might apply at some point. Rather, at summary judgment Defendant established there is a genuine dispute of material fact as to whether Plaintiffs and other employees signed forms authorizing Defendants to take shoe deductions. This question is central to Plaintiffs' shoe deduction claim and the affirmative defenses.

As to Plaintiffs' assertion that the Court can address any individualized issues pertaining to the shoe deduction affirmative defenses at the damages phase, Plaintiff overlooks the significance of the written authorizations to the liability issue. Specifically, to the extent Plaintiffs and other employees signed written authorizations for shoe deductions, Defendant was permitted to take those deductions pursuant to O.R.S. 652.610(3)(b), Defendant is not liable for improper deductions, and Plaintiffs are not entitled to damages. The Court, therefore, concludes these are the rare circumstances under which an affirmative defense undermines class certification.

## III.    The Shoe Class's Other Elements

Plaintiffs assert the Court should not decertify the shoe class on the basis that the shoe class's other elements and causes of action are susceptible to class treatment. Specifically, Plaintiffs assert even if written authorization for the shoe deductions was an individualized inquiry, Defendant's affirmative defenses of valid and authorized deductions under O.R.S. 652.610(3)(b) has other elements that can be decided on a class-wide basis. Plaintiffs contend, for example, that the jury could decide that the shoe deductions were not for the employee's

20 - OPINION & ORDER

benefit or that the shoe deductions were not recorded in the employer's books. Plaintiffs, however, have never disputed that Defendant recorded employees' shoe deductions in its payroll records. In addition, Judge Brown concluded at summary judgment that the shoe deduction was not for the employees' private benefit under O.R.S. 653.035(1), but it was for the employees' benefit within the meaning of O.R.S. 652.610(3)(b). As noted, the Court declines to revisit Judge Brown's rulings on summary judgment. Accordingly, whether the shoe class remains certified or not, the jury will not decide the issue of employee benefit under either O.R.S. 653.035(1) or 652.610(3)(b). Finally, even if other elements of Plaintiffs' shoe deduction claim have common issues of law or fact, Plaintiffs still have not established that the written authorization element of Defendant's affirmative defenses presents a question common to class members that predominates over individualized issues.

## IV.    Secondary Evidence

Plaintiffs assert the Court should deny Defendant's Motion to Decertify because Defendant has not established that it will be permitted to present secondary evidence to attempt to establish that Plaintiffs and other employees signed written authorizations. Specifically, Plaintiffs assert Federal Rule of Evidence 1002 provides "[a]n original writing . . . is required in order to prove its content."  In addition, Federal Rule of Evidence 1004(a) provides an original writing "is not required and other evidence of the content of a writing . . . is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith."  According to Plaintiff, Defendant's instructions to its restaurant managers to destroy the written authorizations during the final franchise transition constitutes bad faith, and, therefore, Defendant may not be permitted to introduce evidence of the written authorizations.

21 - OPINION & ORDER

Plaintiffs, however, do not point to any evidence that Defendant instructed its managers to destroy the written authorizations in bad faith. In fact, Defendant's corporate counsel testified in his Declaration that Defendant's practice during the relevant period was when a store was sold to a franchisee, Defendant destroyed all records "that contained non-public information pertaining to the company or its employees" stored at that location in order to "protect[] [Defendant's] sensitive and confidential financial information, and [to] protect[] the personal identifying information of former Jack in the Box employees." Stubblefield Decl., *Gessele I* at ¶ 9, ECF 228. Shoe deduction authorizations were not the only records destroyed during the transition process. Rather, Defendant also purged documents such as "cash and sales sheets, used and unused deposit slips, emergency action plan documents, company specific posters, applications/hire paperwork, . . . employee write-ups and other disciplinary records, and OSHA compliance documents." *Id.* In addition, the evidence reflects throughout the relevant period and even before the last of Defendant's stores were sold to franchisees some store managers threw out the written authorizations immediately or discarded them at the end of the quarter.

Finally, the Court concludes it would not be reasonable for the Court to infer that Defendant's destruction of the written authorizations was done in bad faith. As noted, the evidence of written authorizations would have assisted Defendant's case. If Defendant had retained written authorizations, Defendant would have been able to prove its compliance with O.R.S. 652.610(3)(b) clearly at summary judgment.

On this record, the Court concludes Plaintiffs have not established Defendant destroyed the written authorizations in bad faith. Accordingly, the Court declines to conclude the

22 - OPINION & ORDER

shoe class should not be decertified on the basis that Defendant has not established that it will be permitted to present secondary evidence to attempt to establish that Plaintiffs and other employees signed written authorizations.

**V.        Subclasses or Post-Verdict Claims Process**

Plaintiffs assert the Court should not decertify the shoe class because affirmative defenses are "usually dealt with either by the creation of subclasses or through a post-verdict claim process."  Pls.' Resp. at 11 , ECF 263. Plaintiffs fail to specify any particular subclasses or to describe any specific post-verdict claim process that they assert would cure the individualized inquiry issue. The Court, however, concludes this record supports the possibility of the division of named and putative Plaintiffs into two subclasses:  those who signed waivers for shoe deductions and those who did not. Because it is possible for at least one subclass of Plaintiffs to proceed with the shoe deduction claims the Court denies Defendant's Motion to Decertify Shoe Deduction Claim.

**CONCLUSION**

For these reasons, the Court DENIES Defendant's Motion to Decertify Shoe Deduction Claim [253].

IT IS SO ORDERED.

DATED this ____1____ day of December, 2021.

_____
MARCO A. HERNÁNDEZ
United States District Judge

23 - OPINION & ORDER