IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA GESSELE, ASHLEY ORTIZ,                    No. 3:14-CV-01092-HZ
NICOLE GESSELE, TRICIA
TETRAULT, and CHRISTINA                           OPINION & ORDER
MAULDIN, on behalf of themselves and
all others similarly situated,

        Plaintiffs,

v.

JACK IN THE BOX, INC., a corporation
of Delaware,

        Defendant.


Jon M. Egan
240 Sixth Street
Lake Oswego, OR 97034-2931

Jim W. Vogele
812 N.W. Seventeenth Avenue
Portland, OR 97209

        Attorneys for Plaintiffs

Douglas S. Parker
Heather St. Clair
Ian Maher
LANE POWELL PC
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204


1 - OPINION & ORDER

David Symes
SYMES LAW OFFICE LLC
39085 Pioneer Boulevard
Suite 1003
Sandy, OR 97055

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       This matter comes before the Court on Plaintiffs' Motion for Attorney Fees, ECF 439;

Plaintiffs' Bill of Costs, ECF 442; Defendant's Motion for Attorney Fees, ECF 444; and

Defendant's Bill of Costs, ECF 445.

       For the reasons that follow, the Court grants in part Plaintiffs' Motion for Attorney Fees

and Bills of Costs; awards Plaintiffs attorney fees in the amount of $1,697,237.20; awards

Plaintiffs costs in the amount of $30,934.32 and class notice charges in the amount of

$56,604.07; denies Defendant's Motion for Attorney Fees; grants in part Defendant's Bill of

Costs; and awards Defendant costs in the amount of $16,194.19.

## BACKGROUND

       Defendant Jack in the Box, Inc., owned and operated several restaurants in Oregon until

September 30, 2011, by which time it had sold all of its Oregon restaurants to franchise

operators.

       Plaintiffs were employed by Defendant in its Oregon restaurants at various times before

March 29, 2010. Plaintiffs received their final paychecks from Defendant between July 11, 2008,

and March 30, 2010.

       On August 13, 2010, Jessica Gessele, Ashley Ortiz, Nicole Gessele, and Tricia Tetrault

filed a putative class-action Complaint in this Court against Defendant (*Gessele I*, Case No. 3:10-

2 - OPINION & ORDER

CV-00960-ST) for violations of the minimum-wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), and Oregon wage-and-hour laws.

On May 16, 2011, Plaintiffs filed a First Amended Complaint in which they added Christina Mauldin as a named Plaintiff.

On March 20, 2012, Plaintiffs filed a Second Amended Complaint in which they alleged Defendant (1) failed to pay minimum wages in violation of the FLSA and Or. Rev. Stat. § 653.025, (2) failed to pay overtime wages in violation of the FLSA and Or. Rev. Stat. § 653.261, (3) failed to pay all wages due following termination of Plaintiffs' employment in violation of Or. Rev. Stat. § 652.140, (4) deducted unauthorized amounts from Plaintiffs' paychecks in violation of Or. Rev. Stat. § 652.610, and (5) failed to pay all wages when due as required by Or. Rev. Stat. § 652.120.

On August 13, 2012, Plaintiffs filed a Motion to Certify Oregon Rule 23(b)(3) Classes and Alternative Motions to Either Certify Hybrid FLSA Classes or Certify FLSA 216(b) Collectives.

On December 13, 2012, Plaintiffs filed a Motion for Leave to File Third Amended Complaint. On January 7, 2013, Magistrate Judge Janice M. Stewart denied the Motion on the grounds of undue delay and prejudice.

On January 28, 2013, Magistrate Judge Stewart issued Findings and Recommendation in which she recommended conditional certification of the proposed FLSA Workers Benefit Fund ("WBF") and Shoe Collectives and Subcollectives under § 216(b) and certification of the proposed Rule 23(b)(3) Oregon WBF and Shoe Classes and Subclasses. Magistrate Judge Stewart recommended denying certification of the proposed FLSA Break Collective and the Rule

3 - OPINION & ORDER

23(b)(3) Break Classes and Subclasses.

On April 1, 2013, District Judge Ancer L. Haggerty entered an Order adopting the January 28, 2013, Findings and Recommendation; conditionally certifying Plaintiffs' proposed FLSA WBF and Shoe Collectives and Subcollectives under § 216(b); certifying Plaintiffs' proposed Rule 23(b)(3) Oregon WBF and Shoe Classes and Subclasses; and denying certification of the FLSA Break Collective and the Rule 23(b)(3) Break Classes and Subclasses.

On May 7, 2013, Defendant filed a Motion for Summary Judgment as to all claims on the grounds that Plaintiffs' FLSA claims were barred by the statute of limitations and that the Court could not exercise supplemental jurisdiction over Plaintiffs' state-law claims.

On November 5, 2013, Jason Diaz filed a Consent to Join Law Suit. Diaz, however, did not become a named Plaintiff in *Gessele I*.

On March 19, 2014, District Judge Anna J. Brown issued an Opinion and Order granting Defendant's Motion for Summary Judgment on the ground that Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin were required to file written consents with the Court to commence their FLSA collective action, but they failed to file those written consent forms timely. The Court, therefore, never acquired jurisdiction over their FLSA claims, and, as a result, the Court could not exercise supplemental jurisdiction over their state-law claims. Judge Brown also concluded Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin did not file written consents within the applicable limitations period; neither equitable tolling nor equitable estoppel applied; and, therefore, their FLSA claims were barred by the applicable statute of limitations. Accordingly, Judge Brown dismissed the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina

Mauldin with prejudice and dismissed their state-law claims without prejudice.

On April 16, 2014, Plaintiffs filed an unopposed Motion to Amend/Correct in which they moved the Court to amend its March 19, 2014, Opinion and Order to dismiss their FLSA claims without prejudice on the ground that the Court lacked jurisdiction over those claims.

On May 15, 2014, Judge Brown granted the Motion to Amend/Correct and issued an Amended Opinion and Order dismissing Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin's FLSA claims without prejudice.

On June 10, 2014, Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, Christina Mauldin, and Jason Diaz filed a putative class action against Defendant in Multnomah County Circuit Court (*Gessele II*) in which they alleged claims for violation of Oregon's wage-and-hour laws, violation of the FLSA, breach of fiduciary duty, and equitable and quasi-contractual claims for return of money.

On July 9, 2014, Defendant removed *Gessele II* to this court on the basis of federal-question jurisdiction based on Plaintiffs' FLSA claims and/or jurisdiction under the Class Action Fairness Act ("CAFA").

On August 8, 2014, Plaintiffs filed a Motion to Remand Case to State Court on the grounds that (1) issue preclusion/ collateral estoppel barred litigation of *Gessele II* in this court; (2) the "law of the case" barred litigation in this court if issue preclusion did not bar litigation; and (3) judicial estoppel barred litigation of *Gessele II* in this court if neither issue preclusion nor law of the case barred such litigation.

On October 17, 2014, Judge Brown entered an Opinion and Order granting in part and denying in part Plaintiffs' Motion to Remand. Judge Brown concluded (1) although issue

5 - OPINION & ORDER

preclusion barred relitigation as to whether the court had jurisdiction to hear the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin, it did not bar litigation of Diaz's FLSA claims against Defendant brought for the first time in *Gessele II*; (2) the law of the case did not bar relitigation as to whether this court had jurisdiction; (3) the decision regarding lack of jurisdiction over *Gessele I* did not apply to Diaz because he was never a named plaintiff in *Gessele I*, and, therefore, judicial estoppel did not apply or require remand of Diaz's FLSA claims; (4) judicial estoppel applied to and estopped Defendant from relitigating the issue of this court's lack of jurisdiction over the FLSA claims of Jessica Gessele, Ashley Ortiz, Nicole Gessele, Tricia Tetrault, and Christina Mauldin; and (5) Defendant did not waive its right to remove *Gessele II* by seeking dismissal of *Gessele I* on jurisdictional grounds.

Defendant appealed the Court's October 17, 2014, Opinion and Order to the Ninth Circuit.

On June 11, 2015, the Ninth Circuit issued a Mandate in which it reversed in part the October 17, 2014, Opinion and Order and remanded the matter to Judge Brown for further proceedings. The Ninth Circuit held (1) the doctrine of issue preclusion precluded Defendant from relitigating "the jurisdictional issues" in *Gessele I*; (2) Defendant "[was] not precluded from invoking federal jurisdiction" in *Gessele II* because *Gessele I* did not address jurisdiction under CAFA nor the timeliness of the new FLSA claims asserted in *Gessele II*; (3) Defendant's position in *Gessele I* that the court lacked jurisdiction over the FLSA claims asserted in that matter "is not inconsistent with [Defendant's] . . . [assertion in *Gessele II* that] there is no time bar to the newly asserted FLSA claims, or that the district court has CAFA jurisdiction over the state-law claims"; and (4) Defendant did not waive its right to remove

6 - OPINION & ORDER

*Gessele II* "through its filings in the state court or its prior conduct in this litigation."

On August 31, 2015, Defendant filed a Motion for Partial Summary Judgment asserting Diaz's claims were subject to an arbitration agreement. On the same day Plaintiffs filed a Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling for FLSA Collective Members and a Motion for Partial Summary Judgment on Defendant's eighth, ninth, and twelfth affirmative defenses.

On December 22, 2015, Judge Brown issued an Order in which she denied as premature (1) portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations); (2) portions of Defendant's Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) relating to Defendant's status as a joint employer; and (3) Plaintiffs' Motion for Partial Summary Judgment on Defendant's eighth, ninth, and twelfth affirmative defenses as to Defendant's ninth affirmative defense. Judge Brown granted the parties leave to address those issues after limited discovery.

On February 16, 2016, Judge Brown heard oral argument on the remaining issues in the pending Motions for Partial Summary Judgment. At oral argument the parties agreed whether Diaz's claims were subject to mandatory arbitration required further briefing by both parties, and Defendant, therefore, withdrew that portion of its Motion for Partial Summary Judgment.

On March 10, 2016, Judge Brown issued an Opinion and Order in which she granted Defendant's Motion for Partial Summary Judgment; denied Plaintiffs' Motion for Partial Summary Judgment (Statute of Limitations) and to Establish Tolling; and granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment on Defendant's eighth, ninth, and

twelfth affirmative defenses.

On March 24, 2016, the parties filed a Joint Statement in which they agreed the following claims remained: (1) Plaintiffs state-law wage-and-hour claims; (2) Plaintiffs' claims for "breach of fiduciary duty and equitable and quasi-contractual claims for return of money" to the extent that they did not overlap with state or federal statutory claims; (3) Diaz's FLSA claims; and (4) Plaintiffs' FLSA claims for the period from March 29, 2010, forward. Defendant also advised that it intended to move for summary judgment against Diaz's claims based in part on his arbitration agreement with Defendant.

On September 1, 2016, Defendant filed a Motion for Partial Summary Judgment as to whether Defendant was a joint employer of franchise employees under the FLSA, Diaz's federal and state claims, and FLSA claims of any California putative class members subject to class settlements in *Frederick v. Jack-In-The-Box, Inc.*, No. RIC50144, and *Olvera v. Jack In The Box, Inc.,* No. 37-2013-00072707.

On December 13, 2016, Judge Brown issued an Opinion and Order:

1.  granting Defendant's Motion as to Plaintiffs' FLSA claims for the period beginning March 29, 2010, forward on the ground that Defendant was not Plaintiffs' joint employer during that period;

2.  granting Defendant's Motion as to Diaz's state and federal claims on the ground that Diaz was required to arbitrate his claims; and

3.  denying as premature Defendant's Motion as to the FLSA claims of California putative class members.

Plaintiffs filed a Motion for Rule 23(b)(3) Class Certification and on June 12, 2017, Judge Brown issued an Opinion and Order granting Plaintiff's Motion to Certify the Workers Benefit Fund (WBF) Class, Plaintiff's Motion to Certify the Shoe Class, and Plaintiff's Motion

8 - OPINION & ORDER

to Certify the Franchise Transfer Class, and denying Plaintiffs' Motion to Certify the Unpaid Break Class.

On May 3, 2019, Defendant filed five Motions for Summary Judgment. On May 24, 2019, Plaintiffs filed ten Motions for Partial Summary Judgment. On November 13, 2019, Judge Brown issued an Opinion and Order granting and denying the various dispositive motions.

Plaintiffs filed a Renewed Motion to Certify Unpaid Break Class and for Reconsideration based on the Oregon Court of Appeal's decision in *Maza v. Waterford Operations, LLC*, 300 Or. App. 471 (2019). On June 5, 2020, Judge Brown issued an Opinion and Order denying Plaintiffs' Renewed Motion to Certify Unpaid Break Class.

On June 14, 2020, Plaintiffs filed a petition in the Ninth Circuit to appeal the denial of class certification of the unpaid break class. On November 19, 2020, the Ninth Circuit denied Plaintiffs' petition to appeal.

On January 21, 2021, *Gessele II* was reassigned to this Court.

On July 27, 2021, Defendant filed a Motion to Decertify Shoe Deduction Claim class. On December 1, 2021, this Court issued an Opinion and Order denying Defendant's Motion to Decertify Shoe Deduction Claim class.

On September 15, 2021, Plaintiffs filed a Motion for Reconsideration of Courts' Previous Denial of Class Certification for Plaintiffs' Unpaid Break Class. On November 27, 2021, this Court issued an Opinion and Order in which it adhered to Judge Brown's previous Opinions and Orders denying Plaintiffs' Motions to Certify the Unpaid Break Class.

On October 3, 2022, the Court held a pretrial conference at which it decertified the shoe-deduction class.

9 - OPINION & ORDER

The matter proceeded to trial on October 17, 2022. At the close of Plaintiffs' case Defendant moved for judgment as a matter of law on Plaintiffs' meal break claims. The Court denied Defendant's Motion.

On October 24, 2022, the jury entered a Verdict in which it found that WBF class members were not paid minimum wages, not paid sufficient overtime, and/or received late payment of final wages due to WBF over-withholding; that each named Plaintiff authorized her shoe deductions in writing; that named Plaintiffs were not entitled to statutory damages for shoe deductions; and that named Plaintiffs were entitled to penalty wages for failure to pay minimum wages, overtime, or final wages on termination due to an improper shoe deduction and/or WBF deduction. The jury also found in favor of Plaintiffs on their common law class claims for unjust enrichment and money had and received.

On November 21, 2022, Defendant filed a Motion to Correct Verdict in which it asserted the jury found there were no improper shoe deductions and, therefore, to the extent that their factual findings regarding penalty wages for minimum wage, overtime, or late pay violations included penalty wages for violations arising out of improper shoe deductions, they were inconsistent with the evidence. On January 23, 2023, Defendant filed a Motion to Reduce Unconstitutionally Excessive Damage Awards and a Motion to Limit Prejudgment Interest for Delays Attributable to Plaintiffs.

On March 30, 2023, the Court issued an Opinion and Order granting Defendant's Motion to Correct the Verdict and denying Defendant's Motions to Reduce Unconstitutionally Excessive Damage Awards and to Limit Prejudgment Interest.

On May 23, 2023, the Court entered a Judgment. On June 14, 2023, Defendant filed a

Rule 50(b) Motion for Judgment as a Matter of Law Regarding Plaintiffs' Unpaid Break Claims.

On August 8, 2023, the Court issued an Opinion and Order granting Defendant's Motion, entering judgment as a matter of law for Defendant on Plaintiffs' meal break claims, and striking lost meal break wages and meal break penalty wages awarded to Plaintiffs. On September 2, 2023, the Court entered an Amended Judgment.

On August 28, 2023, Plaintiffs and Defendants filed Cross-Motions for Attorney Fees and Bills of Cost. On October 13, 2023, the Court issued an Order pursuant to Federal Rule of Civil Procedure 23(h)(1) and (2) directing Plaintiffs' counsel to provide to the class members notice of Plaintiffs' Motion for Attorney Fees and to inform class members that they could file objections to Plaintiffs' Motion no later than December 11, 2023.

On December 22, 2023, Plaintiffs advised the Court that no objections of class members to Plaintiffs' Motion for Attorney Fees had been received. Accordingly, the Court took the parties' Motions for Attorney Fees and Bills of Cost under advisement.

**STANDARDS**

State law governs attorney fees in diversity cases. *See Riordan v. State Farm. Mut. Auto. Ins. Co.,* 589 F.3d 999, 1004 (9th Cir. 2009). Plaintiffs seek attorney fees under Oregon Revised Statutes §§ 652.200, 652.615, and 653.055(4). Or. Rev. Stat. § 652.200(1) contains a mandatory provision for attorney fees for failure to pay wages when due. Or. Rev. Stat. §§ 652.615, and 653.055(4) contain discretionary provisions for attorney fees in certain actions under Oregon wage-and-hour statutes. *See* Or. Rev. Stat. § 652.615 ("the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees"); § 653.055(4)("[t]he

court may award reasonable attorney fees to the prevailing party in any action brought by an

employee under this section.").

Whether to award discretionary fees under Oregon law is governed by Or. Rev. Stat.

§ 20.075(1) and the amount of fees to award whether mandatory or discretionary is governed by

Or. Rev. Stat. § 20.075(2). The Court, however, may only award reasonable attorney fees. Or.

Rev. Stat. § 20.075(4).

Or. Rev. Stat. § 20.075(1) lists eight factors that a court "shall consider . . . in

determining whether to award attorney fees in any case in which an award of attorney fees is

authorized by statute and in which the court has discretion to decide whether to award attorney

fees":

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

> (b) The objective reasonableness of the claims and defenses asserted by the parties.

> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

*See also Preble v. Dep't of Revenue,* 331 Or. 599, 602, 19 P.3d 335 (2001).

Or. Rev. Stat. § 20.075(2) requires the court to consider nine factors to determine the amount of fees when it either elects to award attorney fees pursuant to § 20.075(1) or when fees are mandatory:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the results obtained.
>
> (e) The time limitations imposed by the client or the circumstances of the case.
>
> (f) The nature and length of the attorney's professional relationship with the client.
>
> (g) The experience, reputation and ability of the attorney performing the services.
>
> (h) Whether the fee of the attorney is fixed or contingent.

ORS 20.075(2); *see also McCarthy v. Or. Freeze Dry, Inc.,* 327 Or. 185, 188, 957 P.2d 1200 (1998). A court satisfies the requirements of § 20.075(1)–(2) by including in its order a brief description of or citation to the factor or factors on which it relies when granting or denying an award of attorney fees. *Id.* The Court is not required to make findings about irrelevant or immaterial factual matters or legal criteria. *Id.*

## PLAINTIFFS' MOTION FOR ATTORNEY FEES

Plaintiffs seek forty percent of the class's recovery in attorney fees pursuant to the common-fund doctrine, offset by $3,424,780 in attorney fees pursuant to the fee-shifting provisions of Or. Rev. Stat. §§ 652.200, 652.615, and 653.005(4) for a total fee award of $5,259,212.17.[1]

### I.    Common Fund and Attorney-Fee Shifting

Under the "American Rule" a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," and instead attorneys are paid pursuant to contract with their clients. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). An exception to the American Rule is when the legislature provides that "prevailing parties may recover their attorneys' fees from the opposing side" via fee-shifting statutes. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). *See also Strunk v. Pub. Emps. Ret. Bd.,* 341 Or. 175, 180 (2006)("attorney fee awards generally must have a basis in contract or statute"). In addition, "equitable theories can support such fee awards without statutory authorization." *Strunk*, 341 Or. at 181. The common-fund doctrine is one such equitable theory under which "plaintiffs whose legal efforts create, discover, increase, or preserve a fund of money to which others also have a claim, may recover the costs of their litigation, including their attorneys fees, from the created or preserved fund." *Id.* "[T]he doctrine . . . is used to spread litigation expenses among all beneficiaries of a preserved fund so that litigant-beneficiaries are not required to bear the entire

---

[1] Plaintiffs assert this figure "will change because the until the judgment is actually paid, the class's recovery amount will continue to increase by the daily interest accruing." Pls.' Mot., ECF 444, at 20.

financial burden of the litigation while inactive beneficiaries receive the benefits at no cost." *Id.*

*See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)(The common-fund doctrine

reflects the traditional practice in equity, and "rests on the perception that persons who obtain the

benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful

litigant's expense.").

"The distinction . . . [between] statutory fee [awards] and common fund fee [awards], has

practical relevance. . . . [I]t determines who pays the awarded fee." *Brytus v. Spang & Co*., 203

F.3d 238, 242 (3d Cir. 2000). Under a statutory fee-shifting provision the losing party bears the

burden of the prevailing party's fees. "Under the common fund doctrine the plaintiff class as a

whole rather than the defendant bears the burden of attorney's fees." *Id.* "This is not to say that

the common fund doctrine may never be applied in a case for which there is a statutory fee

provision and which goes to judgment." *Id.* For example, when "the defendant responsible for

the statutory fee has become bankrupt or otherwise has insufficient funds," the common-fund

doctrine may apply to remedy the inequity of named plaintiffs bearing the sole burden of the

costs of litigation. *Id*. at 247.

Relying on *Strawn v. Farmers Ins.,* 353 Or. 201 (2013), Plaintiffs assert that Oregon

courts have permitted prevailing parties to receive attorney fees in class actions from a

combination of fee-shifting statutes and common funds. *See also Strawn v. Farmers Ins.*, 233 Or.

App. 401 (2010)(approving award of attorney fees under fee-shifting statute Or. Rev. Stat. §

742.061(1) and under the common-fund doctrine). Although in *Strawn* the prevailing party

obtained fees under both a fee-shifting statute and the common-fund doctrine, *Strawn* does not

support an award of attorney fees under the common fund doctrine here.

15 - OPINION & ORDER

In *Strawn* the plaintiff filed a class action against the defendant asserting claims for breach of contract, breach of the covenant of fair dealing, and fraud in connection with automobile insurance policies written by the defendant. 353 Or. at 213. The jury found for the class on all claims and made a single award of compensatory damages on those claims. "In addition, and for the fraud claim only, the jury awarded punitive damages. Consistent with the jury's verdict, the trial court entered a judgment awarding the class approximately $900,000 in compensatory damages . . . and $8 million in punitive damages." *Id.* The trial court awarded the plaintiff attorney fees of $3.1 million: "over $2.6 million was a fee-shifting award to be paid by [the defendant pursuant to Or. Rev. Stat. § 746.061(1)[2]]; [and] about $500,000 was a common-fund award to be paid from the punitive damages awarded to the class" because the fraud claim did not have a statutory basis for an award of fees. On appeal the court found the punitive damages award was excessive, but rejected the defendant's "challenge to the amount of the fee-shifting award." *Id.* at 214. The court approved the class plaintiffs' reliance on Or. Rev. Stat. § 746.061(1) as authority for the fee-shifting award for the fees incurred to prosecute the contractual claims and on "the equitable common-fund doctrine for [a fee] award to compensate class counsel for" prosecuting the fraud claim. *Strawn*, 233 Or. App. at 405. The court also approved the fees based on the class counsel's allocation of their time "to distinguish the hours that class counsel spent on an action 'upon any policy of insurance' under ORS 746.061(1) - *i.e.*,

---

[2] Or. Rev. Stat. § 746.061(1) provided in relevant part "if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state . . ., and the plaintiff's recovery exceeds the amount of any tender made by the defendant . . ., a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." *Strawn*, 353 Or. at 216 n.4.

the hours spent on their fee-shifting claims - from the hours incurred solely in connection with their claim for common-law fraud and punitive damages recovery." *Id*. at 410. Both parties appealed. The Oregon Supreme Court approved class counsels' request for attorney fees to be paid by the defendant pursuant to Or. Rev. Stat. § 746.061(1) for work done "only on the contractual claims," and for fees to be paid out of the common fund only for work done on the fraud claim. *Id.* at 215-16.

Here Plaintiffs seek an award of attorney fees from the common fund from which they request the Court subtract the award of fees pursuant to the fee-shifting statutes. In *Boeing Company v. Van Gemert* the Supreme Court explained that courts have applied the common fund doctrine when "[u]nless absentee [plaintiffs] contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." 444 U.S. 472, 480 (1980). An award from a common fund "rectifies this inequity by requiring every member of the class to share attorneys' fees to the same extent that he can share the recovery." *Id.* In this case, however, "there is no inequity to redress" with respect to the fees Plaintiffs incurred litigating the fee-shifting claims because Defendant will "ultimately [bear] the cost of the litigation" of those claims. *Brytus,* 203 F.3d at 246. The Court, therefore, declines to apply the common fund doctrine because there is no risk of inequity to named Plaintiffs with respect to attorney fees on the statutory class claims.

With respect to the class claims for money-had-and-received and unjust enrichment, there is no statutory provision for an award of attorney fees for those claims and they yielded a common fund of $16,120. Equity, therefore, may entitle Plaintiffs to an award of fees under the common-fund doctrine for work performed by counsel on those claims. *See Strawn*, 353 Or. at

17 - OPINION & ORDER

447 ("In a case involving both a fee-shifting award and a common-fund award, counsel appropriately should be paid reasonable fees from both authorized sources to further the purpose of each award.").

In short, Plaintiffs are entitled to an award of fees as to their statutory claims to be paid by Defendant under the relevant fee-shifting statutes to the extent that the Court can determine a reasonable amount of fees for work performed by class counsel on those claims using the Or. Rev. Stat. § 20.075 framework and may be entitled to an award of fees on their common-law claims under the common fund doctrine for work that class counsel reasonably performed on those claims.

## II.    Statutory Claims

Plaintiff seeks attorney fees of $3,424,780 for litigation of the fee-shifting claims. This amount is comprised of 4,539.1 hours of work by attorney Jon Egan at a rate of $630 per hour; 567.1 hours of work by attorney Jim Vogele at a rate of $495 per hour; and 1,034.3 hours of work by paralegal Michele Lauzier at $275 per hour.

### A.    Discretionary Fee Award

Plaintiffs seek fees pursuant to Or. Rev. Stat. §§ 652.615 and 653.055(4) for their claims for WBF wrongful deductions, WBF minimum wage violations, and WBF overtime violations. To determine whether fees should be awarded under those statutes the Court looks to the factors set out in Or. Rev. Stat. § 20.075(1). The Court finds Plaintiffs' claims for WBF violations were objectively reasonable. Defendant conceded it improperly overwithheld WBF deductions from the class and the Court found Defendant's overwithholding of WBF deductions was willful. In addition, an award of attorney fees for these violations would deter future

misconduct by encouraging employers to pay close attention to the WBF requirements, directives from the state, and automated wage payment systems' programming to avoid similar overwithholding of amounts from employees' paychecks. Finally, there is no indication that an award of attorney fees related to the WBF claims would deter others from asserting good faith claims or defenses in similar cases. The Court, therefore, concludes an award of attorney fees is appropriate for Plaintiffs' WBF claims.

### B.    Mandatory Fee Award - Claims Included

Plaintiffs seek fees pursuant to Or. Rev. Stat. § 652.200 for their claims for unpaid wages pursuant to Or. Rev. Stat. § 652.120 and for late final paychecks pursuant to Or. Rev. Stat. § 652.140. Defendant does not dispute Plaintiffs' right to § 652.200 fees for the violation of § 652.140 for the late payment of final paychecks related to the franchise transfer and WBF classes. Defendant, however, asserts Plaintiffs are not entitled to mandatory fees under § 652.200 for unpaid wages in violation of § 652.120 related to the WBF class because no § 652.120 claim was submitted to the jury related to the WBF class, and, therefore, the WBF class did not receive a judgment under § 652.120.

Although Defendant is correct that no violation of § 652.120 related to the wrongful WBF deductions was submitted to the jury, that was a result of the procedural posture of the case and does not foreclose mandatory fees pursuant to § 652.200 for the WBF unpaid wages claim. Oregon courts have held:

> [T]here is no such thing as a "claim" under ORS 652.610(3).[3] Rather, when an employer deducts amounts that are illegal under that statute, the

---

[3] § 652.610(3) provides in relevant part that "[a]n employer may not withhold, deduct or divert any portion of an employee's wages" unless certain criteria are met.

> employee may file *one or both* of two different kinds of claims: (1) a regular wage claim under ORS 652.120 (requiring payment of all wages at regular paydays) . . .; or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount and a separate . . . right to attorney fees.

*Allen v. Cty of Jackson*, 169 Or. App. 116, 133-34 (2000)(emphasis in original). In *Gessele II* Plaintiffs asserted a claim for failure to pay all wages when due under § 652.120 as well as a claim for illegal deductions under § 652.615 related to the unlawful overwithholding of WBF payments. Defendant conceded before this matter went to trial that "it 'over-withheld' assessments for the WBF from its Oregon employees from August 13, 2004, through February 10, 2012," and, as a result Defendant failed to pay the overwithheld assessments on Plaintiffs' regular paydays. *Gessele v. Jack in the Box (Gessele II),* 427 F. Supp. 3d 1276, 1297 (D. Or. 2019). In addition, Defendant stipulated to the amount of statutory damages arising from its overwithholding of WBF assessments before trial, the question of the amount of overwithheld WBF assessments, therefore, never went to the jury. That this issue did not proceed to the jury is, however, irrelevant because under Oregon law the overwithholding in violation of 652.610(3) permitted Plaintiffs to assert claims under both § 652.120 and § 652.615 because "an employer who makes a deduction that ORS 652.610(3) prohibits has, as a matter of law, failed to pay wages in the amount of the deduction. The employee may recover those unpaid amounts by a claim for unpaid wages [under § 652.120] and may recover attorney fees under ORS 652.200(2) if the employee prevails. The separate claim under ORS 652.615 is irrelevant to that right." *Allen,* 169 Or. App. at 132.

The Court, therefore, concludes that Plaintiffs are entitled to mandatory attorney fees for their § 652.120 claim for overwithheld WBF assessments as well as for their franchise transfer class claim for late final paychecks pursuant to Or. Rev. Stat. § 652.140.

### C.    Mandatory Fees - *Belknap*

Relying on *Belknap v. U.S. Bank Nat' Ass'n*, 235 Or. App. 658 (2010), Defendant asserts Plaintiffs are not entitled to any mandatory fees pursuant to Or. Rev. Stat. § 652.200 because they failed to give sufficient prelitigation notice to Defendant of the relevant wage claims before filing *Gessele I* or *II*.[4] Plaintiffs assert that the only basis for denying attorney fees under § 652.200 identified in *Belknap* and other Oregon cases is the refusal to provide the plaintiff's name in the notice and Plaintiffs here provided their names in their prelitigation notices to Defendant. According to Plaintiffs, therefore, their notices were sufficient.

Or. Rev. Stat. § 652.200(2) authorizes attorney fees to a party who prevails in an action for the collection of wages that "were not paid for a period of 48 hours . . . after the wage became due and payable . . . unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action." In *Belknap* two plaintiffs filed a putative class action alleging the defendant "failed to timely pay all of their wages as required by ORS 652.140." 235 Or. App. at 661. The trial court initially certified a class then later decertified the class. After a trial the jury returned a verdict in favor of one plaintiff and against the other plaintiff. The plaintiff who prevailed filed a motion for attorney fees pursuant to § 652.200(2) and the trial court awarded some of the fees requested. On

---

[4] Defendant also asserted this as an affirmative defense in *Gessele I* and *II*. *See Gessele I* Answer, ECF 35, ¶ 52; *Gessele II* Answer, ECF 5, ¶ 76.

appeal the defendant asserted that "awarding even [the reduced] amount [of fees] was error

because" the plaintiff unreasonably failed to give sufficient prelitigation notice of her wage

claim. The notice to the defendant before filing the action stated in relevant part: "This office

represents potential class plaintiffs in an action against [the defendant]. The potential class

plaintiffs were employees of [the defendant] whose employment ended within the past three (3)

years and who were not paid all wages when due as required by ORS 652.140." *Id.* at 662. The

defendant responded noting the letter failed to identify the potential class representative or the

specific cause of action and, therefore, the defendant "could not . . . adequately investigate the

vague allegations [and] attempt a cure." *Id.* Defense counsel "sought the name of the proposed

class representative and the specific nature of the alleged violation," but the plaintiffs' counsel

refused to provide the requested information. *Id.* On appeal the defendant asserted Or. Rev. Stat.

§ 652.200(2) "required plaintiffs' attorneys to include [the prevailing plaintiff's] name in the

notice." *Id.* at 669. The court concluded that although § 652.200(2) did not expressly require that

the notice identify the plaintiff by name, the text of the statute indicates the legislature "intended

to require the written notice [in] ORS 652.200(2) to include the name of the plaintiff or

plaintiffs." *Id.* at 671. "[T]he legislature's intent [in including the notice requirement] was to

provide the employer with an opportunity to resolve the wage claim before the expense of

litigation was incurred," *id.* at 670, and "[t]he purpose of the provision cannot be attained if the

defendant is not given sufficient information to attempt to expeditiously resolve the claim before

litigation commences." *Id.* at 671. "It follows that because plaintiffs' pretrial notice did not

include [the prevailing plaintiff's] name, counsel failed to give written notice of the wage claim

to the employer before filing the action." *Id.* The court concluded the plaintiffs unreasonably

failed to give sufficient prelitigation notice and found the trial court erred in awarding attorney

fees to the prevailing plaintiff under § 652.200(2). The defendant asserted on appeal only that the

notice was insufficient because it did not include the prevailing party's name, therefore, the court

did not address the defendant's assertion in its response to the plaintiffs' notice that it was also

deficient because the plaintiffs did not identify "the particular alleged cause of action." The few

other opinions citing *Belknap* address the sufficiency of a prelitigation notice only in the context

of providing the name of the plaintiff. *See, e.g.*, *Migis v. Autozone, Inc.*, 282 Or. App. 774, 810

(2016), *adhered to in part on reconsideration*, 286 Or. App. 357 (2017)(finding the prelitigation

notice was insufficient because it did not include "the specific name of the plaintiff or plaintiffs"

and, therefore, the employer did not have "an opportunity to resolve the claim before litigation").

      The prelitigation notices provided to Defendant in *Gessele I* each included a

Plaintiff's name and advised Defendant that it had failed to pay the Plaintiff "all of the wages

owed to her under federal and/or state statutes and/or the common law of contracts." Parker

Decl., ECF 440, Ex. 1. Each Plaintiff also listed several federal and state statutes under which

their claims were likely to be brought including Or. Rev. Stat. §§ 652.110, 652.120, 652.140,

652.610, 652.615, 653.025, and 653.261. Defendant cites no cases in which an Oregon court has

refused to award fees pursuant to § 652.200(2) when the prelitigation notice included the name

of the plaintiff. "'In the absence of controlling forum state law, a federal court must use its own

best judgment in predicting how the state's highest court would decide the case.'" *Makaneole v.*

*Solarworld Indus. Am., Inc.,* No. 3:14-CV-1528-PK, 2014 WL 8102530, at *9 (D. Or. Dec. 8,

2014), report and recommendation adopted as modified, No. 3:14-CV-01528-PK, 2015 WL

1021446 (D. Or. Mar. 9, 2015)(quoting *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314,

23 - OPINION & ORDER

316 (9th Cir.1980)(citations omitted)). The Court concludes based on the relevant Oregon Court of Appeals decisions that the Oregon Supreme Court would likely find Plaintiffs' notice in *Gessele I,* although not a picture of clarity, would satisfy the requirements of § 652.200(2). Accordingly, the Court concludes Plaintiffs gave sufficient prelitigation notice in *Gessele I.* As to *Gessele II,* Defendant concedes Plaintiffs' prelitigation notices in that matter "may well have complied with the requirements of *Belknap,*" but asserts the *Gessele II* notices "did not cure the class's failure to send a *Belknap*-compliant notice 'before filing' *Gessele I,*" therefore the Court should not award fees under § 652.200(2) for work performed in *Gessele II.* Def.'s Resp., ECF 451, at 5. Defendant did not submit the prelitigation notices provided in *Gessele II*, nor did it point the Court to where in the nearly 14-year record these notices might be found. Because Defendant concedes these notices likely complied with *Belknap* and the Court has concluded Plaintiffs' *Gessele I* notice satisfied § 652.200(2), the Court concludes Defendant has not met its burden to establish the notices in *Gessele II* did not satisfy § 652.200(2). *See Johnson v. O'Malley Bros. Corp.*, 285 Or. App. 804, 816 (2017)("As the party seeking to rely on the statutory exception under ORS 652.200(2), defendant [bears] the burden of proving its application.").

    In summary, the Court concludes Defendant has not established the prelitigation notices in *Gessele I* or *II* did not satisfy § 652.200(2) or that the Court should not award Plaintiffs reasonable attorney fees pursuant to that statute.

24 - OPINION & ORDER

### D.    § 20.075(2) Factors

#### 1.    Subsection (2)(b)

Subsection (2)(b) directs the court to look at "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases." ORS 20.075(2)(b). "[T]he subsection's language clearly contemplates a prospective assessment, not one informed by hindsight[.]" *Beck v. Metro. Prop. & Cas. Ins. Co.*, 3:13-cv-00879-AC, 2016 WL 4978411, at *20 (D. Or. Sept. 16, 2016). Plaintiffs state Egan "has had to limit his case load for the last 13 years as a result of working on this matter." ECF 444 at 14. In addition, although Plaintiffs do not specifically assert Vogele had to limit his case load during the years he assisted in litigating this matter or that he was precluded from taking on substitute work, they state that "[i]t was known going into the case that it would involve an extraordinary amount of time, precluding plaintiffs' counsel from taking on equivalent substitute work." *Id.* The Court, therefore, gives this factor weight in determining an award of reasonable fees.

#### 2.    Subsection (2)(d)

This subsection directs the Court to consider the amount involved in the controversy and the results obtained. Plaintiffs assert this factor weighs in their favor because "they prevailed on all of the claims and counts for which they seek attorney fees," they were "awarded every penny that they sought from the jury for those claims," and the result was the "largest wage-and-hour verdict in Oregon history." Pls. Mot. at 16. Plaintiffs narrow the scope of the analysis too far. Taking at *Gessele I* and *II* as a whole, Plaintiffs did not prevail on several statutory claims including their four FLSA collective action claims, the Oregon statutory shoe

25 - OPINION & ORDER

class claim, and the Oregon unpaid break claim. The award here was necessarily large because the class consisted of thousands of Defendant's former Oregon employees across a multi-year time span. The Court does not minimize the results obtained by Plaintiffs, but notes they did not prevail on many of the statutory claims. The Court, therefore, gives this factor some weight in determining the fee award.

### 3.    Subsections (2)(c) and (2)(g)

These subsections direct the Court to consider the fee customarily charged in the locality for similar legal services and the experience, reputation and ability of the attorney performing the services. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1243 (D. Or. 2013). "As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the relevant Oregon State Bar (OSB) Economic Survey." *Id.* at 1244. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors, but "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. State of Oregon Dep't of Hum. Servs.*, No. CIV. 07-940-HA, 2010 WL 5173218, at *4 (D. Or. Dec. 15, 2010).

Plaintiffs request an hourly rate of $630 per hour for Egan, $495 per hour for Vogele, and $275 per hour for Lauzier. Defendant objects to the requested rates for Egan and Lauzier.

### a.    Vogele

Vogele was admitted to the Montana bar in 1988 and the Oregon bar in 2011. Vogele is located in Portland, Oregon and had been practicing law for more than 30 years when he began working on *Gessele II* in 2021. He has been counsel of record in several class action lawsuits and published numerous articles regarding trial practice. Egan Decl., ECF 446, Ex. 2. According to the 2017 OSB Economic Survey the 75th percentile hourly rate for Portland attorneys with more than 30 years of experience was $495. The 2022 OSB Economic Survey no longer contains information for rates at the 75th percentile, but the median rate for attorneys with more than 30 years of experience was $425 and the 95th percentile rate was $798. The Court, therefore, concludes Vogele's requested rate of $495 per hour is reasonable.

### b.    Egan

Defendant contends the rate sought by Egan is unreasonably high because Egan requests a rate provided for Portland attorneys, but he is located in Lake Oswego, which is in the tri-county area; Egan requests fees at his current rate for the entirety of this nearly 14-year litigation; and Egan has been awarded lower rates in other, recent litigation. Plaintiffs note that although Egan's office is in Lake Oswego, that town abuts Portland and courts in this District have awarded Egan fees at Portland rates because he handles cases largely in Portland and there is not a category in the OSB survey for class action or complex litigation. Plaintiffs do not address Defendant's argument that the Court should not award fees at current rates for the entire litigation.

The Court agrees with other judges in this district who have awarded Egan fees at the rates for Portland attorneys. Egan performs most of his work in

Portland for Portland clients and Lake Oswego abuts Portland. The Court, however, agrees with Defendant that it is inappropriate to award Egan fees at his current requested rate for the entirety of this nearly 14-year litigation. Judges in this district have found "[a]ssessing current rates for hours billed in prior years is warranted only after a showing of extraordinary circumstances or special hardships." *Jordan*, 2010 WL 5173218, at *4 (citing *Hamrick v. Aqua Glass, Inc*., No. 07-3089-CL, 2010 WL 934478, *5 (D. Or. Mar. 12, 2010)). Plaintiffs did not address Defendant's assertion that current rates were inappropriate and, therefore, have made no showing that, for example, "the demands of this case precluded attorney [ ] from accepting other employment" or "[i]n order to pay his staff and meet other operating expenses, he was obliged to borrow." *Hamrick*, 2010 WL 935478, at *5 (citing *Missouri v. Jenkins*, 491 U.S. 274, 284 n.6 (1984)). In addition, during the course of this matter Egan had between ten and 23 years of experience and, as a result, his hourly rates went through four of the experience bands set out in the Economic Surveys.[5] Plaintiffs do not provide the Court with any authority that suggests applying the rate for an attorney that currently has 23 years of experience would be appropriate for an attorney who has ten, thirteen, or sixteen years of experience. The Court, therefore, uses the different OSB Economic Surveys that relate to the years this matter has been litigated and adjusts rates for inflation where necessary.[6] The Court uses the rate provided for the band of

---

[5] The Economic Surveys provide information about attorneys' hourly rates in seven three-year bands and in one band encompassing attorneys who have practiced for more than 30 years.

[6] Four OSB economic surveys apply: 2007, 2012, 2017, and 2022. The Court uses the historical consumer price index data from the United States Bureau of Labor and Statistics to adjust the rates for inflation between the economic surveys. *See* https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator/consumer-price-index-1913-

years of experience that applied to Egan at the time the work was done and applies the 75th percentile rate for years 2010 through 2021 because the Court concludes that rate most accurately captures Egan's experience as well as the nature of work performed in this case. Using this rubric, the Court awards Plaintiffs fees for Egan at rates between $293.60 and $421.98 for the years 2010 through 2020.[7] In the 2022 Economic Survey the OSB no longer reported fees at the 75th percentile. The 2022 Survey continued to report rates at the median and 95th percentile. For an attorney of Egan's experience the median rate was $450 and the 95th percentile rate was $697. Carrying forward the 75th percentile rates for 2020 and adjusting for inflation provides rates in 2021 of $448.52 per hour and $477.67 per hour in 2022. The Court notes, however, that in 2021 and 2022 Egan was awarded rates of $500 and $505 per hour for work done on cases in this district. *See, e.g.*, *Brinkmann v. ABM Onsite Services – W., Inc.,* No. 3:17-cv-275-SI, 2021 WL 3932040, at *19 (D. Or. Sept. 2, 2021)(awarding Egan fees at an hourly rate of $505); *Huyck v. Shilling*, No. 3:18-cv-00400-JR, 2022 WL 16924130, at *3 (D. Or. Nov. 14, 2022)(awarding Egan fees at an hourly rate of $500). The Court, therefore, concludes an hourly rate of $505 is appropriate for work done by Egan on this case in 2021 and 2022. Adjusting for inflation, the Court concludes a rate of $529.75 per hour is appropriate for work done by Egan in 2023.

### c.    Lauzier

Plaintiffs request fees for Lauzier at an hourly rate of $275. As with Egan, Plaintiffs have not shown "extraordinary circumstances or special hardships" that

---

[7] See Exhibit 1 to this Opinion and Order for the calculation of Egan's attorney fees.

would justify applying Lauzier's current rate for all work done in this nearly 14-year litigation.

Egan states in his Declaration that as of 2023 Lauzier had been his paralegal for 18 years and she

specializes in wage-and-hour law. Reviewing cases awarding paralegal fees for paralegals with

similar levels of experience across the span of this litigation, the Court concludes Plaintiffs

should be awarded fees for Lauzier's work at hourly rates between $125 and $175.[8] *See, e.g.*,

*Stulting v. Grafton*, No. 03:11-CV-00411-HU, 2011 WL 7153947, at *11 (D. Or. Dec. 14, 2011),

report and recommendation adopted, No. 11-CV-411-HU, 2012 WL 379637 (D. Or. Feb. 3,

2012)(awarding paralegal fees at hourly rate of $125 in 2011); *Sterling Sav. Bank v. Thornburgh

Resort Co. LLC*, No. 3:12-CV-00255-KI, 2015 WL 1293076, at *6 (D. Or. Mar. 23,

2015)(awarding paralegal fees at hourly rate of $110 for work done in 2012); *Precision Seed

Cleaners*, 976 F. Supp. 2d at 1249 (awarding paralegal fees at hourly rate of $125 for work done

in 2013); *Bristol v. Peters*, No. 3:17-CV-00788-SB, 2019 WL 1093017, at *4 (D. Or. Mar. 8,

2019)(awarding paralegal fees at hourly rate of $150 for work done from 2017 through 2019);

*Bird v. Oregon Comm'n for the Blind*, No. 3:18-CV-01856-YY, 2021 WL 7709970, at *2 (D. Or.

Aug. 11, 2021)(awarding paralegal fees at hourly rate of $165 for work done from 2018 through

2020); *G&G Closed Cir. Events, LLC v. Rojas*, 2021 WL 1342742, at *1 (D. Or. Apr. 9,

2021)(awarding paralegal fees at hourly rate of $175 for work done in 2020 and 2021); *Nufarm

Americas Inc. v. Delta Ridge Holdings, LLC*, No. 22-CV-581-HL, 2024 WL 52973, at *3 (D. Or.

Jan. 4, 2024)(awarding paralegal fees at hourly rate of $175 for work done from 2021 through

---

[8] See Exhibit 3 to this Opinion and Order for Lauzier's allowed hourly rate per year.

2023 noting "[c]ourts in this District have accepted $175 per hour as a reasonable rate for paralegals.").

### 4.    Subsection (2)(h)

This subsection directs the Court to consider whether the fee of the attorney is fixed or contingent. Plaintiffs note the fee here is entirely contingent and assert that weighs in favor of a fee award. The Court agrees. Plaintiffs' counsel took a significant risk that they would not be compensated for the time spent on this case. *See Beck*, 2016 WL 4978411, at *22 (noting that the defendant's "litigation strategy increased the risk to [the plaintiff's] attorneys that they might not be fully compensated for their time"). The Court considers this risk in its award.

### 5.    Subsection (2)(a)

Plaintiffs seek compensation for 4,539.1 hours of work performed by Egan, 567.1 hours of work performed by Vogele, and 1,034.3 hours of work performed by Lauzier. Although Plaintiffs did not produce Egan, Vogele, or Lauzier's contemporaneous billing records, counsel asserts it "has . . . removed from [the] fee petition all work pertaining only to" Diaz, shoe claims, and meal period claims. Pls. Mot. at 12. Plaintiffs assert the 6,140.5 hours sought pertain only to the WBF fund, late final paycheck claims, or "addressed issues common to all claims." *Id. See, Rogers v. RGIS, LLP*, 229 Or. App. 580, 587 (2009)(when "a case involves multiple claims and more than one party prevails, a party seeking fees must submit a sufficiently detailed statement to permit the trial court to apportion the fees on a claim-by-claim basis"); *Don't Shoot Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2023 WL 6213352, at *4 (D. Or. Sept. 24, 2023)("It is the fee claimant's burden to demonstrate that the number of

31 - OPINION & ORDER

hours spent on the case were 'reasonably expended' on the litigation and that counsel made a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]")(quotation omitted).

Defendant asserts Plaintiffs' statements and submissions are insufficient to support the number of hours they request. Defendant notes the submission contains no apportionment of time between the claims and "common issues," no information as to how many hours Plaintiffs excluded or the process counsel undertook to make exclusions, the number of hours requested is facially unreasonable for work performed on the successful claims, and a review of the specific time records provided suggests Plaintiffs include time for claims on which they were unsuccessful.

"Under subsection 2(a), [the Court] analyze[s] the time and labor required in the proceeding, the novelty and difficulty of the questions involved, and the skill needed to properly perform the legal services." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1249. As an initial matter, the Court does not find that the issues on which Plaintiffs prevailed were exceedingly novel or complex. Although this matter took more than 13 years to litigate through post-trial motions, and litigating a class action is undeniably more complicated than litigating a single plaintiff matter, the statutory claims on which Plaintiffs prevailed were not particularly legally complex. At their core, the claims on which Plaintiffs prevailed were standard wage-and-hour claims for improper deductions, minimum-wage and overtime violations, and failure to pay wages when due. Defendant conceded it improperly overwithheld WBF assessments and did not provide franchise transfer class members with their final wages timely, therefore, these issues and the claims associated with them did not require extensive research or special knowledge.

32 - OPINION & ORDER

Plaintiffs did not prevail on the statutory claims that Defendant disputed including Plaintiffs' FLSA claims, meal-break claims, and shoe deduction claims. To the extent that this case was more difficult because it involved class-action claims, the Court finds that this is reflected in the reasonable number of hours claimed and allowed as discussed below.

### a.    Egan

Plaintiffs seek compensation for 4,539.1 hours of work performed by Egan. The Court notes, however, that the billing records provided for Egan's time do not add up to that number of hours. A review of the billing records reflects 4,513.35 hours of work done by Egan. The Court, therefore, begins with that figure rather than with 4,539.1.

Plaintiffs seek 288.1 hours[9] Egan spent on "routine emails." Egan explains in his Declaration that "for minor or routine emails, [he] bill[s] only 0.05 hours per email" and he "exchanged . . . 5,671 minor or routine emails over the course of this case." Egan Decl. ¶ 12. Egan provides a chart of the various individuals or organizations that he exchanged these routine emails with, but it does not include any detail from which the Court can determine that these emails related to the claims on which Plaintiffs prevailed or the dates on which the telephone calls occurred. The Court, therefore, reduces Plaintiffs' requested fees for these routine emails by 30 percent. Because Plaintiffs do not detail the years in which the emails were made, the Court concludes the appropriate rate for these emails is an average of Egan's rates over the nearly 14 years of litigation.

_____

[9] Although Plaintiffs request 288.1 hours in their summary, their itemized statement reflects 288.05 hours.

Defendant objects to 75.5 hours of time Egan spent on an unspecified number of "detailed emails" on the basis that the detail provided on many of these emails is insufficient to determine whether they related to claims on which Plaintiffs prevailed. The Court agrees that the level of detail of these emails is not high, but the Court can discern from some of the detail that at least some of these emails were likely related to claims on which Plaintiffs prevailed or to issues common to claims on which Plaintiffs prevailed. The Court, therefore, reduces the time allowed by 30 percent to account for the fact that the Court cannot determine whether some of these emails related to claims on which Plaintiffs prevailed.

Plaintiffs seek 14.7 hours of time Egan spent on "short telephone calls with clients re case updates or scheduling concerns." Egan Decl. ¶ 14. The billing records do not include any detail from which the Court can determine that these telephone calls related to the claims on which Plaintiffs prevailed or the dates on which the telephone calls occurred. The Court, therefore, reduces Plaintiffs' requested fees for these telephone calls by 30 percent. Because Plaintiffs do not detail the years in which the telephone calls were made, the Court concludes the appropriate rate for these telephone calls is an average of Egan's rates over the nearly 14 years of litigation.

Defendant asserts that the time spent by Egan on some tasks was excessive. In particular, Defendant argues that 29.3 hours spent drafting the Complaint in *Gessele I* is excessive because the Complaint contained several claims not related to WBF overwithholding or franchise transfer, including the FLSA claims which were dismissed for failure to file FLSA consents. When a "party asserts several claims that are subject to an award of fees but prevails on only one of them, fees can be awarded only for the time reasonably

necessary to prevail on the sole claim on which the party prevailed." *Freedland v. Trebes*, 162 Or. App. 374, 378–79 (1999). That, however, "does not necessarily mean that time devoted to the other claims may not be recoverable. If, for example, there are common issues among the claims, it may not be necessary to apportion the fees between the claim on which the party succeeded and those on which the party did not." *Id.* (citing *Est. of Wesley E. Smith v. Ware*, 307 Or. 478, 480–82 (1989)). When a court concludes "it would have taken roughly the same amount of time to litigate a case in which the successful claim was the sole claim as it took to litigate the case in which it was one among several claims, . . . it would not be necessary to apportion the fees to reflect the lack of success on the other claims." *Id.* at 379. The Court recognizes that the FLSA claims were dismissed, however, some of the FLSA claims overlapped the subject matter on which Plaintiffs prevailed on their state statutory claims: WBF deductions and franchise transfer paychecks. It was not necessary, therefore, for Plaintiffs to apportion the work done on those claims. On the other hand, Plaintiffs also asserted claims on which they did not succeed: meal break claims and statutory shoe claims. To reflect the lack of success on those claims, the Court reduces the time spent on the Complaint in *Gessele I* by 30 percent to 20.51 hours.

Defendant also objects to Plaintiffs' request for 84 hours in 2012 for Egan to "[p]repare deposition outlines for 30(b)(6), review exhibits, paste appropriate excerpts into outline with highlighting and questions attached" and 291.9 hours for him to "[p]repare for and attend 2 weeks of 30(b)(6) depositions at corporate headquarters in San Diego, CA." Egan Supp. Decl., ECF 460 at 10. Defendants point out that Plaintiffs do not indicate how many hours were spent on each deposition, "which is critical because most of these depositions were on topics" other than those on which Plaintiffs prevailed such as shoe deductions and meal

35 - OPINION & ORDER

periods. In its Motion for Attorney Fees Defendant provides a chart indicating what topics were discussed in each of the 25 depositions that reflects WBF deductions were discussed in eight depositions and four depositions touched on more generalized topics. The Court agrees that a not insignificant amount of the deposition testimony surrounded the heavily disputed and highly factual claims for shoe deductions and meal breaks, much of which did not contain issues common to the claims on which Plaintiffs prevailed. The Court, therefore, reduces these requested amounts by 50 percent to 50.4 and 175.14 hours respectively to account for time spent at depositions on claims on which Plaintiffs did not prevail and issues that were not common to claims on which Plaintiffs did prevail.

Defendant objects to the time Egan spent preparing the motion for class certification in *Gessele I* (88.4 hours), preparing the reply for class certification in *Gessele I* (201 hours), and preparing objections to the Findings and Recommendation on class certification in *Gessele I* (116.9 hours) for Plaintiffs' failure to apportion the preparation of these documents between the claims on which Plaintiffs prevailed and those on which they did not. The Court notes that of the 57 pages of Plaintiffs' Motion for Class Certification in *Gessele I*, 33 pages addressed only Plaintiffs' statutory shoe claims, meal-break claims, or FLSA claims. Similarly, 70 of 133 pages of Plaintiffs' Reply addressed statutory shoe claims, meal-break claims, or FLSA claims and all of Plaintiffs' objections to the class certification ruling addressed meal period claims. As the Court previously explained, some of the FLSA claims overlapped the state statutory claims on which Plaintiffs prevailed. The Court, therefore, reduces the hours requested for drafting the class certification motion and reply by 30 percent to 61.88 and 140.7. Plaintiffs, however, were unsuccessful on their meal break claim and that claim had little overlap with the

36 - OPINION & ORDER

WBF and franchise claims on which Plaintiffs prevailed. The Court, therefore, declines to award Plaintiffs any fees for time spent on the objections to the Findings and Recommendation on class certification.

Defendant objects to time Egan spent in *Gessele II* preparing motions to compel discovery from Defendant and franchisees; reviewing franchisees' motions to quash; and preparing a response to franchisees' motions to quash on the basis that these motions related to Plaintiffs' unsuccessful meal period claim and failed theory that franchisees were Plaintiffs joint employers under the FLSA. The Court notes that although some of the motion to compel discovery from Defendant sought discovery relevant only to the meal break claims, Plaintiffs sought to compel documents on other bases as well. For example, Plaintiffs requested Defendant produce pay records in an excel format rather than a PDF format. Plaintiffs also requested Defendant include employees names in their production. The Court, therefore, reduces the time sought to prepare the motion to compel discovery from Defendant by ten percent to 10.26 hours from 11.4. The Court, however, declines to award time for the motion to compel information from franchisees and to respond to franchisees motion to quash because Plaintiffs were unsuccessful on either their FLSA claims or their argument that franchisees were Plaintiffs' employers under the FLSA.

Defendant objects to 167.4 hours to "prepare motion for certification, mtn for excess pages"; 13.4 hours to "prepare JME dec for cert"; 102.6 hours to "prepare motion to certify"; 19.8 hours to "prepare JME dec and exhibits"; and 51 hours to prepare reply to motion to certify on the basis that it appears that none of these hours are apportioned to claims on which the class prevailed. Defendant notes 73 pages of the 90-page

37 - OPINION & ORDER

initial motion for class certification did not relate to the claims on which Plaintiffs prevailed, 55

pages of the 72-page second motion for class certification related to claims on which Plaintiffs

did not prevail, and 18 pages of the 25-page reply related to claims on which Plaintiffs did not

prevail. The Court reduces the hours requested by 30 percent to reflect the time spent on claims

on which Plaintiffs did not prevail.

Defendant objects to Plaintiffs' requested hours for Egan's trial

attendance: 18.9 hours for day one, 17.9 hours for day two, 15.6 hours for day three, 14.4 hours

for day four, and 12.6 hours for day five. It does not appear that Plaintiffs attempted to apportion

the trial time between the claims on which they were and were not successful. Because

Defendant conceded it wrongfully overwithheld WBF assessments and failed to pay class

plaintiffs timely upon franchise transfer, the parties stipulated the amount of wages due as to

those claims, and the Court concluded Defendant's WBF overwithholding was willful, the only

issue left for the jury on those claims was calculation of penalty wages due and when

prejudgment interest began to run. Plaintiffs presented a witness to testify about the amount of

penalty wages Plaintiffs asserted were appropriate and how those amounts were calculated. That

testimony was not particularly lengthy. Most of the trial involved evidence regarding shoe

deductions and meal breaks, claims on which Plaintiffs did not prevail, and on which the

evidence did not relate to the WBF or franchise transfer claims. The Court, therefore, reduces the

requested trial hours by 50 percent to reflect time spent on claims on which Plaintiffs did not

prevail.

Defendant objects to Plaintiffs' requested time for Egan to prepare

a response to Defendant's Rule 50(b) Motion, review Defendant's Reply, and "revise and amend

motion for attorneys post-50(b) ruling." Egan Suppl. Decl. at 24. Defendant's Rule 50(b) Motion related solely to Plaintiffs' meal break claims. The Court granted the Motion, granted judgment as a matter of law for Defendant on that claim, and struck the jury's award of lost wages and penalties on that claim. Plaintiffs, therefore, did not prevail on that claim and it did not relate to any claim on which Plaintiffs prevailed. The Court, therefore, declines to award Plaintiffs any time for responding to the Motion.

      **b.**    **Vogele**

Plaintiffs seek compensation for 567.1 hours of work performed by Vogele. Defendant objects to the time requested by Vogele to attend trial on the basis that it does not appear Vogele seeks time only for those claims on which Plaintiffs prevailed. For the same reasons the Court reduced Plaintiffs' request for Egan's trial attendance hours the Court also reduces Vogele's requested trial hours by 50 percent.[10]

Defendant also objects to 43 hours of time Vogele spent researching and drafting a legal memorandum on "prevailing party on shoe claims." Egan Decl., ECF 446, at 89-90. Plaintiffs were not the prevailing party on the statutory shoe claim and the shoe claims were legally distinct from the claims on which Plaintiffs prevailed. Accordingly, the Court declines to award Plaintiffs fees for Vogele's time researching and drafting this memorandum.

Finally, Defendant objects to time spent by Vogele related to claims for which no fee recovery is authorized. For example, Defendant points to time Vogele

---

[10] See Exhibit 2 to this Opinion and Order for calculations of Vogele's time.

spent emailing regarding "trial of equitable claims" and decertification and doing legislative

research on "decert issues including indiv defense issues," unjust enrichment, and meal breaks.

Because Plaintiffs were unsuccessful on these claims and they did not relate to the claims on

which Plaintiffs prevailed, the Court declines to award Plaintiffs fees for the 7 hours Vogele

spent on these tasks in 2021 and 2022.

### c.     Lauzier

Plaintiffs seek compensation for 1034.3 of work performed by

Lauzier. Defendant asserts that the time spent on various items was excessive. In particular,

Defendant objects to 225 hours for Lauzier to "[p]repare for and attend 2 weeks of 30(b)(6)

depositions at corporate headquarters in San Diego, CA." Egan Supp. Decl., ECF 460 at 10. As

with Egan's billing for these depositions, Plaintiffs do not indicate how many hours were spent

on each deposition, which is critical because most of these depositions were on topics other than

those on which Plaintiffs prevailed such as shoe deductions and meal periods. For the reasons the

Court reduced Egan's hours for these depositions, the Court also reduces the requested hours for

Lauzier by 40 percent to 135 hours to account for time spent at depositions on claims on which

Plaintiffs did not prevail and issues that were not common to claims on which Plaintiffs did

prevail.[11]

Defendant objects to time spent by Lauzier to review, proofread,

and cite check the Motion for Class Certification and the Reply in *Gessele II*. Defendant asserts

this is clerical work and, as such, is not compensable as attorney fees. "'It is well settled, both in

---

[11] See Exhibit 3 to this Opinion and Order for calculations of Lauzier's time.

this District and elsewhere, that it is inappropriate to seek fees under a fee shifting statute for purely secretarial or clerical work.'" *Don't Shoot Portland*, 2023 WL 6213352, at *6 (quoting *Lafferty v. Providence Health Plans*, No. 08-CV-6318-TC, 2011 WL 127489, at *5 (D. Or. Jan. 14, 2011)("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate regardless of who performs them....")). Clerical work includes things such as "scheduling, downloading and saving documents, organizing documents, preparing exhibits, and filing documents." *Id.* It does not, however, include work such as checking legal citations, *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989), "preparing exhibits, . . . [or] proof-reading briefs." *Gonzalez v. US Hum. Rts. Network*, No. CV-20-00757-PHX-DWL, 2024 WL 149979, at *21 (D. Ariz. Jan. 12, 2024). The Court concludes Lauzier's review, proofreading, and cite checking of the Motion for Class Certification and the Reply are not clerical tasks and, therefore, Plaintiffs may recover for those tasks. *See Jenkins*, 491 U.S. at 288 ("By encouraging the use of lower cost paralegals rather than attorneys wherever possible . . . encourages cost-effective delivery of legal services and . . . [reduces] the spiraling cost of . . . litigation.").

Defendant objects to 63.5 hours for Lauzier to attend five days of trial. For the same reasons the Court reduced Plaintiffs' request for Egan and Vogele's trial attendance time the Court also reduces Lauzier's requested trial hours by 50 percent.

Defendant objects to 2.9 hours for Lauzier to review and proofread Plaintiffs' Response to Defendant's Rule 50(b) Motion. For the reasons the Court declined to award Plaintiffs fees for the time Egan spent on Plaintiffs' Response the Court also declines to award Plaintiffs' request for Lauzier's time working on that pleading.

Defendant objects to 4.4 hours exchanging emails with court staff.
Egan Suppl. Decl. ¶ 5. Courts have held that communications with chambers or court staff are
clerical tasks and, therefore, inappropriate for a fee-shifting award. *See, e.g.*, *Yahne v. A1A, Inc.*,
No. C22-1406 RSM, 2024 WL 416941, at *2 (W.D. Wash. Feb. 5, 2024)("clerical work, such as
. . . phone calls with chambers . . . should be deducted from the total award"). The Court,
therefore, declines to award Plaintiffs time for Lauzier to exchange emails with court staff.

In addition, for the same reason the Court reduced the amounts
requested by Plaintiffs for time Egan spent preparing the motion for class certification in *Gessele
I*, the Court also reduces by 30 percent the time Lauzier spent reviewing, proofreading, cite
checking, and preparing exhibits for that Motion (24.8 hours) and reviewing, proofreading, and
cite checking the Reply (39.8 hours). For the reasons the Court declined to award Plaintiffs'
requested fees for Egan to prepare objections to the Findings and Recommendation on class
certification in *Gessele I*, the Court also declines to award Plaintiffs' requested fees for Lauzier
to review, proofread, and cite check those objections (19.5 hours).

## E.    Multiplier

In addition to the lodestar calculation, Plaintiff argues that the Court should apply
a fee multiplier of 2.0 to the attorney fees award. Plaintiff cites the size of the judgment obtained,
the novelty and difficulty of the questions involved, and the risk and time involved in taking the
case. Pl. Mot. at 13-14. Defendant objects to a multiplier noting Plaintiffs did not prevail on
several claims; Defendant largely conceded liability on the claims on which Plaintiffs did
prevail; and the judgment in this case was doubled by the amount of prejudgment interest, which
resulted in part from the nearly four-year litigation of *Gessele I*, Plaintiffs' attempts to reassert

the dismissed FLSA claims in *Gessele II*, and several unsuccessful efforts to relitigate meal break claims.

The Court has discretion to award an enhancement to the attorney fee request in the form of a fee multiplier. *See VanValkenberg v. Oregon Dep't of Corrs.*, 3:14-cv-00916-MO, 2017 WL 2495496, at *5 (D. Or. June 9, 2017)(citing *Griffin By & Through Stanley v. Tri-Cty. Metro. Transp. Dist. of Or.*, 112 Or. App. 575, 584–85, 831 P.2d 42 (1992) *aff'd in part and rev'd in part on other grounds* 318 Or. 500 (1994)). "Oregon law permits an enhancement when supported by the facts and circumstances of the case." *Beck*, 2016 WL 4978411, at * 22.

> Typically, enhanced fee awards are appropriate in cases where the recovery was an "exceptional success," . . . and other favorable factors exist, including 'the difficulty and complexity of the issues involved in the case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved.

*VanValkenberg*, 2017 WL 2495496, at *6 (quoting *Strunk v. Pub Emps. Ret. Bd.*, 343 Or. 226, 246 (2007)). The Court also considers the statutory factors under ORS 20.075 in determining whether an enhanced fee is appropriate. *Id.*

The Court finds that a fee multiplier is not appropriate. As discussed above, the Court recognizes this was a lengthy case that involved large classes, however, the issues on which Plaintiffs prevailed were not particularly unique or complicated. Defendant conceded liability for the WBF and franchise transfer classes and the willfulness issue was resolved relatively early by the Court. Any difficulties presented by the claims on which Plaintiffs prevailed are subsumed in the reasonable number of hours expended by Plaintiffs' counsel. Thus, on balance, the factors that would weigh in favor of a fee multiplier are neutral in this case.

### III.    Common Fund Claims

The common-fund doctrine is an equitable theory under which "plaintiffs whose legal efforts create, discover, increase, or preserve a fund of money to which others also have a claim, may recover the costs of their litigation, including their attorneys fees, from the created or preserved fund." *Strunk*, 341 Or. at 181. "[T]he doctrine . . . is used to spread litigation expenses among all beneficiaries of a preserved fund so that litigant-beneficiaries are not required to bear the entire financial burden of the litigation while inactive beneficiaries receive the benefits at no cost." *Id. See also Boeing Co. v. Van Gemert*, 444 U.S. at 478 (The common-fund doctrine reflects the traditional practice in equity, and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."). Plaintiffs prevailed on their equitable claims for money-had-and-received and unjust enrichment and they yielded a common fund jury award of $16,120. There is no statutory provision for an award of attorney fees for those claims. Although they did not request fee for those claims, Plaintiffs may be entitled to an award of fees under the common-fund doctrine for success on those claims as a matter of equity. *See Strawn*, 353 Or. at 447 ("In a case involving both a fee-shifting award and a common-fund award, counsel appropriately should be paid reasonable fees from both authorized sources to further the purpose of each award.").

"Traditionally, in both state and federal courts, the percent-of-fund method has been the prevalent means of calculating the reasonable fee award in common fund cases." *Strawn*, 353 Or. at 217. That method "sets the fees by calculating the total recovery secured by the attorneys" on the claim or claims that created the common fund and "awarding them a reasonable percentage of that recovery." *Id.* When calculating a percent-of-fund award, the Ninth Circuit has approved

44 - OPINION & ORDER

a 25 percent benchmark. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)(noting a 25 percent benchmark); *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir.2011)(district courts in the circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

The Court notes the unjust enrichment and money-had-and-received claims involved some novel questions including whether a rebate of the type at issue satisfied the elements of either claim. The Court, therefore, concludes an award of 25 percent of the common fund awarded by the jury for these claims is insufficient and awards Plaintiffs' counsel 30 percent of the common fund ($4,836) in attorney fees.

## IV.    Incentive Award

Plaintiffs seek an incentive award of $25,000 to each named Plaintiff, for a total of $125,000 to be paid from the award. "'Incentive awards are fairly typical in class action cases.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015)(quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "[I]ncentive awards are meant to 'compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" *Bellinghausen*, 306 F.R.D. at 266 (quoting *Rodriguez*, 563 F.3d at 958–59). "[D]istrict courts must be vigilant[, however,] in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives[.]" *Id.* "[C]oncerns over potential conflicts may

45 - OPINION & ORDER

be especially pressing [when] the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Solutions, Inc*., 715 F.3d 1157, 1165 (9th Cir.2013)(internal quotation marks and citation omitted). "A class representative must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" *Id.* (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008)). In district courts in the Ninth Circuit, "a $5,000 payment is presumptively reasonable." *Id.* (citing *Burden v. SelectQuote Ins. Servs*., No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013); *Hopson v. Hanesbrands, Inc*., No. CV–08–0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)). "Incentive awards typically range from $2,000 to $10,000." *Id.* at 267 (citing *Covillo*, 2014 WL 954516, at *8 (ordering an $8,000 incentive award for each of the three named plaintiffs); *Wolph v. Acer Am. Corp*., No. 09–01314 JSW, 2013 WL 5718449, at *6 (N.D. Cal. Oct. 21, 2013)(ordering a $2,000 incentive award for each named plaintiff); *Chu v. Wells Fargo Invs., LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011)(awarding a $10,000 incentive award to two named plaintiffs)). *See also Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *12 (D. Or. Sept. 19, 2018)(granting an incentive award of $7,500 for named plaintiff) *Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWx), 2016 WL 6517052, at *12 (C.D. Cal. Feb. 16, 2016)(same); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 (W.D. Wash. 2009)(same). "Higher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen*, 306 F.R.D. at 267 (citing *Chu*, 2011 WL 672645, at *5 (collecting cases); *Glass v. UBS Fin. Servs*., No. C–06–4068 MMC, 2007 WL 221862, at *16–17

(N.D. Cal. Jan. 26, 2007)(approving a $25,000 incentive award to four plaintiff representatives in a $45 million settlement)). "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Id.* (quoting *Rodriguez,* 563 F.3d at 958–59).

Named plaintiffs pursued this case for the benefit of the classes and an incentive award would not undermine their representation. The incentive payment requested, however, is not similar in size to incentive payments that have been granted to class representatives in cases of similar size. In addition, an award of $25,000 per named Plaintiff would greatly exceed the payments to absent class members. The Court, therefore, concludes an incentive payment of $7,500 per named Plaintiff paid out of the award is reasonable. Accordingly, the Court awards each named Plaintiff an incentive award of $7,500 to be paid out of the total award.

## V.    Nontaxable Expenses

Plaintiffs seek nontaxable expenses of $56,604.07 for the cost of class notice and of $92,926.77 for computerized legal research, "misc. case costs," postage/delivery, telephone calls, "travel/transportation," "trial expenses," and witness fees.[12] Defendant objects to these expenses on the bases that they are not permitted under Federal Rule of Civil Procedure 54 or 28 U.S.C. §§ 1920 and 1821 nor are Plaintiffs permitted obtain these expenses pursuant to the FLSA because they did not succeed on their FLSA claims. In the alternative Defendant asserts if these expenses are recoverable, they must be apportioned to the claims on which Plaintiffs prevailed.

---

[12] See Exhibit 5 to this Opinion and Order for calculations.

**A.    Costs of Class Notice**

"The usual rule is that a plaintiff must *initially* bear the cost of notice to the class." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)(emphasis added). "[C]ourts must not stray too far from the principle underlying [*Eisen*] that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978). "'[T]he district court[, however,] has some discretion' in allocating the cost of complying with an order concerning class notification." *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009)(quoting *Sanders,* 437 U.S. at 350). In *Hunt* the plaintiffs filed a putative class action alleging the defendant violated the Fair Debt Collection Practices Act ("FDCPA"). The district court "certified a plaintiff class, granted partial summary judgment for the plaintiffs on their [FDCPA] claim, and . . . ordered [the defendant] to pay the costs of notifying class members because the summary judgment order established that [the defendant] was liable on the merits." *Id.* at 1139. The defendant appealed the district court's order requiring it to pay the class notice costs. The Ninth Circuit affirmed concluding "a district court has the discretion to require a class action defendant to pay the costs of class notification when the court has already determined that the defendant is liable on the merits." *Id.* The Ninth Circuit also "recogniz[ed] . . . a general principle that interim litigation costs, including class notice costs, may be shifted to defendant after plaintiff's showing of some success on the merits, whether by preliminary injunction, partial summary judgment, or other procedure." *Id.* at 1143 (quotation omitted). *See also Hathaway v. B & J Prop. Invs., Inc.*, 325 Or. App. 648, 687 (2023)("Because we reject BBM's third assignment of error, the court's order shifting the costs of class notice to BBM stands.").

48 - OPINION & ORDER

Defendant conceded it overwithheld WBF assessments and failed to pay the franchise class their final wages when due. Defendant, therefore, conceded liability on these claims and, as such, the Court has discretion to shift the costs of class notice to Defendant. The Court concludes, in the exercise of its discretion that it is appropriate to shift the cost of class notice because the classes involved here were large, the named Plaintiffs were minimum-wage workers, and Defendant conceded liability. Accordingly, the Court awards Plaintiffs the nontaxable expense of $56,604.07 for notice to class members.

### B.    Other Nontaxable Expenses

Plaintiffs seek other nontaxable expenses of $92,926.77 for computerized legal research, "misc. case costs," postage/delivery, telephone calls, "travel/transportation," "trial expenses," and witness fees. Plaintiffs concede these expenses are not authorized under §§ 1920 or 1821. Plaintiffs assert, however, that they are entitled to an award of these expenses pursuant to Oregon Rule of Civil Procedure 32 M(1)(d),[13] which provides "the court may order the adverse part to pay to the prevailing class its reasonable attorney fees and litigation expenses if permitted by law in similar cases not involving a class." Plaintiffs cite several cases to support their assertion that Oregon courts permit prevailing plaintiffs to recover these kinds of expenses, but none of the cases cited by Plaintiffs involve Oregon wage-and-hour claims. For example, in *Huyck v. Shilling-Devaney*, the plaintiff brought wage-and-hour claims under the FLSA and Oregon's wage-and-hour statutes. 3:18-CV-00400-JR, 2022 WL 16924130, at *1 (D. Or. Nov.

---

[13] It is questionable whether Or. R. Civ. P. 32 M applies because although *Gessele II* was filed in state court, the classes were certified in this Court pursuant to Federal Rule of Civil Procedure 23, not Oregon's class action statute, Or. R. Civ. P. 32.

14, 2022). Plaintiff prevailed at trial on one FLSA claim and two Oregon statutory claims.

Plaintiff moved for nontaxable expenses and the court allowed recovery of those expenses noting

"[i]n wage-and-hour cases, nontaxable expenses are routinely awarded as attorney fees." *Id.*, at

*5. The court, however, relied on two cases permitting nontaxable expenses only under the

FLSA: *Mumford v. Eclectic Inst., Inc.*, 2016 WL 8711693, *8 (D. Or. Apr. 29, 2016)(reasonable

attorney fees "[i]n an action under the FLSA . . . include reasonable out-of-pocket expenses [that

go] beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920")(citation

and internal quotations omitted) and *Robledo v. Orellana*, No. 3:11–cv–00758–BR, 2012 WL

442122, *3 (D. Or. Feb. 10, 2012)("Under the [FLSA], costs ['of the action'] include reasonable

out-of-pocket expenses . . . [that] . . . can include costs beyond those normally allowed under

Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920."). Plaintiffs here did not prevail on their FLSA

claims, and, therefore, may not rely on the FLSA for an award of nontaxable expenses. In *Logan

v. Tiegs*, the court held that "[r]easonable attorneys' fees include such costs as photocopies,

computer-aided research, and deposition costs that are directly billed to and paid for by the

client." No. 03-CV-435-BR, 2010 WL 2245060, at *2 (D. Or. June 2, 2010). That case, however,

involved a request for nontaxable expenses pursuant to Or. Rev. Stat. § 20.096(1), which

provides a "prevailing party is 'entitled to reasonable attorneys' fees in addition to costs and

disbursements' in any action based on a contract that specifically provides for an award of

attorneys' fees to the prevailing party." *Id.* (quoting Or. Rev. Stat. § 20.096(1)). *Oire Oregon C,

LLC v. Yaldo*, No. CV 08-724-ST, 2009 WL 1270254 (D. Or. May 6, 2009), also involved fees

under § 20.096 for a party that prevailed in a contractual dispute. *Robinowitz v. Pozzi*, 127 Or.

App. 464 (1994), and *Willamette Prod. Credit Ass'n v. Borg-Warner Acceptance Corp.*, 75 Or.

50 - OPINION & ORDER

App. 154 (1985) involved lien foreclosure actions. The Court, therefore, concludes even if Or. R. Civ. P 32 M(1)(d) applies, Plaintiffs have not established they may recover their nontaxable expenses pursuant to that rule, because they have not shown those nontaxable expenses are permitted by law "in similar cases not involving a class." Accordingly, the Court declines to award Plaintiffs these nontaxable expenses.

In summary, the Court awards Plaintiffs attorney fees in the total amount of $1,697,237.20.[14]

## PLAINTIFFS' COST BILL

Plaintiffs seek costs of $32,877.12 under Federal Rule of Civil Procedure 54 and 28 U.S.C. §§ 1920 and 1821 comprised of $1,406 in fees of the clerk, $135 for service costs, $28,358.37 for transcripts, $955.10 for printing, $80 in witness fees, $1,922.65 for copying, and $20 in docket fees.

Absent a showing of circumstances not relevant here, an award of costs is generally governed by federal law. *See Berkla v. Corel Corp.*, 302 F.3d 909, 921 n.12 (9th Cir. 2002) (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995)).

28 U.S.C. §§ 1920 and 1821 allow a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

A judge . . . may tax as costs the following:

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts
       necessarily obtained for use in the case;

---

[14] See Exhibit 4 for the calculation of Plaintiffs' total attorney fee award.

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The court has broad discretion to allow or to disallow a prevailing party to recoup costs of litigation. *See, e.g.*, *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000)(noting Fed. R. Civ. P. 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs."). "The court's "discretion, however, does not include 'the authority to tax costs beyond those authorized by statute.'" *Atl. Inertial Sys. Inc. v. Condor Pac. Indus. of Cal., Inc.*, No. 208CV02947-JHNFMO, 2012 WL 12878308, at *1 (C.D. Cal. Jan. 19, 2012)(quoting *Johnson v. Pac. Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir. 1989)). *See also Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010)("Section 1920 define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority."). "In the event of a mixed judgment . . . it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996), as amended (Jan. 15, 1997)(citing *Testa v. Village of Mundelein*, 89 F.3d 443 (7th Cir. 1996)(requiring each party to bear its own costs where plaintiff prevailed on one claim and defendant prevailed on federal claim)).

**A.**    **Unobjected to Costs**

Defendant does not object to Plaintiffs' requested costs for fees of the clerk, service, witness fees, and docket fees and the Court finds these costs are reasonable. Accordingly the Court awards Plaintiffs these costs totaling $1,641.00.

**B.**    **Objected to Costs**

Defendant objects to the costs for transcripts, copying, and printing.

**1.**    **Transcripts**

Defendant objects to Plaintiffs' requested costs of $28,358.37 for transcripts on the grounds that many of the transcripts of depositions were never used in the case or at trial, other deposition transcripts related only to claims on which Plaintiffs lost, and Plaintiffs do not establish that the transcripts of various pretrial hearings were necessarily obtained. The Court's review of the nearly 14-year record indicates most of the transcripts were used by Plaintiffs at class certification. *See* Pls. Mot. for Class Cert. ECF 126, citing testimony by Donna Basham, Jeffrey Tennant, Gene James, Shelly Rohlfs, Susan Burtchett, Susan Pettijohn, Shelly Mosteller, Wendy Sanderlin, Sylvia DeChandt, Barbara Kluske, Leanne Tellez, and Dianne Evans. The Ninth Circuit has held the "award of costs for . . . deposition transcripts [is] presumptively permissible under Federal Rule of Civil Procedure 54(d)(1) and the Taxation of Costs statute, 28 U.S.C. § 1920." *You v. Longs Drug Stores Cal. LLC*, 594 F. App'x 438, 439 (9th Cir. 2015). The Court concludes the deposition transcripts requested were reasonably necessary to motions filed in this matter. Accordingly, the Court awards these costs to Plaintiffs.

In addition, the Court notes that at trial several issues were contested that related to pretrial motions and rulings. The Court, therefore, concludes Plaintiffs necessarily

obtained transcripts of various pretrial hearings. Accordingly, the Court awards the costs for those transcripts to Plaintiffs.

### 2.    Copying and Printing Costs

Defendant objects to Plaintiffs' request for costs of $1,922.65 for photocopying in part. Specifically, Defendant objects to the $987.70 expenses accrued on May 11, 2015, for "printing charges for Ninth Circuit brief in Gessele case." Egan Decl. at 48. Defendant asserts Plaintiffs should not be awarded those costs because Plaintiffs did not prevail on that appeal and costs on appeal are not recoverable at the trial court. The Court agrees. Federal Rule of Appellate Procedure 39(e) provides that certain costs on appeal are taxable in the district court, but printing charges are not among those costs. The Court, therefore, declines to award Plaintiffs $987.70 in costs to print the Ninth Circuit brief.

### C.    Unsupported Costs

In their Cost Bill Plaintiffs also request $955.10 for "[f]ees and disbursements for printing." Cost Bill, ECF 445 at 1. Plaintiffs, however, do not list that amount in their summary of costs and expenses. Egan Decl. at 8. In addition, the itemization included in Egan's Declaration does not set out costs of printing other than at page 48 and those costs total $1922.65. It is unclear what other printing Plaintiffs seek in their request for $955.10 and no additional printing is supported by the documentation. The Court, therefore, declines to award Plaintiffs' $955.10 in "fees and disbursements for printing" to the extent that Plaintiffs seek those costs.

In summary, the Court awards Plaintiffs costs in the total amount of $30,934.32.

## DEFENDANT'S MOTION FOR ATTORNEY FEES

Defendant seeks attorney fees of $1,372,803.04 for 5,124.55 hours of work performed by attorneys and staff at the law firms of Littler Mendelson, Lane Powell, and Symes Law Office.[15] Vinaccia Decl., ECF 441, ¶ 117. Defendant seeks these fees pursuant to Or. Rev. Stat. §§ 652.615 and 653.055(4) for work done on Plaintiffs' shoe deduction claims and unpaid break claims, and under the FLSA for Plaintiffs' FLSA claims. Defendant asserts it was the prevailing party on these claims and the Court should, therefore, exercise its discretion and award Defendant their reasonable attorney fees accrued in litigating these claims.

Plaintiffs assert Defendant did not prevail on Plaintiffs' shoe claim, the Or. Rev. Stat. § 20.075(1) factors do not support an award of attorney fees, the § 20.075(2) factors do not support a substantial award of attorney fees, and the FLSA does not support an award of attorney fees for Defendant under the circumstances.

## I.    Prevailing Party

Or. Rev. Stat. § 20.077(1) provides: " In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided" in § 20.077. "For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment . . . on the claim." Or. Rev. Stat. § 20.077(2). When "more than one claim is made in an action . . . for which an award of attorney fees is . . . authorized . . . the court" is required to

---

[15] Jacqueline Vinaccia states in her Declaration that "Littler employed a total of 37 billers, including support staff and a number on a transient basis;" Lane Powell "employed a total of sixteen billers, including support staff"; and David Symes was the sole biller at Symes Law Office. Vinaccia Decl. ¶¶ 53, 59, 68.

"[i]dentify each party that prevails on a claim for which attorney fees could be awarded [and] . . . [d]ecide whether to award attorney fees on claims for which the court . . . is authorized to award attorney fees, and the amount of the award." *Id*.

Relying on *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or. App. 256 (2019), Plaintiffs assert Defendant was not the prevailing party on the shoe deduction claim. Plaintiffs argue that although they did not prevail on their statutory shoe claim related to failure to pay minimum wages or overtime, they prevailed on their common law shoe deduction claims for unjust enrichment and money had and received. According to Plaintiffs, all of their shoe deduction allegations were part of one claim for relief with multiple counts and because Plaintiffs succeeded on the counts related to unjust enrichment and money had and received, they were the prevailing party on the "shoe deduction claim." Plaintiffs assert "the facts underlying the statutory unlawful [shoe] deduction count, and the common-law unjust enrichment count, and the common-law money-had-and-received count, are all the same facts covering the same shoe deductions" and the potential remedies overlapped and this indicates the shoe claim was one large claim encompassing several counts. Pls. Resp., ECF 454, at 4.

*Mindful Insights*, however, does not support Plaintiffs' argument. In that case the plaintiff asserted alternative claims for breach of express contract and breach of implied-in-fact contract. The jury returned a verdict for the defendant on the express contract claim and for the plaintiff on the implied contract claim. The defendant moved for attorney fees pursuant to the prevailing party fee provision in the express contract. The plaintiff opposed the defendant's request and asserted that "breach of express contract and breach of a contract implied-in-fact were . . . alternative ways of proving a single claim for purposes of determining a prevailing party." *Id.*, at

56 - OPINION & ORDER

265. The plaintiff noted that it had "alleged that [the defendant] accepted the terms of the Contract both with its words (express contract) and with its conduct (implied contract), and the jury simply agreed with the latter theory." *Id*. According to the plaintiff, therefore, it was the prevailing party, and the express contract "authorized an award of attorney fees to plaintiff." *Id*. The trial court held "the express and implied contract claims were alternative methods of proving the existence of a contract and [were] not mutually exclusive claims" and the fact that "the jury found that there was a contract implied in fact and not an express contract [did] not negate that plaintiff [was] the prevailing party." *Id.* The defendant appealed. On appeal, the court held that although the plaintiff's "alternative theories" of express and implied contract "were pleaded as separate 'claims for relief' . . ., they were not distinct 'claims'" because, "breach of express contract and breach of implied-in-fact contract are not distinct claims but instead involve alternative ways of proving how the parties manifested their agreement - either orally or in writing (express) or through conduct (implied-in-fact). They are no different in legal effect." *Id*. The court concluded that "[a]lthough not captioned as such, plaintiff alleged a single 'claim' based on alternative theories of recovery for the same conduct involving a breach of promises about the same services, and for the same amount of damages." *Id.* at 270. Accordingly, the court affirmed the trial court and concluded the defendant was not a prevailing party.

The circumstances here are distinguishable from those in *Mindful Insights.* In their Complaint Plaintiffs defined the shoe class as "all current and former employees of [Defendant] who had a deduction to pay for shoes taken from a paycheck that covered work performed in Oregon." Notice of Removal, ECF 1, Ex. B (Compl.), ¶ 41(2). Plaintiffs, however, pled separate claims for Oregon minimum wage violations arising from the allegedly wrongful WBF, meal

break, and shoe deductions (first claim); Oregon overtime violations arising from the allegedly

wrongful WBF, meal break, and shoe deductions (second claim); Oregon wrongful deductions

arising from WBF, meal break, and shoe deductions (fourth claim); and "equitable

. . . claims for . . . unjust enrichment and money had and received" (eighth claim). *Id.* ¶ 70.

Plaintiffs did not group together the shoe deduction violations in one claim with separate counts,

but instead grouped various claims by statutory or common law violation.

       In addition, although underlying facts related to when and how Defendant deducted the

cost of nonslip shoes from Plaintiffs' pay were relevant across all of Plaintiffs' shoe deduction

claims, unlike in *Mindful Insights,* both the focus and the facts underlying the statutory and

common-law claims differed. The statutory deduction claims involved whether Defendant

deducted the cost of nonslip shoes without written permission resulting in Plaintiffs receiving

less than minimum wage or not receiving overtime. Evaluation of the claim required analysis of

whether nonslip shoes were required by Defendant, whether they were part of a uniform, whether

written permission to take the deduction was required, whether Plaintiffs had provided written

permission, and when or whether the deduction took Plaintiffs below minimum wage or resulted

in the failure to receive overtime. The focus of the unjust enrichment and money had and

received claims was whether Defendant improperly retained a $2 rebate offered by the

manufacturer of one brand of nonslip shoes purchased by Plaintiffs rather than either reducing

the amount deducted from Plaintiffs' paychecks for nonslip shoes by $2 or providing Plaintiffs'

with the $2 rebate directly. *See* Compl. ¶¶ 71-72 (Defendant "unlawfully took possession of

money belonging to Plaintiffs. . . . Plaintiffs . . . received nothing in return for the

kickback/commercial bribe portion of the money, and overvalued shoes in return for the

58 - OPINION & ORDER

remainder. . . . [Defendant] . . . failed to refund the money and has been unjustly enriched thereby, and equity and good conscience demand that the Plaintiffs' . . . money be returned."). The amount and type of damages sought in the statutory shoe deduction claims and the common law shoe deduction claims also differed. The statutory claims sought recovery of wages that failed to reach minimum wage or recovery of unpaid overtime. In contrast, the common law shoe claims sought payment of the $2 rebate for the number of shoes ordered by each class member. In short, *Mindful Insights* does not support Plaintiffs' assertion that Defendant was not a prevailing party on Plaintiffs' statutory shoe claims because Plaintiffs prevailed on their common law shoe claim. The Court, therefore, concludes Defendant was the prevailing party on Plaintiffs' statutory shoe claims.

## II.    Or. Rev. Stat. § 20.075(1) Factors

Or. Rev. Stat. §§ 652.615 and 653.055(4) contain discretionary provisions for attorney fees in certain actions brought under Oregon's wage-and-hour statutes. Whether to award discretionary fees is governed by Or. Rev. Stat. § 20.075(1) and the amount of fees to award whether mandatory or discretionary is governed by Or. Rev. Stat. § 20.075(2). Or. Rev. Stat. § 20.075(1) lists eight factors that a court "shall consider . . .  in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." A court, however, satisfies the requirements of § 20.075(1) by including in its order a brief description of or citation to the factor or factors on which it relies when granting or denying an award of attorney fees. *McCarthy*, 327 Or. at 188. The Court is not required to make findings about irrelevant or immaterial factual matters or legal criteria. *Id.*

59 - OPINION & ORDER

**A.**    **§ 20.075(1)(a)**

This subsection requires the Court to consider "the conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal." Plaintiffs assert Defendant's conduct that gave rise to both the meal period and shoe claims was willful, malicious, in bad faith, and illegal.

**1.**    **Meal Period Claims**

Plaintiffs assert Defendant "was required to provide a full 30-minute meal period to its employees; it did not do so, . . . in fact, [Defendant] programmed its computers . . . to deny payment for short meal periods. That action was willful, as well as illegal under the FLSA." Pls. Resp. at 6. Plaintiffs, however, did not prevail on their FLSA meal break claims, and, in fact, were barred from bringing FLSA claims due to the failure to timely file consents required under the FLSA. In addition, the Court repeatedly explained that under Oregon law before June 1, 2010, employees were not entitled to 30 minutes of wages when they received less than a 30-minute meal break. *See, e.g., Migis v. Autozone Inc*., No. 0711-13531, 2010 WL 6826616 (Or. Cir. Feb. 03, 2010)(granting summary judgment on "Plaintiffs claim for violation of ORS 653.261 and/or OAR 839-020-0050 for failure to pay compensation for interrupted [meal breaks] and/or meal breaks consisting of less than 30 minutes.") *aff'd on cross-appeal Migis v. Autozone, Inc*., 282 Or. App. 774, 776, 778 (2016)("reject[ing] without discussion" the plaintiffs' appeal of the " trial court's rulings concerning a meal-break claim."), *adhered to in relevant part on reconsideration*, 286 Or. App. 357 (2017). After June 1, 2010, Oregon law remained unsettled as to whether employers were required to pay for a full 30-minute meal period when the employee had less than a 30-minute meal period until the Oregon Court of Appeals issued *Maza*

60 - OPINION & ORDER

*v. Waterford Operations, LLC*, 300 Or. App. 471 (2019). Accordingly, the fact that Defendant programmed its computers to deny payment for short meal periods before June 1, 2010 through the time Plaintiffs filed *Gessele I* and *Gessele II* was not reckless, willful, malicious, in bad faith, or illegal under Oregon law.

2.    **Shoe Claims**

Plaintiffs assert Defendant "entered into a secret unwritten kickback agreement with the vendor . . . while charging its employees the full undiscounted value of the shoes" and "purposefully destroyed all of the written deduction authorizations that existed (if any) after the beginning of the case," which is malicious, in bad faith, and illegal. The Court instructed the jury here that to establish a claim of unjust enrichment Plaintiffs must prove by a preponderance of the evidence "that a third party made a payment to Defendant to which the class members have a better legal or equitable right because the class members furnished the value for which Defendant was compensated or reimbursed." Jury Instruct., ECF 382, at 25. To establish a claim for money had and received Plaintiffs "must establish by a preponderance of the evidence that Defendant received money that, in equity and good conscience, should be paid over to the class members." *Id*. at 26. The jury did not find, and the Court cannot infer from the verdict, that the jury concluded Defendant withheld the $2 rebate from class members maliciously or in bad faith or that such conduct was illegal. In addition, although Defendant conceded the authorizations from all of its Oregon locations were destroyed at various times before September 30, 2011, Defendant also presented evidence that the authorizations were destroyed as part of the franchise transition not maliciously or in bad faith.

The Court concludes this factor does not weigh against an award of fees.

61 - OPINION & ORDER

**B.**        **§ 20.075(1)(b)**

This factor requires the Court to consider the objective reasonableness of the claims and defenses asserted by the parties. Defendant asserts Plaintiffs were objectively unreasonable when they sought reconsideration of the denial of the certification of a meal break class, pursued possible meal break claims by employees of Jack in the Box franchise restaurants, and reasserted their FLSA claims in *Gessele II*.

**1.        Reconsideration of Meal Break Class**

Defendant clarifies in its Reply that Plaintiffs' March 27, 2020, Motion for Reconsideration of the denial of certification after the *Maza* decision was "not necessarily" objectively unreasonable. Defendant, however, contends Plaintiffs' September 15, 2021, Motion for Reconsideration of the previous denials of meal break class certification was unreasonable.

The state of Oregon law regarding paid meal breaks throughout much of this action was unsettled. As the Court explained in its Opinions and Orders, it was clear that under the pre-June 1, 2010, O.A.R. 839-020-0050 employees were not entitled to be paid for a 30-minute meal break when they took less than a 30-minute break. After the *Maza* decision in 2019 it was clear that employees were entitled to be paid for a 30-minute meal break when they took less than a 30-minute break. Between those points, however, the law was unsettled as to the effect of the post June 1, 2010 version of O.A.R. 839-020-0050. It was also unclear whether *Maza* was retroactive and whether *Maza* applied to the named Plaintiffs because none of them worked at any of Defendant's restaurants after March 2010. Although Plaintiffs did not prevail on their requests to certify the meal break class, Plaintiffs' positions were supported by reasonable interpretations of the law, particularly in light of the unsettled nature of the law

62 - OPINION & ORDER

regarding unpaid meal breaks. The Court, therefore, concludes Plaintiffs Motions for

Reconsideration regarding certification of a meal break class were not unreasonable.

### 2.    Franchise Employee Claims

In their Complaint in *Gessele II* Plaintiffs asserted unpaid meal break

claims and expanded the potential class to include employees of Defendant's franchise

restaurants on the basis that Defendant was the "joint employer" of its franchisees' employees. In

August 2015 Defendant moved for partial summary judgment on whether Defendant was the

joint employer of its franchisees' employees. Judge Brown denied Defendant's Motion as

premature and Plaintiffs conducted discovery on Defendant's joint employer status. Defendant

renewed its Motion for Partial Summary Judgment after discovery and on December 13, 2016,

Judge Brown granted Defendant's Motion. The joint-employer test is a multi-factor, fact-

intensive analysis that is highly case dependent. Although Judge Brown concluded Plaintiffs

failed to establish Defendant was a joint employer of its franchisees' employees, Plaintiffs'

position was not frivolous or unreasonable. It was based on a rational interpretation of the law

and specific facts here, which had to be developed in discovery. The Court, therefore, concludes

Plaintiffs assertion of a joint employer theory was not unreasonable.

### 3.    Reassertion of FLSA Claims in *Gessele II*

Defendant asserts Plaintiffs' reassertion of FLSA claims in *Gessele II* was

unreasonable. Judge Brown granted Defendant's Motion for Summary Judgment in *Gessele I* on

the basis that Plaintiffs failed to file written consents with the Court to commence their FLSA

collective action timely, and, therefore, the Court never acquired jurisdiction over the FLSA

claims. Plaintiffs filed *Gessele II* and reasserted their FLSA claims. The parties cross-moved for

63 - OPINION & ORDER

summary judgment as to the reassertion of FLSA claims. Judge Brown reiterated her decision

that Plaintiffs failed to file timely written consents for their FLSA claims and concluded

Plaintiffs' FLSA claims were barred as untimely and the pre-March 29, 2010 FLSA claims were

not "saved" by Or. Rev. Stat. § 12.220 due to "the unique procedural posture of *Gessele I* and *II*.

*Gessele v. Jack in the Box, Inc.,* No. 3:14-CV-1092-BR, 2016 WL 1056976, at *9 (D. Or. Mar.

10, 2016). Whether § 12.220 "saved" Plaintiffs' FLSA claims was not obvious and neither Judge

Brown nor the parties found any Ninth Circuit case directly on point. *Id.*, at *8. Although

Plaintiffs did not ultimately prevail on the issue, their position was based on a rational

interpretation of the law and was not unreasonable.

      The Court concludes that Plaintiffs' positions were based on rational

interpretations of the law and were not unreasonable, frivolous, or in bad faith. This factor,

therefore, does not weigh in favor of an award of fees.

      **C.**      **§ 20.075(1)(c) and (d)**

      These factors require the Court to consider the extent to which an award of

attorney fees would deter others from asserting good faith claims or defenses in similar cases and

the extent to which it would deter others from asserting meritless claims and defenses. Plaintiffs

note any award of attorney fees for Defendant for the claims on which Defendant prevailed

would be assessed against the named Plaintiffs only because class certification was denied as to

all claims on which Defendant prevailed. Plaintiffs, therefore, assert § 20.075(1)(c) is "by far the

most important factor in this and other statutory rights cases in which corporate defendants

prevail in non-frivolous claims by low-wage workers." Pls. Resp. at 10. Plaintiffs state there "can

be no question that bankrupting individual plaintiffs for bringing non-frivolous claims against

publicly traded companies would chill wage-and-hour enforcement efforts in the future." *Id.* The

Court agrees this is an important factor and that the effect of awarding $1.3 million in attorney

fees against Plaintiffs, who were minimum-wage earners, would deter others from asserting good

faith claims in similar cases. Oregon courts have reached the same conclusion in comparable

circumstances. For example, in *Bobadilla-German v. Bear Creek Orchards, Inc.,* the plaintiffs

brought class-action claims for violations of Oregon wage-and-hour statutes and the Migrant and

Seasonal Agricultural Workers Protection Act ("AWPA"). No. CIV.07-3058-PA, 2010 WL

1815796, at *1 (D. Or. May 5, 2010). At trial the defendant prevailed on some of the plaintiffs'

AWPA and wage-and-hour claims. The defendant sought attorney fees of $86,519.75 pursuant to

Or. Rev. Stat. § 653.055(4) for defending against the plaintiffs' unsuccessful claims. The court

found the plaintiffs' claims were objectively reasonable and brought in good faith and "that an

award of attorney fees to defendant here would have a chilling effect on good faith claims in

similar cases." *Id.*, at *2. The court noted the defendant sought "fees equal to five years of full-

time, year-round work at the 2010 Oregon minimum wage" and "[t]o award defendant attorney

fees here would certainly deter future good faith minimum wage claims as only plaintiffs with

the most airtight cases would assert their rights under ORS 653.035." *Id.* Similarly, in

*Fredrickson v. Starbucks Corp*., the plaintiffs filed a putative class action complaint asserting

several claims for violations of Oregon wage-and-hour statutes. No. 03:13-CV-00029-HU, 2014

WL 4724844, at *1 (D. Or. Aug. 7, 2014), report and recommendation adopted, No. 3:13-CV-

00029-HU, 2014 WL 4724814 (D. Or. Sept. 23, 2014). The defendant moved to dismiss for

failure to state a claim. The court granted the defendant's motion and dismissed the action. The

defendant sought attorney fees of $125,000 pursuant to Or. Rev. Stat. §§ 653.055(4) and

65 - OPINION & ORDER

652.615. The court found the plaintiffs' claims were not unreasonable or without foundation and that "awarding fees to [the defendant] could, in fact, deter future meritorious claims." *Id.*, at \*4. The court explained "[i]f an individual employee were ordered to pay attorneys' fees that would result in the employees' [*sic*] financial ruin, it is reasonable to conclude that employees seldom would dare to challenge an employer's actions in court." *Id.*

Defendant asserts its fee award could be offset from an award of attorney fees to Plaintiffs or from the common fund created by the litigation. As the Court explained above, however, the claims on which Defendant prevailed are statutory fee-shifting claims, they are not common-law claims. Thus, no common fund was created regarding these claims. The common fund is an equitable remedy employed when no other basis for fees is permitted and other class members will be unjustly enriched by the plaintiff successfully prosecuting claims on their behalf. Here the claims on which Defendant prevailed were not class claims. It would, therefore, be inequitable to charge the class with the fee shifting burden on these individual claims. Defendant does not point to any authority to support its assertion that the Court can charge to the class the fees for defending against individual claims. The authority Defendant cites in support of its assertion, *Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000), in fact, undercuts Defendant's argument. In that case the court explained that under the common-fund doctrine "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 242 (quotation omitted). "The doctrine reflects the traditional practice in equity, and rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the

successful litigant's expense." *Id.* (quotation omitted). Defendant did not obtain the benefit of this action without contributing to its cost and the common-fund doctrine is inapplicable.

As in *Bobadilla-German* and *Fredrickson* the Court has found here that Plaintiffs' claims were not objectively unreasonable or brought in bad faith. In addition, Plaintiffs were minimum wage workers at the time of their employment with Defendant and even at Oregon's current standard minimum wage rate, Defendant's fees equal approximately 9.67 years of full-time, year-round work by each named Plaintiff.[16] Such an award would deter future meritorious similar claims. This factor weighs heavily in against an award of attorney fees.

The Court also finds that an award of attorney fees would not deter others from asserting meritless claims or defenses because, as noted, Plaintiffs' claims were not objectively unreasonable, meritless, or brought in bad faith. This factor, therefore, weighs against an award of fees.

**D.      § 20.075(1)(e) and (f)**

These factors require the Court to consider the objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings and in pursuing settlement of the dispute. Both parties criticize tactics and decisions of the other party during the nearly 14-year span of this litigation. Although there were occasions on both sides in which the attorneys and parties could have been more reasonable, the Court concludes that neither party

---

[16] As of July 1, 2023, Oregon's standard minimum wage rate is $14.20 per hour. https://www.oregon.gov/boli/workers/pages/minimum-wage.aspx (last viewed February 23, 2024). This calculation assumes five individuals working 40 hours per week, 50 weeks per year.

67 - OPINION & ORDER

was objectively unreasonable during the proceedings or settlement. These factors, therefore, are neutral.

In summary, the Court concludes most of the factors do not favor an award of fees and § 20.075(1)(c) weighs heavily against a fee award. Accordingly, the Court, denies Defendant's Motion for Attorney Fees.

### DEFENDANT'S COST BILL

Defendant seeks costs of $46,800.51 under Federal Rule of Civil Procedure 54 and 28 U.S.C. §§ 1920 and 1821 comprised of $15,786.37 for transcripts, $29,701.92 for witness fees, and $1,312.22 for "other costs."

Plaintiffs assert Defendant is not a prevailing party under Rule 54 and, therefore, is not entitled to costs. In the alternative Plaintiffs ask the Court to exercise its discretion to decline to award Defendant costs based on the financial disparity between the parties and the hardship to Plaintiffs. If the Court decides to award costs, Plaintiffs object to certain costs requested by Defendant.

## I.    Prevailing Party

Plaintiffs assert Defendant is not the prevailing party under Rule 54, and it is therefore not entitled to an award of costs. Plaintiffs note Rule 54 provides "'[u]nless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to *the* prevailing party.'" Pls. Obj., ECF 455, at 2 (quoting Fed. R. Civ. P. 54(d)(1)) (emphasis in Pls. Obj.). Relying on cases from the Federal Circuit and the Seventh Circuit Plaintiffs assert that "courts generally hold that 'there can be, by definition, only one prevailing party' under Rule 54(d)(1)." *Id.* (quoting *Shum v. Intel Corp.*, 629 F.3d 1360, 1363 (Fed. Cir.

68 - OPINION & ORDER

2010)). The Ninth Circuit, however, has held that federal courts "sitting in diversity appl[y] state law to determine whether [a party] is the prevailing party entitled to . . . costs." *PayArc LLC v. Valyou Furniture LLC*, No. CV 22-00288 JMS-RT, 2023 WL 6297886, at *2 (D. Haw. Aug. 31, 2023), report and recommendation adopted, No. CV 22-00288 JMS-RT, 2023 WL 6296952 (D. Haw. Sept. 27, 2023)(citing *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)). Or. Rev. Stat. § 20.077(2) provides "the prevailing party is the party who receives a favorable judgment or arbitration award on the *claim*." Emphasis added. Although that statute is couched in terms of an award of attorney fees, Oregon courts have conducted a similar analysis for an award of costs. *See, e.g.*, *Potter v. Cavaletto*, No. 3:10-CV-00124-ST, 2011 WL 5157765, at *6 (D. Or. Oct. 28, 2011)(determining prevailing-party status for an award of costs by reference to Or. Rev. Stat. § 20.077). Defendant received a favorable judgment on Plaintiffs' individual meal break and shoe claims. Defendant, therefore, is the prevailing party on those claims for an award of costs.[17]

## II.    Specific Costs

Although state law governs whether a party is a prevailing party, the amount of an award of costs is generally governed by federal law. *See Aceves*, 68 F.3d at 1167 (finding the district court erred in applying "state procedure instead of federal procedure to determine the amount of costs").

---

[17] In addition, even under federal law the Ninth Circuit has held that "[i]n the event of a mixed judgment . . .  it is within the discretion of a district court to require each party to bear its own costs" or to apportion costs. *Amarel*, 102 F.3d at 1523.

Plaintiffs do not raise a specific challenge to Defendant's requested costs of $15,786.37 for transcripts. Defendant properly supports the request for these transcript costs and they are permitted, taxable costs under § 1920.

### A.    Witness Fees

Defendant seeks $29,701.92 in witness fees comprised of $90.02 for Sylvia DeChandt's round-trip airfare to San Diego, California; $579.60 for Gene James's first-class round-trip airfare to San Clemente, California; $32.30 for Jeffrey Tennant's mileage and witness fee;[18] and $29,000 for Jacqueline Vinaccia "as an expert witness on [Defendant's] motion for attorney fees." Parker Decl., ECF 443, ¶ 9.

### 1.    DeChandt

Plaintiffs object to the cost of DeChandt's airfare on the basis that she did not testify a trial and Defendant chose to fly her to San Diego, rather than have Plaintiffs' counsel depose her at her home in Las Vegas.

28 U.S.C. § 1821 provides: "a witness in attendance . . . before any person authorized to take his deposition . . . shall be paid the fees and allowances provided by this section." In order "[t]o be taxable as costs the witness's testimony must be material to an issue tried and reasonably necessary to its disposition." *Tucker v. Cascade Gen., Inc.*, No. 3:09-CV-1491-AC, 2015 WL 2092849, at *3 (D. Or. May 5, 2015)(citing *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977)). DeChandt did not testify a trial but her deposition testimony was used by Defendant on day four of the trial and it was material to its defense of

---

[18] Defendant reduced the amount of DeChandt, James, and Tennant's costs by 70 percent to reflect the fact that Defendant did not prevail on all claims.

Plaintiffs' shoe deduction claims. The Court concludes DeChandt's testimony was material to an issue at trial and reasonably necessary to its disposition.

"Witness fees, including . . . travel expenses as set forth in 28 U.S.C. § 1821, are taxable as costs under 28 U.S.C. § 1920(3) and Fed. R. Civ. P. 54(d)(1)." *Tucker*, 2015 WL 2092849, at *3. The various fees and allowances permitted by § 1821 include "the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance . . . at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). Defendant notes Plaintiffs noticed DeChandt's deposition in San Diego and Defendant agreed to make her available there. Plaintiffs cite no authority requiring a defending party to advise the deposing party that the deponent will have to fly to the noticed deposition location or to suggest that the deponent be deposed near her residence. The Court, therefore, concludes DeChandt's travel costs are taxable under § 1920.

### 2.    James

Plaintiffs object to $579.60 for James to fly first class to testify at trial. Defendant responds that James's "first class airline ticket is required by his size. [He] is nearly seven feet tall, and a regular economy seat does not accommodate his large frame." Def. Reply at 5. The Court recognizes that airline travel for an individual of James's size can be uncomfortable, but § 1821(c)(1) permits taxation only of the cost of "the most economical rate reasonably available." Courts have declined to award the entire cost of first-class tickets under § 1821(c)(1) and often reduce the requested airfare costs by 50 percent. *See, e.g.*, *Gonzalez v. Shahin*, No. 1:17-CV-157, 2022 WL 20527025, at *3 (D.N.D. Apr. 27, 2022)(reducing witness's

cost for a first-class chartered flight by 50 percent); *Depomed, Inc. v. Actavis Elizabeth LLC*, No. CV 13-4507 (CCC), 2018 WL 999673, at *10 (D.N.J. Feb. 21, 2018)("due to the § 1821(c) requirement of using the 'most economical common carrier,' [the court] must deny 50% of the requested first- or business-class airfare")(citing *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.,* Civ. No. 11–3962, 2016 WL 660601, at *8 (D.N.J. Feb. 18, 2016)(citing cases)); *Cattanach v. BNSF Ry. Co.,* No. CV 13-1664 (JRT/JSM), 2016 WL 6915507, at *6 (D. Minn. Oct. 31, 2016), report and recommendation adopted, No. CV 13-1664 (JRT/JSM), 2016 WL 6916803 (D. Minn. Nov. 21, 2016)("the Court concludes that the first class airfare was excessive and recommends sustaining Cattanach's objection to this airfare, and reducing the award of witness expenses for . . . air fare"). The Court finds §§ 1821 and 1920 do not permit the Court to award Defendant the full cost of James's first-class airfare. Accordingly, the Court denies 50 percent of the cost of James's airfare.

### 3.    Tennent

Plaintiffs object to the request for $32.30[19] for Tennent's witness fee and mileage on the basis that "[t]here is no identification of where Mr. Tennent allegedly drove from so that his mileage could be checked." Pls. Obj. at 3-4. Defendant responds that Tennent drove to trial "from his home, an address which was on the class list and therefore in Plaintiffs' possession[, therefore,] . . . presumably his mileage can be verified by Plaintiffs.

Section 1821(b) provides: "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the

---

[19] Comprised of 70 percent of a $40 witness attendance fee and $6 in travel costs.

time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." The Court finds Tennant's attendance fee is well supported. Defendant, however, fails to provide evidence of the distance Tennant traveled to attend trial. The Court, therefore, finds Tennant's travel cost is unsupported. In summary, the Court concludes $28 of Tennant's witness costs are taxable under § 1920.

      **3.**    **Vinaccia**

      Defendant seeks $29,000 for Vinaccia's work as an expert witness. Defendant notes "[a]ll of Ms. Vinaccia's work . . . have [*sic*] been incurred in connection with [Defendant's] preparation of its motion for attorney fees," and, therefore, Defendant seeks to recover 100 percent of the cost of Vinaccia's work. Parker Decl., ¶ 9. Plaintiffs assert Vinaccia's expert witnesses fees are not recoverable as costs.

      As noted, § 1920 "enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)." *Crawford Fitting Co. v. J. T. Gibbons, Inc*., 482 U.S. 437, 437 (1987). "When construing these categories, courts must 'hew closely to the statute's language, scheme, and context' because "§ 1920 is narrow, limited, and modest in scope,' *Kalitta Air LLC v. Cent. Tex. Airborne Sys. Inc*., 741 F.3d 955, 958 (9th Cir. 2013), and '[t]axable costs are limited to relatively minor, incidental expenses.'" *Slaight v. Tata Consultancy Servs., Ltd,* No. 15-CV-01696-YGR, 2019 WL 3934934, at *3 (N.D. Cal. Aug. 20, 2019)(quoting *Taniguchi v. Kan Pacific Saipan, Ltd*., 566 U.S. 560, 573 (2012)). Section 1920 "does not permit the court to tax compensation to a party's retained expert witnesses, but rather only compensation of 'court appointed experts.'" *Seebach v. BMW of N. Am., LLC*, No. 2:18-CV-00109-KJM-AC, 2021 WL 516712, at *1 (E.D. Cal. Feb. 11, 2021)(quoting 28 U.S.C.

§ 1920(6)). 28 U.S.C. § 1821 permits the taxation of expert witness fees, but only for trial and

deposition testimony, and only up to $40 per day. *See* 28 U.S.C. § 1821(a) - (b). A federal court

may not exceed this limit without explicit statutory or contractual authorization. *Crawford*

*Fitting Co*., 482 U.S. at 445. "The court may not use other cost provisions like 28 U.S.C. § 1920

or Federal Rule of Civil Procedure 54(d) to circumvent section 1821(b)." *Aceves*, 68 F.3d at

1167 (citing *Crawford Fitting Co.,* 482 U.S. at 442).

Vinaccia was not a court appointed expert nor did she testify at trial or at

deposition and Defendant does not point to any explicit statutory or contractual authorization for

taxing Vinaccia's costs. Accordingly, the Court denies Vinaccia's costs.

### B.    Other Costs

Defendant seeks "other costs" of $1,312.22 comprised of attorney Douglas

Parker's round trip airfare to San Diego and car rental, parking, gasoline, and meals during his

time in San Diego for depositions. Section 1821 permits the Court to tax various costs related to

depositions, but only for witnesses. Parker was not a deposition witness. Section 1920 does not

contain any provision for taxing costs of a party such as those requested here and courts have

concluded that such costs are not taxable under § 1920. *See, e.g.*, *Alexander Mfg., Inc. Emp.*

*Stock Ownership & Tr. v. Illinois Union Ins. Co*., 688 F. Supp. 2d 1170, 1177 (D. Or. 2010)(" a

party's travel expenses are not recoverable under § 1920")[20]; *Banta v. City of Merrill, Or.,* No.

CIV. 06-3003-CL, 2007 WL 3543445, at *5 (D. Or. Nov. 14, 2007)("the cost of travel of a party

---

[20] The court recognized in *Alexander Mfg.* that courts "have found that an attorney fee award under 42 U.S.C. § 1988 may encompass out-of-pocket expenses," but this case was not brought under that statute. 688 F. Supp. 2d at 1177 n.2.

is not a recoverable cost")(citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179–80 (10th Cir. 2005); *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990)(denying costs for travel of counsel)). The Court concludes counsel's travel costs are not taxable under § 1920 and, therefore, denies Defendant's request for these costs.

In summary, the Court concludes Defendant's costs of $16,194.19 are taxable under § 1920.

## III.    Equity of the Taxation of Costs

Plaintiffs ask the Court to exercise its discretion and decline to award any costs for Defendant on the basis of equity.

The Ninth Circuit has held that "[a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014)(citing *Ass'n of Mexican–Am. Educ. v. State of Cal.*, 231 F.3d 572, 592 (9th Cir. 2000)). "This is not an exhaustive list of 'good reasons' for declining to award costs, but rather a starting point for analysis." *Id.* at 1248 (quotation omitted).

Plaintiffs assert the named Plaintiffs' "resources as individuals are obviously dwarfed by [Defendant's] resources as a billion-dollar publicly traded company." Pls. Obj. at 5-6. In addition, a large award of costs would chill future litigants from bringing meritorious claims. The Oregon legislature provided the purposes of the wage and hour statutes at issue in the meal period claims are "for the preservation of the health of employees" and for "their health,

efficiency and general well-being." Or. Admin. R. 839-020-0050(1); Or. Rev. Stat. § 653.015.
As such, according to Plaintiffs, the Court should not chill good-faith efforts to enforce them.

As the Supreme Court noted in *Amchem Products v. Windsor,* "[t]he policy at the very
core of the class action mechanism is to overcome the problem that small recoveries do not
provide the incentive for any individual to bring a solo action prosecuting his or her rights. A
class action solves this problem by aggregating the relatively paltry potential recoveries into
something worth someone's (usually an attorney's) labor." 521 U.S. 591, 617 (1997)(quotation
omitted). As the court noted in *Makaneole v. Solarworld Indus. Am., Inc.,* if representatives in
putative wage class action cases "face[] the prospect of being taxed with an employer defendant's
costs in the event of judgment in favor of the defendant, that prospect can be expected to have a
chilling effect on the potential representative's interest in representing the putative class." No.
3:14-CV-1528-PK, 2017 WL 2345706, at *3 (D. Or. May 10, 2017), report and recommendation
adopted, No. 3:14-CV-01528-PK, 2017 WL 2345694 (D. Or. May 30, 2017). The court found
"[t]hat chilling effect constitutes good grounds for denying [the employer-defendant's] request to
tax [the plaintiff] with its litigation costs." *Id.* (citations omitted). The Court finds these factors
favor denying or reducing the requested costs.

The Court also finds the closeness and difficulty of the meal break issues favor denying
or reducing the requested costs. The meals break claims involved unresolved issues of Oregon
law regarding whether and to what extent employees must be paid for meal breaks as well as
whether *Maza* was retroactive.

The Court, however, has already reduced Defendant's requested costs from $46,800.51 to
$16,194.19, which is $3,238.84 per named Plaintiff. Absent any evidence of Plaintiffs' current

earnings or financial position, the Court does not conclude that an award of costs in the amount permitted by the Court across five plaintiffs would "render[] [named Plaintiffs] indigent." *Escriba*, 743 F.3d at 1248. Accordingly, the Court grants Defendant's request for costs in the total amount of $16,194.19.

## CONCLUSION

For these reasons, the Court GRANTS in part Plaintiffs' Motion for Attorney Fees, ECF 439; GRANTS in part Plaintiffs' Bill of Costs, ECF 442; DENIES Defendant's Motion for Attorney Fees, ECF 444; and GRANTS in part Defendant's Bill of Costs, ECF 445.

Plaintiffs are awarded $1,697,237.20 in attorney fees, $30,934.32 in costs, and $56,604.07 in class notice charges. Defendant is awarded $16,194.19 in costs.

IT IS SO ORDERED.

DATED:_____April 14, 2024_____

_____
MARCO A. HERNANDEZ
United States District Judge

**Gessele v. Jack in the Box**
**3:14-cv-1092-HZ**
**Egan Fees**

|  | yrs in practice | OSB Survey year | 75% PDX | CPI calc if relevant | rate allowed |
|---|---|---|---|---|---|
| 2010 | 10 | 2007 | 290 | 293.60 | 293.60 |
| 2011 | 11 | 2007 | 290 | 303.00 | 303.00 |
| 2012 | 12 | 2012 | 300 |  | 300 |
| 2013 | 13 | 2012 | 300 | 304.50 | 304.50 |
| 2014 | 14 | 2012 | 300 | 309.37 | 309.37 |
| 2015 | 15 | 2012 | 300 | 309.68 | 309.68 |
| 2016 | 16 | 2012 | 300 | 313.71 | 313.71 |
| 2017 | 17 | 2017 | 400 |  | 400.00 |
| 2018 | 18 | 2017 | 400 | 409.60 | 409.60 |
| 2019 | 19 | 2017 | 400 | 416.97 | 416.97 |
| 2020 | 20 | 2017 | 400 | 421.98 | 421.98 |
| 2021 | 21 | 2017 | 400 | 441.81 | 441.81 |
| 2022 | 22 | 2022 | 400 | 477.15 | 505.00 |
| 2023 | 23 | 2022 | 400 | 496.72 | 529.75 |

|  | Time requested | Time disallowed | Time allowed | Rate Allowed | Total |
|---|---|---|---|---|---|
| routine emails | 288.05 | 201.635 | 86.415 | 375.64 | $ 32,460.96 |
| routine phone calls | 14.7 | 10.29 | 4.41 | 375.64 | $ 1,656.57 |

|  |  | Time requested | Time disallowed | Time allowed | Rate Allowed | Total |
|---|---|---|---|---|---|---|
| substantial emails | 2010 | 1.2 | 0.36 | 0.84 | 293.60 | $ 246.63 |
|  | 2011 | 5.4 | 1.62 | 3.78 | 303.00 | $ 1,145.33 |
|  | 2012 | 33.7 | 10.11 | 23.59 | 300 | $ 7,077.00 |
|  | 2013 | 0.6 | 0.18 | 0.42 | 304.50 | $ 127.89 |
|  | 2014 | 0 | 0 | 0 | 309.37 | $ - |
|  | 2015 | 5.5 | 1.65 | 3.85 | 309.68 | $ 1,192.27 |
|  | 2016 | 0.5 | 0.15 | 0.35 | 313.71 | $ 109.80 |
|  | 2017 | 0 | 0 | 0 | 400.00 | $ - |
|  | 2018 | 4.4 | 1.32 | 3.08 | 409.60 | $ 1,261.57 |
|  | 2019 | 0.5 | 0.15 | 0.35 | 416.97 | $ 145.94 |
|  | 2020 | 0 | 0 | 0 | 421.98 | $ - |
|  | 2021 | 0 | 0 | 0 | 441.81 | $ - |
|  | 2022 | 23.7 | 7.11 | 16.59 | 505.00 | $ 8,377.95 |
|  | 2023 | 0 | 0 | 0 | 529.75 | $ - |
|  | total | 75.5 | 22.65 | 52.85 |  | $ 19,684.38 |

| Tasks | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2010** | 78 | 8.79 | 69.21 | 293.60 | $ | 20,320.25 |
| | **2011** | 253.9 | | 253.9 | 303.00 | $ | 76,931.23 |
| | **2012** | 1043.3 | 274.77 | 768.53 | 300 | $ | 230,559.00 |
| | **2013** | 444.4 | 116.9 | 327.5 | 304.50 | $ | 99,723.75 |
| | **2014** | 292.9 | | 292.9 | 309.37 | $ | 90,615.06 |
| | **2015** | 408.5 | 12.54 | 395.96 | 309.68 | $ | 122,621.44 |
| | **2016** | 371.1 | 54.24 | 316.86 | 313.71 | $ | 99,401.27 |
| | **2017** | 231.7 | 52.02 | 179.68 | 400.00 | $ | 71,872.00 |
| | **2018** | 15.7 | | 15.7 | 409.60 | $ | 6,430.72 |
| | **2019** | 209.4 | | 209.4 | 416.97 | $ | 87,314.10 |
| | **2020** | 33.3 | | 33.3 | 421.98 | $ | 14,051.82 |
| | **2021** | 3.2 | | 3.2 | 441.81 | $ | 1,413.79 |
| | **2022** | 704.7 | 39.7 | 665 | 505.00 | $ | 335,825.00 |
| | **2023** | 45 | 19.9 | 25.1 | 529.75 | $ | 13,296.60 |
| | total | 4135.10 | 578.86 | 3556.24 | | $ | 1,270,376.04 |

total fees  $  1,324,177.95

**EXHIBIT 1**

**Gessele v. Jack in the Box**
**3:14-cv-1092-HZ**
**Vogele Fees**

|      | Time requested | Time disallowed | Time allowed | Rate Allowed | Total |
|------|---------------|-----------------|--------------|--------------|-------|
| 2021 | 110.3 | 6.1 | 104.2 | 495 | $   51,579.00 |
| 2022 | 401.1 | 26 | 375.1 | 495 | $ 185,674.50 |
| 2023 | 55.7 | 43 | 12.7 | 495 | $     6,286.50 |
| total | 567.1 | 75.1 | 492 | | $ 243,540.00 |

total        **$ 243,540.00**

**EXHIBIT 2**

**Gessele v. Jack in the Box**
**3:14-cv-1092-HZ**
**Lauzier Fees**

### substantial emails

| | | Time requested | Time disallowed | Time allowed | Rate Allowed | Total | |
|---|---|---|---|---|---|---|---|
| | 2010 | 0 | | 0 | 125.00 | $ | - |
| | 2011 | 0.8 | 0.8 | 0 | 125.00 | $ | - |
| | 2012 | 1.8 | | 1.8 | 125.00 | $ | 225.00 |
| | 2013 | 0 | | 0 | 125.00 | $ | - |
| | 2014 | 0.4 | 0.4 | 0 | 150.00 | $ | - |
| | 2015 | 0.3 | 0.2 | 0.1 | 150.00 | $ | 15.00 |
| | 2016 | 0.3 | 0.3 | 0 | 150.00 | $ | - |
| | 2017 | 0 | | 0 | 150.00 | $ | - |
| | 2018 | 0 | | 0 | 165.00 | $ | - |
| | 2019 | 0 | | 0 | 165.00 | $ | - |
| | 2020 | 0 | | 0 | 175.00 | $ | - |
| | 2021 | 0.1 | | 0.1 | 175.00 | $ | 17.50 |
| | 2022 | 0.7 | 0.1 | 0.6 | 175.00 | $ | 105.00 |
| | 2023 | 0 | | 0 | 175.00 | $ | - |
| total | | **4.4** | | **2.6** | | **$** | **362.50** |

### Tasks

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2010 | 36 | | 36 | 125.00 | $ | 4,500.00 |
| | 2011 | 49.6 | | 49.6 | 125.00 | $ | 6,200.00 |
| | 2012 | 420.3 | 114.08 | 306.22 | 125.00 | $ | 38,277.50 |
| | 2013 | 69.5 | 19.5 | 50 | 125.00 | $ | 6,250.00 |
| | 2014 | 41.3 | | 41.3 | 150.00 | $ | 6,195.00 |
| | 2015 | 61.1 | | 61.1 | 150.00 | $ | 9,165.00 |
| | 2016 | 61.3 | | 61.3 | 150.00 | $ | 9,195.00 |
| | 2017 | 28.6 | | 28.6 | 150.00 | $ | 4,290.00 |
| | 2018 | 6 | | 6 | 165.00 | $ | 990.00 |
| | 2019 | 28.3 | | 28.3 | 165.00 | $ | 4,669.50 |
| | 2020 | 8.3 | | 8.3 | 175.00 | $ | 1,452.50 |
| | 2021 | 0 | | 0 | 175.00 | $ | - |
| | 2022 | 216.1 | 31.75 | 184.35 | 175.00 | $ | 32,261.25 |
| | 2023 | 7.9 | 2.9 | 5 | 175.00 | $ | 875.00 |
| total | | 1034.3 | | | | **$** | **124,320.75** |

| | | | |
|---|---|---|---|
| total | **$** | **124,683.25** |

**EXHIBIT 3**

**Gessele v. Jack in the Box**
**3:14-cv-1092-HZ**
**Total Attorney Fees**

| | | |
|---|---|---:|
| Egan | $ | 1,324,177.95 |
| Vogle | $ | 243,540.00 |
| Lauzier | $ | 124,683.25 |
| Common Fund | $ | 4,836.00 |
| | | |
| total | $ | 1,697,237.20 |

**EXHIBIT 4**

**Costs and Nontaxable Expenses**

| PLAINTIFFS |
| --- |

**Costs**

| | Requested | Disallowed | Allowed |
| --- | --- | --- | --- |
| fees of the clerk | $ 1,406.00 | 0 | $ 1,406.00 |
| service | $ 135.00 | 0 | $ 135.00 |
| transcripts | $ 28,358.37 | 0 | $ 28,358.37 |
| printing | $ 955.10 | 955.1 | $ - |
| witnesses | $ 80.00 | 0 | $ 80.00 |
| copies | $ 1,922.65 | 987.7 | $ 934.95 |
| docket fees | $ 20.00 | 0 | $ 20.00 |
| **Total** | $ 32,877.12 | | $ 30,934.32 |

| DEFENDANT |
| --- |

**Costs**

| | Requested | Disallowed | Allowed |
| --- | --- | --- | --- |
| transcripts | $ 15,786.37 | $ - | $ 15,786.37 |
| witnesses | $ 29,701.92 | $ 29,294.10 | $ 407.82 |
| other costs | $ 1,312.22 | $ 1,312.22 | $ - |
| **Total** | $ 46,800.51 | | $ 16,194.19 |

**Nontaxable Expenses**

| | Requested | Disallowed | Allowed |
| --- | --- | --- | --- |
| class notice charges | $ 56,604.07 | $ - | $ 56,604.07 |
| computerized legal research | $ 11,528.28 | $ 11,528.28 | $ - |
| misc. case costs | $ 49.00 | $ 49.00 | $ - |
| postage/delivery | $ 767.51 | $ 767.51 | $ - |
| telephone calls | $ 56.48 | $ 56.48 | $ - |
| travel/transportation | $ 4,692.92 | $ 4,692.92 | $ - |
| trial expenses | $ 11,912.58 | $ 11,912.58 | $ - |
| witness fees | $ 63,920.00 | $ 63,920.00 | $ - |
| **Total** | $ 149,530.84 | | $ 56,604.07 |

**EXHIBIT 5**